Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHONICE G. GARNETT, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> LAURA ZEILINGER, <br><br> *Defendant*. | Civil Action No. 17-1757 (CRC) |

<u>SUPPLEMENTAL DECLARATION OF LAURA GREEN ZEILINGER IN SUPPORT OF DEFENDANT'S SURREPLY IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND DEFENDANT'S SURREPLY IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

I, Laura Green Zeilinger, declare as follows:

1. I am the Director of the District of Columbia (the District) Department of Human Services (DHS).

2. I have been committed to underserved populations throughout my career. Prior to my position as DHS Director, I served as the Deputy Director and then Executive Director of the United States Interagency Council on Homelessness, where I was responsible for the implementation of *Opening Doors: Federal Strategic Plan to Prevent and End Homelessness*, an effort that includes the coordination of Federal homelessness policies among nineteen federal departments and agencies, as well as partnerships with state and local communities, non-profits, and the private sector. I also previously served as DHS Deputy Director for Program Operations and led efforts to create permanent supportive housing for persons experiencing homelessness and housing stability for District residents.

Exhibit A

3.      I provide the following facts in response to Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction and Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Class Certification.

### Agency and Federal Oversight Background

4.      DHS both determines eligibility for and administers the federally funded Supplemental Nutrition Assistance Program (SNAP, formerly known as Food Stamps) in the District. The DHS Economic Security Administration (ESA) is the specific Administration within DHS that administers the District's SNAP program.

5.      Currently, the District of Columbia Access System (DCAS) is the main IT system that supports eligibility determinations for ESA's public assistance programs. DCAS is the District's new eligibility processing system, which began processing SNAP eligibility and benefits in October 2016. The Automated Client Eligibility Determination System (ACEDS) is the District's 25-year-old legacy system that administered SNAP and other programs prior to DCAS and that now only processes certain types of medical assistance programs. ACEDS ultimately will be replaced entirely by DCAS as additional benefit programs are integrated.

6.      I previously provided information about ESA, the District's SNAP program, DCAS, and oversight by the U.S. Department of Agriculture (USDA), through its Food and Nutrition Service (FNS), in my November 15, 2017 Declaration and incorporate that declaration here by reference. (ECF No. 31-1 (Zeilinger Decl.).)

### FNS-366B Reports

7.      FNS began requiring states to submit the FNS-366B reports quarterly

Exhibit A

beginning in the first quarter of Fiscal Year (FY) 2017, which began on October 1, 2016, just days before the DCAS Phase II "go live" date of October 11, 2016, which implemented the new SNAP eligibility system.

8. The Certification Section of the FNS-366B is used to track the number of initial and recertification SNAP applications approved or denied (due to ineligibility) and whether such determinations were timely or overdue. In the report, columns D through G for line 4 should be calculated based on the number of days the case exceeded the timeframe for timely application processing (*i.e.*, 30 days for regular applications and 7 days for expedited applications).

9. DHS misinterpreted the FNS instructions and calculated the number of total processing days, instead of merely the number of overdue days, in addition to a few other errors as described in my deposition testimony. Because of these errors, the FNS-366B report for the first quarter of FY17, October to December 2016, inaccurately suggests DHS had more untimely cases than was the case. Plaintiffs cite this inaccurate report in support of their claims and their motion for preliminary injunction. (*See, e.g.*, Am. Compl. ¶¶ 81-83.)

10. The District revised its FNS-366B Reports for FY17 and resubmitted them to FNS. (*See* ECF No. 44-2.)

<u>The District's Timeliness Rate Calculations Based on FNS-366B Report</u>

11. Using plaintiffs' calculation method[1] and the District's revised FNS-

---

[1] In their memorandum in support of Plaintiffs' Motion for Preliminary Injunction, plaintiffs calculated timeliness and untimeliness using the FNS-366B report, using the following method:

Exhibit A

366B Reports for FY17 (ECF No. 44-2), the District's timeliness rates for initial and expedited applications are as follows:

|  | FY17 Quarter 1 | FY17 Quarter 2 | FY17 Quarter 3 | FY17 Quarter 4 |
|---|---|---|---|---|
| Initial Applications | 90.59% | 92.06% | 93.52% | 95.08% |
| Expedited Applications | 89.63% | 91.92% | 93.36% | 95.00% |

12. The District's timeliness rates, again using plaintiffs' calculation method for the District's FNS-366B Report for Quarter 1 of FY18 (attached as Exhibit B), the most recent data submitted to FNS, for initial and expedited applications are:

|  | FY18 Quarter 1 |
|---|---|
| Initial Applications | 94.97% |
| Expedited Applications | 94.81% |

