# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                |                              |
|--------------------------------|------------------------------|
| **SHONICE G. GARNETT** *et al.*,   |                              |
|     Plaintiffs, |                          |
| v.                             | Case No. 17-cv-1757 (CRC)    |
| **LAURA ZEILINGER**,           |                              |
|     Defendant. |                          |

## MEMORANDUM OPINION AND ORDER

Plaintiffs—recipients of Supplemental Nutrition Assistance Program benefits in the District of Columbia—filed this putative class action against the director of the District's benefit program. They allege several violations of the federal requirements for administration of the program. Plaintiffs now seek to certify two classes of District benefits recipients. Finding that the resolution of their motion is governed by the D.C. Circuit's recent decision in D.L. v. District of Columbia ("D.L. II"), 860 F.3d 713 (D.C. Cir. 2017), the Court will grant their motion, though it will certify three classes instead of two.

**I.   Factual Background**

   A.  The Supplemental Nutrition Assistance Program ("SNAP")

Congress originally enacted the Supplemental Nutrition Assistance Program ("SNAP") in 1964, seeking to combat hunger and malnutrition by assisting low-income households in purchasing food. See Food Stamp Act of 1964, Pub. L. No. 88-525, 78 Stat. 703 (codified at 7 U.S.C. §§ 2021 *et seq.*).[1] A household is typically eligible for SNAP benefits if its net income is

---

[1] The program began as the "Food Stamp Program" and the name was changed to SNAP in 2008. See Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-234, § 4001, 122 Stat. 923, 1092.

below the federal poverty line and its resources generally do not exceed $2,000.  7 U.S.C. § 2014(c), (g).  Within the federal government, the Secretary of Agriculture has delegated most of the administration of SNAP to the federal Food and Nutrition Service ("FNS"), an agency within the Department of Agriculture.  7 C.F.R. § 271.3.

Responsibility for administering SNAP is shared between the federal government and the States.  The federal government provides the funding for benefits and covers 50 percent of administrative costs.  7 U.S.C. §§ 2013(a), 2025.  States can elect to participate in the program and, if they do, are responsible for certifying household eligibility, issuing benefits, and otherwise administering the program on the state level.  Id. §§ 2013(a), 2020(a)(1); 7 C.F.R. § 271.4.  If a State elects to participate, it must administer its SNAP program in accordance with the relevant statutes and the Secretary of Agriculture's regulations.  7 U.S.C. § 2020(e); 7 C.F.R. § 273.2.

Part of these requirements involve the procedure for processing applications for SNAP benefits.  For instance, States must allow a household to apply for SNAP benefits the same day that it contacts a SNAP program office in person during office hours.  7 U.S.C. § 2020(e)(2)(B)(iii). Once a State receives an application for benefits, it must "promptly" certify a household's eligibility.  Id. § 2020(e)(3).  This certification process must be completed and benefits provided no later than thirty days after the application's filing.  Id.  For certain households with extremely low income—less than $150 per month or liquid resources less than $100—the State must provide benefits no later than seven days after an application is filed.  Id. § 2020(e)(9)(A).  These are known as "expedited" applications.

Eligible households are certified for a specific period of time, known as the "certification period."  See id. § 2020(e)(4).  States are required to ensure that households receive a notice at

the start of the last month of their certification period, warning them of the expiration of the certification period and the need to recertify to continue receiving benefits. Id. For any household that submits a recertification application no later than fifteen days prior to the expiration of its certification period, the State must provide benefits—if the household remains eligible—without a break in provision. Id. If a State fails to process a completed application on time, the household is entitled to a written notice of this failure and information regarding appeal rights, including the right to a hearing. Id. § 2020(e)(10).

