## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHONICE G. GARNETT, *et al.*, <br><br> *Plaintiffs*, <br> v. <br><br> LAURA ZEILINGER, <br><br> *Defendant*. | Civil Action No. 17-1757 (CRC) |

### DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

In response to the Court's April 10, 2018 Minute Order, defendant Laura Zeilinger submits a supplemental brief in support of defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction, regarding the issues discussed below.

### ARGUMENT

### I. The Current Status of the District's Corrective Action Plan.

On October 23, 2017, the U.S. Department of Agriculture, through its Food and Nutrition Service (FNS), requested that the District of Columbia (the District) Department of Human Services (DHS) submit a corrective action plan (CAP) regarding the District's Supplemental Nutrition Assistance Program (SNAP) application processing timeliness rates. Ex. 1, Laura Zeilinger Third Supp. Decl. (Apr. 17, 2018) ¶ 5. Before October 2017, DHS had never been required to submit a CAP for application processing timeliness. *Id.* ¶ 6.

On November 14, 2017, DHS requested and received from FNS an extension

of time, until December 15, 2017, to submit the CAP. *Id.* ¶ 7. On December 14, 2017, DHS submitted its application processing timeliness CAP. *Id.* ¶ 8. On January 30, 2018, FNS notified DHS that its CAP could not be approved because it did not contain sufficient detail. *Id.* ¶ 9. Ten days later, on February 9, 2018, DHS submitted a revised CAP. *Id.* ¶ 10. On March 8, 2018, FNS notified DHS that its revised CAP could not be approved because it did not contain sufficient detail; as a result, FNS conducted a training on March 14, 2018 to assist the District in creating a CAP that addresses FNS's concerns. *Id.* ¶¶ 11–12.

On March 28, 2018, DHS submitted a working draft CAP to FNS for an initial review. *Id.* ¶ 13. The next day, on March 29, 2018, FNS responded stating "this is what we're looking for" and "[w]e look forward to reviewing your APT CAP." *Id.* ¶ 14. DHS officially submitted its second revised CAP on April 11, 2018. *Id.* ¶ 15.

## II.    There Is No FNS Recertification Rate Independent of the APT Rate.

FNS does not measure recertification processing rates independent of the Application Processing Timeliness (APT) rate, and thus, there is no method by which to compare the recertification processing rates by state, nor is there a national average. *Id.* ¶ 16. However, recertification rates tend to be lower. *See* Zeilinger Decl. (Feb. 21, 2018) [48-1] at ¶ 13; *see also Understanding the Rates, Causes, and Costs of Churning in the Supplemental Nutrition Assistance Program (SNAP)*, FOOD AND NUTRITION SVC. (Sept. 2014) at 40 (Table 3, col. "Stayers") (in Fiscal Year 2011, only 32 to 41% of SNAP recipients in certain states received SNAP for the full year by recertifying,          when          required),          *available          at*

https://www.urban.org/sites/default/files/publication/33566/413257-Understanding-the-Rates-Causes-and-Costs-of-Churning-in-the-Supplemental-Nutrition-Assistance-Program-SNAP-.PDF (last accessed Feb. 20, 2018).). For example, people who do not recertify include those who may have become ineligible or who failed to recertify timely and had to reapply for SNAP benefits. *See, e.g.,* Zeilinger Decl. (Nov. 15, 2017) [31-1] at ¶ 168 (Declarant Guevara's benefits terminated after "[h]er recertification revealed that her income exceeds the eligibility criteria for SNAP").

The FNS APT rate measures the timeliness of initial applications and recertifications in one combined metric. Ex. 1 at ¶ 17. FNS treats any recertifications filed within the 30-day grace period as initial applications for purposes of the APT rate. *Id.* The measure of recertifications filed within the 30-day grace period is treated differently for purposes of FNS 366-B reporting. *Id.*

FNS has acknowledged there are "conflicting regulations about how to treat a recertification application filed within 30 days from the end of the certification period." *Id.* ¶ 18 (citing FNS Guidance, Clarifications for Reporting on the Certification Section of the FNS-366B, Jan. 11, 2017, at 6, *available at* https://fns-prod.azureedge.net/sites/default/files/snap/366B-Certifications-Question-and-Answer.pdf.). In addition, FNS has stated that it "understands that some States are counting recertification applications filed within 30 days of the end of the certification period as initial applications on the FNS-366B (and screening for expedited status, in some cases), whereas other States are following the newer regulations at 7 CFR 273.14(e)(3) and counting recertifications filed within 30 days of the end of the

3

certification period as recertification applications." FNS Guidance at 7; Ex. 1 at ¶ 19. Due to this conflict in the regulations, FNS stated in 2017 that it "will provide guidance to all State SNAP agencies as part of this year's efforts to clarify SNAP policy on recertifications," FNS Guidance at 7, but it has not yet done so. Ex. 1 at ¶ 20.

## III.   The District's APT Rate for April Through September 2017

In FNS's APT report for April to September 2017, the District had an "upper bound" rate of 91.03% for application processing timeliness. *Id.* ¶ 22. This 91.03% rate was an increase of 2.58% from the District's rate of 88.45% in the last six-month report, which covered October 2016 through March 2017, the first six months of the District of Columbia Access System (DCAS) implementation. *Id.* ¶ 23

According to FNS guidance, "[t]he upper bound of the confidence interval, rather than the point estimate, is used to identify and monitor poor timeliness. If the upper bound of the confidence interval is below 90 percent, the State agency is required to take corrective action." FNS, *Clarification on the Three Ways Initial SNAP Application Processing Timeliness Is Measured*, June 2, 2017, *available at* https://fns-prod.azureedge.net/sites/default/files/snap/Triple%20Timeliness%20 Memo%2023May2017.pdf.

## CONCLUSION

For the foregoing reasons, the reasons in defendant's opposition and surreply, and the entire record, plaintiffs' Motion for a Preliminary Injunction should be denied.

Dated:  April 17, 2018.             Respectfully submitted,

                                    KARL A. RACINE
                                    Attorney General for the District of Columbia

                                    TONI MICHELLE JACKSON
                                    Deputy Attorney General
                                    Public Interest Division

                                    */s/ Fernando Amarillas*
                                    FERNANDO AMARILLAS [974858]
                                    Acting Chief, Equity Section

                                    */s/ Amanda J. Montee*
                                    AMANDA J. MONTEE [1018326]
                                    CONRAD Z. RISHER [1044678]
                                    Assistant Attorneys General
                                    441 Fourth Street, N.W., Suite 630 South
                                    Washington, D.C. 20001
                                    Telephone: (202) 724-5691
                                    Facsimile: (202) 741-8934
                                    Email: amanda.montee@dc.gov

                                    *Counsel for Defendant Laura Zeilinger*