UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHONICE G. GARNETT, *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action No. 17-1757 (CRC) |
| v. | ) ) | |
| LAURA ZEILINGER, | ) ) ) | |
| *Defendant*. | ) ) | |

**PLAINTIFFS' RESPONSE TO THE COURT'S MAY 31, 2018 ORDER DIRECTING PLAINTIFFS TO SUBMIT PROPOSED PRELIMINARY INJUNCTION LANGUAGE**

## I. INTRODUCTION

On May 31, 2018, this Court entered an Order [ECF No. 60] granting in part and denying in part Plaintiffs' Motion for Preliminary Injunction. In its Order, the Court concluded that Plaintiffs had demonstrated a substantial likelihood of succeeding on the merits of their claims that Defendant fails to timely process initial and recertification applications for benefits through Defendant's Supplemental Nutrition Assistance Program ("SNAP"). (ECF No. 60 at 9-13). The Court nonetheless exercised its equitable discretion to narrow the relief it ordered as to Defendant's timeliness compliance for initial applications. (*Id*. at 22). The Court then directed Plaintiffs to file "proposed language for an injunction covering recertification applications and for the reporting requirements for initial applications" by June 7, 2018. (*Id*. at 30-31).

Plaintiffs set out below proposed decretal language necessary to compel Defendant to timely process recertification applications. The relief set forth in the paragraphs below mirror injunctive relief requiring SNAP agencies to meet statutory timeliness requirements regarding SNAP applications issued in other jurisdictions, including in Arizona, Colorado, Connecticut,

1

Georgia, Hawaii, Maryland, Nebraska, New York, and Rhode Island. *See, e.g.,* ECF No. 59-1 (Decl. of Travis England), Exs. A-J.[1] The proposed decretal paragraphs set forth defendant's obligations as to all aspects of this Court's ruling except as to reporting.

As to the obligation to provide reporting, unlike agencies administering SNAP benefits in many other jurisdictions, Defendant does not currently generate monthly reports. Moreover, Defendant has not provided information sufficient for Plaintiffs to propose an effective monthly reporting system that would reflect an acceptable level of reliability or accuracy to permit this Court to know whether Defendant is in compliance with the Order that will be issued as to recertification applications or to measure accurately timely processing of initial applications.

In order to propound a reliable reporting monthly report, Plaintiffs' counsel needs to obtain certain information in Defendant's possession concerning the way in which application information is or is not recorded and saved in her data systems. This information includes, but is not limited to, whether Defendant's data system:

- records the filing date of the applications (the date a signed application is submitted to the agency);
- reflects the date that the application is made known to the data system (e.g., the date the application is registered);
- includes the date that the agency decided whether the applicant/recipient is eligible or not for SNAP benefits;
- reflects the date that, in the case of a SNAP application approval, whether for an initial or recertification application, the determination of eligibility is communicated to the vendor responsible for issuing SNAP benefits;

---

[1] The National Center for Law and Economic Justice—counsel for Plaintiffs in this case—also represented plaintiffs in most of these actions.

- reflects the date that, in the case of a SNAP application denial, the determination of eligibility generates a notice of decision to the applicant/recipient;

- accurately counts the number of days from the date of the application to the issuance of benefits for an approved application or to the issuance of a denial notice for a denied application; and

- calculates for recertification applications whether the benefits, in an approval, are issued no later than one month after receipt of the last allotment issued pursuant to its prior certification when the recertification application is submitted by the 15th of the last month of the certification period

Plaintiffs do not know the answers to these questions, but the answers will materially impact how a monthly reporting obligation should be structured.

At the outset, a fundamental problem is that Defendant, unlike virtually every other state, does not generate any monthly data regarding its application timeliness. Data such as that noted in the bullet points above (or at least verifiable information about the agency's system to accurately capture this information and reflect it in timeliness data), are essential for an effective monthly reporting of DHS's application timeliness. In addition, the exchanges between the parties in ECF documents 45, 53, and 55 regarding the FNS-366B form and the limited information provided by Defendant regarding how DHS compiles that form give no reason for confidence that DHS has the capacity to generate the necessary monthly baseline data on its own. As a result, DHS has no reliable monthly data that provides an accurate baseline from which declines or improvements in application processing timeliness can be measured on a monthly basis.

More importantly, Defendant has not made available any reports, testimony, or other information that sets forth the data that the agency inputs and retains in its data system related to application processing and timeliness nor has the District made available any information concerning the data system's capacity to measure elapsed time between events, such as those noted in the bulleted points on pp. 2-3, supra. Hence, a reliable monthly report seeking to accurately measure with any confidence the timely processing of all initial and recertification applications could not be propounded. For this reason, Plaintiffs request that the Court direct the parties to meet and confer on these issues, as explained further below.

