## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHONICE G. GARNETT, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>LAURA ZEILINGER,<br><br>    Defendant. | Civil Action No. 17-1757 (CRC) |

### DEFENDANT'S OPPOSITION TO PLAINTIFFS' RESPONSE TO THE COURT'S MAY 31, 2018 ORDER DIRECTING PLAINTIFFS TO SUBMIT PROPOSED PRELIMINARY INJUNCTION LANGUAGE

### INTRODUCTION

On May 31, 2018, the Court indicated its intention to partially grant plaintiffs' motion for preliminary injunction. In particular, the Court found plaintiffs had provided adequate evidence that the District of Columbia (the District)[1] is not fully complying with its obligation to timely process applications to recertify eligibility for the Supplemental Nutrition Assistance Program (SNAP). The Court determined that there was no basis to grant injunctive relief as to the District's processing of initial applications or SNAP-related notice procedures, including notice of processing delays and the opportunity for an administrative hearing. The Court indicated, however, that it would require the District to submit periodic reports on its timeliness in processing initial applications. The Court

---

[1] Defendant is Laura Zeilinger, sued in her official capacity as the Director of the District of Columbia Department of Human Services. In this opposition, defendant is referred to as "the District."

directed plaintiffs to file, by June 7, 2018, proposed language for an injunction covering recertifications and reporting requirements for initial applications.[2]

In their filing, plaintiffs propose language for a twelve-part injunction that largely exceeds the scope of the Court's May 31, 2018 Memorandum Opinion and Order, including requirements relating to initial applications and notification procedures. For the reasons discussed below, and to the extent the Court still believes the extraordinary remedy of a preliminary injunction is necessary to ensure timely processing of recertifications, the Court should reject plaintiffs' proposed language as overbroad, improper, and contrary to the Court's May 31, 2018 Memorandum Opinion and Order. Instead, the Court should direct the District to develop a method for measuring timeliness of recertification application processing separate from initial applications, and to provide the Court with periodic reporting during the pendency of this litigation.

## BACKGROUND

Plaintiffs moved "for a three-fold preliminary injunction that would require the District to (1) adhere to the statutory timelines for the processing of all SNAP benefit applications, (2) send out recertification notices on time as required by the statute, and (3) provide recipients notice of any delays in processing their applications and of their right to a hearing." Mem. Op. and Order [60] at 9. On May

---

[2] On June 15, 2018, the Court issued a Minute Order requiring the Parties to meet and confer by June 29, 2018 regarding language for the proposed reporting requirement. Because the Parties will meet and confer and submit a joint status report by July 3, 2018 (as ordered by the Court), this opposition does not address plaintiffs' broad request for information regarding the District's reporting capabilities, as set forth in their June 7, 2018 filing.

31, 2018, this Court indicated it would partially grant plaintiffs' first request—with respect to recertification applications only—and deny the second and third requests. *Id.* Although the Court did not grant plaintiffs' first request with respect to initial applications, the Court stated that it will require the District to file periodic reports regarding the status of the corrective action plan submitted to U.S. Department of Agriculture Food and Nutrition Service (FNS) and submit updates to the Court regarding current timeliness rates for initial applications. *Id.* at 22.

Recognizing FNS's expertise in SNAP regulatory requirements, and in light of the corrective action plan process, the Court determined that the public interest would disfavor injunctive relief as to initial applications. *Id.* at 30–31. The Court ordered plaintiffs to file "proposed language for an injunction covering recertification applications and for the reporting requirements for initial applications *consistent with*" the Court's Opinion. *Id.* at 30 (emphasis added).

On June 7, 2018, plaintiffs filed a proposed twelve-part injunction on "recertification application processing," along with a general request for information relating to the District's "data system" to assist them in drafting language for reporting obligations regarding initial applications. Proposed Order [63] at 9–12. In a June 15, 2018 Minute Order, the Court noted that it is "not inclined to require the District to expend time and resources on the creation of reports that are not currently kept in the regular course of business or that cannot be readily created with existing resources," and that it would "defer any formal discovery on the

3

factual questions raised by the plaintiffs in their [June 7, 2018] response until merits discovery, if necessary."

