UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHONICE G. GARNETT, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>LAURA ZEILINGER,<br><br>  Defendant. | Civil Action No. 17–1757 (CRC) |

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

## INTRODUCTION

Plaintiffs—non-profit organization Bread for the City and six individuals who receive Supplemental Nutrition Assistance Program (SNAP) benefits—allege that the District of Columbia (the District) has "policies, practices, and procedures" that fail to: (1) timely process initial SNAP applications and provide benefits to eligible households; (2) provide SNAP beneficiaries a sufficient opportunity to complete the recertification process and receive their benefits timely; and (3) timely send notice to SNAP beneficiaries of processing delays and the opportunity for an administrative hearing. Plaintiffs allege violations of the Food and Nutrition Act of 2008 (SNAP Act) and due process under the Fifth and Fourteenth Amendments.

The District acknowledges the gravity of plaintiffs' allegations but the SNAP Act does not provide a private right of action. Even if plaintiffs had standing and appropriately exhausted their administrative remedies, plaintiffs have not plausibly

alleged that the District has policies, practices, or procedures that are sufficiently deficient to establish a violation of the SNAP Act or plaintiffs' constitutional rights, let alone to establish municipal liability under 42 U.S.C. § 1983 (Section 1983). Plaintiffs' allegations are based on a misreading of FNS-366B data, data that has long been superseded by improved data undermining those allegations. In fact, the District works diligently to provide beneficiaries with all the resources they are entitled to receive, including working with beneficiaries and their legal representatives to resolve any issue that may arise. Because plaintiffs lack standing to bring this lawsuit, and otherwise fail to state a claim upon which relief can be granted, the Amended Complaint should be dismissed with prejudice.

## FACTS

### I.  The SNAP Act

Congress enacted the Food Stamp Act of 1964 to create a permanent program that would both support American agriculture and provide nutrition assistance to indigent individuals and families. A Short History of SNAP, U.S.D.A., *available at* https://www.fns.usda.gov/snap/short-history-snap (last accessed July 16, 2018). In 2008, the Food Stamp Program was renamed the Supplemental Nutrition Assistance Program and the Food Stamp Act became the Food and Nutrition Act of 2008 (SNAP Act). Food, Conservation, and Energy Act of 2008, Pub. L. No. 110–246, §§ 4001–02, 122 Stat. 1853 (2008).

Eligible applicants are entitled to SNAP benefits 30 days after the date of application. 7 U.S.C. § 2020(e)(3); 7 C.F.R. § 273.2(a), (g)(1). For individuals in need of immediate assistance, benefits are provided on an expedited basis, within seven

days of application. 7 U.S.C. § 2020(e)(9)(A); 7 C.F.R. § 273.2(i)(3)(i). The SNAP Act and implementing regulations also require timely processing of recertifications, allowing eligible individuals who recertify on time an opportunity to receive benefits "no later than 30 calendar days after the date the household received its last allotment." 7 U.S.C. § 2020(e)(4); 7 C.F.R. § 273.14(d)(1). Individuals are entitled to notice regarding the expiration of SNAP benefits and the need to recertify before the expiration of the certification period. *Id.* § 273.14(a). In addition, an applicant is entitled to written notice if a completed initial application has not been timely processed and the delay is the fault of the State Agency. 7 U.S.C. § 2020(e)(10); 7 C.F.R. §§ 273.2(h)(3)(i), 273.10(g)(1)(iii). A beneficiary aggrieved by a State action may be entitled to a fair hearing under Federal or District law. *See* 7 CFR § 273.15(a); D.C. Code § 4–210.01.

States and the District of Columbia have flexibility in determining SNAP eligibility. The District expanded the income threshold for categorically eligible beneficiaries from the federal 130% of the poverty line ($2,628 per month for a family of four) to 200% ($4,042 per month). *SNAP Eligibility*, DEP'T OF HUMAN SVCS., *available at* https://dhs.dc.gov/service/snap-eligibility (last accessed July 16, 2018). The amount of the SNAP benefit, however, is set by the federal government. Lizbeth Silbermann, SNAP—Fiscal Year 2018 Cost-of-Living Adjustments, U.S.D.A. FOOD AND NUTRITION SVC. (July 28, 2017), *available at* https://fns-prod.azureedge.net/sites/default/files/snap/SNAP_Fiscal_Year_2018_Cost_of_Living _Adjustments.pdf (last accessed July 16, 2018); *A Quick Guide to SNAP Eligibility*

*and Benefits*, Ctr. on Budget and Policy Priorities (Sept. 14, 2017), *available at* https://www.cbpp.org/research/a-quick-guide-to-snap-eligibility-and-benefits (last accessed July 16, 2017) ("SNAP expects families receiving benefits to spend 30 percent of their net income on food."). Under the Food Stamp Expansion Amendment Act of 2014, the District uses local funds to ensure all beneficiaries receive at least $30 per month, even though the federal minimum is now $15. *See* D.C. Code § 4–261.04. There were 106,447 D.C. SNAP beneficiaries in April 2018, the last month for which federal data is available. *Supplemental Nutrition Assistance Program (SNAP): State Level Participation & Benefits—Persons*, U.S.D.A. FOOD AND NUTRITION SVC., *available at* https://www.fns.usda.gov/pd/supplemental-nutrition-assistance-program-snap (last accessed Jul. 16, 2018).

