**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
SHONICE G. GARNETT, *et al*.,                       )
                                                    )
                              *Plaintiffs*,         )
                                                    )   Civil Action No. 17-1757 (CRC)
                      v.                             )
                                                    )
LAURA ZEILINGER,                                    )
                                                    )
                              *Defendant*.          )
_____             )


**<u>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATUTORY AND REGULATORY SCHEME.................................................................... 1

STATEMENT OF FACTS .................................................................................................... 4

    I.      Defendant's Systemic Failure to Meet SNAP Application Timeliness and Notice
           Requirements ........................................................................................................ 4

STANDARD OF REVIEW .................................................................................................. 5

ARGUMENT ...................................................................................................................... 7

    I.      The Class Representatives Have Standing and Their Claims are Not Moot .......... 7

        A.      The Class Representatives Have Standing...................................................... 7

        B.      Plaintiffs' Claims Are Not Moot.................................................................. 11

    II.     Bread for the City Has Standing ........................................................................ 14

        A.      Bread Suffers an Injury-in-Fact .................................................................. 14

        B.      Defendant's Actions Caused Bread's Diversion of Resources....................... 16

    III.    Plaintiffs Have Adequately Alleged Violations of the SNAP Act ...................... 16

        A.      7 U.S.C. § 2014(a) and 7 U.S.C. §§ 2020(e)(3), (4), (9), & (10) Create
               Individually Enforceable Rights .................................................................. 16

        B.      The SNAP Act Does Not Require Plaintiffs to Exhaust Administrative
               Remedies.................................................................................................... 23

    IV.    Plaintiffs State Claims Under the SNAP Act Provisions at Issue in this Case ..... 24

    V.     Plaintiffs State a Claim Under the Due Process Clause of the Fifth Amendment 25

        A.      Defendant's Failure to Send Notices of Delay Constitutes a Due Process
               Violation .................................................................................................... 26

        B.      Plaintiffs Have Established Municipal Liability Under 42 U.S.C. § 1983 ..... 29

         C.      The Requirements of Due Process Under the Fifth and Fourteenth
               Amendment Apply to Defendant................................................................... 30

    VI.    Defendant Zeilinger is a Proper Defendant ......................................................... 31

CONCLUSION.................................................................................................................. 32

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                               **Page(s)**

*Allen v. Wright,*
   486 U.S. 737 (1984)..........................................................................................16, 19, 20, 21

*Almendares v. Palmer,*
   No. 3:00-CV-7524, 2002 U.S. Dist. LEXIS 23258 (N.D. Ohio Dec. 3, 2002) ................21, 22

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...........................................................................................................6

*Atkins v. Parker,*
   472 U.S. 115 (1985).........................................................................................................26

*Barry v. Lyon,*
   834 F.3d 706 (6th Cir. 2016) ...........................................................................................20

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...........................................................................................................6

*Blessing v. Freestone,*
   520 U.S. 329 (1997).............................................................................................17, 18, 22

*Blue v. District of Columbia,*
   850 F. Supp. 2d 16 (D.D.C. 2012) ..................................................................................29

*Booth v. McManaman,*
   830 F. Supp. 2d 1037 (D. Haw. 2011) ............................................................................30

*Briggs v. Bremby,*
   2012 WL 602617 (D. Conn. Dec. 4, 2012)......................................................................22

*Briggs v. Bremby,*
   792 F.3d 239 (2d Cir. 2015).................................................................................18, 19, 20

*Butera v. District of Columbia,*
   235 F.3d 637 (2001)..........................................................................................................31

*Colbert v. District of Columbia,*
   78 F. Supp. 3d 1 (D.D.C. 2015)......................................................................................31

*Coleman through Bunn v. District of Columbia,*
   306 F.R.D. 68 (D.D.C. 2015).............................................................................................7

*D.L. v. District of Columbia,*
   187 F. Supp. 3d 1 (D.D.C. 2016) ....................................................................................12

*D.L. v. District of Columbia,*
  302 F.R.D. 1 (D.D.C. 2013)................................................................7, 8, 10, 13

*D.O. v. Glisson,*
  847 F.3d 374 (6th Cir. 2017) ...........................................................................21

*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.,*
  28 F.3d 1268 (D.C. Cir. 1994)....................................................................15, 16

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
  528 U.S. 167 (2000)....................................................................................11, 12

*Goldberg v. Kelly,*
  397 U.S. 254 (1970).........................................................................................26

*Gonzaga Univ. v. Doe,*
  536 U.S. 273 (2002)........................................................................17, 19, 20, 21

*Gonzalez v. Pingree,*
  821 F.2d 1526 (11th Cir. 1987) .......................................................................21

*Gulf Coast Mar. Supply, Inc. v. United States,*
  867 F.3d 123 (D.C. Cir. 2017) ...........................................................................6

*Jackson v. District of Columbia,*
  89 F. Supp. 2d 48 (D.D.C. 2000) .....................................................................23

*Kapps v. Wing,*
  404 F. 3d 105 (2d Cir. 2005).............................................................................26

*Krieger v. Loudoun Cty., Dep't of Soc. Servs.,*
  No. 5:13-CV-00073, 2014 WL 4923207 (W.D. Va. July 14, 2014) .................22

*LaShawn A. v. Dixon,*
  762 F. Supp. 959 (D.D.C. 1991) .......................................................................31

*League of Women Voters of the U.S. v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016) ..............................................................................14

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)......................................................................................8, 16

*M.K.B. v. Eggleston,*
  445 F. Supp. 2d 400 (S.D.N.Y. 2006)...............................................................26

*Maine v. Thiboutot,*
  448 U.S. 1 (1980).............................................................................................21

*Mathews v. Eldridge,*
    424 U.S. 319 (1976)..................................................................................27, 28

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978)..................................................................................29

*National Treasury Employees Union v. United States,*
    101 F.3d 1423 (D.C. Cir. 1996) ..............................................................14, 15

*Patsy v. Bd. of Regents,*
    457 U.S. 496 (1982)..................................................................................23, 24

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.,*
    797 F.3d 1087 (D.C. Cir. 2015) ..............................................................14, 15, 16

*Pintro v. Wheeler,*
    35 F. Supp. 3d 47 (D.D.C. 2014) ............................................................25

*Randolph v. ING Life Ins. & Annuity Co.,*
    486 F. Supp. 2d 1 (D.D.C. 2007) ............................................................6

*Reynolds v. Giuliani,*
    35 F. Supp. 2d 331 (S.D.N.Y. 1999)........................................................23

*Salazar v. District of Columbia,*
    954 F. Supp. 278 (D.D.C. 1996) ..............................................................31

*Silverman v. Barry,*
    727 F.2d 1121 (D.C. Cir. 1984) ..............................................................23

*Steinberg v. Gray,*
    815 F. Supp. 2d 293 (D.D.C. 2011) ........................................................32

*Swanson Group Mfg., LLC v. Jewell,*
    195 F. Supp. 3d 66 (D.D.C. 2016) ..........................................................7

*Victorian v. Miller,*
    813 F.2d 718 (5th Cir. 1987) ..................................................................21, 26

*Wash. All. of Tech. Workers v. U. S. Dep't of Homeland Sec.,*
    892 F.3d 332 (D.C. Cir. 2018) ................................................................6

*Wilder v. Virginia Hosp. Ass'n,*
    496 U.S. 498 (1990)..................................................................................19, 20, 21

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989)....................................................................................30, 32

*Williston v. Eggleston*,
 379 F. Supp. 2d 561 (S.D.N.Y. 2005)....................................................................22

*Xia v. Tillerson*,
 865 F.3d 643 (D.C. Cir. 2017) ......................................................................6, 24

**Regulations**

7 C.F.R. § 273.2 ..................................................................................................2

7 C.F.R. § 273.10 ........................................................................................ *passim*

7 C.F.R. § 273.14 ..................................................................................................3

7 C.F.R. § 273.15 ....................................................................................3, 17, 25

7 C.F.R. § 274.2 ..................................................................................................2

**Rules**

Federal Rule of Civil Procedure 12(d)................................................................25

Federal Rule of Civil Procedure 12(b)..............................................................5, 6

**Statutes**

7 U.S.C. § 2011 ..................................................................................................2

7 U.S.C. § 2014................................................................................2, 16, 20

7 U.S.C. § 2020........................................................................................ *passim*

7 U.S.C. § 2023................................................................................................23, 24

42 U.S.C. § 1983........................................................................................ *passim*

Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, §§ 4001–02,
 122 Stat. 1853 (2008)..............................................................................1

**Provisions of the U.S. Constitution**

U.S. Const. amend V..............................................................................25, 30, 31

U.S. Const. amend XIV ..........................................................................30, 31

