## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHONICE G. GARNETT, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>LAURA ZEILINGER,<br><br>    Defendant. | Civil Action No. 17–1757 (CRC) |

### DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

### INTRODUCTION

Plaintiffs' opposition largely avoids the arguments presented in the District of Columbia's (the District)[1] motion to dismiss, and instead attacks a series of strawmen. As set forth in the District's opening brief, plaintiffs lack standing because they fail to properly allege an injury-in-fact traceable to the District. And, even if plaintiffs had standing, they do not state a claim upon which relief can be granted because the Food and Nutrition Act of 2008 (SNAP Act) does not create a private right of action and plaintiffs have not sufficiently alleged an ongoing threat of injury. In part, this is because plaintiffs fail to recognize the material changes in this litigation, including that the allegations in the Amended Complaint are based on plaintiffs' misreading of incorrect—and long ago superseded—data. In addition, plaintiffs'

---

[1]    Defendant is Laura Zeilinger, sued in her official capacity as the Director of the District of Columbia Department of Human Services. Defendant is referred to as "the District" in this reply.

constitutional claim is deficient because they have not adequately alleged that they were deprived of any process, and all alleged procedural deficiencies have been remedied. Thus, plaintiffs cannot establish municipal liability because there is no factual allegation of a policy, pattern or practice that was the moving force behind any alleged constitutional violation. Finally, plaintiffs' refusal to abandon their Fourteenth Amendment due process claim and their insistence, relying on inapposite case law, that Director Zeilinger is the proper defendant are wholly misguided. The Amended Complaint should be dismissed with prejudice.

ARGUMENT

I.   **Plaintiffs' Amended Complaint Should be Dismissed Because Plaintiffs Lack Standing.**

   A.   **The Individually Named Plaintiffs Do Not Allege Injuries Traceable to Defendant and Redressable by the Requested Relief.**

Plaintiffs' opposition mischaracterizes the District's explanation as to how the individual plaintiffs lack standing. First, plaintiffs ignore their burden of establishing standing, claiming that the Court's Memorandum Opinion and Order [60] on their motion for a preliminary injunction foreclosed any question about the constitutional requirement of standing. Pls.' Opp'n [72] at 7. Plaintiffs are mistaken. "Article III standing is a jurisdictional requirement," and, thus, "cannot be waived" and may be ruled on at any time. *Cherry v. FCC*, 641 F.3d 494, 497 (D.C. Cir. 2011). But, even if that were not true, the Court explicitly left open the possibility that plaintiffs lack standing. Mem. Op. and Order at 27 n.10. Plaintiffs also mischaracterize the Court's use of statistics as if it had the Court had made a finding on the merits for each plaintiff. Pls.' Opp'n at 8.

In fact, the Court emphasized plaintiffs "may not be among those unserved households" with standing under plaintiffs' First Claim. Mem. Op. and Order at 14. And they are not. Ms. Garnett's and Mr. Messick's applications were not untimely processed. Rather, Ms. Garnett's applications were originally "timely processed but erroneously denied" and then "timely processed and approved." Zeilinger Decl. [31-1] ¶ 157. Mr. Messick's first application was never received, admittedly because of caseworker error, but his second application "was timely processed." *Id.* ¶ 158. Although their decision not to inform the District of this may have delayed their receipt of SNAP benefits, there is no evidence of untimely processing. *See* Def.'s Mem. [71-1] at 4–5, 11–12.

As to the Second Claim, Messrs. Stanley and Gaines each conceded the District told him he needed to recertify and provided him an opportunity beyond what is required by the Food and Nutrition Service (FNS). *Compare* Pls.' Opp'n at 8–9 *with* Def.'s Mem. at 5–7 (citing Am. Compl. [26] ¶¶ 126, 136–37), 11 n.4, 12 n.5. This may be why the Court named them as class representatives for Class 3, regarding notice of delayed processing, and not Class 2, on recertification. *See* Mem. Op. and Order [56] at 19. However, as there is no allegation their applications or those of anyone else were processed untimely, there is no factual allegation of delayed processing that would have triggered the notice at the heart of the Third Claim. *See* Def.'s Mem. at 24-27; above at 3.