13. Recertification rates tend to be lower than initial application rates for numerous reasons that have been documented by policy researchers. (*See* Zeilinger Dep. 148:25-49:6; *see also Understanding the Rates, Causes, and Costs of Churning in the Supplemental Nutrition Assistance Program (SNAP)*, FOOD AND NUTRITION SVC. (Sept. 2014) at 40 (Table 3, col. "Stayers") (in Fiscal Year 2011, only 32 to 41%

---

Initial applications untimeliness = (Boxes 3D + 3E + 3F + 3G) / Box 3A
Expedited applications untimeliness = (Boxes 6D + 6E + 6F + 6G) / Box 6A
(*Compare* ECF No. 24-2, at 17-18 (pages 10-11 of the memorandum) *with* ECF 24-10 (Mezey Decl., Ex. F).)
Using the same calculation method (timeliness and untimeliness rates should add up to 100%), the timeliness rate calculated in the following paragraphs are calculated as follows:
Initial applications timeliness = 1 − [(Boxes 3D + 3E + 3F + 3G) / Box 3A]
Expedited applications timeliness = 1- [(Boxes 6D + 6E + 6F + 6G) / Box 6A]

of SNAP recipients in certain states received SNAP for the full year by recertifying, when required), *available at* https://www.urban.org/sites/default/files/publication/33566/413257-Understanding-the-Rates-Causes-and-Costs-of-Churning-in-the-Supplemental-Nutrition-Assistance-Program-SNAP-.PDF (last accessed Feb. 20, 2018).) For example, people who do not recertify include those who may have become ineligible or who failed to recertify timely and had to reapply for SNAP benefits. (*See, e.g.,* ECF No. 31-1 at ¶ 168 (Declarant Guevara's benefits terminated after "[h]er recertification revealed that her income exceeds the eligibility criteria for SNAP").)

14. In addition, the initial application and recertification numbers on the FNS-366B form do not provide the most complete picture of a state's timeliness efforts and rates because FNS has instructed that "[a]ll approved applications that are overdue are counted in columns (d) - (g) even if the reason the case was overdue is because of a client caused error." (FNS Guidance, *Clarifications for Reporting on the Certification Section of the FNS-366B*, Jan. 11, 2017, at 3-4, available at https://fns-prod.azureedge.net/sites/default/files/snap/366B-Certifications-Question-and-Answer.pdf.) The same instructions apply to recertifications. *Id.* at 3 ("Recertification applications are considered overdue if a decision to approve the case is made after the date of the household's normal issuance date, regardless if the reason for the delay is for a client or State agency caused error."). Recertifications are frequently overdue because clients do not take timely action to recertify.

15. Despite these differences, plaintiffs conflate initial applications with recertifications. (ECF No. 45 at 3-4.) For example, plaintiffs contend that, for Quarter

5

4 of Fiscal Year 2017, "[t]aking both initial and recertification applications together, over one-third (34%) of approved applications were overdue." (*Id.*) But, as stated above, taking only initial applications for Quarter 4, 95.08% were timely processed and 95.00% of expedited applications were timely processed.

16. Plaintiffs state that the District has "untimely application processing [that] is the worst in the country." (ECF No. 45 at 3.) As shown in plaintiffs' underlying support (ECF No. 45-29), it is based on stale data from October 2016 through March 2017, the first six months of the DCAS Phase II implementation.

### Individual Plaintiffs and Other Declarants

17. DHS receives and processes about 3,000 initial applications and about 5,000 – 6,000 recertifications every month.

18. Regarding the individual plaintiffs and other beneficiaries who submitted declarations in support of Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction, ESA's records provide the following information.

*Plaintiff James Stanley*

19. ESA's records show that:

   a. Plaintiff James Stanley failed to submit a recertification application before the end of his certification period. This may have occurred because of a vendor's error, which failed to print and send recertification notices at the end of June 2017.

   b. DHS learned of this error in September 2017 and provided all

individuals whose SNAP benefits terminated on August 31, 2017—based on the failure to submit a recertification—an opportunity to recertify until September 30, 2017. DHS also conducted robocalls to advise beneficiaries to recertify and mailed reminders informing beneficiaries that a submitted application by September 30, 2017 containing at least their name, address, and signature would be treated as a recertification. Any beneficiary who recertified during the grace period received retroactive payment.

c. There is no record that Mr. Stanley submitted a recertification application prior to September 30, 2017, and he was required to reapply for SNAP benefits.

d. Mr. Stanley reapplied on November 2, 2017. Legal Aid submitted Mr. Stanley's SNAP application by email, a method not provided in the SNAP application form instructions that are well-known to Legal Aid.