B. Procedural history

In August 2017, a group of D.C. residents filed suit against Laura Zeilinger, the Director of the District's Department of Human Services—which oversees the District's SNAP program—alleging that the District's administration of SNAP was deficient in several respects.[2] Specifically, Plaintiffs alleged that the District was: (1) failing to process initial applications for benefits and provide benefits to eligible households within the applicable statutory time limit, in violation of the SNAP Act, Am. Compl. ¶ 171; (2) failing to complete the SNAP recertification application process so as to allow eligible households to receive benefits without a break in service, also in violation of the SNAP Act, id. ¶ 172; and (3) failing to provide notice and an opportunity for a hearing for SNAP applicants whose applications were not processed on time, in violation of the SNAP Act and the Due Process Clause of the Constitution, id. ¶ 173. They sought declaratory and injunctive relief to correct these violations.

Simultaneously with their complaint, Plaintiffs filed a motion for class certification. Plaintiffs sought to certify two classes: (1) a class of residents whose SNAP benefit applications

---

[2] Although Zeilinger is the sole defendant in this case, the Court will use "the District" to refer to the defendant here.

3

were not processed in accordance with the timelines mandated by statute and (2) a class of residents who did not receive their recertification notices as required by statute and had their benefits terminated as a consequence. Pls.' Mem. Law. Supp. Mot. Class Certification ("Class Cert. Mot.") at 4. Plaintiffs later filed a motion for a preliminary injunction, and the Court set a parallel briefing schedule for both that motion and the motion for class certification. Following a period of limited discovery related to issues raised in the motion for a preliminary injunction, the parties completed briefing on both motions. The Court held a hearing on both motions on March 19, 2018. It will now resolve Plaintiffs' pending motion for class certification.[3]

## II. Legal Standard

Federal Rule of Civil Procedure 23(a) establishes four requirements for certification of a class: (1) numerosity, that "the class is so numerous that joinder of all members is impracticable"; (2) commonality, that "there are questions of law or fact common to the class"; (3) typicality, that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequacy, that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to meeting these four requirements under Rule 23(a), a putative class must also meet one of the requirements of Rule 23(b). Here, Plaintiffs allege that they meet the requirements of Rule 23(b)(2), that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The party seeking certification bears the burden of persuasion, and must show that the

---

[3] Plaintiffs' motion for a preliminary injunction will be addressed in a forthcoming ruling.

putative classes meet the requirements of Rule 23 by a preponderance of the evidence.  See, e.g., Hoyte v. District of Columbia, 2017 WL 3208456, at * 5 (D.D.C. July 27, 2017).

**III. Analysis**

The District challenges class certification under both Rule 23(a) and Rule 23(b)(2). Before confronting these challenges, the Court will briefly respond to two threshold arguments the District raises.

    A.  The District's threshold arguments

First, the District contends that class certification is not appropriate because Plaintiffs cannot meet the requirements for a preliminary injunction.  Def.'s Opp'n Pls.' Mot. Class Certification ("Class Cert. Opp'n") at 7–8; Def.'s Surreply Supp. Opp'n Pls.' Mot. Class Certification ("Class Cert. Surreply") at 2–3.  The District cites a single case for this proposition: Hardy v. Fisher, 701 F. Supp. 2d 614 (S.D.N.Y. 2010).  But that case in inapposite.  In Hardy, the district court ruled that the putative class was not entitled to preliminary injunctive relief because the plaintiffs raised claims that could not be brought under 42 U.S.C. § 1983.  See id. at 622–23.  The court stated that the "denial of the motion for injunctive relief moot[ed] the motion for certification of an injunctive class." Id. at 617 n.3.  But here the District does not argue that Plaintiffs cannot bring injunctive relief claims under the statute at issue; rather, their arguments against the motion for preliminary injunction focus on why Plaintiffs fail to meet the specific requirements for preliminary injunctive relief.  See Def.'s Opp'n Pls.' Mot. Prelim. Inj.; Def.'s Surreply Supp. Opp'n Pls.' Mot. Prelim. Inj.  In any case, even if the Court were to follow the approach taken by the court in Hardy, it would be premature to deny class certification on this ground now because the Court has not yet ruled on the preliminary injunction motion.  If the

5

Court were to conclude that Plaintiffs could not obtain any injunctive relief under the statute, it could decertify the class at that juncture.