The Form 366B data is no substitute for a monthly data report because it is only reported on a quarterly basis. Moreover, Plaintiffs have disputed and continue to dispute the accuracy of the Form 366B (*see e.g.* ECF 45 and 55 discussing the flaws in the 366B information based on Defendant's limited 30(b)(6) testimony). Among the examples of the inaccuracy of the 366B report, the evidence reveals that Defendant often inputs an incorrect, later filing date into DCAS, leading the 366Bs to reflect an artificially reduced application processing rate and undercounting the true number of processing days. Defendant has admitted to FNS that DCAS is incapable of reflecting the correct filing date because if an application is entered into the system more than five days after it is submitted, DCAS will show that the application was submitted on a later date. ECF 31-7 at 5 ("For applications older than 5 days, the system only allows backdating up to 5 days."). Thus, FNS independently found that Defendant failed to "protect[] the filing date of SNAP applications," with eligibility workers entering incorrect filing dates into the system. ECF 24-9 at FNS FOIA 00071. Whether any purported fixes are effective would have to be tested and demonstrated. Even if the Form 366B is accurate as to what it does report, it does not include

the detailed information identified above (at 2-3) on a monthly basis that the parties need to set a baseline and monitor DHS's ongoing performance.

Moreover, the limited 30(b)(6) deposition, which was focused exclusively on "the process for compiling the FNS-366B reports" and revisions made thereto (*see* ECF No. 40, at 6), did not provide information sufficient for Plaintiffs to understand or probe further limitations of Defendant's data system(s) or its ability to generate reliable monthly reporting.

Thus, this case presents the unusual situation in which Defendant has no reliable or accurate system that enables the parties and the Court to: (1) establish a baseline of current monthly performance against which to measure improvement; and (2) track monthly performance to determine compliance with the Court's Order.

In most cases where courts have issued systemic relief regarding application delays, state agencies have had a basic monthly reporting capacity regarding application timeliness that has been the foundation for measuring compliance with injunctive relief. (*See, e.g.,* ECF No. 59-1, Exs. A-J). In the limited situations where agencies have not had full capacity to generate such reporting, it met its reporting obligation by devising protocols for whole population random sampling and case review as an interim measure until its system could produce the whole population reports. *See, e.g.*, Georgia SNAP monitoring.

Indeed, similarly robust reporting is required by the Food and Nutrition Service when state agencies undergo major system changes, and the need for such data should be neither a surprise to DHS nor outside the capacity of Defendant to implement such reporting. *See* 7 C.F.R. § 272.15(b). Given the lack of current data from Defendant's agency, a baseline from which performance can be measured—a necessary benchmark for ensuring the Court and the parties obtain a clear picture of Defendant's compliance with the law—is not readily apparent. Only

after such baseline performance is established can Defendant then be assessed as to her performance improvements. Simply stated, Defendant cannot know whether her Department is timely processing applications because she does not have a system to accurately measure monthly timeliness. Absent that most basic of measurements, she cannot identify systemic failures in real time and take steps to remediate those failures.

Accordingly, the Court and parties would benefit from requiring Defendant to meet with and confer with Plaintiffs' counsel to identify the agency's capacity to deliver accurate monthly data. Plaintiffs therefore propose that, prior to a final entry of relief following the Court's May 31 order on Plaintiffs' motion for preliminary injunction, the parties meet and confer so that Defendant's agency staff with relevant expertise and operational knowledge can share in good faith relevant information with Plaintiffs regarding the agency's capacity to produce monthly reports and any issues related thereto. Plaintiffs believe that such a collaborative process would ideally result in a joint proposal with respect to monthly monitoring. Even if such a joint proposal is not possible, the resulting proposal from Plaintiffs would be better informed by more information about the agency's data capacity and would avoid requiring further intervention from the Court should it be determined that data produced by Defendant is not, in fact, reliable.  In the alternative, if the Court would prefer, Plaintiffs propose a status conference with the Court to discuss these issues and how best to appropriately craft a remedy regarding monthly reporting requirements at this juncture, given the uncertainties as to Defendant's capacity to generate accurate and reliable monthly data.

In addition, Plaintiffs propose the below language concerning systemic changes to be implemented regarding Defendant's SNAP recertification application processes.