## ARGUMENT

### I.     Plaintiffs' Proposed "Definitions" are Inaccurate and Improper.

As an initial matter, this Court should reject the two pages of recitals and definitions in plaintiffs' proposed injunction; such language may be appropriate—if accurate—in the context of a stipulated settlement, rather than a preliminary injunction in a case where the Parties have yet to litigate the merits. *See* Proposed Order at 7 ("For purposes of this *Stipulation and Order of Settlement*") (emphasis added), 1-2 (plaintiffs' language "mirrors" settlements in Nebraska, Colorado, and Arizona).

Beyond that, the six definitions plaintiffs propose mischaracterize federal SNAP requirements and exceed the scope of the Court's May 31, 2018 ruling. Because federal law and regulations govern how the District administers SNAP, and the Court's intended relief is to ensure compliance with—not deviation from—those requirements, plaintiffs' definitions are unnecessary and inappropriate. Mem. Op. and Order at 1.

Plaintiffs' first definition, "Date of Issuance of SNAP," cites to 7 C.F.R. § 274.2 for a determination of when benefits are "available to the household." Proposed Order at 7. But that phrase is not a defined term in the cited regulation; rather, the regulation explains that funds are "available" when they "have been posted to the household's [Electronic Benefit Transfer (EBT)] account and are

available for spending." 7 C.F.R. § 274.2(b). As the District has explained, the EBT Office is not operated by Director Zeilinger or the Department of Human Services (DHS), but through a subcontractor of the Office of the Chief Financial Officer (OCFO), an independent District agency responsible for administering financial matters. Opp'n to Mot. for Prelim. Inj. [31] at 3.[3] And there is no evidence in the record that OCFO fails to post funds to EBT accounts as required.

Plaintiffs' separation of "approvals" and "denials" in their other five definitions ("Timely Denial," "Timely Application Approval," "Timely Recertification Application Approval," "Recertification Application Denial," and "Timely Recertification Application Denial"), and their failure to account for beneficiary errors, would similarly result in misleading data and skew the Court's assessment of the District's timeliness in *processing* initial applications and recertifications. The District regularly works with beneficiaries to correct erroneous recertification applications for up to 30 days after the certification period has ended so it can provide the maximum benefit allowed by FNS. *See, e.g.*, Zeilinger Decl. [31-1] ¶ 31; Zeilinger Supp. Decl. [48-1] ¶ 19(c); Zeilinger Third. Supp. Decl. [58-1] ¶¶ 17-20. Under plaintiffs' definitions, a beneficiary who did not attempt to recertify because she is no longer a District resident would be an untimely denial, and one who applied untimely would be an untimely recertification. If adopted, plaintiffs' proposal would appear to favor meeting timeliness rates over working with beneficiaries to correct imperfect applications, both initial and recertifications, and,

---

[3] *See also Office of Finance and Treasury – Key Activities*, OCFO, *available at* https://cfo.dc.gov/node/242172 (last accessed June 18, 2018).

instead, deny those applications to ensure merely the *appearance* of more timely processing at the cost of eligible beneficiaries being denied service. This would be contrary to the Court's intended relief.

Further, plaintiffs' definitions for "Recertification Application Denial" and "Timely Recertification Application Denial" confuse the end of a certification period with a denial of benefits. Proposed Order at 8. There are several reasons a SNAP beneficiary might stop receiving benefits at the end of his or her current certification period. For instance, if the beneficiary's income rises above the eligibility threshold or the beneficiary is no longer living in the District of Columbia, they might not attempt to recertify and, if they did, their application would be denied. *See*, *e.g.*, Def's Supp. Br. [58] at 2-3. The termination of benefits when the certification period ends would not be a denial of benefits by the District "as a result of a worker action" or as an "automatic closure," but would be considered a federally mandated eligibility determination of SNAP benefits. In plaintiffs' misguided view, that situation would constitute a "Recertification Application *Denial*." *Id.* Similarly, it is the District's understanding that plaintiffs have compared the timeliness rate at which other jurisdictions process recertification applications they *receive* to the rate, reported on the FNS-366B form, at which District beneficiaries are recertified. Pls.' Resp. to Def's Supp. Br. [59] at 4. As the former group excludes beneficiaries who do not attempt to recertify—and possibly those who do but are ineligible—the comparison incorrectly implies that the District overwhelmingly processes recertifications untimely.