## II.   Plaintiffs' Allegations

The individual plaintiffs, each residents of the District, allege they applied for SNAP but did not receive benefits timely. *See* Am. Compl. ¶¶ 96–163.[2]

Shonice Garnett alleges she applied for food stamps on July 10, 2017, but was unable to pick up an EBT on August 14, 2017, and had still not received it on August 28, 2017, when the Complaint [1] was filed. *Id.* ¶¶ 98, 100, 102. The District only learned of Ms. Garnett's difficulties on that day, but processed her application and made her full benefits available on August 31, 2017. Zeilinger Decl. [31-1]

---

[2] Plaintiff Tracey Ross voluntarily dismissed her claims on December 21, 2017 [42].

¶ 157. Ms. Garnett last recertified July 6, 2018, and her certification runs through June 30, 2019.

Richard Messick, Jr. alleges he applied for food stamps on January 13, 2017, but did not receive benefits and had to reapply in May 2017. Am. Compl. ¶¶ 105, 107. He was found eligible and began to receive his benefits. *Id.* ¶ 108. Like Ms. Garnett, after learning of Mr. Messick's difficulties on August 28, 2017, the District provided him a retroactive payment for his lost benefits on August 31, 2017. Zeilinger Decl. ¶ 158. Mr. Messick later used the District's appeals process to dispute the proper amount of his benefit and received a corrective payment. *Id.* Mr. Messick last recertified May 3, 2018, and his certification runs through April 30, 2019.

Linda Murph was receiving SNAP benefits in April 2017, when she went to a service center to recertify her eligibility. Am. Compl. ¶ 114. She alleges her recertification had not been processed when the Complaint was filed on August 28, 2017. *Id.* ¶ 116. Ms. Murph, too, received retroactive payments and her full benefits by August 31, 2017. Zeilinger Decl. ¶ 159. She was certified through April 2018. *Id.* Ms. Murph last recertified April 6, 2018, and her certification runs through April 30, 2020.

James Stanley was a recipient of SNAP until August 31, 2017, when his benefits were terminated for his failure to recertify his eligibility. Am. Compl. ¶¶ 124, 127. He alleges he did not receive notice informing him of the need to recertify. *Id.* ¶ 128. DHS sent Mr. Stanley, and all others affected by a one-time

print vendor's error, a notification by mail and telephone reminding him of the need to recertify and informing him the District was providing him an extra month in which to do so, and he admits he received the letter. *Id.* ¶ 126; Zeilinger Decl. ¶ 161. In spite of this, Mr. Stanley did not recertify timely. Zeilinger Decl. ¶ 161. His counsel finally submitted a new application in November 2017 but did so improperly. Zeilinger Supp. Decl. [48-1] ¶ 19. The District informed him he had not provided essential information. *Id.* When Mr. Stanley's counsel properly submitted his application, on December 5, 2017, the District processed it and provided Mr. Stanley his benefits—retroactive to the date he was informed of the missing information—the same day. *Id.* Mr. Stanley's current certification runs through October 31, 2018.

Roderick Gaines was a recipient of SNAP benefits until August 31, 2017, when his benefits were terminated for his failure to recertify his eligibility. Am. Compl. ¶¶ 133–36. He alleges he did not receive notice informing him of the need to recertify, although he admits the District informed him of the reason for his termination. *Id.* ¶¶ 136–37. In fact, Mr. Gaines received the mail and telephone reminders informing him of the need to recertify, but had not submitted a recertification when the Amended Complaint was filed. *Id.* ¶ 135; Zeilinger Decl. ¶ 162. Mr. Gaines attempted to reapply on November 22, 2017, but failed to include essential information. Zeilinger Supp. Decl. ¶ 20. DHS requested the information in November 2017 and, upon receiving it January 5, 2018, processed the application

and provided Mr. Gaines his benefits on January 9, 2018. *Id.* Mr. Gaines last recertified May 2, 2018, and his current certification runs through October 31, 2018.

Kathryn Harris was a recipient of SNAP until September 30, 2017, when her benefits were terminated for her failure to recertify her eligibility. Am. Compl. ¶¶ 141–43. She alleges she did not receive notice informing her of the need to recertify. *Id.* ¶ 145. The District sent Ms. Harris notice of her need to recertify but Ms. Harris's counsel, too, failed to submit her recertification properly. Zeilinger Decl. ¶ 163. The District learned of Ms. Harris's difficulties on October 13, 2017, when plaintiffs filed the Amended Complaint. *Id.* The District successfully located Ms. Harris's application and processed it on October 20, 2017. *Id.* Ms. Harris's current certification runs through September 30, 2019.