## PRELIMINARY STATEMENT

Nearly a year after Plaintiffs initiated this litigation, Defendant has filed a Motion to Dismiss that rehashes many of the same arguments she has already brought before the Court unsuccessfully.  *See* ECF ##31, 32, 48, 49.  Each of these arguments remains unavailing and without merit.  Both Individual Plaintiffs and Organizational Plaintiff Bread for the City ("Bread") have standing to pursue the claims raised in Plaintiffs' Amended Complaint (the "Complaint").  And Plaintiffs have adequately alleged violations of the SNAP Act and the Constitution (enforceable through 42 U.S.C. § 1983) arising out of Defendant's ongoing systemic failure to: (1) timely process initial and recertification SNAP applications and provide benefits to eligible households; (2) timely provide notice to participating SNAP households of their need to submit a recertification application before the conclusion of their certification period; and (3) provide notice of delays in the processing of SNAP applications and opportunity for fair hearings.  The Court has now certified three Plaintiff classes, appointed the named Plaintiffs as representatives of those classes (the "Class Representatives"), and granted, in part, Plaintiffs' request for preliminary injunctive relief.  ECF ##56, 60.  Ignoring this reality, Defendant's Motion to Dismiss represents her most recent effort to deter the initiation of merits discovery and delay efficient resolution of this litigation.  For the reasons set forth below, the Court should deny Defendant's Motion to Dismiss.

## STATUTORY AND REGULATORY SCHEME

SNAP provides vital nutrition assistance to indigent individuals and families.  Originally established by Congress as the federal Food Stamp Program in 1964,[1] the purpose of SNAP has

---

[1] Effective October 1, 2008, the federal Food Stamp Program was renamed the Supplemental Nutrition Assistance Program and the federal Food Stamp Act was renamed the Food and Nutrition Act of 2008 ("SNAP Act").  Food, Conservation, and Energy Act of 2008,

been to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. Defendant oversees the District of Columbia Department of Human Services ("DHS"), which administers SNAP in the District of Columbia.

7 U.S.C. § 2014(a) requires Defendant to provide SNAP benefits to all eligible households who submit an application for participation in SNAP. 7 U.S.C. § 2014(a). 7 U.S.C. § 2020(e)(3) requires Defendant to provide SNAP benefits to eligible applicants no later than 30 days after the date of their application. 7 U.S.C. § 2020(e)(3); *see also* 7 C.F.R. § 273.2(a), (g)(1). 7 U.S.C. § 2020(e)(9) further requires Defendant to provide SNAP benefits on an expedited basis within seven days of application to certain households with very low income and liquid resources. 7 U.S.C. § 2020(e)(9); *see also* 7 C.F.R. § 273.2(i)(2), (i)(3)(i).[2] Providing SNAP benefits within these deadlines means providing households with active benefits that have been posted to their Electronic Benefits Transfer ("EBT") card for spending. *See* 7 C.F.R. § 274.2(b).

Defendant must certify SNAP households for a specified period of time (a "certification period"), at the end of which the household must "recertify" to continue participation in the program. *See* 7 C.F.R. § 273.10(f). 7 U.S.C. § 2020(e)(4) requires Defendant to notify each SNAP household of the expiration of its certification period by providing a Notice of Expiration ("NOE," also referred to as a "recertification notice") before the start of the last month of the

Pub. L. No. 110-246, §§ 4001–02, 122 Stat. 1853 (2008). The terms "SNAP" and "food stamps" are used interchangeably.

[2]     Expedited issuance of SNAP benefits is available to the following households in immediate need: (a) those with very low gross income and liquid resources (less than $150 per month and no more than $100, respectively); (b) those with combined gross income and liquid resources that are less than the monthly household rent or mortgage, and utilities; and (c) those constituting destitute migrant or seasonal farmworker households. 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(a)(2), (i)(1).

certification period. 7 U.S.C. § 2020(e)(4).  Through the NOE, the agency notifies the household

that it is due to recertify and that its benefits will expire if a recertification application is not

submitted by a certain deadline.  The NOE must contain the date the certification period expires

and the date by which a household must submit an application for recertification to receive

uninterrupted SNAP benefits.  7 C.F.R. § 273.14(b)(1).

      7 U.S.C. § 2020 (e)(4) further requires Defendant to provide eligible households an

opportunity to receive SNAP benefits no later than 30 calendar days after the date the household

received its last allotment or by its normal issuance date in the month following the end of its

certification period.  *See also* 7 C.F.R. § 273.14(d).  § 2020(e)(4) also provides that households

that submit recertification applications by the fifteenth day of the last month of the certification

period have timely applied for recertification.  Defendant must provide an opportunity for

SNAP-eligible households that timely submitted their recertification application to participate in

SNAP by the household's normal benefit issuance date in the month after the end of its current

certification period.  *See also* 7 C.F.R. § 273.14(c)(2), (d).  7 U.S.C. § 2020(e)(4) also requires

Defendant to process recertification applications received after the fifteenth day of the last month

of the certification period, but before the end of the certification period (within 30 days from the

date of application).  *Id.* § 273.14(e)(1).  As to those households found eligible, Defendant must

provide a full month's SNAP allotment for the first month of the new certification period.  *Id.*

      For those applicants whose initial or recertification applications have not been timely

processed, the Defendant must send a written notice informing the affected household that its

application has not been completed and is being processed and must include certain other

specified information, including information about the right to a hearing.  *See* 7 U.S.C.

§ 2020(e)(10); 7 C.F.R. §§ 273.10(g)(1)(iii), 273.15 (a).

## STATEMENT OF FACTS

I.   **DEFENDANT'S SYSTEMIC FAILURE TO MEET SNAP APPLICATION TIMELINESS AND NOTICE REQUIREMENTS**

Plaintiffs' Complaint provides background facts regarding Defendant's administration of SNAP in the District of Columbia.  *See* Amended Class Action Complaint, ECF #26 ("Am. Compl.") ¶¶64-69.  The Complaint also sets forth in great detail the policies and practices that have caused Plaintiffs and the Plaintiff Classes to be subjected to violations of 7 U.S.C. §§ 2020 (e)(3), (4), (9), (10), 2014 (a), their implementing regulations, and Constitutional Due Process. *See* Am. Compl. ¶¶70-95.

Plaintiffs' allegations trace part of Defendant's noncompliance to her implementation of a new application processing system (the District of Columbia Access System, or "DCAS") in October 2016.  Defendant implemented DCAS despite multiple warnings from the Food and Nutrition Service ("FNS") at the U.S. Department of Agriculture (the federal agency charged with overseeing SNAP administration) that its premature implementation could lead to systemic failures to meet SNAP requirements.  *See* Am. Compl. ¶¶70-72.  FNS' targeted review of Defendant's operation of SNAP following implementation of DCAS confirmed ongoing systemic failures causing delays in SNAP application processing, as well as massive failures in the issuance of notices.  *See id.* ¶¶73-76, 79-80, 89-94.

The Complaint also cites data produced by DHS to FNS for the period October 2016 through December 2016, which indicates that DHS failed to timely approve 69.15% of initial applications, 90.71% of expedited applications, and 58.98% of recertification applications.  *See* Am. Compl. ¶¶81-83.  As Defendant admits in her Motion to Dismiss (pp. 21-23), after Plaintiffs filed their Amended Complaint Defendant withdrew this data as inaccurate and has produced to FNS revised reports of timeliness compliance.  Defendant has also produced updated data in the

form of quarterly FNS-366-B and "Application Processing Timeliness" ("APT") reports, which the Parties have provided to the Court in conjunction with Plaintiffs' Motions for Preliminary Injunction and Class Certification.  *See* ECF ##44-2; 49-2; 58-1.  Data in these reports continue to demonstrate Defendant's failure to absolutely comply with SNAP timeliness requirements and served as part of the foundation supporting this Court's award of preliminary injunctive relief. *See* ECF #60, at 11-13.

The Complaint also sets forth specific allegations as to the manner in which Defendant's systemic failures have caused Individual Plaintiffs to be subjected to deprivations of their rights under the SNAP Act, its implementing regulations, and Constitutional Due Process.[3]  *See* Am. Compl. ¶¶96-147.  The Complaint also alleges that Bread has been directly impacted by the enlarged demand for community-based charitable food resources resulting from Defendant's failure to timely process SNAP applications and issue SNAP benefits to eligible households. Specifically, because of Defendant's systemic failures, Bread has diverted, is diverting, and will continue to divert scarce resources—including staff time—to: (1) identifying and counseling clients; (2) investigating complaints; (3) making referrals to other legal services organizations, including Legal Aid; and (4) providing additional food and resources for food to individuals and families whose initial or recertification applications for SNAP were unnecessarily delayed or improperly processed.  *See* Am. Compl. ¶¶148-163.