Similarly, Ms. Harris's recertification failed because her counsel submitted her application incorrectly (although timely), so she was not denied an opportunity to

timely recertify as alleged in the Second Claim. Def.'s Mem. at 7. Further, Ms. Murph was not denied the opportunity to recertify; rather, "[a]n isolated data import error" when timely processing her recertification, "caused the termination of her benefits" and she, too, decided not to inform the District until filing the Complaint. Zeilinger Decl. ¶ 159. Thus, the delay in receiving benefit was a self-inflicted injury—there is no allegation that Ms. Murph tried to recertify or reapply—that cannot create standing and not evidence of untimely processing. *See* Def.'s Mem. at 14.

Nor are plaintiffs supported by *Swanson Grp. Mfg. LLC v. Jewell*, 195 F. Supp. 3d 66 (D.D.C. 2016). Pls.' Opp'n at 7. There, the only plaintiff not dismissed for lack of standing overcame that obstacle because it "specified how much timber [it] can purchase from the various other sources, or plausible reasons why those sources will not suffice." 195 F. Supp. 3d at 78. The posture and nature of this case are wholly different and, as discussed in Section II below, plaintiffs' claims also fail because plaintiffs do not address "material change[s]" since they filed the Amended Complaint, a fatal flaw in *Swanson Group. Id.* at 73–75. Plaintiffs also rely on *Coleman v. District of Columbia,* 306 F.R.D. 68, 74 (D.D.C. 2015) to support their standing argument, but that case is even less relevant because standing was undisputed.

## B.   The District Has Not Argued Plaintiffs' Claims Are Moot.

Plaintiffs contend the District's arguments regarding standing are actually about mootness, a doctrine unmentioned in the District's opening brief. Pls.' Opp'n at 10. Plaintiffs' contention is misguided; the District's discussion focused solely on plaintiffs' alleged injuries and their traceability to the District. Indeed, plaintiffs offer

no excuse for their decision not to report their alleged deficiencies to the District. Def.'s Mem. 11–12. They point only to declarations of non-plaintiffs—citing isolated errors rather than demonstrating a policy or practice of denying beneficiaries their benefits—and to "ECF #31 at 8." *Id.* at 13 n.4. At best for plaintiffs, that page describes Mr. Messick receiving a prompt response when he told the District he was not receiving benefits; his failure, for months, to act on that response and reapply; and his failure to notify the District regarding any lapse in benefits prior to the filing of the Complaint, after which the District restored his benefits within a week. *Compare id. with* Pls.' Opp'n at 12. *See also* Def.'s Mem. at 6–7 (describing Mr. Gaines's decision to allow his benefits to expire and delay in re-applying despite the District's efforts).

"Plaintiffs' self-inflicted injuries are not fairly traceable [to the District and do] not give rise to standing." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013)). This is not about a "voluntary cessation of a challenged practice," Pls.' Opp'n at 11, but that the "challenged practice"—allegedly denying eligible beneficiaries their benefits or the opportunity to apply for them—does not exist and that its appearance was the result of plaintiffs' decisions not to inform the District regarding their situations. In contrast, most SNAP beneficiaries promptly inform the District regarding any difficulties they experience, including a lapse in benefits. *See, e.g.,* Zeilinger Depo. Excerpts [48-3] 130:14–18 ("We learned [at] the very beginning of September when our staff were seeing clients who were coming into the center" to

report they were not receiving benefits), 140:17–18 and [45-31] 55:16–18 (approximately one quarter of beneficiaries recertified without notice because beneficiaries know they "are required to"). Although the District works hard to reach eligible recipients who are not receiving benefits and assist anyone having difficulties, *see*, *e.g.*, Zeilinger Decl. 31-1 ¶¶ 17–26, the District is not required to find those who choose not to be found.

C.    Plaintiff Bread for the City Does Not Have Organizational Standing and Has Not Alleged Facts to Support Third-Party Standing.