e. A DHS Call Center employee contacted Mr. Stanley to conduct his SNAP interview the same day, November 2, 2017.

f. The caseworker requested additional information from Mr. Stanley regarding his income in the thirty days prior to the interview, because Mr. Stanley submitted a statement that he occasionally made income from home improvement jobs. Legal Aid provided the additional information by email on November 9, 2017.

g. Legal Aid contacted the Division of Program Operations (DPO) deputy

Exhibit A

      email box on December 5, 2017 to state there appeared to be a problem with the application processing.

   h. In response, DHS acted immediately and processed and approved the case with retroactive benefits to the application date, November 2, 2017. The prorated amount and full SNAP benefits were issued to Mr. Stanley's Electronic Benefit Transfer (EBT) Card on December 5, 2017, and a SNAP Approval Notice was issued the following day.

*Plaintiff Roderick Gaines*

20. ESA's records show that:

   a. Plaintiff Roderick Gaines failed to submit a recertification application before the end of his certification period. This, too, may have occurred because of the vendor's error described above.

   b. DHS provided all affected beneficiaries an opportunity to recertify until September 30, 2017.

   c. Mr. Gaines received both a reminder notice and bi-weekly robocalls (ECF No. 27-4 at ¶ 5) but did not recertify. As a result, Mr. Gaines had to reapply for SNAP benefits because he did not submit a recertification application prior to September 30, 2017.

   d. Through Legal Aid, Mr. Gaines submitted a new SNAP application by email on November 22, 2017.

   e. In the expedited processing section of the application, Mr. Gaines did not answer all questions, but stated that his total income for the month

would be $0.

    f. An attachment to the application noted that Mr. Gaines was "currently unemployed and looking for work," and provided additional statements regarding financial obligations and assistance. However, Mr. Gaines did not attach copies of verification documents required for DHS to process the application.

    g. DHS contacted Mr. Gaines and requested the verification documents, including identification and confirmation that he is responsible for his own meals, as required by SNAP regulations.

    h. Upon receipt of the requested information, DHS processed the application, and benefits were loaded on Mr. Gaines' EBT Card by January 9, 2018, including a retroactive payment to the application date.

*Declarant Nelson Bostic*

21. ESA's records show that:

    a. Declarant Nelson Bostic was sent a SNAP Notice of Expiration (NOE) on March 29, 2017, informing him that his certification period would end on May 31, 2017, and that he must complete a recertification application before the end of his certification period.

    b. Mr. Bostic did not recertify before May 31, 2017, or during the thirty-day grace period following the expiration of his certification period.

    c. Mr. Bostic states that he was unable to reach anyone by telephone at

the Fort Davis Service Center during the month of June 2017 to inquire about his SNAP benefits (ECF No. 45-32 ¶ 5), but that is highly unlikely because the main telephone number for the Fort Davis Service Center routes to the DHS Call Center, which is staffed during business hours and allows customers to speak with an available representative.

d. Legal Aid contacted the DPO deputy email on October 19, 2017, to inquire regarding Mr. Bostic's SNAP termination in May 2017.

e. The DPO Deputy email team researched Mr. Bostic's case upon receiving Legal Aid's inquiry and responded on October 27, 2017, providing information on why his SNAP benefits had expired, along with instructions on how Mr. Bostic could reapply.

f. Legal Aid submitted Mr. Bostic's new SNAP application by email on November 16, 2017.

g. On December 18, 2017, Legal Aid contacted the DPO Deputy email team to state that there appeared to be a problem with the application processing. Mr. Bostic's application was promptly processed and approved and a retroactive payment was issued to the application date, by January 4, 2018.

h. Legal Aid was once again reminded that SNAP applications should be submitted in accordance with the application form instructions, and not by email.

<u>Declarant Bruce Meraviglia</u>

22. ESA's records show that:

 a. Declarant Bruce Meraviglia was sent an NOE on July 31, 2017, informing him that this certification period would end on September 30, 2017 and that his SNAP benefits would terminate by September 30, 2017, unless he recertified by that date.

 b. DHS also sent Mr. Meraviglia a separate notice on September 30, 2017, informing him that his SNAP benefits terminated.

 c. Mr. Meraviglia did not recertify before September 30, 2017, but he visited a Service Center within the thirty-day grace period and submitted an application on October 13, 2017.

 d. DHS requested verification documents from Mr. Meraviglia during his visit on October 13, 2017, and the information was provided on October 19, 2017.

 e. SNAP benefits for the month of November 2017 were available on Mr. Meraviglia's EBT Card as of November 6, 2017, and the prorated SNAP benefits for the month of October 2017 were available by November 15, 2017.