Second, the District argues that class certification is unnecessary because "the 'injunctive relief sought by the named plaintiffs would benefit all proposed class members.'" Class Cert Surreply at 3 (quoting Sargent v. Black, 576 F. Supp. 882, 888 (D.D.C. 1983)); see also Class Cert. Opp'n at 7. This is a somewhat odd position for the District to take: it later argues, as the Court will discuss, that a single injunction *would not* remedy the harms for all class members. See Class Cert Opp'n at 18.

This argument is unpersuasive in any event. The Court has an obligation to ensure that any injunction it issues is "narrowly tailored to remedy the specific harm shown." Nev. Dep't of Health & Human Servs. v. U.S. Dep't of Health & Human Servs., 435 F.3d 326, 330 (D.C. Cir. 2006). To the extent that the named plaintiffs show that *they* are individually harmed, the Court could issue an injunction narrowly tailored to *them* individually—*i.e.*, directing the District to process their specific applications or issue their specific recertification notices on time—which would provide no relief to the absent class members. Thus, contrary to the District's argument, any injunctive relief issued to the named plaintiffs would not necessarily or automatically benefit the absent class members.[4] The Court will therefore turn to the requirements for certification under Rule 23.

---

[4] In addition, it is not clear that the Court can or should issue class-wide injunctive relief without a certified class. See, e.g., Brown v. Trustees of Boston Univ., 891 F.2d 337, 361 (1st Cir. 1989) ("Ordinarily, classwide relief, such as the injunction here which prohibits sex discrimination against the class of Boston University faculty, is appropriate only where there is a properly certified class."); Zepeda v. U.S. Immigration & Naturalization Serv., 753 F.2d 719, 728 n.1 (9th Cir. 1983) ("Without a properly certified class, a court cannot grant relief on a class-wide basis."); Davis v. Romney, 490 F.2d 1360, 1366 (3d Cir. 1974) ("Relief cannot be granted to a class before an order has been entered determining that class treatment is proper."); cf.

B.  Requirements of Rule 23(a)

The District argues that Plaintiffs fail to show they meet the four requirements for class certification in Rule 23(a).  While the District challenges all four requirements, it focuses on commonality and typicality.  The Court ultimately concludes that this case is analogous to the D.C. Circuit's recent decision in D.L. II and, as there, Plaintiffs have demonstrated that the requirements of class certification in Rule 23(a) are met.

*1. Numerosity*

The first requirement that must be met for class certification is numerosity: that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  To establish numerosity, a party need not provide a precise number of class members as long as there is a reasonable basis to estimate it.  See, e.g., Howard v. Liquidity Services Inc., 322 F.R.D. 103, 117 (D.D.C. 2017).  Courts have typically considered a class of at least forty members to presumptively meet the requirement of numerosity.  See, e.g., Barnes v. District of Columbia, 242 F.R.D. 113, 121 (D.D.C. 2007).

With respect to Class One—District residents whose applications for SNAP benefits were and will not be processed in a timely manner—numerosity is easily satisfied.  Plaintiffs point to the quarterly compliance reports that the District files with the Food and Nutrition Service, known as "FNS-366B reports."  According to the most recent such report—which covers the first quarter of the 2018 fiscal year, October to December 2017—the District approved 4,328 applications after the applicable time limit had passed, 367 initial applications and 3,961

---

Dorfmann v. Boozer, 414 F.2d 1168, 1171 n.8 (D.C. Cir. 1969) ("The preliminary injunction, especially one which worked a transfer of money belonging to persons who were not within the jurisdiction of the court, should not have been issued before the action was certified as a class action.").

recertification applications. Class Cert. Surreply Ex. B. Most, if not all, of these households would be members of the proposed class since their applications were not processed in accordance with the statutory time limits. Thus, even taking just the applications processed after the statutory time limit in one quarter of one fiscal year, Plaintiffs provide a reason to estimate the proposed class number to be in the hundreds, if not thousands. This presumptively satisfies numerosity, and the District offers no rebuttal to that presumption.