II.     **Proposed Language Regarding Preliminary Injunction Order**

**PROPOSED RELIMINARY INJUNCTION ORDER**

WHEREAS, Plaintiffs brought this action under 42 U.S.C. § 1983, alleging that Defendant has failed, is failing, and will continue to fail to, *inter alia,* process SNAP applications within the times prescribed by the SNAP Act and implementing regulations;

WHEREAS, Plaintiffs sought preliminary injunctive relief against Defendant, on behalf of themselves and members of the class, to require Defendant to process all SNAP initial and recertification applications within the timeframes mandated by the SNAP Act;

WHEREAS, on March 28, 2018 this Court granted class certification; and

WHEREAS, on May 31, 2018, this Court granted in part and denied in Plaintiffs' motion for a preliminary injunction.

**DEFINITIONS** For purposes of this Stipulation and Order of Settlement (hereinafter "Order"), the following definitions apply:

**"Date of Issuance of SNAP"** means the date that SNAP benefits are available to the household within the meaning of 7 C.F.R. § 274.2.

**"Timely Denial"** means, as to initial applications for SNAP, an action taken by the case worker or the data system to deny the initial application and cause a notice to be generated on or before the 30th day after the application was submitted to the agency, unless the 30th day falls on a weekend or holiday. If the 30th day falls on a weekend or holiday, the denial of SNAP shall be timely if the SNAP application is denied on the next business day after the weekend or holiday.

**"Timely Application Approval"** means a) as to applications eligible for expedited processing, that SNAP benefits are issued to the household no later than the 7th day following the date on which the household submitted the application; and b) as to applications subject to 30-

day processing, that SNAP benefits are issued to the household no later than the 30th day following the date on which the household submitted the application.

**"Timely Recertification Application Approval"** means a) as to households that have filed a timely recertification application pursuant to 7 C.F.R. § 273.14 (c), that SNAP benefits are issued not later than 30 calendar days after the date the household received its last allotment or no later than the household's normal issuance cycle in the month following the end of its current certification period as provided in 7 C.F.R. §§ 273. 14 (d)(1) and (2); and b) as to households that have filed a timely recertification application after the 15th day of the last month of the certification period, but before the end of the certification period, that SNAP are issued not later than 30 calendar days after the application was submitted.

**"Recertification Application Denial"** means: a) a denial or termination of SNAP benefits at the end of a household's certification period that is a result of a worker action to deny or terminate benefits; and b) the automatic closure of a household's case at the end of the certification period.

**"Timely Recertification Application Denial"** means a) as to timely filed recertification applications, an action by the worker or the data system to deny and mail notice of such denial by the end of the household's current certification period; and b) as to recertification applications filed after the 15th of the last month of the certification period, but before the end of the certification period, an action by the worker or the data system to deny and mail notice of denial by the 30th day following the date the application was submitted, or in the cases where the 30th day falls on a weekend or holiday, the next business day following the 30th day.

**GOOD CAUSE APPEARING, IT IS HEREBY ORDERED:**

A.  **Recertification Application Processing**

1. Defendant shall provide households with a Notice of Expiration containing, *inter alia,* the date the certification period expires and the date by which the household must submit an application for recertification in order to receive uninterrupted benefits as required by 7 U.S.C. § 2020(e)(4) and its implementing regulation 7 C.F.R. § 273.14(b).

2. Defendant shall schedule interviews so that the household has at least 10 days after the required interview in which to provide verification before the certification period expires, as required by 7 U.S.C. § 2020(e)(4) and its implementing regulation 7 C.F.R. § 273.14 (b)(3)(iii).

3. Defendant shall give each household notice of the expiration of its certification period and the need to submit a new application in order to renew its eligibility for a new certification period. Defendants shall give this notice prior to the start of the last month of the household's certification period as required by 7 U.S.C. § 2020 (e) (4) and 7 C.F.R. § 273.14(b).

4. As to each household that files an application for recertification no later than fifteen days prior to the day upon which its existing certification period expires and, is found to be eligible, Defendant shall provide the SNAP allotment no later than one month after the household received its last allotment issued pursuant to the prior certification as required by 7 U.S.C. § 2020(e)(4).

5. Defendants shall provide the household with a notice of required verification and the due date for such verification. Defendants shall give the household at least 10 days to provide the required information. Defendants shall also give each eligible household whose eligibility is not determined by the end of its current certification period due to the time period allowed for

submitting any missing verification an opportunity to participate, if eligible, within 5 working days after the household submits the missing verification.

6. Defendants shall provide eligible households an opportunity to receive SNAP no later than 30 calendar days after the date the household received its last allotment or, as applicable, by its normal issuance date in the month following the end of its certification period as required by 7 U.S.C. § 2020(e)(4) and its implementing regulation 7 C.F.R. § 273.14(d).