II.   **Plaintiffs' Proposed Twelve-Paragraph Injunction Exceeds the Scope of the Court's May 31, 2018 Memorandum Opinion and Order.**

Plaintiffs' proposed preliminary injunction contains twelve paragraphs, eleven of which mandate performance by the District. *See* Proposed Order at 9–12.

"[W]here, as here, the plaintiff's requested injunction is mandatory—that is, where its terms would alter, rather than preserve, the *status quo* by commanding some positive act, Judges on this Court have required the moving party to meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from denial of the injunction." *Singh v. Carter*, 185 F. Supp. 3d 11, 17 (D.D.C. 2016) (internal quotations omitted); *see also Mylan Farms, Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000) (requests for a mandatory injunction should be "reviewed with even greater circumspection than usual") (quoting *Dorfmann v. Boozer*, 414 F.2d 1168 (D.C. Cir. 1969)); *Columbia Hosp. for Women Found. v. Bank of Tokyo-Mitsubishi*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997) (courts should be "extremely cautious" about ordering a mandatory preliminary injunction); *Alaska Excursion Cruises, Inc. v. United States*, 595 F. Supp. 14, 18 (D.D.C. 1984) (attempts to alter *status quo*, rather than preserve it, must be supported by showing that "the facts and law clearly support" such a change). Plaintiffs have not met their burden, and they are not entitled to the proposed relief.

Each paragraph is addressed below.

> 1. **Defendant shall provide households with a Notice of Expiration containing, *inter alia,* the date the certification period expires and the date by which the household must submit an application for recertification in order to receive uninterrupted benefits as required by 7 U.S.C. § 2020(e)(4) and its implementing regulation 7 C.F.R. § 273.14(b).**

Plaintiffs are not entitled to the relief proposed in Paragraph No. 1 because the Court explicitly rejected plaintiffs' request for injunctive relief related to notice procedures. *See* Mem. Op. and Order at 2 (citing Pls.' Mot. for Prelim. Inj. at 1). "[P]laintiffs did not offer complete statistics on the District's processing of recertification notices to demonstrate any systemic failure to comply with the statutory requirement." *Id.* at 23. Thus, plaintiffs' proposed language, which is inconsistent with the Court's May 31, 2018 Memorandum Opinion, should not be adopted. *See generally* Proposed Order.

> 2. **Defendant shall schedule interviews so that the household has at least 10 days after the required interview in which to provide verification before the certification period expires, as required by 7 U.S.C. § 2020(e)(4) and its implementing regulation 7 C.F.R. § 273.14 (b)(3)(iii).**

Although Paragraph No. 2 generally relates to recertification applications, plaintiffs have not established they are entitled to the specific injunctive relief they now propose. *See* Mem. Op. and Order at 13. First, the Court did not find that the District is failing to schedule interviews or that households are not permitted sufficient time to provide verifications before a certification period expires. In fact, there is no evidence in the record to support this notion. And, even if there was, there is no evidence that a failure to schedule interviews is causing a delay in the

processing of recertification applications. Further, nothing appears to limit plaintiffs' proposed language to interviews for recertification. *Id.* at 16, 21

> **3. Defendant shall give each household notice of the expiration of its certification period and the need to submit a new application in order to renew its eligibility for a new certification period. Defendants shall give this notice prior to the start of the last month of the household's certification period as required by 7 U.S.C. § 2020 (e)(4) and 7 C.F.R. § 273.14(b).**

Similar to Paragraph No. 1, Paragraph No. 3 pertains to the District's notice procedures. As stated above, plaintiffs have not demonstrated a likelihood of success on the merits regarding their notice claim and, thus, the Court has already denied the type of injunctive relief reflected in Paragraph No. 3. Mem. Op. and Order at 2, 23.

> **4. As to each household that files an application for recertification no later than fifteen days prior to the day upon which its existing certification period expires and, is found to be eligible, Defendant shall provide the SNAP allotment no later than one month after the household received its last allotment issued pursuant to the prior certification as required by 7 U.S.C. § 2020 (e) (4).**

Under the implementing regulations, the deadline for a household's submission of a recertification application to ensure the household receives the SNAP allotment no later than one month after it received the last allotment is the fifteenth day of the month, "not fifteen days prior to the date the existing certification expires." *Compare* Proposed Order ¶ 4 *with* 7 C.F.R. § 273.14(c). This is especially important in months that have more or fewer than 30 days.