Plaintiff Bread for the City (Bread) is a non-profit organization whose mission is to "provide residents of the District of Columbia with comprehensive services, including food, clothing, medical care, and legal and social services, in an atmosphere of dignity and respect." Am. Compl. ¶ 148. Bread alleges its food program witnessed a significant increase in demand for services beginning in October 2016. *Id.* ¶ 150. Bread also alleges it observed a greater demand for legal services from clients seeking assistance with food stamps beginning in October 2016. *Id.* ¶ 154. To meet these demands, Bread alleges it had to divert resources from other aspects of its services to its food and legal services. *Id.* ¶¶ 152, 155, 160. Bread attributes the increase in demand for food and legal services to the District's

alleged failure to timely process initial and recertification applications for SNAP. *Id.* ¶ 158.

Plaintiffs allege these claims are enough to establish that the District has "policies, practices, and procedures of failing to:   (1) "process initial SNAP applications and to provide benefits to eligible households within" the time prescribed by the USDA Food and Nutrition Service (FNS); (2) "allow SNAP households to complete the SNAP recertification application process … and to provide [their] SNAP benefits" within the FNS-prescribed time; and, (3) "provide written notice and an opportunity to request a fair hearing to SNAP applicants whose applications" are not processed timely. *Id.* ¶¶ 171–73.

## STANDARDS OF REVIEW

### I.   <u>Federal Rule of Civil Procedure 12(b)(1)</u>

Under Rule 12(b)(1), "[a] court must dismiss a case when it lacks subject matter jurisdiction." *Mykonos v. United States*, 59 F. Supp. 3d 100, 103 (D.D.C. 2014) (quoting *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 4 (D.D.C. 2007)). In deciding a Rule 12(b)(1) motion, a court is to begin with the presumption that it lacks subject matter jurisdiction over a case. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As the parties invoking the Court's jurisdiction, plaintiffs must establish that the Court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). *See also Keepseagle v. Vilsack*, 815 F.3d 28, 32 (D.C. Cir. 2016). A complaint must state a plausible claim that the plaintiff has suffered "(1) an injury in fact that is 'concrete and particularized' and 'actual or imminent'; (2) that the injury is fairly traceable to

the defendant's challenged conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 19 (D.C. Cir. 2011) (quoting *Lujan*, 504 U.S. at 560); *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016).

In resolving a motion to dismiss for lack of subject matter jurisdiction, "the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that can be drawn from them." *Mykonos v. United States*, 59 F. Supp. 3d at 103 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "The court need not, however, accept as true 'a legal conclusion couched as a factual allegation' or make inferences that are unsupported by the facts set out in the complaint." *Id.* (quoting *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)) (other citation omitted). In addition, "a court need not limit itself to the complaint; rather, it 'may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction in the case.'" *Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373, 376 (D.D.C. 2015) (citations omitted).

## II.   <u>Federal Rule of Civil Procedure 12(b)(6)</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a

9

complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). The Court "may consider … the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice," including administrative proceedings and court filings that are a matter of public record. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013).

## ARGUMENT

I.   **The Individual Plaintiffs Lack Standing Because They Fail to Allege an Injury-in-Fact and Cannot Demonstrate an Ongoing Failure in the District's Administration of SNAP.**

To establish standing, the party invoking federal jurisdiction bears the burden of demonstrating three "irreducible constitutional minimum" requirements. *Lujan*, 504 U.S. at 560–61; *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). A plaintiff must have suffered "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent." *Lujan*, 504 U.S. at 560 (quotation omitted). In addition, the injury must be "fairly … traceable to the challenged action of the defendant" and "likely … redress[able] by a favorable decision." *Id.* at 561 (quotation omitted). These basic requirements— injury-in-fact, causation, and redressability—must be proven separately as to each request for relief. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 185 (2000) ("a plaintiff must demonstrate standing separately for each form of

relief sought"); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("standing is not dispensed in gross"). Plaintiffs fail to meet these requirements.

As the Court noted in its May 31, 2018 Memorandum Opinion and Order, plaintiffs may establish standing by showing "an *ongoing* systemic failure" in the District's administration of SNAP. Mem. Op. and Order [60] at 27 n.10 (emphasis in original). The Amended Complaint attempts to do so by citing statistics, *see*, *e.g.*, ¶¶ 81 and 91, but statistics cannot establish standing.[3] *McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997); *Chavez v. Ill. State Police*, 94 C 5307, 1999 U.S. Dist. LEXIS 11976, at *29–30 (N.D. Ill. July 30, 1999) (citing *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)). This is because statistics can show only that *someone* may be injured, not which specific person, and "[t]he Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party …." *Warth*, 422 U.S. at 499.

Here, plaintiffs did not inform the District of their alleged injuries until filing this action. Opp'n to Mot. for Prelim. Inj. [31] at 18 n.4. Once the District was aware of the difficulties allegedly experienced by plaintiffs (and other declarants), any issues were promptly resolved. *See*, *e.g.*, *id.* at 18–19, 21–23; Section II of Facts, above at 4; Zeilinger Suppl. Decl. ¶¶ 17–27.[4] In some circumstances, the alleged

---

[3] The statistics cited are also unreliable, as discussed in Subsection III.A.