## **STANDARD OF REVIEW**

Defendant brings her Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rule of Civil Procedure.  Generally, a motion to dismiss under Federal Rule of Civil Procedure 12(b) should not prevail "unless plaintiffs can prove no set of facts in support of their claim that

---

[3]     Individual Plaintiff Tracey Ross voluntarily dismissed her claims on December 21, 2017. ECF #42.

would entitle them to relief." *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 4-5 (D.D.C. 2007) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  In considering a motion challenging subject matter jurisdiction under Rule 12(b)(1), a court "may consider materials outside the pleadings . . . ." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017) (citing *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).  "At the stage in litigation when dismissal is sought, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts." *Randolph*, 486 F. Supp. 2d at 5 (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

Under Rule 12(b)(6), the Court examines whether a Complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wash. All. of Tech. Workers v. U. S. Dep't of Homeland Sec.*, 892 F.3d 332 (D.C. Cir. 2018) (citing *Iqbal*, 556 U.S. at 662).  The Court must "treat the complaint's factual allegations as true and must grant the plaintiff[s] the benefit of all inferences that can be derived from the facts alleged." *Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (internal citation omitted).  A complaint must provide "more than labels and conclusions"; although it "does not need detailed factual allegations," the factual allegations "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

### I.   THE CLASS REPRESENTATIVES HAVE STANDING AND THEIR CLAIMS ARE NOT MOOT

Defendants' motion to dismiss for lack of standing should be dismissed because the Class Representatives' standing to bring this suit was necessarily found as a part of the Court's partial grant of Plaintiffs' motion for a preliminary injunction, and its grant of Plaintiffs' motion for class certification. *See Swanson Group Mfg., LLC v. Jewell*, 195 F. Supp. 3d 66, 79 (D.D.C. 2016) ("The affirmative burden of showing a [substantial] likelihood of success on the merits . . . necessarily includes a likelihood of the court's *reaching* the merits, which in turn depends on a substantial likelihood that plaintiff has standing.") (internal citations and quotations omitted); *Coleman through Bunn v. District of Columbia*, 306 F.R.D. 68, 74 (D.D.C. 2015) ("Any analysis of class certification must begin with the issue of standing.").  Because Plaintiffs' allegations previously "r[o]se to the level of the 'substantial likelihood' required at the preliminary injunction phase," Plaintiffs necessarily meet the standing requirements of the "lower 'likely' standard required at [the] motion-to-dismiss phase."  *See Swanson Group Mfg.*, 195 F. Supp. 3d at 79; *see also id.* at 76 n.8 ("[A]t the motion to dismiss stage the plaintiff must demonstrate that the injury is 'likely' redressed by a favorable decision on the merits, as opposed to the more exacting standard of 'substantial' likelihood required at the summary judgment or preliminary injunction stage.").  Defendant's attempt at a second bite at the standing apple should be rejected for the reasons set forth below, and her motion to dismiss on standing grounds should be denied.

### A.   The Class Representatives Have Standing

Defendant's motion to dismiss on standing grounds fails because she completely ignores the rule that "[s]tanding . . . is 'assessed as of the time a suit commences.'"  *See D.L. v. District of Columbia*, 302 F.R.D. 1, 19 (D.D.C. 2013) (quoting *Del Monte Fresh Produce Co. v. United*

*States*, 570 F.3d 316, 324 (D.C. Cir. 2009)).  While Defendant correctly identifies the three

requirements for standing—injury, causation, and redressability, *see, e.g.*, *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61 (1992)—she fails to present any arguments for why Plaintiffs

failed to meet these requirements as of the time this suit commenced.  Defendant's failure is

simply explained: Plaintiffs have standing.

This Court has already found that Plaintiffs are suffering injuries caused by Defendant's

failure to process initial and recertification applications in a timely matter, and that these injuries

are "irreparable and will continue to occur to class members until the District is in full

compliance [with its obligations under the SNAP Act]."  Memorandum Opinion and Order, ECF

#60 at 14.  The Court used examples of the injuries that were being suffered by the named

Plaintiffs at the time the Complaint was filed to illustrate the irreparable harms being suffered by

other class members.  *Id*. at 13; *see also* Am. Compl. at ¶¶96-117, 140-147 (describing

Defendant's failures to provide timely determinations of SNAP benefits for Class

Representatives Garnett, Messick, Murph, and Harris).  These injuries, which were caused by the

Defendant, were not resolved as of the time this suit commenced and were redressable by a

Court order requiring the Defendant to timely process initial and recertification applications.

Plaintiffs also have demonstrated that they have standing with regard to their claim that

Defendant fails to provide an opportunity for SNAP recipients to complete the recertification

process and have SNAP benefits for the new certification period issued in a timely manner.  The

allegations of Class Representatives Stanley, Gaines, and Harris demonstrate injury, causation,

and redressability; Defendant did not provide these Plaintiffs with an NOE informing them of the

need to apply to recertify their food stamps eligibility as required by law, and as a result, they

had not received food stamps as of the time this suit commenced.  Am. Compl. at ¶¶123-147

(describing Defendant's failures to provide required notices to Class Representatives Stanley, Gaines, and Harris). These claims are also redressable by an order of this Court requiring compliance with the statutory and regulatory requirements.

Defendant's arguments to the contrary are meritless. For example, Defendant argues that Plaintiffs' allegations rely on "statistics . . . but statistics cannot establish standing." Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def. MTD"), ECF #71-1 at 11. The failing of statistics, as Defendant puts it, is that "statistics can show only that *someone* may be injured, not which specific person." *Id.* But what Defendant ignores is that the Class Representatives did not rely on statistics to prove they may be injured. The Class Representatives alleged facts showing that they actually were injured and then submitted sufficient evidence of those injuries that the Court found them to be adequate class representatives and that they and the class were entitled to a preliminary injunction. *See* Am. Compl. at ¶¶97-147; Memorandum Opinion and Order, ECF #56 at 15-16 (finding the named plaintiffs to be adequate class representatives); ECF #60 at 21-22 (granting in part Plaintiffs' motion for a preliminary injunction).

Similarly, Defendant asserts that "[i]n some circumstances, the alleged deficiency was because of a beneficiary's error and, in other instances, there was no actual deficiency," but her only support for this assertion is her own Opposition to Plaintiffs' Motion for a Preliminary Injunction. ECF #31 at 22-23. Therein, citing to her own declaration, Defendant argued only that *Declarant* Ebony Coe received a recertification notice, but failed to recertify, and that *Declarant* Yesica Guevara was ineligible to receive SNAP benefits. *Id.* There are two patent flaws with this argument. First, the argument proves nothing; it simply raises a factual dispute that cannot be resolved on the record before the Court. *See* Decl. of Ebony Coe, ECF #24-43 at

¶¶3, 5 ("I was never sent a notice telling me that I had to complete my annual recertification," and "I never received this notice, even though I have lived at the same address for several years and haven't had any trouble getting mail from DHS . . . ."); Decl. of Yesica Guevara, ECF #24-45 at ¶¶3, 10 (citing her income, and stating that a DHS employee claimed during an Administrative Review Conference that her benefits stopped because her case "did not transport over" to DHS's new system, rather than income ineligibility).  Second, and more importantly, Defendant's arguments about two ***Declarants'*** alleged errors are entirely irrelevant to the question of whether any one of the ***Class Representatives*** lacked standing when this suit commenced.

Finally, Defendant argues Plaintiffs have not shown redressability because either "the District was not at fault" or because "the alleged injury-in-fact no longer exists."  Def. MTD at 12.  As with her causation argument, Defendant's argument that *Plaintiffs*' injuries are not redressable due to the District not being at fault appears to only be supported by her own unproven, and disputed, assertion that a *Declarant* failed to timely recertify after being provided a timely NOE.  *See* Def. MTD at 12.  The District's other argument (that Plaintiffs' injuries are not redressable because the "alleged injury-in-fact no longer exists") "misapprehends the distinction between standing and mootness.  Standing—the requirement that plaintiffs have suffered a concrete injury caused by the defendant and capable of judicial redress—is 'assessed as of the time a suit commences.'  So long as the named Plaintiffs met this requirement at the time that the initial complaint was filed, Article III standing is satisfied."  *D.L.*, 302 F.R.D. at 19.  Because Plaintiffs plainly met this requirement, they interpret Defendant's latter argument as one based in mootness, rather than standing, and address it below.