Plaintiffs also misunderstand the District's argument that Bread for the City (Bread) lacks standing. In a footnote, they insist "Bread alleges that Defendant has violated the rights of Bread's *clients*," Pls.' Opp'n at 14 n.6 (emphasis in original), but plaintiffs have offered no argument for why third-party standing is appropriate here. "As a general rule, a plaintiff may assert the rights of a third party only when there is some hindrance to the third party's ability to protect his or her own interests [and plaintiffs] do[ ] not even attempt to argue that any such impediment, or 'hindrance,' exists here." *Ryan, LLC v. Lew*, 934 F. Supp. 2d 159, 167 (D.D.C. 2013) (quotation and alteration omitted) (Huvelle, J.); *see also Permapost Prods. v. McHugh*, 55 F. Supp. 3d 14, 29 (D.D.C. 2014) (Wilkins, J.) (each granting, in part, a motion to dismiss); *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1360–64 (D.C. Cir. 2000) (discussing "developments in this circuit and in the Supreme Court" "of the judicially-created third party standing doctrine"). Here, plaintiffs cannot advance an argument for why third-party standing is appropriate while the individual plaintiffs each attempt to state a claim. The District has, therefore, treated plaintiffs' claim as

6

one that Bread has organizational standing. But none of plaintiffs' arguments or citations contradict the District's position that plaintiffs have not alleged adequate facts to demonstrate organizational standing.

The District has already explained the flaws in plaintiffs' argument. *See* Def.'s Mem. at 13–16; Def.'s Sur-Reply [48] at 18–21. Plaintiffs' new citations change nothing. In *Newby*, the allegation was that the challenged conduct prevented the League of Women Voters from registering voters, so that it could not do one of its activities at all, not merely, as plaintiffs allege here, "having to reduce" one program and direct resources to another. *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 8–9 (D.C. Cir. 2016). Similarly, the D.C. Circuit has noted that "[i]f a defendant's conduct does not conflict directly with an organization's stated goals, it is entirely speculative whether the defendant's conduct is impeding the organization's activities." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996). The Circuit found no standing when "NTEU alleged a direct causal link between the [challenged action] and the increased expenditure of funds" because its "mission is not to influence the President's views [but] to obtain improved worker conditions" and "we are unsure whether NTEU's additional expenditure of funds is truly necessary." *Id.* Too much speculation is required to link the District's alleged actions to Bread's choices regarding the proper allocation of its resources.

The D.C. Circuit has specifically and repeatedly rejected the claims asserted by Bread. *See, e.g., Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir.

2011) (citing cases) ("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization."). Bread's reliance on the presumption of correctness at the motion to dismiss stage is similarly unavailing. *Compare NTEU*, 101 F.3d at 1430 ("there is a difference between accepting a plaintiff's allegations of fact as true and accepting as correct the conclusions plaintiff would draw from such facts.") *with* Pls.' Opp'n at 16. *See also* Section II.B, below.

## II.   Plaintiffs Fail to State a Claim Under the SNAP Act.

### A.   The SNAP Act Does Not Provide a Private Right of Action.

Plaintiffs concede that this Circuit has not ruled on whether there is a private right of action to enforce the provisions of the SNAP Act at issue. *See* Pls.' Opp'n at 17–22. Instead, they rely on Second and Sixth Circuit opinions that are not binding on this Court. *See id.* (citing *Briggs v. Bremby*, 792 F.3d 239 (2d Cir. 2015); *Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016)).[2]

In *Briggs*, the Second Circuit held that the plaintiffs could maintain a private lawsuit to enforce the statutory time limits in 7 U.S.C. § 2020(e)(3) and (9). *Briggs*,

---

[2]   Although the District mistakenly cited *D.O. v. Glisson*, 847 F.3d 374 (6th Cir. 2017) as another relevant Sixth Circuit opinion, plaintiffs are incorrect that the District mis-cited *Almendares v. Palmer*, 284 F. Supp. 2d 799 (N.D. Ohio 2003) (endorsing the earlier opinion plaintiffs cite, where the court stated: "as I explained in my previous order, regulations cannot be used as a basis for creating a private cause of action unless there is a statute that establishes such a right."). Pls.' Opp'n at 21 n.9, n.11.