<u>Declarant Lisa Smith</u>

23. ESA's records show that:

 a. Declarant Lisa Smith was receiving benefits and sought to add SNAP benefits for a newborn daughter.

    b. DHS encountered technical difficulties adding the daughter to Ms. Smith's SNAP case after she submitted a new application for herself and her daughter on October 23, 2017.

    c. Ms. Smith provided necessary verification documents in November 2017 and while attempting to update Ms. Smith's case, DHS staff initiated several "tickets" to the information technology (IT) team requesting technical assistance.

    d. IT resolved the issue on December 6, 2017 and DHS completed processing Ms. Smith's case the same day.

    e. DHS provided Ms. Smith with retroactive SNAP benefits and approved her for ongoing benefits as of December 8, 2017.

*Declarant Diane Yancey*

24. ESA's records show that:

    a. Declarant Diane Yancey was sent an NOE on July 31, 2017, informing her that her certification period would end on September 30, 2017.

    b. Ms. Yancey did not recertify her SNAP benefits before September 30, 2017 or during the thirty-day grace period following the expiration of her certification period.

    c. Ms. Yancey contacted the DHS Call Center on October 31, 2017 and was given information about her benefit status and steps required to regain eligibility for SNAP.

    d. Legal Aid submitted Ms. Yancey's SNAP application by email on

   October 31, 2017.

   e. On October 31, 2017, DHS processed and approved Ms. Yancey's SNAP application and granted her benefits that day for October 31, 2017, and November.

*Declarant Joseph Carver*

25. ESA's records show that:

   a. Declarant Joseph Carver was sent an NOE on September 30, 2017, informing him that his certification period would end on November 30, 2017.

   b. Mr. Carver did not recertify his SNAP benefits before November 30, 2017 or during the thirty-day grace period following the expiration of his certification period.

   c. DHS sent Mr. Carver a SNAP termination notice dated November 29, 2017, indicating that his SNAP benefits would terminate.

   d. Mr. Carver states that he attempted to reach the DHS Call Center after receiving his termination notice and visited the H Street Service Center in December 2017 and January 2018. (ECF No. 45-50 ¶7.) However, the DHS Call Center remained in operation during this period, and there is no indication in DHS's case records that Mr. Carver visited the H Street Service Center.

   e. When Mr. Carver spoke with a Call Center representative in mid-January 2018, he was given information about his benefit status and

steps required to regain eligibility for SNAP.

    f. Based on the information he provided regarding his limited mobility, DHS advised that, as a special accommodation, he could submit his SNAP application by email. Mr. Carver's SNAP application was submitted after business hours on January 22, 2018, and was approved by DHS on February 16, 2018.

### Declarant Diamond Moore

26. ESA's records show that:

    a. Declarant Diamond Moore was sent an NOE on October 30, 2017, informing her that her certification period would end on December 31, 2017.

    b. DHS also sent Ms. Moore a SNAP termination notice on December 15, 2017.

    c. Ms. Moore did not recertify her SNAP benefits before December 31, 2017, and she was informed by a caseworker on January 9, 2018 that she needed to reapply.

    d. A DHS Call Center representative confirmed this information on January 18, 2018, and Ms. Moore's SNAP application was processed and prorated benefits were issued to her EBT Card that same day.

    e. DHS informed Legal Aid on February 8, 2018 that Ms. Moore's benefit amount for the current certification period had changed because of her increased income.

Exhibit A

*Declarant Christina Duncan*

27. ESA's records show that:

   a. Declarant Christina Duncan was sent an NOE on April 29, 2017, informing her that her certification period would end on June 30, 2017.

   b. Ms. Duncan did not recertify her SNAP benefits before June 30, 2017 or during the thirty-day grace period following the expiration of her certification period.

   c. Ms. Duncan discovered that she was not receiving benefits in July 2017, ECF No. 45-53 ¶ 4, and was informed by a DHS automated message months later that her SNAP benefits had terminated based on the failure to recertify.

   d. Ms. Duncan again was informed of this fact in November 2017 by a DHS caseworker at a Service Center.

   e. Ms. Duncan states that she obtained an application for SNAP on November 17, 2017, but no application was submitted to DHS until January 25, 2018.

   f. Legal Aid submitted Ms. Duncan's application by email. DHS processed and timely approved Ms. Duncan's SNAP application, issued an approval notice, and her SNAP benefits were available on her EBT Card by February 6, 2018.

Exhibit A

I declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that the foregoing is true and correct, based upon my personal knowledge and information provided to me in the course of my official duties.

_____  
LAURA GREEN ZEILINGER  
Director  
District of Columbia Department of Human Services

2/21/18  
DATED