Turning to Class Two—District residents whose benefits were interrupted because they failed to receive a timely recertification notice—the Court concludes that numerosity is also met. Plaintiffs have similarly provided a basis to conclude that this class number is in the hundreds, if not thousands, as well. For instance, Plaintiffs point out that a vendor's error in June 2017 resulted in 4,500 households failing to receive recertification notices and a significant portion of these households losing benefits. Pls.' Reply Ex. 2 (Deposition of Laura Zeilinger), at 130:11. And according to the FNS-366B reports, the District processes around 9,000 to 10,000 recertification applications every quarter. See Class Cert. Surreply Ex. B. (FNS-366B report for first quarter, fiscal year 2018); Decl. of Jennifer Mezey Supp. Pls.' Reply Def.'s Opp'n Pls.' Mot. Prelim. Inj. Ex. P, at 2–4 (FNS-366B reports for second, third, and fourth quarter, fiscal year 2017). Even if just 1% of all the households up for recertification fail to receive notices and lose benefits as a result, the class numbers over 100. This, again, presumptively satisfies numerosity and the District has not rebutted that presumption.

2. *Commonality*

Second, the classes must meet the requirement of commonality: that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that the plaintiff class has "suffered the same injury." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350

8

(2011). The Supreme Court has explained that this does not mean "merely that they have all suffered a violation of the same provision of law." Id. Rather, the putative class's "claims must depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the clams in one stroke." Id.

The District argues that Plaintiffs' class certification motion founders at this requirement because "the alleged violations of the SNAP Act and due process are too generalized to demonstrate commonality of claim." Class Cert. Opp'n at 10. There are myriad reasons why an application was not timely processed, the District points out, so "the answer to the question of whether a SNAP Act or due process violation exists will require examination of the facts of each class member, rather than being common to the class." Id. at 11. More specifically, the District contends that the questions presented here will devolve into a "case-by-case examination" to determine whether in any individual class member's case the District violated the SNAP Act timelines and a further case-by-case analysis "to determine what fault, if any, may be attributed to the District" for any such failure. Class Cert. Surreply at 6.

The District's argument has a key underlying premise: that the determination of *whether* a statutory violation occurred depends upon *why* a failure to meet the statutory time limit happened. In other words, the District assumes that even if a particular SNAP application is untimely processed or a particular recertification notice is not sent, that may or may not constitute a statutory violation depending on *why* it happened.

But that is not how the statutory scheme works. Determining if there is a statutory violation does not hinge on the reason for any particular failure to adhere to the statutory timelines. The statute speaks in terms of absolute deadlines without any caveats or limitations

9

when it comes to meeting them. For instance, it provides that "the State agency [administering SNAP] *shall* . . . promptly determine the eligibility of each applicant household . . . so as to complete the certification of and provide an allotment retroactive to the period of application to any eligible household *not later than thirty days* following its filing of an application." 7 U.S.C. § 2020(e)(3) (emphasis added).[5] For expedited benefits, the "State agency *shall* provide benefits *no later than 7 days* after the date of application" to households eligible for such benefits. Id. § 2020(e)(9)(A) (emphasis added). And for recertification, it provides that "the State agency *shall* ensure that each participating household receive a notice of expiration of its certification *prior to the start of the last month* of its certification period advising the household that it must submit a new application." Id. § 2020(e)(4) (emphasis added). If the household files its application no later than fifteen days prior to the end of its current allotment period, it "*shall*, if found to be still eligible, receive its allotment *no later than one month* after receipt of the last allotment issued to it pursuant to its prior certification." Id. (emphasis added).[6]

This statutory text "impose[s] binding obligations on the States" and "require[s] the allotment of food stamps within a definite number of days." Briggs v. Bremby, 792 F.3d 239, 242 (2d Cir. 2015). It provides no basis to conclude that the reason for a State's failure to meet

---

[5] According to the Department of Agriculture's regulations, "[a]n application is filed the day the appropriate food stamp office receives an application containing the applicant's name and address, which is signed by either a responsible member of the household or the household's authorized representative." 7 C.F.R. § 273.2(g)(1).