7. Defendant shall process recertification applications received after the fifteenth day of the last month of the household's certification period, but before the end of the household's certification period, within 30 days from the date of application and, as to those households found eligible, must provide a full month's SNAP allotment for the first month of the new certification period. 7 U.S.C. § 2020(e)(4) and its implementing regulation, § 273.14(e)(1).

8. Defendant shall expeditiously enact any changes to policy statements, procedures manuals, and internal directives necessary to ensure that her staff, employees, agents and assigns comply with the terms and conditions of this Order. In addition, Defendant shall conduct such training as is necessary to ensure that her staff, employees, agents, and assigns comply with the terms and conditions of this Order.

9. Defendant shall post and maintain in the public waiting area(s) of each SNAP office operated under its control a poster in a format and with language to be agreed to by the parties that shall inform applicants and recipients of: (a) their right to have their eligibility recertified; and (b) the time- frames for processing recertifications. The poster shall be in English and the languages that are spoken by 3% of the total constituent population or 500 individuals, whichever is less, in compliance with the District of Columbia Language Access Act of 2004 (D.C. Law 15-167, D.C. Official Code § 2-1931 et seq. (2004). To the extent that

Defendant already provides that information in a poster, that poster will be deemed to satisfy the obligation under this paragraph so long as Defendant continues to use that poster. Defendant shall also provide notice of (a) and (b) in a format and with language to be agreed upon by the parties on any website under their control and from which households can file applications electronically.

10. Defendant shall provide a mechanism by which Plaintiffs' counsel may bring to the attention of Defendant those instances in which a recertification application may not have been processed in accordance with applicable federal statutes and regulations cited herein. Defendant shall investigate and advise Plaintiffs' counsel of the result of said investigation, and, if appropriate, take corrective action within 3 business days after the date of Plaintiffs' report to Defendant. The contact person responsible for taking the necessary action to resolve the issue(s) raised is to be identified by Defendant. Defendant shall provide Plaintiffs' counsel with the identity of any successor to the person responsible for resolving the issues within 5 business days of the date on which such a successor is named.

11. Within Twelve (12) months of the date of this order Defendant shall be in full compliance with all federal time requirements for processing recertification applications.

12. For purposes of this Order full compliance shall mean compliance in all cases except those individual and isolated instances of agency delay that occur inevitably. To account for these isolated instances of agency error, Defendant shall be considered in compliance with the terms of this Order if the performance is within a 4% margin of error.

**B.     Reporting Obligations**

During the term of this Order, Defendant shall provide Plaintiffs' counsel the following monitoring reports within fifteen (15) days of the end of the month being monitored:

[Specifics of reports to be determined following conferral of the Parties]

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order a meet and confer, in which Defendant will produce agency staff with relevant expertise and operational knowledge of the agency's reporting systems, or, in the alternative, that the Court set a status conference to discuss the specific capabilities of Defendant to produce monitoring reports. Plaintiffs further respectfully request that the Court issue the proposed injunction, pursuant to such meet and confer or status conference.

Dated: June 7, 2018                                             Respectfully submitted,

      /s/ Chinh Q. Le
Chinh Q. Le (DC Bar No. 1007037)
Jennifer Mezey (DC Bar No. 462724)[*]
Chelsea Sharon (DC Bar No. 1016006)[*]
LEGAL AID SOCIETY OF THE
   DISTRICT OF COLUMBIA
1331 H Street NW, Suite 350
Washington, DC 20005
202-628-1161 (Phone)
202-727-2132 (Fax)
cle@legalaiddc.org
jmezey@legalaiddc.org
csharon@legalaiddc.org

Marc Cohan
Mary R. Mannix[†]
Travis W. England
Katharine Deabler-Meadows[†]
NATIONAL CENTER FOR LAW
   AND ECONOMIC JUSTICE
275 7th Avenue, Suite 1506
New York, NY 10001

---

[*]     Practicing pursuant to LCvR 83.2(g).

212-633-6967 (Phone)
212-633-6371 (Fax)
cohan@nclej.org

Peter R. Bisio (DC Bar No. 459256)
Lance Y. Murashige (DC Bar No. 1021562)
Emily Goldman (DC Bar No. 1032032)
Kaitlin Welborn[††]
Susan A. Musser[††]
HOGAN LOVELLS US LLP
555 13th Street NW
Washington, DC 20004
202-637-5600 (Phone)
202-637-5910 (Fax)
peter.bisio@hoganlovells.com

*Attorneys for Plaintiffs*

13