But even if the proposed language were to be corrected, the Court should not adopt Paragraph No. 4 because it would simply require that the District comply with the law. As the Court observed in its Memorandum Opinion, Mem. Op. and

Order at 17, "the mere fact that an agency is not in compliance with the law is insufficient, by itself, to justify an injunction." Indeed, the Court has already found that the District is not fully complying with the statutory requirement for timely processing of recertification applications. *Id.* at 12. As a result, the moment the Court enters such an injunction, plaintiffs could presumably move to enforce the injunction or hold the District in contempt, likely resulting in additional briefing, discovery, and hearings. And to rule on such a motion, the Court would have to decide the ultimate issue—whether the District is in violation of the law—even if a decision on the merits is premature given the posture of the litigation.

A proper "injunction describe[s] very specific activities" and it is improper if it "describes the prohibited activities in only the most general terms." *United States v. Alaw*, 327 F.3d 1217, 1221 (D.C. Cir. 2003). The same principal should govern a preliminary injunction mandating action. An injunction that simply requires the District to comply with statutory timelines will do little, if anything, to assist in remedying any deficiencies in the timely processing of recertifications. *See* Mem. Op. and Order at 12.

> 5. **Defendants shall provide the household with a notice of required verification and the due date for such verification. Defendants shall give the household at least 10 days to provide the required information. Defendants shall also give each eligible household whose eligibility is not determined by the end of its current certification period due to the time period allowed for submitting any missing verification an opportunity to participate, if eligible, within 5 working days after the household submits the missing verification.**

Here, as in Paragraph Nos. 1 and 3, plaintiffs seek an injunction on SNAP notification procedures. And despite the Court's denial of plaintiffs' request for

injunctive relief regarding initial applications, the first two sentences of Paragraph No. 5 include broad language that would conceivably impose requirements with respect to initial applications. *See discussion* of Paragraph No. 2, above. Although the final sentence may refer only to recertification applications—based on a reference to the "current certification period"—it would be inappropriate relief even if it were entirely limited to recertifications.

There is no evidence that recertification processing delays are caused by the District's failure to "give the household at least 10 days to provide the required information," or based on a failure to "give each eligible household whose eligibility is not determined by the end of its current certification period … an opportunity to participate, if eligible, within 5 working days after the household submits the missing verification." *Compare* Mem. Op. and Order at 12. As noted above, the Court did not find that plaintiffs are likely to succeed in demonstrating the District is failing to provide households adequate notice, that such failure is causing imminent or irreparable harm, or that the balance of equities and public interest favors the injunction plaintiffs propose. Thus, plaintiffs have not demonstrated "the facts and law clearly support" the proposed language in Paragraph No. 5. *Alaska Excursion Cruises, Inc.*, 595 F. Supp. at 18.

6.  **Defendants shall provide eligible households an opportunity to receive SNAP no later than 30 calendar days after the date the household received its last allotment or, as applicable, by its normal issuance date in the month following the end of its certification period as required by 7 U.S.C. § 2020 (e)(4) and its implementing regulation by 7 C.F.R. § 273.14(d).**

Paragraph Nos. 4 and 6 are repetitive—they both require compliance with 7 U.S.C. § 2020(e)(4), mandating that the District provide a SNAP allotment to a household no later than one month after the previous allotment if the household completes the recertification application no later than the fifteenth day of the last month. For the reasons stated above in response to Paragraph No. 4, the Court should reject this proposed language.

7.  **Defendant shall process recertification applications received after the fifteenth day of the last month of the household's certification period, but before the end of the household's certification period, within 30 days from the date of application and, as to those households found eligible, must provide a full month's SNAP allotment for the first month of the new certification period.   7 U.S.C. § 2020(e)(4) and its implementing regulation, § 273.14(e)(1).**

Paragraph No. 7 is inappropriate because there is no evidence in the record that the District fails to comply with the specific requirements of 7 U.S.C. § 2020(e)(4) and 7 C.F.R. § 273.14(e)(1). And as discussed in response to Paragraph No. 4, an order that the District merely adhere to the statutory guidelines regarding timeliness for recertifications is improper. Further, as discussed in Section I above, plaintiffs' failure to envision and address situations in which beneficiaries are at fault for a processing delay would create a perverse incentive for the District to avoid assisting those individuals in an effort to improve timeliness rates.