[4] "The Court, of course, may take judicial notice of public records like docket sheets and other court documents." *Fed. Hous. Fin. Agency v. Raines (In re Fannie Mae Derivative Litig.)*, 725 F. Supp. 2d 159, 162 n.1 (D.D.C. 2010); *Maranon v. Santa Clara Stadium Auth.*, No. 15-cv–04709-BLF, 2016 U.S. Dist. LEXIS 171589, at *4 (N.D. Cal. Dec. 9, 2016) ("Because all documents filed on the docket are

deficiency was because of a beneficiary's error and, in other instances, there was no actual deficiency. Opp'n to Mot. for Prelim. Inj. at 22–23 (one beneficiary failed to act despite notice of the need to recertify, and the alleged improper termination of another beneficiary was because she had become ineligible). Some plaintiffs have, thus, failed to allege causation. But, in every case, the alleged injury-in-fact no longer exists, whether because the District was not at fault or because plaintiffs have received every benefit authorized under the SNAP Act. *See* 7 U.S.C. § 2023(b) ("In any judicial action arising under this chapter [plaintiffs may receive allotments covering] not more than one year …."); Section II of Facts, above at 4. Thus, even where individual plaintiffs adequately showed some injury caused by the District, they have not shown redressability and cannot maintain this action.[5]

---

properly before the Court, it need not take judicial notice of [a docket entry] to consider it.").

[5] Plaintiffs are similarly inadequate representatives of the Court's certified classes. Mem. Op. and Order [56] at 19. Both of the proposed representatives of Class 1, regarding initial applications, are long-standing SNAP beneficiaries who will not need to file an initial application. Zeilinger Decl. ¶¶ 157–58. The proposed representatives for Class 2, regarding recertifications, suffered from isolated errors—one by a caseworker and the other by the beneficiary—that are not capable of foreseeable repetition. *Id.* ¶¶ 159, 163. And the Court has noted that the allegations about the proposed representatives for Class 3, "cannot on their own demonstrate a systemic failure" because "[e]ven a conscientious and well-run system might experience this sort of unexpected human error." Mem. Op. and Order at 25–26.

II.   **Plaintiff Bread for the City Does Not Have Standing to Allege Violations of the SNAP Act, Due Process, or Separate Claims Regarding Diversion of Resources.**

Plaintiff Bread alleges it has organizational standing to bring its claims, which appear to mirror the SNAP Act and due process claims brought by the individual plaintiffs. Am. Compl. ¶¶ 2, 148, 171–73. Organizational standing is "substantially more difficult to establish" when the "plaintiff himself is not himself the object of government action or inaction …." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "[C]ertainly impending injury" is less likely when the "government regulation Plaintiffs seek to challenge … does not require or forbid any action of Plaintiffs …." *Food & Water Watch*, *Inc. v. Vilsack*, 79 F. Supp. 3d 174, 186 (D.D.C. 2015) (citation omitted) (*aff'd* 808 F.3d 905 (D.C. Cir. 2015). That is the case here; the plain language of the SNAP Act is "neutral with respect to [plaintiffs'] substantive mission[s]." *Feld*, 659 F.3d at 25. And Bread cannot sustain any claim alleging a due process violation. "A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009).[6] Bread does not claim it has been deprived of a "liberty or property interest."

---

[6] Plaintiffs do not specify the type of due process claim they bring, but it appears to be procedural due process. Substantive due process applies only when "government action is so lacking in justification that it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense," and plaintiffs have not made such allegations. *Dist. Atty's Office v. Osborne*, 557 U.S. 52, 96–97 (2009).

"To allege an injury to its interest, an organization must allege that the defendant's conduct perceptibly impaired the organization's ability to provide services …." *Food & Water Watch, Inc. II*, 808 F.3d at 919 (quotations and citation omitted). An organization is "perceptibly impaired" when "defendants' conduct causes an inhibition of the organization's daily operations." *Id.* (quotations and citation omitted). An organization's "use of resources for litigation, investigation in anticipation of litigation, or advocacy is not sufficient …." *Id.* (citation omitted). Instead, there must be a "direct conflict between the defendant's conduct and the organization's *mission* …." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996) (emphasis in original). "If the challenged conduct affects an organization's activities, but is neutral with respect to its substantive mission, [the D.C. Circuit] has found it entirely speculative whether the challenged conduct will actually impair the organization's activities." *Feld*, 659 F.3d at 25 (quotations and citation omitted).

Here, Bread claims to have organizational standing because it has been forced to divert resources based on the District's alleged failure to comply with requirements under the SNAP Act. Am. Compl. ¶¶ 152, 155, 160, 162. But diversion of resources is insufficient to support Bread's claim to organizational standing. The D.C. Circuit has "consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing. Such harm does not amount to an 'injury' cognizable under Article III." *Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006). For example, "[a]n organization's diversion of

resources to litigation or to investigation in anticipation of litigation is considered a 'self-inflicted' budgetary choice that cannot qualify as an injury in fact for purposes of standing." *Feld*, 659 F.3d at 25. All of Bread's alleged injuries are self-inflicted.

First, Bread's contention that it has diverted resources to its food program, is not an injury-in-fact fairly traceable to the District; it results from plaintiff's own actions. "[T]he links in the chain of causation between the challenged Government conduct and the asserted injury are far too weak." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1290–91 (D.C. Cir. 2007) (omitting internal quotations and citations); *see also Nat'l Family Planning & Reprod. Health Ass'n, Inc.*, 468 F.3d at 831 (association lacked standing because its injury was "self-inflicted" insofar as it "ha[d] within its grasp an easy means for alleviating the alleged uncertainty"). "One can hardly say that [the District] has injured [Bread] merely because [Bread] has decided that its money would be better spent" on one of its activities instead of another. *Fair Emp't Council of Greater Wash., Inc. v. BMC Marketing Corp.*, 28 F.3d 1268, 1277 (D.C. Cir. 1994).