**B.      Plaintiffs' Claims Are Not Moot**

Defendant suggests that Plaintiffs' claims are moot because "[o]nce the District was aware of the difficulties allegedly experienced by plaintiffs (and other declarants), any issues were promptly resolved," and therefore any alleged injury that may have occurred no longer exists.  Def. MTD at 11-12.  This argument is fatally flawed and fails both as a matter of fact and a matter of law.

It fails as a matter of fact because Defendant has not established that she fully compensated the Class Representatives for their alleged injuries.  All she has done is raise factual issues that cannot be resolved on the record before the Court.  *Compare, e.g.*, Supp. Decl. of Laura Zeilinger, ECF #49-1 at ¶20 (asserting that Class Representative Gaines received benefits on January 9 that included retroactive payments to "the application date," *i.e.*, November 22, 2017 rather than the date the certification period expired), *with* Am. Compl. at ¶139 and Decl. of Roderick Gaines, ECF #45-40 at ¶11 (stating that the SNAP benefits provided to Class Representative Gaines on January 9 were "less than the amount I would have received had I been given retroactive benefits all the way back to my termination date at the beginning of September").

And it fails as a matter of law because the alleged "mootness" is solely based upon Defendant's own voluntary cessation of challenged conduct.  *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.") (internal citations and quotations omitted).  The standard set forth by the Supreme Court "for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to

11

recur.  The heavy burden of persuading the court that the challenged conduct cannot reasonably

be expected to recur lies with the party asserting mootness."  *Id.* (internal citations and

quotations omitted).  Defendant has not met that burden here.

Defendant admits that it was only ***after*** the initiation of this lawsuit that she corrected her

prior failures to provide the Class Representatives and Declarants timely benefits determinations

and required notices.  *See, e.g.*, Def. MTD at 11; *see also D.L. v. District of Columbia*, 187 F.

Supp. 3d 1, 10 (D.D.C. 2016) (finding that even a "recent period of sustained compliance . . .

[did not make it] absolutely clear there could be no reasonable expectation of recurrence [of

challenged conduct]," in part because the "defendants began to comply with [the applicable law]

*because of* . . . litigation").  Moreover, this was ***after*** repeated attempts by Plaintiffs to get

Defendant to address the issue.  For example, Class Representative Richard Messick applied for

food stamps on January 13, 2017.  Am. Compl. at ¶¶105.  Despite his repeated attempts to get

Defendant and DHS to address the delay in his SNAP benefits eligibility determination,

including a call to the Mayor's office, a call to the D.C. Office of the Inspector General, two calls

to DHS, an additional visit to the intake center to submit an entirely new application, and a letter

sent directly to Defendant Zeilinger herself, Class Representative Messick was not provided with

appropriate retroactive benefits until the October following the initiation of this litigation.  *See,*

*e.g.*, Am. Compl. at ¶108; Decl. of Richard Messick, ECF #24-33 at ¶¶9-12; Decl. of Laura

Zeilinger, ECF #31-1 at ¶158.  Similarly, despite Class Representative Gaines' attempts in

September, October, November, and December 2017—all after this suit commenced—to resolve

the issue with his food stamps caused by Defendant's failure to provide him with required notice,

Mr. Gaines was not provided with any relief until January 2018, and even then, that relief was

incomplete.  Am. Compl. at ¶¶135-136; ECF #45-40 at ¶¶9-12; ECF #49-1 at ¶20.[4]  To the

extent Defendant ultimately provided benefits to individual Plaintiffs, that fact does not establish

voluntary cessation of illegal conduct even as to those individuals, because despite Defendant's

corrective action, the agency unlawfully delayed processing and issuance of their benefits.

Further, this Court has found, and Defendant has admitted, that many of Defendant's

failures that formed the foundation of Plaintiffs' case are ongoing with respect to absent class

members.  *See, e.g.*, ECF #60 at 9-12.  Thus, Defendant has not shown, nor could she, that her

selective correction of failures in response to this lawsuit makes it "absolutely clear" that the

failures Plaintiffs experienced could not be reasonably expected to recur for either the Class

Representatives themselves, should they need to eventually recertify for benefits, or for the rest

of the class as a whole.[5]

In sum, the Class Representatives have standing to bring this case because they have

alleged that they suffered injuries at the time this suit was commenced, which were caused by the

Defendant, and which were redressable by this court.  Defendant's arguments to the contrary are

without merit, and she has not met her burden to show this case is moot simply because she

eventually processed the applications for the Class Representatives, albeit beyond the statutorily

---

[4]     These facts, as well as those of other Plaintiffs, contradict the District's assertion that as
soon as they learned of the problems experienced by Plaintiffs, the problems were immediately
fixed.  *Compare* Def. MTD at 11 ("Here, plaintiffs did not inform the District of their alleged
injuries until filing this action.  Once the District was aware of the difficulties allegedly
experienced by plaintiffs (and other declarants), any issues were promptly resolved.") *with*, *e.g.*,
ECF #31 at 8; ECF #24-40 at ¶¶9, 11, 13 *and* ECF #24-47 at ¶¶9, 11 (showing plaintiffs and
declarants reported the issues underpinning this lawsuit to the District well in advance of the
filing of this lawsuit, and that those issues were not promptly resolved).

[5]     Even if Defendant's mootness argument did not rest solely on Defendant's own actions,
Plaintiffs' claims would not be moot due to the inherently transitory nature of the classes, whose
members' eligibility for SNAP benefits fluctuates with Plaintiffs' often unstable income.  *See
generally, D.L.*, 302 F.R.D. at 20 ("The inherently transitory exception to mootness permits
relation back in any situation where composition of the claimant population is fluid, but the
population as a whole retains a continuing live claim.").

mandated time frames, while she continues to fail to perform her obligations with regard to

hundreds of absent class members.  Accordingly, Defendant's motion to dismiss on standing on

mootness grounds should be denied.

## II.   BREAD FOR THE CITY HAS STANDING

Defendant argues that Bread lacks standing because its injuries are not injuries-in-fact

and are caused by Bread itself, not Defendant.  Def. MTD at 13-16.  This is not the case.  Bread

has pled sufficient facts to show that it suffers an actual injury-in-fact fairly traceable to

Defendant's illegal actions and thus has standing.[6]  *See People for the Ethical Treatment of*

*Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) ("*PETA*").

### A.   Bread Suffers an Injury-in-Fact

Organizational Plaintiff Bread suffers an injury-in-fact because of Defendant's failed

administration of SNAP.  The D.C. Circuit has held that "[a]n organization is harmed if the

actions taken by the defendant have perceptibly impaired the organization's programs." *League*

*of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016) (internal quotation marks

omitted and alterations adopted).  That is the case here, where "[D]efendant's conduct has made

[Bread's] activities more difficult." *See National Treasury Employees Union v. United States*,

101 F.3d 1423, 1430 (D.C. Cir. 1996).  Bread acts as a safety net for low-income DC residents

by providing food and other necessities.  Am. Compl., ¶¶148-49.  In October 2016—when DHS

---

[6]     Defendant argues that Bread cannot sustain a due process violation because Bread has not been deprived of a liberty or property interest. ECF #71-1 at 13. But Bread has never claimed that Defendant deprived Bread of its own due process rights (nor, for that matter, that Defendant failed to process Bread's SNAP benefits application in a timely manner or failed to provide Bread with a required NOE).  Rather, Bread alleges that Defendant has violated the rights of Bread's *clients*, which has led to a diversion of scarce food, social, and legal services from Bread's other clients and significantly frustrated Bread's purpose of providing low-income residents of the District of Columbia with food, clothing, medical care, and social and legal services.  Am. Compl., ¶ 160-162.

first implemented DCAS—Bread saw a surge in the demand for its food assistance that created a strain on its already-limited resources. *Id.*, ¶¶150–52. This strain resulted in Bread's having to reduce its food program budget in fiscal year 2018 to compensate for the toll on its resources. *Id.*, ¶152. Bread's injury is not a simple "setback to [its] abstract social interests." *National Treasury Employees Union*, 101 F.3d at 1430 (internal citation and quotations omitted). On the contrary, feeding fewer low-income District residents is as concrete as possible of an injury to Bread.

Defendant contends that Bread's injuries are self-inflicted and are not injuries-in-fact, because it chose to feed more clients. Def. MTD at 15–16. This misunderstands Bread's injury. Bread's injury is not that it served more people, but that it had to divert finite resources away from other programs because of Defendant's failure to comply with federal law. *See* Am. Compl., ¶160. The D.C. Circuit has upheld this type of injury-in-fact for decades. *See Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994) (the increase in number of people requiring counseling because of defendant's discrimination constitutes an injury); *PETA*, 797 F.3d at 1095 (expending resources to investigate and respond to complaints of inhumane treatment because of USDA's failure to do so constituted injury).