792 F.3d at 245–46. Plaintiffs contend the Second Circuit "closely examined" the timeliness language to determine whether the first prong of the *Blessing/Gonzaga* test is met. Pls.' Opp'n at 18 (citing *Briggs*, 792 F.3d at 244). Although it is true the court in *Briggs* considered whether the statute's focus is on individuals, it did not analyze whether timeliness provisions confer "rights" or merely benefits or interests to those individuals. *See Briggs*, 792 F.3d at 242.[3] Even the *amicus curiae* brief submitted by the United States glanced over this nuance without analysis. *See* Pls.' Opp'n at 19 n.7; *Briggs*, Appeal No. 14-1328, ECF No. 94 at 13 (Feb. 20, 2015).

In *Barry*, the Sixth Circuit approached the first prong of the *Blessing/Gonzaga* test similarly when considering whether an individual denied SNAP Act benefits—based on a state law denying benefits to households that include an individual subject to arrest under an outstanding felony arrest warrant—could bring a private right of action. *See Barry*, 834 F.3d at 717. The court in *Barry* did not offer analysis as to the first factor of the test beyond referencing the SNAP Act's focus on a "class of beneficiaries." *See id.*

But it is not enough for plaintiffs to fall "within the general zone of interest that the statute is intended to protect." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). "In 2002, the Supreme Court clarified the first factor, finding that Congress must do more than clearly confer a benefit to plaintiff, but rather must clearly confer

---

[3]     The *Briggs* court may have skipped that analysis because it felt bound by Second Circuit precedent. *See Briggs*, 792 F.3d at 245 (discussing the effect of "[t]he *law of our circuit* concerning the private enforceability of time limits in social welfare statutes") (emphasis added).

a right upon individuals." *Barry Farm Tenants & Allies Ass'n v. D.C. Hous. Auth.*, Civil Action No. 17-1762, 2018 U.S. Dist. LEXIS 71559, at *25–26 (D.D.C. Apr. 30, 2018) (Sullivan, J.) (citing *Gonzaga Univ.*, 536 U.S. at 283, for the premise that "Section 1983 confers a remedy *only* for deprivations of 'rights, privileges, or immunities secured by the Constitution and laws of the United States, … not the broader or vaguer 'benefits' or 'interests'") (emphasis and ellipsis in original). "Since *Blessing*, '[the Supreme] Court's approach to [Section] 1983 enforcement of federal statutes has been increasingly restrictive; in the end, very few statutes are held to confer rights enforceable under [Section] 1983.'" *Id.* (quoting *Long v. District of Columbia Hous. Auth.*, 166 F. Supp. 3d 16, 29 (D.D.C. 2016)) (alterations original). Here, plaintiffs have not satisfied their burden of showing the SNAP Act contains the requisite, "unambiguous," rights-creating language; there is no indication that the statute was intended to create an enforceable *right*, rather than a benefit and a scheme for delivery of that benefit. *Id.*; Def.'s Mem. at 18.

Further, "even when a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'" *Gonzaga Univ.*, 536 U.S. at 284 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)) (emphasis in original). Plaintiffs ignore the District's point that Congress did not intend to create a private remedy. *See generally* Pls.' Opp'n; Def.'s Mem. at 18–19; *see also Trefry v. Tracy*, Civil Action No. 1:14-cv-00044-NT, 2014 U.S. Dist. LEXIS 70177 at *13 (D. Me. May 22, 2014) ("the SNAP Act does not authorize this Court to

exercise jurisdiction over Plaintiff's private action seeking a change in federal and state food stamp policy.") (citing *Kilroy v. Mayhew*, 841 F. Supp. 2d 414 (D. Me. 2012) (same)).[4]