[6] The regulations promulgated by the Department of Agriculture echo this absolute timeliness requirement. See 7 C.F.R. § 273.2(g)(1) (The "State agency *shall* provide eligible households that complete the initial application process an opportunity to participate . . . as soon as possible, but *no later than 30 calendar days* following the date the application was filed." (emphasis added)); id. § 273.2(i)(3)(i) ("[T]he State agency *shall* post benefits to the household's EBT card and make them available to the household *not later than the seventh calendar day* following the date an application was filed." (emphasis added)).

10

those deadlines matters. The statute does not say that the State must determine eligibility within thirty days *unless* or *if* some event occurs; it states that the State *shall* determine eligibility within thirty days without conditions or limitations.[7] So, too, with the requirements for expedited benefits and recertification notices. The statute "literally requires strict compliance with its provisions." Haskins v. Stanton, 794 F.2d 1273, 1277 (7th Cir. 1986); see also Robertson v. Jackson, 766 F. Supp. 470, 476 (E.D. Va. 1991) ("The law requires *full* compliance absent what is hoped will be minimum human error."), aff'd, 972 F.2d 529 (4th Cir. 1992).[8]

In light of the statutory and regulatory text, the reason why a deadline was missed is irrelevant. Rather, the key question for liability under the statute is *whether* the District is systemically processing applications and sending recertification notices within the statutory deadlines, not *why* it has failed to do so in any particular case or on a systemic level. This question can be answered on a class-wide basis.

Given the SNAP timelines' absolute operation, this case is fairly controlled by the D.C. Circuit's decision in D.L. II. In D.L II., the trial court certified a class with four subclasses in a

---

[7] This strict compliance requirement is not undermined by the fact that regulations from the Department of Agriculture discuss how to determine who is at fault for any delay in the processing of an application. See 7 C.F.R. § 273.2(h). As the Second Circuit has noted, "[r]egulations which anticipate that a State agency will sometimes fail to meet statutory deadlines . . . cannot be read to repeal those deadlines." Briggs v. Bremby, 792 F.3d 239, 246 (2d Cir. 2015). Such regulations "supplement 7 U.S.C. § 2020(e)(3) and (9); they do not override them." Id. If they did, "they would likely be *ultra vires*, for no agency regulation can overturn a clear statutory mandate." Id.

[8] The Court is, of course, cognizant of the fact that 100% perfect compliance may not be possible and does not intend this discussion to suggest a position on the underlying merits of this case or on whether injunctive relief is appropriately granted for any rate of compliance short of 100%. Cf. Withrow v. Concannon, 942 F.2d 1385, 1388 (9th Cir. 1991) ("There is, however, doubtless a point at which any failure of total compliance is truly *de minimis*, where the state has come to comply 'as strictly as is humanly possible,' and it is within the discretion of the district court to deny injunctive relief.").

11

case alleging the District of Columbia had failed to adhere to the "Child Find" requirements of the Individuals with Disabilities Education Act ("IDEA"), which in part obligate states to locate and provide special education services to children and preschoolers with disabilities within certain time limits. 860 F.3d at 717. The D.C. Circuit affirmed the class certification on appeal. Id. at 724. The District there similarly argued that "'there [were] many different reasons' it might have denied a particular child" his or her rights under the IDEA, such as a failure of outreach, or insufficient staff, or "documentation errors." Id. at 725 (citations omitted). The D.C. Circuit held that this variation in factual patterns did not undermine commonality, in contrast to the Supreme Court's decision in Wal-Mart, which involved liability under Title VII:

> IDEA requires the District to find and serve all children with disabilities as a condition of its funding. Unlike Title VII liability, IDEA liability does not depend on the reason for a defendant's failure and plaintiffs need not show why their rights were denied to establish that they were. They need only show that the District in fact failed to identify them, failed to provide them with timely eligibility determinations, or failed to ensure a smooth transition to preschool.