8.  **Defendant shall expeditiously enact any changes to policy statements, procedures manuals, and internal directives necessary**

> to ensure that her staff, employees, agents and assigns comply with the terms and conditions of this Order. In addition, Defendant shall conduct such training as is necessary to ensure that her staff, employees, agents, and assigns comply with the terms and conditions of this Order.

Paragraph No. 8 is also wholly inappropriate. Plaintiffs did not request injunctive relief related to the District's policies, procedures manuals, internal directives, or training; have not presented any evidence to suggest plaintiffs would likely succeed on the merits of a claim regarding any related deficiencies; and the Court has not even considered such broad relief, which even appears to cover non-District employees. *See generally* Pls.' Mot.; *see also* Mem. Op. and Order at 31.

Additionally, compliance with Paragraph No. 8 would require fact finding, entailing discovery, briefing, and hearings, as to what, if any policy, manual, or training changes are necessary. Without such a finding, or a determination of what constitutes "expeditious enactment," the Parties will be unable to determine whether the District is in compliance with the injunction. Plaintiffs are not entitled to this injunction. *See id.* at 31.

> 9. Defendant shall post and maintain in the public waiting area(s) of each SNAP officer operated under its control a poster in a format and with language to be agreed to by the parties that shall inform applicants and recipients of: (a) their right to have their eligibility recertified; and (b) the time- frames for processing recertifications. The poster shall be in English and the languages that are spoken by 3% of the total constituent population or 500 individuals, whichever is less, in compliance with the District of Columbia Language Access Act of 2004 (D.C. Law 15-167, D.C. Official Code § 2-1931 et seq. (2004). To the extent that Defendant already provides that information in a poster, that poster will be deemed to satisfy the obligation under this paragraph so long as Defendant continues to use that poster. Defendant shall also provide notice of (a) and (b) in a format with language to be agreed upon by the

> parties on any website under their control and from which
> households can file applications electronically.

Paragraph No. 9—similar to Paragraph Nos. 1, 3, and 5—relates to issues of notice and seeks relief the Court has denied. *See* discussion of Paragraph No. 1, above.

In addition, Paragraph No. 9 also includes a requirement that the District display a poster regarding individuals' "right[s] to have their eligibility recertified," and that such poster comply with the District of Columbia Language Access Act of 2004. But plaintiffs mischaracterize the requirements of the Language Access Act and, regardless, that law is not a part of this litigation. *See* D.C. Code § 2–1933(a); Am. Compl. [26]. Further, if the Court were to consider this proposal, it would have to determine the District's compliance with the Language Access Act in the administration of SNAP benefits. The Court should not adopt language that contains elements entirely unrelated to plaintiffs' claims. In addition, plaintiffs' proposal of publishing the posted information on a website, from which households could then file applications electronically, is beyond the scope of the Court's May 31, 2018 Memorandum Opinion.

> 10. Defendant shall provide a mechanism by which Plaintiffs' counsel
> may bring to the attention of Defendant those instances in which a
> recertification application may not have been processed in
> accordance with applicable federal statutes and regulations cited
> herein. Defendant shall investigate and advise Plaintiffs' counsel of
> the result of said investigation, and, if appropriate, take corrective
> action within 3 business days after the date of Plaintiffs' report to
> Defendant. The contact person responsible for taking the necessary
> action to resolve the issue(s) raised is to be identified by Defendant.
> Defendant shall provide Plaintiffs' counsel with the identity of any

**successor to the person responsible for resolving the issues within 5 business days of the date on which such a successor is named.**

Paragraph No. 10 requires the creation of a "mechanism" by which plaintiffs' counsel may inform the District of untimely processing and engage in the functional equivalent of an expedited administrative appeals process that would entail an "investigation" and "corrective action" within three business days for certain beneficiaries. But, as plaintiffs are aware, the District has well-established procedures to address difficulties that a SNAP beneficiary may experience with his or her recertification. *See* Opp'n to Mot. for Prelim. Inj. [31] at 33-35 (discussing DHS Call Center, Division of Program Operations (DPO) Deputy Mailbox, and DHS Help Desk).