Second, the allegation that Bread has diverted resources to its Legal Clinic is a self-inflicted budgetary choice, which is not a true injury-in-fact. As the D.C. Circuit has observed:

> An organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit. * * * The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization.

*Nat'l Taxpayers Union v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995) (internal quotations and citations omitted); *accord Feld* 659 F.3d at 25 ("an organization's diversion of resources to litigation or to investigation in anticipation of litigation is considered a self-inflicted budgetary choice that cannot qualify as an injury in fact for purposes of standing."). As Bread acknowledges, helping individuals apply for benefits such as SNAP is a core part of its mission. Am. Compl. ¶ 153. If Bread did more of this in 2017 that does not, on its own, constitute an injury-in-fact. "If the challenged conduct affects an organization's activities, but is neutral with respect to its substantive mission, [the D.C. Circuit has] found it entirely speculative whether the challenged practice will actually impair the organization's activities." *Feld*, 659 F.3d at 25 (internal quotation omitted).

Finally, plaintiff Bread's interest in social welfare, *see* Am. Compl. ¶¶ 148, cannot satisfy the injury-in-fact requirement. *See*, *e.g.*, *Nat'l Treasury Emps. Union*, 101 F.3d at 1433. A "mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization adversely affected or aggrieved" to satisfy the injury-in-fact requirement. *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) (quotations omitted). Simply put, Bread has not sufficiently pled allegations to satisfy the standing requirements.

## III.   Plaintiffs Fail to State a Claim Under the SNAP Act.

Even if plaintiffs had standing, the Amended Complaint should be dismissed under Rule 12(b)(6) because both caselaw and statute do not provide plaintiffs a

private right of action to seek direct judicial review under the SNAP Act, and their claims are otherwise based on outdated information.

### A.    <u>The SNAP Act Does Not Provide a Private Right of Action</u>.

"[L]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Unless Congress states explicitly that there is such a right, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.*

Most federal circuits, including the D.C. Circuit, have not ruled on whether there is a private right of action to enforce provisions of the SNAP Act. And there is a split among courts that have considered the question. *Compare D.O. v. Glisson*, 847 F.3d 374, 378 (6th Cir. 2017); *Briggs v. Bremby*, 792 F.3d 239, 241 (2d Cir. 2015); *Gonzalez v. Pingree*, 821 F.2d 1526, 1530 (11th Cir. 1987); *Victorian v. Miller*, 813 F.2d 718, 724 (5th Cir. 1987); *with Almendares v. Palmer*, 284 F. Supp. 2d 799, 808–10 (N.D. Ohio 2003); *Krieger v. Loudoun Cty., Dep't of Soc. Servs.*, No. 5:13cv00073, 2014 U.S. Dist. LEXIS 101117 (W.D. Va. July 14, 2014), *aff'd in part rej'd in part* 2014 U.S. Dist. LEXIS 138293 (W.D. Va. Sep. 30, 2014), *aff'd sub nom Krieger v. Virginia*, 599 F. App'x 112 (4th Cir. 2015) (*per curiam*).

To determine whether a statute provides for an implied private right of action, the first inquiry is "whether Congress *intended to create a federal right.*" *Gonzaga Univ. v. Doe*, 536 U.S. 271, 283 (2002) (emphasis in original). "[I]t is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." *Id.* (emphasis in original); *Blessing v. Freestone*, 520

17

U.S. 329, 340 (1997) ("plaintiff must assert a violation of a right, not merely a violation of a law"). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit." *Gonzaga Univ.*, 536 U.S. at 283.

The SNAP Act does not contain the requisite rights-creating language to support plaintiffs' claims. Section 2020(e) begins, "The State plan of operation required under subsection (d) of this section shall provide, among such other provisions as may be required by regulation …." In other words, § 2020(e) imposes conditions upon the states receiving federal funds for SNAP, not rights for beneficiaries. "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Alexander*, 532 U.S. at 289.

This is also a sensible interpretation. The District alone processes tens of thousands of initial applications and recertifications every year. *See*, *e.g.*, Revised FNS-366B [44-2]. Even where an application is approved, there can be dispute as to the amount of benefits, the calculation of which depends on many factors. *See*, *e.g.*, 7 U.S.C. §§ 2014–17; 7 C.F.R. § 273.8–11. That is why FNS requires fair hearings in certain situations, *see* 7 U.S.C. § 2020(e)(10) and 7 C.F.R. § 273.15, and why the District provides such hearings to beneficiaries who seek to appeal an administrative decision. *See*, *e.g.*, Opp'n to Mot. for Prelim. Inj. at 36; D.C. Code § 4–210.01. Even fair hearings are necessary in the District only if the numerous

other procedures offered by the DHS Economic Security Administration are ineffective. *See* Zeilinger Decl. ¶¶ 13–26, 144, 156–171.