Defendant also accuses Bread's Legal Clinic of manufacturing an injury in preparation for litigation. Def. MTD at 15. But Bread's Legal Clinic only diverted resources away from other Bread programs based on clients' needs, not in preparation for litigation. *See* Am. Compl., ¶154. The Legal Clinic's internal referral system was not developed to ensure that clients of other Bread programs receive legal help when having problems with their food stamps. *Id.* Voluntarily diverting resources from one part of an organization's budget to another to counteract an agency's unlawful actions, as Bread has done here, is not a "self-inflicted" injury.

*See PETA*, 797 F.3d at 1097.  This holds true even when the diversion of resources is to a legal

program, as opposed to preparing for the litigation at issue.  *Compare id.* at 1096 (spending

resources on staff attorney time to counteract agency's failure to regulate birds is an injury), *with*

*Fair Emp't Council*, 28 F.3d at 1277 (paying testers to determine extent of defendant's racial

discrimination for lawsuit is not an injury).

### B.   Defendant's Actions Caused Bread's Diversion of Resources

Defendant argues that Bread's diversion of resources is not fairly traceable to the

District's actions.  Def. MTD at 15.  But the connection between Bread's injury and Defendant's

actions is not theoretical or attenuated.  *See Allen v. Wright*, 486 U.S. 737, 757 (1984).  Bread's

budget and programming assumes that it will act in conjunction with the lawful administration of

SNAP assistance programs, not in isolation of them.  Defendant failed to provide SNAP benefits

to District residents.  Those residents sought help at Bread.  Bread was forced to divert resources

from its other programs to meet those residents' needs.  This line of causation is straightforward.

Moreover, at the motion to dismiss stage, plaintiffs may rely on "general factual

allegations of injury resulting from the defendant's conduct."  *Lujan*, 504 U.S. at 561.  Here,

Bread pled that, "[a]s a result of Defendant's wrongdoing, Bread has diverted, is diverting, and

will continue diverting scarce resources—including staff time—to" providing food and legal

services to clients in need.  Am. Compl., ¶¶161–62.  Such allegations sufficiently plead

causation.

## III.   PLAINTIFFS HAVE ADEQUATELY ALLEGED VIOLATIONS OF THE SNAP ACT

### A.   7 U.S.C. § 2014(a) and 7 U.S.C. §§ 2020(e)(3), (4), (9), & (10) Create Individually Enforceable Rights

Plaintiffs have brought this action pursuant to 42 U.S.C. § 1983 to redress the deprivation

of their statutory rights under 7 U.S.C. §§ 2014(a), 2020(e)(3), (4), (9), & (10), as well as their

Constitutional Due Process rights.  *See* Am. Compl. ¶¶6, 171-173.  In her Motion to Dismiss, Defendant argues that Plaintiffs' statutory claims should be dismissed because there is no private right of action to enforce the requirements of the SNAP Act.  Def. MTD at 17-20.  But, as explained below and as relevant caselaw makes clear, the specific provisions at issue in this action—7 U.S.C. §§ 2020(e)(3), (4), (9), & 2014(a) —clearly confer unambiguous, individual rights to timely receipt of concrete entitlements and thus satisfy the *Blessing/Gonzaga* analysis. Similarly, 7 U.S.C. § 2020 (e)(10) and its implementing regulations, 7 C.F.R. §§ 273.10(g)(1)(iii), 273.15(a), confer individual rights to notice of untimely processing and the opportunity for fair hearing.

In *Blessing v. Freestone*, 520 U.S. 329 (1997), the Supreme Court established a three-part test for determining whether a federal law creates a right that can presumptively be enforced by private suit through § 1983: (1) "Congress must have intended that the provision in question benefit the plaintiff," (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence," and (3) "the statute must unambiguously impose a binding obligation on the States."  *Id.* at 340-41 (internal citations and quotations omitted).  The plaintiff must show that the statute at issue creates "*rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced" and that such rights must be "unambiguously conferred."  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (internal citations omitted) (emphasis in original).  This inquiry "simply require[s] a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries."  *Id.* at 285 (citations omitted).  In examining specific statutory provisions and congressional intent, courts must look at whether the provision is focused on the "aggregate services provided by the State" or, instead "the needs of [particular] persons."  *Id.* at 284.

Meeting the *Blessing*/*Gonzaga* test creates a rebuttable presumption that the statutory right can be enforced through § 1983.  *Id*.

Recently, the Second Circuit unanimously decided that 7 U.S.C. §§ 2020(e)(3) & (9) are enforceable by private suit through § 1983.  *See Briggs v. Bremby*, 792 F.3d 239, 241-246 (2d Cir. 2015).  As described *supra*, 7 U.S.C. § 2020(e)(3) of the SNAP Act requires state agencies administering SNAP programs to promptly determine the eligibility of each applicant household "so as to complete certification and provide allotment retroactive to the period of application to any eligible household not later than thirty days following [the household's] filing of an application."  Similarly, 7 U.S.C. § 2020(e)(9) requires SNAP administering agencies to "provide benefits no later than 7 days after the date of application" to households of very limited means.

As to the first prong of *Blessing*, the Second Circuit closely examined the language of both statutory provisions to determine whether their focus was indeed on the individual beneficiaries or, conversely, merely a directive as to how the state agency was to spend its resources.  *Id*. at 244.  The Court held that the SNAP Act's timeliness requirements

> are drafted in a way that focuses on the needs of the individual beneficiaries.  They require that households' eligibility be determined "promptly," and that allotments be provided retroactive to the period of application.  They are also calibrated to household income—eligible households are to be provided food stamp benefits within 30 days, but especially needy ones are to receive such benefits within 7 days.

*Id*. at 244.  The Second Circuit further held that these provisions

> clearly meet the second and third prongs of the *Blessing* test.  They establish a right that is neither vague nor amorphous (both provisions require the allotment of food stamps within a definite number of days), and they impose binding obligations on the States (both provisions use the mandatory "shall").

18

*Briggs*, 792 F. 3d at 242.  The Second Circuit thus held that §§ 2020(e)(3) & (9) were presumptively enforceable through § 1983, absent some specific showing that Congress intended to foreclose such enforcement.  *Id*. at 245.

The Second Circuit also squarely rejected arguments against enforceability nearly identical to those that Defendant raises in her Motion to Dismiss.  As here, the state defendant in *Briggs* countered that the timeliness requirements are mere "conditions upon the states receiving federal funds," which foreclose private enforceability by beneficiaries.  *See* Def. MTD at 18. The Second Circuit squarely rejected this line of argument, observing that in *Gonzaga* the Supreme Court affirmed a prior case (*Wilder*) upholding the enforceability of a statute containing a similar "state condition" formulation, which, the Second Circuit found, "can be fully consistent with a legislative intent to confer enforceable rights upon the relevant plaintiffs."  *Id.* at 244 (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 523 (1990)).

Also like Defendant here, *see* Def. MTD at 20, the state defendant in *Briggs* argued that the "authorization of administrative enforcement of the Food Stamp Act's time limits" manifests Congress' intent to preclude individual enforcement.  *See Briggs*, 792 F.3d at 245.  The Second Circuit again rejected this argument, contrasting the administrative enforcement scheme at issue in *Gonzaga* (the Federal Educational Rights and Privacy Act) with that of the SNAP Act, which contained no "similar agency adjudication process or enforcement structure that could take the place of private lawsuits."[7]  *Id.*  Rather, the Court analogized the administrative enforcement scheme of the SNAP Act to those at issue in prior Supreme Court cases *Wright* and *Wilder* (both

---

[7]      Notably, the United States government submitted an *amicus* brief in *Briggs* following the Second Circuit's request that the United States submit its views on whether SNAP beneficiaries possess a private right of action.  The United States' brief agreed that the SNAP Act provisions at issue in *Briggs* were enforceable.  Brief for the United States as Amicus Curiae, *Briggs*, No. 14-1328, ECF No. 94, at 11-18 (filed Feb. 20, 2015).

affirmed in *Gonzaga*), which "gave the appropriate federal agencies the power to exercise

oversight and withhold funds," but which "did not construct frameworks for resolving

individuals' complaints." *Id*. at 245 (citing *Wright*, 479 U.S. at 427-28; *Wilder*, 496 U.S. at 521-

23).[8]  For these reasons, the Second Circuit held that 7 U.S.C. §§ 2020(e)(3) & (9) create rights

enforceable by private suit through Section 1983.

The same logic applies to 7 U.S.C. §§ 2014(a), 2020 (e)(4), & (e)(10).  Like the

§§ 2020(e)(3) and (9) mandates for timely processing of initial SNAP applications held to be

enforceable in *Briggs*, § 2020(e)(4) and its implementing regulations speak in mandatory terms

and require timely processing of recertification applications "within a definite number of days."