In *Gonzaga University*, the Supreme Court's holding that the "[Family Educational Rights and Privacy Act's] nondisclosure provisions fail to confer enforceable rights [was] buttressed by the mechanism that Congress chose to provide for enforcing those actions." 536 U.S. at 289. Similarly, the remedies explicitly provided by the SNAP Act indicate Congress did not intend for beneficiaries to file lawsuits to remedy inadequacies related to their SNAP benefits. Instead, the SNAP Act expressly provides for administrative hearings for households aggrieved by a state's administration of SNAP. *See* Def.'s Mem. at 18 (citing 7 U.S.C. § 2020(e)(10)). Additionally, FNS oversight provides a mechanism to address systemic or repeated deficiencies. *See* Def.'s Mem. at 20; Mem. Op. and Order [60] at 18 (FNS "has demonstrated its willingness and ability to actively regulate the District's compliance").

Finally, plaintiffs misconstrue defendant's statement regarding the exhaustion of administrative remedies—the District never suggested provisions applicable to providers apply to plaintiffs. *Compare* Pls.' Opp'n at 23 *with* Def.'s Mem. at 19. Rather, the inclusion of an exhaustion requirement for retailers and providers is

---

[4] Although plaintiffs denigrate unpublished opinions on cases brought by *pro se* plaintiffs, Pls.' Opp'n at 21-22, the pleadings of "a *pro se* litigant [are] subject to less stringent standards than formal pleadings drafted by lawyers." *Trefry*, at *15 (quotation omitted). More may be expected of plaintiffs here, but they provide the same arguments rejected by Judge Torresen in *Trefry*.

further indication that Congress did not intend for a direct private right of action for SNAP beneficiaries either. And the District was explicit that exhaustion is not always required for a Section 1983 claim, although it appears to be required here. *Compare* Pls.' Opp'n at 23 *with* Def.'s Mem. at 23.

> **B.** **Plaintiffs' Reliance on Allegations Regarding Corrected Deficiencies is Misplaced, Even at the Motion to Dismiss Stage.**

Plaintiffs' opposition proceeds as if plaintiffs were pursuing a lawsuit for compensatory relief—focusing on alleged injuries of the past, rather than ongoing violations of law. *See, e.g.,* Pls.' Opp'n at 13 (arguing plaintiffs "have alleged they suffered injuries at the time this suit was commenced, which were caused by the Defendant, and which were redressable by this court."), 12 ("…only *after* initiation of this lawsuit…") (emphasis in original). But plaintiffs seek only declaratory and equitable relief, *see* Am. Compl. at 31–32 (Request for Relief), and admit they seek to prove an "ongoing systemic failure." Pls.' Opp'n at 7. As a result, they face a different standard than if they were seeking only damages for past wrongs.

Contrary to plaintiffs' claim, the burden is not on the District to prove it is "'absolutely clear' that the failures Plaintiffs experienced could not be reasonably expected to recur." *See* Pls.' Opp'n at 13. Rather, "to assert claims for prospective injunctive relief, a plaintiff must demonstrate, not only that she has been harmed in the past, but 'that she is realistically threatened by a repetition of [the violation].'" *Doe v. District of Columbia*, 216 F.R.D. 5, 10 (D.D.C. 2003) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). "Put another way, 'in order to obtain … an injunction, a plaintiff cannot simply allege that she was previously subjected to

the defendant's actions;' plaintiff must instead show that 'there is a real and immediate threat of repeated injury.'" *Id.* (quoting *District of Columbia Common Cause v. District of Columbia*, 858 F.2d 1, 8 (D.C. Cir. 1988)). *See also* Def.'s Mem. at 11 (quoting the Court's expectation that plaintiffs "show an *ongoing* systemic failure") (emphasis in original). "This requirement spans to plaintiffs' claim for declaratory relief as well." *Doe*, 216 F.R.D. at 10 (citing *Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1273 (D.C. Cir. 1994)).