Id. at 725. Because each subclass alleged a discrete, common harm susceptible to common proof—such as whether the District was systemically failing to determine whether children were eligible for special education within 120 days of being referred for a disability evaluation—the court held that the district court did not err in finding the requirement for commonality met.

As in D.L. II, liability here "does not depend on the reason for a defendant's failure and plaintiffs need not show why their rights were denied to establish that they were." Id. Instead, Plaintiffs need only prove that the District is systemically failing to process applications or to issue recertification notices on time. The question the Court confronts is simply *whether* applications are being timely processed or certification notices are being timely sent, not *why* they are or are not. This question, as in D.L. II, is one that can be resolved with common proof—for instance, statistics showing that a certain percentage of applications are not processed

on time, cf. id. at 724–25 (discussing plaintiffs' statistical evidence showing a systemic failure to comply with specific IDEA requirements). Consequently, any variations in the "why" do not negate the commonality of the "whether." Plaintiffs have therefore demonstrated that their proposed classes meet the requirement of commonality.

### 3. Typicality

Next, the classes must meet the requirement of typicality: that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality seeks to assess whether the class representatives "have suffered injuries in the same general fashion as absent class members." Hoyte, 2017 WL 3208456, at *4 (citation omitted). The facts and claims of each named representative need not be identical to those of the absent class members; rather "typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." Id. (citation omitted). This is because typicality simply requires "sufficient factual and legal similarity between the class representative's claims and those of the class to ensure that the representative's interests are in fact aligned with those of the absent class members." In re Navy Chaplaincy, 306 F.R.D. 33, 53 (D.D.C. 2014) (quoting 1 William B. Rubenstein, Newberg on Class Actions § 3:31 (5th ed. 2013)).

The District's argument as to why typicality is not met is a variation on its argument on commonality. It contends that "factual differences in the type of harm suffered by the putative class members" render the named plaintiffs' claims "atypical of the putative classes." Class Cert. Surreply at 8. In sum, the District maintains that the class cannot be certified "because any purported delay in the processing of applications and recertifications, or the failure to provide adequate notice, requires an individualized case-by-case inquiry." Class Cert. Opp'n at 14.

This argument fails for the same reasons it failed as to commonality. See D.L. II, 860 F.3d at 725 (rejecting a similar argument on commonality). For one, the named plaintiffs all allege the same injuries as the absent class members. The proposed representatives of Class One—Shonice G. Garnett, Richard Messick, Jr., Linda Murph, and Kathryn Harris—all attest that the District failed to process their initial or recertification applications for SNAP benefits within the statutory timelines. Class Cert. Mot. Ex. 2, ¶¶ 7, 11 (Declaration of Shonice G. Garnett); id. Ex. 3, ¶¶ 7–8 (Declaration of Richard Messick, Jr.); id. Ex. 4, ¶¶ 4, 6 (Declaration of Linda Murph); Declaration of Kathryn Harris [ECF No. 27-6] ¶ 5. This is precisely the harm alleged to have been suffered by the other members of Class One. See Class Cert. Mot. at 4. The same is true for the proposed representatives of Class Two, James Stanley and Roderick Gaines. Both Mr. Stanley and Mr. Gaines attest that their SNAP benefits were cut off without notice in September 2017, that neither received a recertification notice, and that this failure to recertify was likely the reason for the termination of benefits. Declaration of James Stanley [ECF No. 27-2] ¶¶ 3–5; Declaration of Roderick Gaines [ECF No. 27-4] ¶¶ 3, 5. This is the exact harm alleged by all of the members of Class Two. See Class Cert. Mot. at 4.