Under plaintiffs' proposal, the District would also be required to generate reports, create investigation files, and even engage in discovery. It goes far beyond the injunctive relief contemplated by the Court and the type of relief that is appropriate for a preliminary injunction. Plaintiffs seek to monitor the District's administration of SNAP benefits, requesting that the District create and send investigative reports *to plaintiffs*. Paragraph No. 10 should be rejected. The Court explicitly stated it would "require the District to file periodic reports regarding the status of the corrective action plan and updating the Court on its current timeliness rates." Mem. Op. and Order at 22.

11. **Within Twelve (12) months of the date of this order Defendant shall be in full compliance with all federal time requirements for processing recertification applications.**

Notwithstanding the barriers to "full compliance" that the District identified in its opposition briefing to plaintiffs' motion for preliminary injunction, plaintiffs' proposed deadline for compliance is inappropriate because it would likely require the District to remedy the alleged underlying deficiency, and then prove that it has done so, before the resolution of plaintiffs' claims on the merits. This requirement would not only reverse the normal course of litigation, as prescribed by the Federal Rules of Civil Procedure, but also shift the burden of proof to the District. Plaintiffs' proposal, and their arbitrary deadline for compliance, should be rejected.

12. **For purposes of this Order full compliance shall mean compliance in all cases except those individual and isolated instances of agency delay that occur inevitably. To account for these isolated instances of agency error, Defendant shall be considered in compliance with the terms of this Order if the performance is within a 4% margin of error.**

Paragraph No. 12 appears to be a definition of "full compliance" rather than a mandate and is improper for reasons discussed in Section I above. Further, the Court has explained that defining compliance is a complicated matter requiring the Court's careful weighing of the evidence, Mem. Op. and Order at 18, which will inevitably include consideration of the complex facts and circumstances relating to particular beneficiaries and issues that arise affecting the timely processing of recertifications through no fault of the District.

### III.   The District's Proposal

FNS, the regulatory agency responsible for overseeing the District's administration of SNAP, monitors application processing timeliness rates as part of its FNS-366B report. Because the timeliness rate includes all applications processed within the period, FNS's Application Processing Timeliness (APT) rate measures the timeliness of initial applications *and* recertifications in one combined metric.[4] Zeilinger Second Supp. Decl. [53-1] ¶ 8; Zeilinger Third Supp. Decl. ¶ 17. As the Court noted, FNS ordered the District "to submit a corrective action plan aimed at raising the District's rate of timely processed applications for SNAP benefits" after finding an overall timeliness rate of 88.45% for the six months of October 2016 through March 2017. Mem. Op. and Order at 6. FNS has now accepted the District's APT Corrective Action Plan. This plan has set a goal of maintaining, for all applications—initial and recertifications—a 95% average statewide timeliness rate. Mem. Op. and Order at 21.

A preliminary injunction vaguely requiring the District to meet the statutory timelines for recertification—like those plaintiffs proposed in Paragraph Nos. 4, 6, and 7—would create practical and logistical challenges during this litigation. It would shift the burden of proof to the District, which would have to prove its full compliance with the law, before the Court had an opportunity to consider the merits of plaintiffs' claims.

---

[4] "FNS treats any recertifications filed within the 30-day grace period as initial applications for purposes of the APT rate." Zeilinger Third Supp. Decl. [58-1] ¶ 17.

Instead, the Court should order the District to:  (1) develop a method for measuring the timeliness of recertification application processing separate from initial applications; (2) inform the Court when the method has been established; and (3) provide the Court with reporting, every three months during the pendency of this litigation, or until the Court orders otherwise.[5]

## CONCLUSION

For the foregoing reasons, the Court should reject plaintiffs' proposed injunction and enter the District's proposed order.

Dated:  June 22, 2018.          Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

/s/ Fernando Amarillas
FERNANDO AMARILLAS [974858]
Chief, Equity Section

/s/ Amanda J. Montee
AMANDA J. MONTEE [1018326]
CONRAD Z. RISHER [1044678]
JESSICA KRUPKE [1019967]
Assistant Attorneys General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-5691
(202) 741-8934 (fax)
amanda.montee@dc.gov

*Counsel for Defendant Laura Zeilinger*

---

[5] As reflected in the attached proposed order, the District is willing to submit periodic reports regarding the timely processing rates for SNAP initial applications, expedited initial applications, and recertifications.