It also is unclear whether plaintiffs may seek judicial review of allegations about SNAP benefits without first exhausting administrative remedies. There is a longstanding and "general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts. Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992) (citation omitted; discussing cases back to the 19th Century). "[E]xhaustion is not [always] a prerequisite to an action under § 1983 [but] courts … may impose such a requirement even where Congress has not expressly so provided." *Patsy v. Bd. of Regents*, 457 U.S. 496, 501 (1982). "Where a statutory requirement of exhaustion is not explicit, 'courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme.'" *Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp., 489 U.S.* 561, 579–80 (1989) (quoting *Patsy*, 457 U.S. at 502 n.4). Although there is no explicit administrative exhaustion requirement for beneficiaries, the sections of the United States Code and Code of Federal Regulations covering judicial review of SNAP decisions are explicit that a food store, retail or wholesale, that has been disqualified to accept SNAP benefits must exhaust its administrative remedies. *See Mohammad Hanif v. United States*, No. H–15–2718, 2017 U.S. Dist. LEXIS 14881, at *14–15 (S.D. Tex. Feb. 2, 2017) (discussing 7 U.S.C. § 2023(a)); 7 C.F.R. Subtitle

B, Chap. II, Subchapter C. Further, the second subsection, which covers "any judicial action arising under this chapter," strictly limits the authority of the courts to review administrative decisions. 7 U.S.C. § 2023(b).

Finally, "even where a statute is phrased in such explicit rights-creating terms," a plaintiff must show that the statute manifests an intent "to create not just a private *right* but also a private *remedy.*" *Gonzaga Univ.*, 536 U.S. at 283 (quoting *Alexander*, 532 U.S. at 286). The SNAP Act, 7 U.S.C. § 2020(e), and its implementing regulations do not provide for a private remedy by civil suit for alleged deficiencies in program operations. The remedy for a deficient operation of SNAP is expressly laid out in the implementing regulations:  a corrective action plan (CAP) process under which state agencies must work to reduce or eliminate deficiencies in program operations while reporting to FNS, *see* 7 CFR § 275, *et seq.*, which belies the conclusion that there is an implied remedy of a private right of action. At bottom, there is no private right of action or private remedy under the SNAP Act.

### B.   The Court Should Reject Plaintiffs' Claims Because They Rely on Misunderstandings of Inaccurate Data.

#### 1.   Plaintiffs Rely on FNS-366B Reports that Do Not Present a Complete Picture of Timeliness.

The District has repeatedly explained—and plaintiffs have conceded—the limitations of the FNS-366B reports in determining whether SNAP applications and recertifications are processed timely. *See*, *e.g.*, Opp'n to Mot. for Prelim. Inj. at 14, Zeilinger Dep. ¶¶ 129-30, Surreply in Opp'n to Mot. for Prelim. Inj. [48] at 4. The Court also noted these limitations in its recent ruling on plaintiffs' motion for

preliminary injunction. Mem. Op. and Order [60] at 10–14 (discussing FNS-366B and "the 'Application Processing Timeliness' or 'APT' rate"). Despite this, the Amended Complaint repeatedly relies on data from FNS-366B reports alone— including reports the District withdrew—and does not even mention APT rates.

### 2. The FNS-366B Reports on Which the Amended Complaint Relies Have Been Superseded.

The District explained, in November 2017, that plaintiffs were relying on FNS-366B reports that would be withdrawn. *See* Opp'n to Mot. for Prelim. Inj. at 13–14. Plaintiffs have recognized this fact since at least December 11, 2017, and even filed the corrected numbers on February 2, 2018. *See*, *e.g.*, Pls.' Status Report [39] at 2–3; Revised FNS-366B; *compare* Am. Compl. ¶ 82 ("For the period October 2016 through December 2016, DHS approved 5,633 expedited SNAP applications. Of these 5,633 expedited application approvals, 5,110 (90.71%) were approved late….") *with* Revised FNS-366B [44-2] at 2 (actual numbers were 581 out of 5,602 expedited applications (10.37%) approved untimely).[7]

Yet plaintiffs never sought to amend their allegations or otherwise account for their continued reliance on inaccurate information to form the bases for the claims in the Amended Complaint. Once the statistics on which they rely were

---

[7] Plaintiffs also rely on the quarter with the worst and most aberrant data, immediately following the rollout of the District of Columbia Access System (DCAS). The timeliness percentages have improved on subsequent FNS-366B reports. *See* Defendant's Surreply in Support of Opposition to Plaintiffs' Motion for Preliminary Injunction at 3–4. Further, FNS reported in April 2018 a timeliness for both initial applications and recertifications above 90%. Third Supplemental Declaration of Laura Green Zeilinger in Opposition to Plaintiffs' Motion for Preliminary Injunction [58-1] ¶¶ 21–24.

shown to be unreliable, plaintiffs' claims were reduced to "'naked assertion[s]' devoid of 'further factual enhancement'" that do not state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 3. The Amended Complaint Confuses Isolated Software Problems with SNAP Problems.