*See Briggs*, 792 F. 3d at 242.  Similarly, § 2014(a) requires administering agencies to "furnish"

SNAP benefits to "all eligible households" who apply.  And § 2020(e)(10) requires, in

mandatory, clear, and unambiguous terms, the "granting of a fair hearing and a prompt

determination," upon a request for such hearing following "individual notice of agency action."

7 U.S.C. § 2020(e)(10).  Each of these provisions thus:

> (1) contain[s] language that is focused on the interests of the applicant households
> and calibrated to their economic needs, (2) create[s] a specific requirement that
> must be followed for every food stamp applicant, rather than a generalized
> "policy or practice," and (3) do[es] not merely direct the distribution of funds.

*See Briggs*, 792 F.3d at 244-45.  Thus, these provisions are enforceable through a private right of

action under 42 U.S.C. § 1983.  Indeed, the Sixth Circuit recently applied the *Blessing/Gonzaga*

framework to hold that 7 U.S.C. §§ 2014(a) and 2020(e)(10) were privately enforceable.  *See*

*Barry v. Lyon*, 834 F.3d 706, 716-18 (6th Cir. 2016).

---

[8]     As the Court recognized in its Order on Plaintiffs' Motion for Preliminary Injunction,
even with the presence of an active corrective action plan ordered by FNS governing
Defendant's administration of SNAP, an award of preliminary injunctive relief remains
appropriate. *See* ECF #60, at 15-16. This divergence in available remedies provides further
support for the existence of privately enforceable rights in the SNAP Act.

Defendant incorrectly asserts that there is a "split" among courts as to whether the SNAP Act provisions at issue in this litigation are privately enforceable.[9]  To the contrary, each federal circuit court to examine the enforceability of provisions of the SNAP Act at issue here has agreed that the provisions are enforceable.  Circuit courts that have considered the enforceability of similar SNAP Act provisions did so prior to the Supreme Court's articulation of the *Blessing*/*Gonzaga* framework, but their holdings remain sound as they rest on cases that were expressly affirmed by the Supreme Court in *Gonzaga*[10] and have not been revisited.  *See Gonzalez v. Pingree*, 821 F.2d 1526, 1527-29 (11th Cir. 1987) (upholding enforceability of 7 U.S.C. § 2020(e)(9) Food Stamp Act based on Supreme Court's decisions in *Thiboutot* and *Wright*); *Victorian v. Miller*, 813 F.2d 718, 720-22 (5th Cir. 1987) (same).  Thus, all federal appellate courts to have considered the enforceability of the SNAP provisions at issue here have recognized that SNAP beneficiaries may maintain a private action to enforce their requirements through 42 U.S.C. § 1983.  Defendant has offered no federal appellate authority to the contrary.

Defendant's reliance on several unpublished district court cases purportedly supporting her arguments against the enforceability of the SNAP Act is misplaced.  *Almendares v. Palmer*, No. 3:00-CV-7524, 2002 U.S. Dist. LEXIS 23258 (N.D. Ohio Dec. 3, 2002),[11] involved the

---

[9]     Among these cases, Defendant cites *D.O. v. Glisson*, 847 F.3d 374 (6th Cir. 2017), but that case did not examine the private enforceability of provisions of the SNAP Act.  Rather, that case examined enforceability of provisions of the Child Welfare Act—located 35 titles away from the SNAP Act in the United States Code.

[10]    In distinguishing the rights available under the Federal Educational Rights and Privacy Act, the Supreme Court in *Gonzaga* explicitly affirmed its prior holdings finding the enforceability of various statutes involving "individualized, concrete monetary entitlement[s]" in *Maine v. Thiboutot*, 448 U.S. 1 (1980) and *Wilder*, 496 U.S. 498 (1990).  *See Gonzaga*, 536 U.S. at 288, n.6.

[11]    Defendant's Memorandum incorrectly cites a later, published, opinion within the *Almendares* case that did not directly address the question of enforceability of the SNAP Act. *See* Def. MTD at 17.

enforceability of the language access provision of the SNAP Act (7 U.S.C. § 2020(e)(1)(B), which is not at issue in the present litigation.  Moreover, that provision is clearly distinguishable from the timeliness, notice, and fair hearing provisions at issue here.  As the court in *Almendares* noted, the language access provision is "aggregate," rather than "individual" in focus. *Almendares*, 2002 U.S. Dist. LEXIS 23258, at *12-13.  By contrast, the provisions of the SNAP Act that Plaintiffs seek to enforce here are individual and clearly focused on a material benefit to be conferred within a set amount of time.[12]  *See also Williston v. Eggleston*, 379 F. Supp. 2d 561, 577 (S.D.N.Y. 2005) (distinguishing *Almendares* and the language access provision as having an "aggregate" focus as compared to individual focus of §§ 2020(e)(3) and (9)); *Briggs v. Bremby*, 2012 WL 602617, at *12 n.5 (same) (D. Conn. Dec. 4, 2012), aff'd 792 F.3d 239 (2d Cir. 2015).

Lastly, *Krieger v. Loudoun Cty., Dep't of Soc. Servs.*, No. 5:13-CV-00073, 2014 WL 4923207 (W.D. Va. July 14, 2014) and its subsequent history are entirely devoid of relevance to the present dispute.  There, the court concluded that a *pro se* plaintiff who had sued the Commonwealth of Virginia (among other defendants) under § 1983 and the Food Stamp Reauthorization Act could not maintain such claims against the Commonwealth of Virginia because those statutes did not abrogate Eleventh Amendment sovereign immunity.  *Id.*, at *4. The court neither applied the *Blessing*/*Gonzaga* framework nor considered in any manner whether any provisions of the SNAP Act would be enforceable through § 1983 against appropriate defendants.  *Id.*  Defendant offers no explanation as to the relevance of this citation.

For these reasons, the Court should hold that the SNAP Act provisions relied upon by Plaintiffs to bring this action are enforceable by private suit through § 1983.

---

[12]     In *Blessing*, the Supreme Court rejected the lower court's approach of looking at the statute as a whole to determine enforceability, and instead required a "methodical inquiry" into the particular provisions at issue.  *See Blessing*, 520 U.S. at 342-43.

**B.      The SNAP Act Does Not Require Plaintiffs to Exhaust Administrative Remedies**

Intertwined with her argument that the SNAP Act does not confer rights privately enforceable through § 1983, Defendant argues that "it is unclear" whether Plaintiffs must exhaust administrative remedies before bringing claims under the SNAP Act to federal court.  *See* Def. MTD at 19.  To the contrary, the law *is* clear and has been for the last 36 years: "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."  *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982); *Silverman v. Barry*, 727 F.2d 1121, 1123, n.3 (D.C. Cir. 1984) ("[u]nder *Patsy* . . . exhaustion of state judicial and administrative remedies is not a prerequisite to a section 1983 federal court action alleging constitutional violations."); *see also Jackson v. District of Columbia*, 89 F. Supp. 2d 48, 61 (D.D.C. 2000) (declining to find exhaustion required in § 1983 action enforcing Religious Freedom Restoration Act); *Reynolds v. Giuliani*, 35 F. Supp. 2d 331, 341 n.9 (S.D.N.Y. 1999) (declining to find exhaustion required in § 1983 action enforcing Medicaid and SNAP statutes) (citing *Wilbur v. Harris*, 53 F.3d 542, 544 (2d Cir. 1995)).

Defendant attempts to shoehorn an exhaustion requirement into the rights and remedies available to SNAP beneficiaries by citing to statutory provisions plainly applicable only to SNAP *providers*.  *See* Def. MTD at 19.  This argument borders on the frivolous.  The provision of the SNAP Act cited by Defendant—authorizing and prescribing limits on judicial review available to "stores, concerns, or State agencies"—is simply inapplicable to Plaintiffs' claims. *See* 7 U.S.C. § 2023(a)(13).  Unlike SNAP beneficiaries, retailers do not possess a private right of action under the SNAP Act enforceable through 42 U.S.C. § 1983.  Defendant also misreads the requirements of 7 U.S.C. § 2023(b)—nowhere in that provision are "strict[] limits . . . on the authority of the courts to review administrative decisions."  Def. MTD at 20.  Rather, that section

serves as a statute of limitations proscribing retrospective relief beyond the time periods

delineated by the statute.  *See* 7 U.S.C. § 2023(b).

Thus, given the clear authority of *Patsy* and the absence of any contrary authority cited

by Defendant, Plaintiffs need not have exhausted any administrative remedies prior to their

initiation of this action.