Even if it adequately alleged past injuries, the Amended Complaint fails to allege facts to establish imminent threat of *repeat* injury. *See Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 106 (D.D.C. 2007) (dismissing plaintiff's claim for lack of standing where the alleged future injuries, "while certainly plausible," were "too speculative and remote" to give plaintiff standing to seek prospective relief). In their opposition, plaintiffs ask this Court to ignore that the alleged deficiencies with SNAP application processing and notices have been remedied, and instead to evaluate the Amended Complaint in a vacuum on the date it was filed. Pls.' Opp'n at 24. But this Court can and should consider the plausibility and sufficiency of plaintiffs' allegations in light of the record properly before the Court. *See* Def.'s Mem. at 11 n.4. *See also* Mem. Op. and Order at 25–26 (plaintiffs' attempt to "demonstrate a *systemic* failure" undermined by the fact that, "after this error occurred the District took steps to prevent similar ones in the future"). And although the Court should draw reasonable inferences and assumptions in favor of plaintiffs at this stage, the Court does not need to assume the truth of

allegations which the Court properly knows are untrue. *See* Def.'s Mem. at 6 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); Section II.C below.

### C.   Plaintiffs Continue to Rely on Misunderstandings of Obsolete Data.

Plaintiffs make no effort to address the fact that the Amended Complaint is based on misreadings of superseded data. *See* Def.'s Mem. at 20–23 (describing plaintiffs' misuse of old FNS-366B reports and attempt to conflate software issues with benefit issues); *see also* Mem. Op. and Order [60] at 25 ("plaintiffs offer no evidence … to establish that the 'error rates' refer to notices that are ultimately not sent on time."). The requirement that the Court treat plaintiffs' reasonable allegations as true does not require the Court to disregard information it has received or credit allegations that the Court is aware are false. *See, e.g., Borlem S.A.-Empreedimentos Industriais v. United States*, 913 F.2d 933, 940 (Fed. Cir. 1990) ("a new and different determination … by the same government agency that generated the first determination, certainly seems to us to be a fact of which judicial notice may be taken."); *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 858 (9th Cir. 1985) (affirming denial of permanent injunction after taking judicial notice of new government action that disproved alleged injury); Def.'s Mem. at 11 n.4; Mem. Op. and Order at 25–26. To the extent plaintiffs' allegations rely on mistakes or misunderstandings, the Court is free to reject such allegations. "[W]hen a nonmovant's account of the facts is 'utterly discredited' by the clear evidence … the [Supreme] Court has instructed [courts] not to rely on a 'visible fiction' but rather 'view[ ] the facts in the light depicted by'" that evidence. *Lash v. Lemke*, 786 F.3d 1,

6 (D.C. Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)); *accord Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996).

Plaintiffs' suggestion that the new data can only be considered if the District's motion to dismiss is converted to one for summary judgment is further misguided. Pls.' Opp'n at 25 n.13. First, the District moved for dismissal under Federal Rule of Civil Procedure 12(b)(1) and "[w]hen reviewing a challenge pursuant to Rule 12(b)(1) or 12(b)(2), the court may consider documents outside the pleadings to assure itself that it has jurisdiction." *AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 73–74 (D.D.C. 2004) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)) (cited in *Timbisha Shoshone Tribe v. Salazar*, 678 F.3d 935, 939 (D.C. Cir. 2012)). Second, plaintiffs concede that the Court has already adopted the revised data, Pls.' Opp'n at 25 (citing Mem. Op. and Order at 10–13), and plaintiffs attempt to do the same. *Id.* In sum, plaintiffs fail to state a claim under the SNAP Act because plaintiffs' reliance on inaccurate and misleading data from obsolete FNS-366B reports are not claims upon which relief can be granted.

## III.   Plaintiffs Fail to State a Due Process Violation.

### A.   Plaintiffs Fail to State a Due Process Violation Under the Fifth Amendment.

Plaintiffs are not seeking compensatory damages for an alleged due process violation that has already occurred but, instead, seek prospective injunctive relief. *See* Section II.B above. This means plaintiffs must allege facts sufficient to prove the District's administration of SNAP runs afoul of procedural due process and plaintiffs are entitled to an injunction to cure the imminent threat of repeat violations. *See Doe*,

15

216 F.R.D. at 10. Applying the *Mathews* test, in light of the relief plaintiffs seek, plaintiffs do not state a claim for procedural due process violations. Def.'s Mem. at 24–25.