The District argues that this is nonetheless insufficient because the fact that the named plaintiffs "suffered 'the same harm'" does not mean that "an alleged District policy or practice injured them and the putative class in the same manner." Class Cert. Opp'n at 13–14. But the District once again assumes that any differences in facts here lead to differences in legal theories or a different manner of injury—which, as discussed above, is not so. Rather, Plaintiffs present a single legal injury, a single legal theory, and a single means of injury: the District has systemically failed to process applications or issue recertification notices on time and

consequently violated Plaintiffs' statutory rights under the SNAP Act. As in D.L. II, any factual variations does not undermine typicality. See 860 F.3d at 725–26.

    *4. Adequacy*

  The final of the four preliminary requirements is adequacy: that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The D.C. Circuit recognizes two criteria for determining adequacy: (1) that the named plaintiffs "must not have antagonistic or conflicting interests with the unnamed members of the class" and (2) that the named representatives "must appear able to vigorously prosecute the interests of the class through qualified counsel." Hoyte, 2017 WL 3208456, at *4 (quoting Twelve John Does v. District of Columbia, 117 F.3d 571, 575 (D.C. Cir. 1997)).

  The District argues that the second requirement is not met. While the District takes no position on adequacy of class counsel, Class Cert. Opp'n at 17; Class Cert. Surreply at 9 n.2, it argues that the named plaintiffs do not have sufficient knowledge and information to adequately represent the absent class members. But adequacy "does not require either that the proposed class representatives have legal knowledge or a complete understanding of the representative's role in class litigation." Thorpe v. District of Columbia, 303 F.R.D. 120, 151 (D.D.C. 2014); see also 1 William B. Rubenstein, Newberg on Class Actions § 3:67 (5th ed. 2013) ("Adequacy is satisfied . . . if the plaintiff has some rudimentary knowledge of her role as a class representative and is committed to serving in that role in litigation."). Instead, courts typically decline certification only in "flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." Howard v. Liquidity Services Inc., 322 F.R.D. 103, 135 (D.D.C. 2017) (citation omitted). Here, the named

15

plaintiffs have all attested that their lawyers informed them of the responsibilities of a class representative and that they are willing to protect the class's interests, and their declarations demonstrate an awareness of the facts of this case.[9] That is sufficient to make them adequate representatives.

### C. Requirements of Rule 23(b)(2)

In addition to the four preliminary requirements in Federal Rule of Civil Procedure 23(a), a proposed class must meet one of the three requirements of Rule 23(b). Plaintiffs contend they meet the requirements of Rule 23(b)(2), namely that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." In other words, Rule 23(b)(2) requires that "a single injunction or declaratory judgment would provide relief to each member of the class." Wal-Mart, 564 U.S. at 360.

The District's argument to the contrary is a continued variation on the theme of its arguments on commonality and typicality: factual differences mean that plaintiffs "have not established the 'similar grounds' required to justify certification . . . nor is there any 'single injunction or declaratory judgment' that could provide relief to the class as a whole." Class Cert. Opp'n at 18.

The Court disagrees. Plaintiffs here present a single practice causing each class's injury—namely, the District's systemic failure to meet the timelines in the SNAP Act for processing applications and issuing recertification notices. How or why the District may be

---

[9] See Class Cert. Mot. Ex. 2, ¶¶ 14–15 (Declaration of Shonice G. Garnett); id. Ex. 3, ¶¶ 18–19 (Declaration of Richard Messick, Jr.); id. Ex. 4, ¶¶ 8–9 (Declaration of Linda Murph); Declaration of Kathryn Harris [ECF No. 27-6] ¶¶ 8–9; Declaration of James Stanley [ECF No. 27-2] ¶¶ 9–10; Declaration of Roderick Gaines [ECF No. 27-4] ¶¶ 10–11.

doing so is irrelevant; all that matters, as already explained, is whether the District is missing the deadlines. If it is, that injury can be remedied by a single injunction ordering the District to comply with the statutory timelines.