Throughout the Amended Complaint, plaintiffs cite problems FNS found with DCAS as evidence of SNAP failures. *See*, *e.g.*, Amend. Compl. ¶¶ 70–80, 89–91. This focus on DCAS errors demonstrates plaintiffs' fundamental mischaracterization of DCAS in this action. "As with the implementation of any new system, DCAS encountered its share of problems early in the DCAS launch, but they were identified and resolved quickly." Zeilinger Decl. ¶ 100. The fact that DCAS was not immediately working as the District had hoped—by, for example, automatically generating messages for beneficiaries—undoubtedly "severely impacted" the District's administration of SNAP, Am. Compl. ¶ 75, but not in the way plaintiffs suggest.[8]

The problems meant District was required to manually perform tasks that it had hoped would be automated through DCAS, including certain notices. *See*, *e.g.*, Opp'n to Mot. for Prelim. Inj. at 20 (DHS keeps FNS apprised of its effort to create workarounds to send notices manually). It was unsurprising that FNS "expressed concern [about] the project governance…." Am. Compl. ¶ 79. But the "project" was

---

[8] The use of the past tense is significant; plaintiffs rely on a report discussing the first weeks after the DCAS rollout; the District has made significant improvements to DCAS and continues to update the system. *See*, *e.g.*, Zeilinger Decl. ¶¶ 60, 64, 141, 153–55.

the DCAS project, not SNAP. But whether a notice was generated automatically by DCAS or manually by a District employee does not necessarily affect whether a beneficiary receives the notice at the proper time. *Compare* Am. Compl. ¶ 91 ("more than 12% of all *DCAS notices* for the week failed to successfully generate") (emphasis added) *with* Zeilinger Decl. ¶ 133 ("DHS sends out on average approximately 55,000 SNAP notifications per month. Some of the notices are still generated manually…."). Like the data discussed above, the alleged facts underpinning plaintiffs' allegations, and the reports between the District and FNS on which plaintiffs rely, have been superseded.

## IV.    Plaintiffs Fail to State a Due Process Violation.

In Claim Three, plaintiffs allege the District fails to provide written notice and an opportunity for a fair hearing to SNAP applicants whose applications are not processed within the mandated timeframes, in violation of the SNAP Act and the Due Process Clause of the Fifth and Fourteenth Amendments. Am. Compl. ¶ 173.

### A.    Plaintiffs Fail to State a Due Process Violation Under the Fifth Amendment.

Under well-established case law, a municipality may only be found liable if a plaintiff establishes a predicate constitutional violation and that a "custom, policy or practice" of the municipality caused that violation. *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008). "[D]ue process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to

present their objections.'" *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Cent. Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.").

"In the seminal case of *Mathews v. Eldridge*, the United States Supreme Court established a three-factor balancing test to determine the 'specific dictates of due process.'" *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 317 (D.C. Cir. 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). The test requires consideration of the following:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews*, 424 U.S. at 335). Under the *Mathews* balancing test, plaintiffs fail to allege a violation of their procedural due process rights.

The District acknowledges that the first *Mathews* factor—the "owner's interest"—could tip in favor of plaintiffs. However, the SNAP benefits of which plaintiffs allege they were deprived have already been restored. *See* Section II of Facts, above at 4; Zeilinger Decl. ¶¶ 157–63; Zeilinger Suppl. Decl. ¶¶ 17–27. Further, the remaining factors tip decidedly in favor of the District because any alleged deficiencies with providing notices of delayed processing of SNAP applications were isolated and have been corrected.

A key consideration under the second *Mathews* factor is "the risk of an erroneous deprivation" and "the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. As discussed above, the problems plaintiffs allege with respect to notices of delayed processing were corrected; plaintiffs allege no ongoing systemic deficiencies with respect to those notices. *Compare* Amend. Compl. ¶¶ 70–80, 89–91 *with* Zeilinger Decl. ¶ 100. Additionally, there are built-in procedural safeguards to detect notice failures: DHS closely monitors key notice dates for high-impact or high-volume notices, which allows the information technology team to monitor the volume and proactively identify and resolve any notice-related issues. *See* Zeilinger Decl. ¶ 137; *see also id.* ¶¶ 139–40, 144. Other safeguards provide beneficiaries and their legal representatives with informal means to alert the District to any alleged problem. *See* Section III.A above at 18 (citing to, among others, Zeilinger Decl. ¶¶ 13–26, 144, 156–171). Plaintiffs have demonstrated their familiarity with these methods. *See id.* and Section II of Facts, above at 4.

The final *Mathews* factor also favors the District. DHS sends out approximately 55,000 SNAP notifications per month. Zeilinger Decl. ¶ 133. The District has worked with FNS to implement procedures to ensure clients are timely notified of the determination of benefits and requirements of SNAP. *See id.* ¶¶ 136–145. Plaintiffs have not sufficiently stated a due process violation.

B.    <u>Plaintiffs Cannot Establish Municipal Liability Under Section 1983</u>.

Plaintiffs also fail to allege a basis for municipal liability under 42 U.S.C. § 1983 (Section 1983). Local governments, including the District, are "persons" for

purposes of Section 1983, but municipal liability cannot be predicated on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690–91 (1978). Rather, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691).