## IV.   PLAINTIFFS STATE CLAIMS UNDER THE SNAP ACT PROVISIONS AT ISSUE IN THIS CASE

Defendant presents two primary arguments against the sufficiency of Plaintiffs' SNAP

Act allegations: (1) she originally produced flawed and inaccurate data concerning Defendant's

timely processing of SNAP initial and recertification applications timeliness compliance, which

has been superseded by more recent data (that continues to demonstrate her failure to absolutely

comply with 7 U.S.C. §§ 2020(e)(3), (4), & (9)), and (2) her flawed implementation of DCAS

that "severely impacted" the District's SNAP administration, has purportedly been fixed.  *See*

Def. MTD at 20-22.  The Court should reject Defendant's arguments.

First, for the purposes of a Motion to Dismiss, the allegations in Plaintiffs' Complaint

must be taken as true.  *Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017).  As summarized

*supra*, 4-5, Plaintiffs' Complaint includes numerous allegations plausibly alleging Defendant's

systemic failure to meet her obligations to timely process SNAP applications as required by 7

U.S.C. §§ 2020(e)(3), (4), (9), & 2014(a) and provide notices of application delay to affected

applicants as required by § 2020(e)(10) and its implementing regulations.  The Complaint

recounts in great detail the systemic problems that arose from Defendant's premature

implementation of DCAS, causing substantial noncompliance with Defendant's obligations to

timely process initial and recertification applications and to provide notices to recertify.  *See* Am.

Compl. ¶¶70-80.  The Complaint further details data demonstrating the extent of this

noncompliance, as well as its impact on Individual Plaintiffs and the Plaintiff Classes, as well as Organizational Plaintiff Bread.  *See id.* ¶¶81-163.

Second, Defendant argues that her production of now-accurate, superseded data somehow forecloses the possibility of Plaintiffs ability to state a claim.  Def. MTD at 20-21.  But the new data continue to demonstrate Defendant's failure to comply with the timeliness requirements of the SNAP Act.  Indeed, the Court has acknowledged the centrality of this and similar data to Plaintiffs' claims and held that it demonstrated a substantial likelihood of success as to Plaintiffs' claims.  *See* ECF #60, at 10-13.[13]

## V.   PLAINTIFFS STATE A CLAIM UNDER THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

Plaintiffs' Claim Three challenges Defendant's failure to provide notice of delay and opportunity for fair hearing when Defendant has failed to timely process SNAP applications under both 7 U.S.C. § 2020(e)(10) and implementing regulations, 7 C.F.R. §§ 273.10(g)(1)(iii), 273.15(a), and Constitutional Due Process.  Defendant challenges the sufficiency of this claim on three bases: (1) Defendant is purportedly under no Constitutional obligation to provide such notice; (2) Plaintiffs have not sufficiently alleged a "custom, policy or practice" of not providing this notice; and (3) the Fourteenth Amendment's Due Process requirements do not apply to the District of Columbia.  *See* Def. MTD at 23-28.  Each of these arguments is without merit.

---

[13]     To the extent Defendant's newly introduced data is to be considered at this stage of the litigation, the Court should convert Defendant's Motion to Dismiss to one for Summary Judgment.  *See* Fed. R. Civ. P. 12(d).  Given the Parties' present disputes over the accuracy, reliability, and weight of these data, however, numerous disputed issues of material fact clearly pervade the present record, warranting denial of any such motion.  *See Pintro v. Wheeler*, 35 F. Supp. 3d 47, 52 (D.D.C. 2014) (finding a genuine issue of material fact stemming from the pleadings and extra-pleading evidence presented by both parties).

### A.    Defendant's Failure to Send Notices of Delay Constitutes a Due Process Violation

As a preliminary matter, 7 U.S.C. § 2020 (e)(10) and its implementing regulations require Defendant to notify applicants of delays in processing their applications and to provide an opportunity for applicants to request a fair hearing to challenge delays.  *See* Am. Compl. ¶173 (citing 7 U.S.C. § 2020(e)(10); 7 C.F.R. §§ 273.10(g)(1)(iii); 273.15(a)).  Should the Court determine that Due Process does not impose such a requirement on Defendant, Plaintiffs' Claim Three would remain and would continue to state a violation of the SNAP Act.  Nonetheless, as explained below, Due Process does impose a requirement to provide notice of delay and an opportunity for fair hearing and Plaintiffs have alleged a plausible violation of this requirement.

When a court is presented with a question of procedural due process rights, the inquiry has two parts: First, the court must determine whether a given plaintiff has a property interest. *Goldberg v. Kelly*, 397 U.S. 254, 261-63 (1970).  If a property interest exists, the plaintiff is due both notice and an opportunity to be heard.  *Id*. at 267-68.  Second, the court must evaluate whether the current procedures are sufficient.

Defendant does not contest the Plaintiffs' property interest in the timely receipt of SNAP benefits, and indeed, to do so would contradict decades of case law.  *See, e.g. Atkins v. Parker*, 472 U.S. 115, 128-29 (1985) ("Food-stamp benefits, like the welfare benefits at issue in *Goldberg v. Kelly*, are a matter of statutory entitlement for persons qualified to receive them. Such entitlements are appropriately treated as a form of property protected by the Due Process Clause . . . .") (internal citations omitted); *Victorian v. Miller*, 813 F.2d 718, 721 (5th Cir. 1987); *M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 432 (S.D.N.Y. 2006).  Likewise, it is well settled that applicants for SNAP and other government benefits also have a protected property interest.  *See Kapps v. Wing*, 404 F. 3d 105, 115-16 (2d Cir. 2005) (collecting cases).

Given that Plaintiffs have a property interest in timely receipt of their SNAP benefits, due process requires that Plaintiffs be accorded notice and an opportunity to be heard when that interest is violated, and the Court must determine whether existing procedures meet that threshold.  Defendant argues that the Court should apply the test first articulated in *Mathews v. Eldridge* and find that their asserted current procedures as to notices of delay are sufficient.

However, Plaintiffs clearly meet the *Mathews* test because they seek enforcement of the SNAP statute and implementing regulations that themselves implement due process, rather than additional procedural requirements.  In *Mathews*, the plaintiff argued that existing required procedures governing a public benefits program were insufficient under due process and sought additional procedural requirements.  *See Mathews v. Eldridge*, 424 U.S. 319, 325 (1976).  Here, Plaintiffs simply ask the Court to require Defendant to comply with due process by complying with existing federal procedural requirements.

Plaintiffs' third claim satisfies the *Mathews* test and survives Defendant's Motion to Dismiss.  Defendant concedes that Plaintiffs satisfy the first factor, *see* Def. MTD at 24 ("The District acknowledges that the first *Mathews* factor . . . could tip in favor of plaintiffs."), which inquires as to "the private interest that will be affected by the official action."  *Mathews*, 424 U.S. at 335.  Defendant's argument that the restoration of SNAP benefits to the class representatives somehow defeats Plaintiff's strong interest in the SNAP benefits to which they are entitled is an argument as to mootness, *not* the strength of Plaintiffs' and class members' interest, and, as argued elsewhere in this memorandum, Plaintiffs' claims are not moot.  *See supra* at I.B.

The second *Mathews* factor balances the Plaintiffs' interest against the "risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural

safeguards." *Mathews*, 424 U.S. at 335.  Both the risk of deprivation under Defendant's current practices and the probable value of the provision of delay notices are high.  Defendant violated the Plaintiffs' statutory rights to timely application processing and issuance of benefits, and the agency's failure to provide notice of the delay deprived Plaintiffs of the opportunity to request a fair hearing to challenge the delay and deprivation of subsistence benefits.  Given the systemic delays in Defendant's processing of SNAP applications and Defendant's numerous failures to ensure that all required notices reach those who are entitled to notice, *supra* at 4-5, the risk of these deprivations reoccurring are high.

Delay notices inform SNAP applicants that the state is not processing their applications within legally required timelines and provide them with the opportunity for a fair hearing to challenge this violation of their statutory rights.  Defendant's argument that there is no erroneous deprivation because she claims to have remedied prior failures to send out notices is misplaced.  This is, again, an inquiry that relates to mootness, but for the reasons explained above, Plaintiffs' claims are not moot.

Finally, *Mathews* considers "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.  This final factor also weighs in favor of the Plaintiffs, who merely seek enforcement of an existing requirement, not the imposition of a new burden on Defendant.

Defendant does not address this factor directly—rather, she simply claims that she is already sending various notices to SNAP recipients.  However, Plaintiffs did not receive the delay notices to which they are entitled, and which are essential to their due process rights.  Defendant's contention that DHS sends out "approximately 55,000 SNAP notifications per

month," Def. MTD at 25, only demonstrates that requiring Defendant to comply with SNAP requirements to send delay notices imposes little, if any, burden on the government.  Defendant simply needs to utilize her existing notice system to ensure that DHS sends notices of delay.