The second *Mathews* factor considers "the risk of erroneous deprivation" of plaintiffs' interest in SNAP benefits under "the procedures [currently] used," along with the effectiveness of the "additional or substitute procedural safeguards" plaintiffs seek. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Plaintiffs contend their allegations that the District violated plaintiffs' rights by failing to provide notices of delays and hearing rights satisfy the *Mathews* test. Pls.' Opp'n at 28. But plaintiffs offer no factual allegation that anyone was actually due such a notice and did not receive it, *see* Section I.A above, nor do plaintiffs dispute that there is evidence in the record that the District has taken corrective measures to address the alleged notice deficiencies. *Compare* Pl.'s Opp'n at 28 *with* Def.'s Mem. at 25. This shows that the current procedures leave a limited "risk of erroneous deprivation."

As stated above, the Court need not assume the truth of allegations which are contravened by the record. *See* Section II, above; *Iqbal*, 556 U.S. at 678. Without the allegations in the Amended Complaint that pertain to issues that have been remedied, the Amended Complaint is devoid of factual support necessary to find the ongoing notice deficiencies alleged, and that plaintiffs face an imminent threat of procedural due process violations absent the requested relief.

B.  **Plaintiffs Have Not Established Municipal Liability Under Section 1983.**

Plaintiffs offer little opposition to the District's *Monell* argument. They claim plaintiffs Garnett and Messick "received no notices or updates, including a notice of delay, from Defendant as to the progress or status of their applications." Pls.' Opp'n at 29–30. First, the Third Claim is specifically an allegation about notices of delayed processing of an application, not any other type of notice. Am. Compl. ¶ 173. Second, Ms. Garnett's and Mr. Messick's applications are not alleged to have been untimely processed. *See* Section I.A above at 3. Plaintiffs offer no factual allegations of an ongoing and systemic notice problem. Thus, plaintiffs have not demonstrated the District has an ongoing pattern, policy, or practice of due process violations related to SNAP application notices. *See* Def.'s Mem. at 27.

IV.  **Plaintiffs Fail to Appreciate the Unique Nature of the District of Columbia Under Federal Law.**

Plaintiffs seemingly refuse to accept that they bring this action, in essence, against the District of Columbia, a unique municipality created by the Constitution of the United States. It is unclear why plaintiffs are unwilling to abandon their due process claim under the Fourteenth Amendment (which does not apply to the District), or why they insist that Director Zeilinger is the proper defendant. Correcting these errors would not change the general nature of this litigation— plaintiffs could still maintain a proper Fifth Amendment due process claim against the District—and plaintiffs' refusal to admit to these errors is further indication of their unwillingness to admit to, or attempt to correct, the significant problems

discussed above. And, although neither of these mistakes is as conclusively fatal to plaintiffs' case, such deficiencies buttress the case for dismissal.

### A.    The Fourteenth Amendment Does Not Apply to the District of Columbia.

Plaintiffs' attempt to defend their mistake in bringing a claim under the Fourteenth Amendment against the District is untenable. They concede "the District of Columbia is not a state, and thus not subject to the Fourteenth Amendment …." Pls.' Opp'n at 30. In spite of this, plaintiffs proceed to mischaracterize an irrefutable fact regarding the applicability of the Fourteenth Amendment, *see* Def.'s Mem. at 28, as a "last salvo in evading the requirements of Due Process," Pls.' Opp'n at 30, even though the District's memorandum explicitly stated, "the District of Columbia, which is not a state, is subject to the Due Process Clause of the Fifth Amendment …." Def.'s Mem. at 28. The Court should dismiss plaintiffs' Fourteenth Amendment claim.