Once again, this case is more akin to D.L. II than the cases that the District relies on. The district court in D.L. II entered an order requiring, among other things, that the District attain a 95% compliance rate with statutory time limits for evaluating children for disability services and for providing transition services for children, along with annual improvement rates. D.L. II, 860 F.3d at 720. On appeal, the D.C. Circuit again rejected a similar argument from the District as here, noting that a single injunction was able to provide relief to each class member, particularly since the district court's order "d[id] just that." Id. at 726. Like the district court in D.L. II, this Court could enter an order requiring the District meet certain levels of compliance with the statutory timelines and requiring improvement. And as in D.L. II, this order would remedy Plaintiffs' injuries. Thus, the requirements of Rule 23(b)(2) are met here.

## IV. Conclusion

The District's primary argument against class certification—made with slight variations as to the requirements of commonality, typicality, and Rule 23(b)(2)—is that Plaintiffs' claims are too factually diverse and their legal theory too broadly defined to sustain a class action. But the statutory scheme provides the requisite level of specificity: it sets clear timelines for handling SNAP benefit applications and recertification notices and clearly mandates that States follow them. See 7 U.S.C. § 2020(e)(3), (9). And Plaintiffs present a single legal theory: the District has systemically failed to comply with the requirements under the statute for processing SNAP benefit applications and issuing recertification notices. Finally, the statute gives no indication that the reason why the District failed to process a particular application or issue a particular

17

recertification notice within the relevant timeframe has any bearing on whether it violated the statute. Consequently, as in the D.C. Circuit's decision in D.L. II, any factual variations are not fatal to class certification.

The Court's conclusion that the requirements for class certification are met here is further buttressed by the fact that other district courts have certified similar classes in SNAP benefit cases. See, e.g., Briggs v. Bremby, 2013 WL 1987237, at *6 (D. Conn. May 13, 2013) (certifying a class of all Connecticut residents whose applications for SNAP benefits were not timely processed); Reynolds v. Giuliani, 118 F. Supp. 2d 352, 392 (S.D.N.Y. 2000) (certifying a class of all New York residents that sought to apply for SNAP benefits in a case alleging, in part, a failure to adhere to the SNAP statutory time frames). This is not surprising: as the D.C. Circuit has stated, "Rule 23(b)(2) exists so that parties and courts, especially in civil rights cases like this, can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." D.L. II, 860 F.3d at 726; see also In re District of Columbia, 792 F.3d 96, 102 (D.C. Cir. 2015) ("Rule 23(b)(2) was intended for civil rights cases."). Accordingly, the Court concludes that Plaintiffs have demonstrated that their proposed classes meet the requirements for certification and will grant their motion.

However, the Court will certify three, rather than two, classes. Because the statutory scheme is slightly different with regards to the processing of recertification as opposed to initial applications, in an abundance of caution and to avoid any possible conflicts of interest the Court will subdivide the first proposed class into two classes: one of residents whose initial applications were not processed on time and one of residents whose recertification applications were not processed on time. The Court may, of course, revisit certification or class definitions as the litigation progresses.

* * *

For the foregoing reasons, it is hereby

**ORDERED** that [2] Plaintiffs' Motion for Class Certification is GRANTED. The Court will certify three classes with the following named representatives.

**Class 1:**

*Definition*: All District of Columbia residents since June 1, 2016: (1) who have applied, are applying, or will apply for SNAP benefits, through an initial application; and (2) who have had or will have the processing of such application delayed beyond the timeframes mandated by law.

*Class representatives*: Shonice G. Garnett, Richard Messick, Jr.

**Class 2:**

*Definition*: All District of Columbia residents since June 1, 2016: (1) who have applied, are applying, or will apply for SNAP benefits, through a recertification application; and (2) who have had or will have the processing of such application delayed beyond the timeframes mandated by law.

*Class representatives*: Kathryn Harris, Linda Murph

**Class 3:**

*Definition*: All District of Columbia SNAP recipients since June 1, 2016: (1) who have been or will be required to submit a recertification application to maintain SNAP benefits; (2) as to whom the Defendant has failed or will fail to issue notice of the need to recertify; and (3) who have been or will be terminated from participation in SNAP due to Defendant's failure to issue such notice.

*Class representatives:* James Stanley, Roderick Gaines

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: March 28, 2018