The D.C. Circuit has identified four ways official municipal policy can be demonstrated:   (1) express municipal policy; (2) actions of a final municipal "policymaker"; (3) persistent conduct by non-policymakers (*i.e.*, "custom" with force of law); and (4) "deliberate indifference" to a risk of constitutional injury. *See Baker v. District of Columbia*, 326 F.3d 1302, 1306–07 (D.C. Cir. 2003) (citations omitted). Each theory has its own elements, which a Section 1983 plaintiff bears the burden of pleading in accordance with *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015). Additionally, under any theory, a municipal liability claim separately requires proof of causation— specifically, an "affirmative link" between the alleged municipal policy and the alleged constitutional violation, "such that [the former] was the moving force behind the [latter]." *Baker*, 326 F.3d at 1306.

Plaintiffs here pursue municipal liability under a theory that the District has a "policy, practice, or custom" of failing "to provide written notice and an opportunity to request a fair hearing to SNAP applicants whose applications Defendant has not processed within the mandated timeframes …." Am. Compl.

¶ 173. "[M]ultiple incidents involving [multiple plaintiffs or] a single plaintiff could establish a 'custom' if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials." *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 829 (8th Cir. 2013). But plaintiffs do not allege such longstanding problems and the Court has noted "the sheer volume of SNAP recipients" means "declarations from a dozen or so households do not suffice to show a systemic failure." Mem. Op. and Order at 29. The Amended Complaint, indeed, includes no factual allegation of a named plaintiff or anyone else who did not receive written notice of a processing delay when such notice was due. Am. Compl. ¶ 173. Plaintiffs have, instead, made allegations about missing notices to recertify, *see* Section II of Facts, above at 4, and conclusory allegations "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681; *see* Am. Compl. ¶¶ 167–68. Thus, plaintiffs have not established the existence of "policies, practices, and procedures of failing to provide" notice of processing delays. Am. Compl. ¶ 173.

Plaintiffs also have not plausibly alleged a violation of due process because all official notices generated and sent by DHS contain the required information regarding appeal rights and available legal representation. *See* Opp'n to Mot. for Prelim. Inj. at 8. This includes the notice of delayed processing and appeal rights that Claim Three alleges the District fails to provide. *See* ECF No. 62.

C. **The Fourteenth Amendment Does Not Apply to the District of Columbia.**

The Due Process Clause of the Fourteenth Amendment reads, in pertinent part: "No State shall … deprive any person of life, liberty, or property without due process of law …." U.S. Const. amend. XIV. Thus, the Fourteenth Amendment explicitly applies only to the States—it does not apply to the federal government or the District of Columbia. *Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 153–54 (D.D.C. 2007) (citing *Bolling v. Sharpe*, 347 U.S. 497, 498 (1954) (holding that the Fourteenth Amendment does not apply to the District of Columbia)); *see also Butera v. District of Columbia*, 235 F.3d 637, 645 n.7 (D.C. Cir. 1987) (explaining that, while due process violations are typically analyzed under the Fourteenth Amendment, the District of Columbia, which is not a state, is subject to the Due Process Clause of the Fifth Amendment); *Atherton*, 567 F.3d at 689. Because plaintiffs sue Director Zeilinger, in her official capacity as Director of DHS, the Fourteenth Amendment is inapplicable.

V. **The District of Columbia Should be Substituted as the Proper Defendant.**

If any of plaintiffs' claims survive the District's motion to dismiss, the Court should substitute the District of Columbia for Director Zeilinger as the defendant because the District is the real party in interest. *Lopez v. District of Columbia*, 268 F. Supp. 3d 256, 259 (D.D.C. 2017) (quoting *Atchison v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996)) ("A section 1983 suit … against municipal officials in their official capacities is equivalent to a suit against the municipality itself.") (alteration omitted); *Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 445 n.3

(D.D.C. 2014) (substituting the District for the Chancellor of the District of Columbia Public Schools (DCPS), former Chancellor, and DCPS); *Doe v. District of Columbia*, 2008 U.S. Dist. LEXIS 110348, *1 (D.D.C. Nov. 12, 2008) (denying attempt to name mayor "in his official capacity" as "both futile" and "redundant … [as] the District is already a defendant"). *See also* Mem. Op. and Order at 2 (it is the District that "elect[ed] to participate in SNAP and … [is] responsible for … administering the program on the state level.") and at 7 n.3.

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiffs' Amended Complaint, with prejudice.

Dated:  July 17, 2018.                    Respectfully submitted,

                                          KARL A. RACINE
                                          Attorney General for the District of Columbia

                                          TONI MICHELLE JACKSON
                                          Deputy Attorney General
                                          Public Interest Division

                                          /s/ Fernando Amarillas
                                          FERNANDO AMARILLAS [974858]
                                          Chief, Equity Section

                                          /s/ Conrad Z. Risher
                                          CONRAD Z. RISHER [1044678]
                                          AMANDA J. MONTEE [1018326]
                                          Assistant Attorneys General
                                          441 Fourth Street, N.W., Sixth Floor South
                                          Washington, D.C. 20001
                                          (202) 442–5868
                                          (202) 741–0557 (fax)
                                          conrad.risher@dc.gov

                                          *Counsel for Defendant the District of Columbia*