For these reasons, Constitutional Due Process requires Defendant to provide notice of delay in application processing and the opportunity for a fair hearing.

**B.    Plaintiffs Have Established Municipal Liability Under 42 U.S.C. § 1983**

Defendant next argues that Plaintiffs cannot demonstrate a basis for municipal liability as to their Constitutional Due Process claim.  First, Defendant's arguments regarding *Monell v. Dep't of Soc. Services of New York* are misplaced.  *Monell* holds that "municipalities and other local government units [are] included among those persons to whom § 1983 applies," and municipalities can be sued under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  Municipalities may also be sued for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels."  *Id*.  The government policy or custom must also have an "affirmative link" with the harm suffered by a plaintiff.  *Blue v. District of Columbia*, 850 F. Supp. 2d 16, 31 (D.D.C. 2012) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985)).

Plaintiffs do not assert Claim Three under a *respondeat superior* theory.  Rather, Plaintiffs have alleged that Defendant has "policies, practices, and procedures of failing to provide written notice and an opportunity to request a fair hearing to SNAP applicants whose applications Defendant has not processed within the mandated timeframes."  Am. Compl. at ¶173.  Two of the class representatives—Shonice Garnett and Richard Messick, Jr.—filed SNAP

applications and received no notices or updates, including a notice of delay, from Defendant as to the progress or status of their applications.  *See* Am. Compl. ¶¶96-108.  Defendant implicitly concedes that neither these specific Plaintiffs nor any other class members received a delay notice, stating that "the District *will* provide an additional notice informing beneficiaries of any processing delays."  Def.'s Opp. to Pls.' Mot. for Prelim. Inj., ECF #31 at 24 (emphasis added).  Promises to do better in the future are insufficient proof of a lack of policy or practice.  *See Booth v. McManaman*, 830 F. Supp. 2d 1037, 1043 (D. Haw. 2011) ("This Court cannot simply defer to the wait-and-see approach advocated by the Defendant, particularly in light of the seriousness of the harm . . . .").

Second, Defendant's argument that Plaintiffs have not established municipal liability relies on her mere assertion that a delay notice now exists.  *See* Def. MTD at 27.  The existence of a delay notice that Defendant developed following the commencement of the litigation does not mean Plaintiffs have failed to state a claim on which relief can be granted.  *See supra* I.B (addressing why Plaintiffs' claims are not moot due to Defendant's voluntary cessation of challenged conduct).  Defendant was not sending the notices when the complaint was filed. There is also no indication that Defendant is actually ensuring that delay notices reach all SNAP applicants now.  Plaintiffs may still seek an injunction requiring that Defendant provide notices of delay in the future.

### C. The Requirements of Due Process Under the Fifth and Fourteenth Amendment Apply to Defendant

Defendant's last salvo in evading the requirements of Due Process is to argue that the Fourteenth Amendment's requirements do not apply to the District of Columbia.  While it is true that the District of Columbia is not a state, and thus not subject to the Fourteenth Amendment, procedural due process rights are also found in the Fifth Amendment.  *See* U.S. Const. amend V

("no person shall be . . . deprived of life, liberty, or property, without due process of law");

*Butera v. District of Columbia*, 235 F.3d 637, 645 n.7 (2001) ("While the District of Columbia is

not a state, it is subject to the Due Process Clause of the Fifth Amendment, which also states that

'no person shall be . . . deprived of life, liberty, or property, without due process of law.'");

*Colbert v. District of Columbia*, 78 F. Supp. 3d 1, 8 n.5 (D.D.C. 2015) ("The Fourteenth

Amendment is substantially the same and thus cases analyzing States' liability under the

Fourteenth Amendment can be relied upon to analyze the District's liability under the Fifth

Amendment.").  Moreover, the requirements of Fourteenth Amendment due process are routinely

imposed on the District via the Fifth Amendment.  *See Salazar v. District of Columbia*, 954 F.

Supp. 278, 326 (D.D.C. 1996) ("Notice and an opportunity for a hearing prior to termination of

Medicaid benefits are also required by the Due Process Clause of the Fifth Amendment.") (citing

*Stenson v. Blum*, 476 F. Supp. 1331, 1342 (S.D.N.Y. 1979)); *LaShawn A. v. Dixon*, 762 F. Supp.

959, 992-93 (D.D.C. 1991) (applying Fourteenth Amendment due process case law regarding the

rights of children in foster care to D.C. via the Fifth Amendment).  For these reasons, Defendant

does not avoid Plaintiffs' Constitutional Due Process claims because she runs an agency of the

District of Columbia.  *See* Am. Compl. at ¶173 (alleging Due Process violations under the Fifth

Amendment to the United States Constitution).

## VI.    DEFENDANT ZEILINGER IS A PROPER DEFENDANT

Lastly, Defendant asserts that the District of Columbia should be substituted as the proper

defendant.  Defendant relies on several cases that stand for the principle that in a § 1983 action

seeking damages, an action against a municipal official in their official capacity is equivalent to

an action against the municipality itself.  *See* Def. MTD at 28-29 (citing *Lopez v. District of*

*Columbia*, 268 F. Supp. 3d 256, 259 (D.D.C. 2017); *Proctor v. District of Columbia*, 74 F. Supp.

3d 436, 445 n.3 (D.D.C. 2014); *Doe v. District of Columbia*, 2008 U.S. Dist. LEXIS 110348, *1

(D.D.C. Nov. 12, 2008)).

Defendant would be correct if this action was one seeking retroactive relief—but this is

not such a case.  Instead, Plaintiffs seek prospective injunctive relief.  It is well-settled that a

municipal official, sued in their official capacity, *is* the proper defendant in such cases.  *Will v.*

*Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("Of course a state official in his or her

official capacity, when sued for injunctive relief, would be a person under § 1983 because

'official-capacity actions for prospective relief are not treated as actions against the State.'  This

distinction is "commonplace in sovereign immunity doctrine . . . ") (internal citations omitted)

(citing *Kentucky* v. *Graham*, 473 U.S. 159, 167 n.14; *Ex parte Young*, 209 U.S. 123, 159-160

(1908); L. Tribe, American Constitutional Law § 3-27, p. 190, n.3 (2d ed. 1988)); *Steinberg v.*

*Gray*, 815 F. Supp. 2d 293, 298 (D.D.C. 2011) (". . . an official-capacity suit for money damages

is treated as a suit against the state or local entity; an official-capacity suit for injunctive relief,

however, is a suit against a 'person' and not 'the State.'") (citing *Hedgepeth v. Wash. Metro.*

*Area Transit Auth.*, 386 F. 3d 1148 (D.C. Cir. 2004)).

Thus, Director Zeilinger, sued in her official capacity, is the proper defendant in this

action, and the District should not be substituted for her.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's

Motion to Dismiss.

Dated: July 31, 2018                    Respectfully submitted,

                                        ___/s Chinh Q. Le_____
                                        Chinh Q. Le (DC Bar No. 1007037)
                                        Jennifer Mezey (DC Bar No. 462724)[*]
                                        Chelsea Sharon (DC Bar No. 1016006)[*]
                                            LEGAL AID SOCIETY OF THE DISTRICT OF COLUMBIA
                                        1331 H Street NW, Suite 350
                                        Washington, DC 20005
                                        202-628-1161 (Phone)
                                        202-727-2132 (Fax)
                                        cle@legalaiddc.org
                                        jmezey@legalaiddc.org
                                        csharon@legalaiddc.org

                                        Marc Cohan[†]
                                        Travis W. England[†]
                                        Katharine Deabler-Meadows[‡]
                                            NATIONAL CENTER FOR LAW
                                            AND ECONOMIC JUSTICE
                                        275 7th Avenue, Suite 1506
                                        New York, NY 10001
                                        212-633-6967 (Phone)
                                        212-633-6371 (Fax)
                                        cohan@nclej.org

                                        Peter R. Bisio (DC Bar No. 459256)
                                        Lance Y. Murashige (DC Bar No. 1021562)
                                        Emily Goldman (DC Bar No. 1032032)
                                        Kaitlin Welborn[†]
                                        Susan A. Musser[†]
                                            HOGAN LOVELLS US LLP
                                        555 13th Street NW
                                        Washington, DC 20004
                                        202-637-5600 (Phone)
                                        202-637-5910 (Fax)
                                        peter.bisio@hoganlovells.com

                                        *Attorneys for Plaintiffs*

---

[*]      Practicing pursuant to LCvR 83.2(g).

[†]      Admitted to appear *pro hac vice*.

[‡]      Application for admission *pro hac vice* to be sought.