### B.    The District of Columbia Should be Substituted as the Only Proper Defendant.

Plaintiffs deny that their action is properly against the District of Columbia by citing wholly inapplicable caselaw. The Supreme Court has made clear that the "legal fiction" allowed under *Ex parte Young*, 209 U.S. 123 (1908), exists solely to allow a small set of suits against a small set of defendants. "[*Ex parte*] *Young* did not establish a new cause of action and it does not impose any particular procedural regime in the suits it permits. It stands, instead, for a jurisdictional rule by which paramount federal law may be enforced in a federal court by substituting a non-immune party (the state officer) for an immune one (the State itself)." *Seminole Tribe v. Florida*, 517 U.S. 44, 177-78 (1996) (Souter, J., dissenting); *accord id.* at 76

(Rehnquist, C.J., for the Court) (describing the "narrow exception to the Eleventh Amendment provided by the *Ex parte Young* doctrine**"**).

Like the inapplicability of the Fourteenth Amendment, "[t]he District of Columbia … is not a state for the purposes of the Eleventh Amendment." *Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 899 F. Supp. 659, 668 (D.D.C. 1995) (citing cases), *vacated in part and remanded, for other reasons, by* 93 F.3d 910 (D.C. Cir. 1996). Therefore, "[p]laintiffs' reliance on cases dealing with state immunity under the Eleventh Amendment is inapposite in this case involving the District of Columbia and its agencies." *Disability Rights Council of Greater Wash. v. District of Columbia.*, 2005 U.S. Dist. LEXIS 3866, *2–*3, *12 (Bates, J.) (granting defendants' motion to dismiss for lack of jurisdiction all defendants "sued in their official capacity as directors of various District of Columbia departments") (cited in *Equal Rights Ctr. v. District of Columbia*, 741 F. Supp. 2d 273 (D.D.C. 2010)).

Additionally, plaintiffs are attempting to use the *Ex parte Young* doctrine in a manner forbidden even when the defendant is a proper, state official. "Private parties who act in compliance with federal law may use *Ex parte Young* as a *shield* against the enforcement of contrary (and thus preempted) state laws … [but not] as a cause-of-action-creating *sword*." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d at 906 (6th Cir. 2014) (emphasis in original). *See also Seminole Tribe*, 517 U.S. at 73 (if a "situation … is sufficiently different from that giving rise to the traditional *Ex parte Young* action" that will "preclude the availability of that doctrine."). Here, plaintiffs are seeking affirmative injunctive relief, asking the Court to compel action by the

District rather than to prohibit the District's conduct.[5] When the *Ex parte Young* doctrine is not available, "[w]hat is required is that Congress created a cause of action for injunctive relief in the statute or otherwise made § 1983 available." *Id.* As discussed in Section II.A above, there is no such right of action here.

The Supreme Court has cautioned, "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*." *Seminole Tribe*, 517 U.S. at 74. As discussed, Def.'s Mem. at 17–19, Congress created an administratively remedial scheme and strictly limited the role the judiciary should play and the relief it could grant. Therefore, to the extent plaintiffs bring this action based upon *Ex parte Young*, the Court should reject their claims and dismiss the action. Otherwise, assuming plaintiffs' claims survive the District's motion to dismiss, the District of Columbia should be substituted as the proper defendant.

## CONCLUSION

For the foregoing reasons and those in defendant's motion to dismiss, the Court should dismiss plaintiffs' Amended Complaint, with prejudice.

---

[5] *See also The Supreme Court 2014 Term: Leading Case: Constitutional Law: Article VI—Private Rights of Action—Equitable Remedies to Enforce the Medicaid Act—Armstrong v. Exceptional Child Center, Inc.*, 129 HARV. L. REV. 211, 216 ("Suits like *Armstrong* [135 S. Ct. 1378 (2015)] seeking affirmative injunctive relief against the government may now be foreclosed pursuant to the same approach applied in the statutory damages context—that is, upon finding the provision of alternate remedies or judicially unadministrable text.")

Dated:  August 7, 2018.        Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

/s/ Fernando Amarillas
FERNANDO AMARILLAS [974858]
Chief, Equity Section

/s/ Conrad Z. Risher
CONRAD Z. RISHER [1044678]
AMANDA J. MONTEE [1018326]
Assistant Attorneys General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 442–5868
(202) 741–0557 (fax)
conrad.risher@dc.gov

*Counsel for Defendant the District of Columbia*