**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **SHONICE G. GARNETT** *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 17-cv-1757 (CRC) |
| **LAURA ZEILINGER**, | |
| Defendant. | |

## MEMORANDUM OPINION

Last year, a group of District of Columbia residents filed suit against Laura Zeilinger,

director of the department that administers the District's Supplemental Nutrition Assistance

Program ("SNAP"). They alleged that the District's administration of the program fails to

adhere to statutory, regulatory, and constitutional requirements. Specifically, plaintiffs contend

that the District (1) failed to process their SNAP benefit applications in a timely manner; (2)

failed to send timely notices that their eligibility to receive benefits needed to be recertified; and

(3) failed to provide any notice of benefit processing delays and the right to a hearing. The Court

stayed the District's obligation to respond to the complaint pending resolution of the plaintiffs'

motions on class certification and a preliminary injunction. Now that those motions have been

resolved, the District has moved to dismiss the amended complaint. The Court will grant the

motion in part and deny it in part, dismissing the third claim but keeping the remaining two.

### I.    Factual and Procedural Background

The Court addressed the relevant factual and legal background at length in its prior

opinions. See Garnett v. Zeilinger ("Garnett II"), -- F. Supp. 3d --, 2018 WL 2451226, at *1–3

(D.D.C. May 31, 2018) (preliminary injunction opinion); Garnett v. Zeilinger ("Garnett I"), 301

F. Supp. 3d 199, 203–04 (D.D.C. 2018) (class certification order).  It will therefore provide only an abbreviated background here.

The SNAP program provides benefits to low-income households to help them purchase food.  States that elect to participate in the program receive funding for benefits and 50% of administration costs from the federal government.  7 U.S.C. §§ 2013(a), 2025.  In return, States must administer their programs in accordance with federal statutory and regulatory requirements. See 7 U.S.C. § 2020(e), 7 C.F.R. § 273.2   As relevant here, States must process applications for benefits—both initial applications and applications submitted to recertify eligibility, known as "recertification applications"—within specific timelines.  7 U.S.C. § 2020(e)(3), (9).  They also must issue notices informing recipients of the need to recertify eligibility for benefits (known as "recertification notices") so as to allow recertification without a break in benefits.  Id. § 2020(e)(4).

In August 2017, a group of District residents brought suit under 42 U.S.C. § 1983 against Laura Zeilinger alleging that the District was failing to administer its SNAP program in accordance with federal requirements by (1) not processing applications for benefits within the statutorily-mandated timeframes, (2) not timely issuing recertification notices prior to the expiration of benefits as required by statute, and (3) not providing notice of delays in processing applications and of the right to a hearing.  Am. Compl. ¶¶ 171–73[1]  They sought injunctive and declaratory relief to remedy these systemic violations.  Id. at 31–32.

 Contemporaneous with the complaint, plaintiffs filed a motion to certify two classes. See Garnett I, 301 F. Supp. 3d at 204.  Shortly thereafter, they moved for a preliminary

---

[1] While Zeilinger is currently the sole defendant in this case, consistent with its prior opinions the Court will refer to the defendant here as "the District."

injunction.  See Garnett II, 2018 WL 2451226, at *4.  The Court stayed the District's response to the complaint pending the resolution of the two motions.  See Minute Order (Sept. 15, 2017). Following a status conference, a period of limited expedited discovery, a hearing on both motions, and additional rounds of briefing, the Court granted the motion for class certification on March 28, 2018 and partially granted the motion for a preliminary injunction on May 31, 2018. See Garnett I, 301 F. Supp. 3d at 211–12 (certifying three classes); Garnett II, 2018 WL 2451226, at *1 (granting preliminary injunction).  The Court entered the preliminary injunction simultaneously with this ruling.  See Preliminary Injunction Order (Aug. 23, 2018).

In its May 31 ruling on the preliminary injunction request, the Court directed the District to respond to the complaint by July 2018.  The District filed this motion to dismiss, which is now ripe for review.

## II.  Legal Standards

The District has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In addressing such a motion, "[t]he court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept the plaintiff's legal conclusions as correct."  Sissel v. U.S. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014) (Rule 12(b)(6)); see also Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (Rule 12(b)(1)).  For a motion under Rule 12(b)(1), the Court may consider materials outside the pleadings.  Jerome Stevens Pharma., 402 F.3d at 1253.  In contrast, for a motion under Rule 12(b)(6), the Court may consider only the facts in the complaint, documents attached to or incorporated into the complaint, or matters of which the Court may take judicial notice.  See, e.g., EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997).

3

### III. Analysis

The District moves to dismiss each of the plaintiffs' three claims on the same three grounds: that the plaintiffs lack standing, that they have no cause of action under 42 U.S.C. § 1983, and that, even if they met those threshold requirements, they have not stated a valid claim. The Court takes those arguments in turn.

#### A. Whether plaintiffs have standing

In challenging the plaintiffs' standing on all three claims, the District advances the same basic argument: that the individual plaintiffs have not shown (1) an ongoing injury that is (2) traceable to the challenged conduct. As to ongoing injury, the District notes that the named plaintiffs' specific complaints about their SNAP benefits have been resolved and all are now receiving the benefits they are legally due. Def.'s Mem. P. & A. Supp. Mot. Dismiss ("Def.'s MTD") at 11–12. As to traceability, the District argues that the named plaintiffs' delays were caused by idiosyncratic problems, not the District's challenged conduct. Def.'s Reply at 2–4. The plaintiffs respond that the District's arguments go to mootness, not standing, and that exceptions to mootness—primarily voluntary cessation, see Pls.' Opp'n Def.'s Mot. Dismiss ("Pls.' Opp'n") at 11–13, but also the inherently transitory exception, id. at 13 n.5—apply.

In fact, both issues are in play here: The District's argument that any injuries the plaintiffs suffered are not traceable to the challenged conduct goes to the plaintiffs' *standing*. "[S]tanding is assessed by considering the facts at the time the complaint was filed." Delta Air Lines, Inc. v. Export-Import Bank of the U.S., 85 F. Supp. 3d 250, 260 (D.D.C. 2015). To establish standing, a plaintiff has the burden of showing that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citation omitted). Where a plaintiff seeks

injunctive relief, the plaintiff must show either an ongoing injury or a future injury. See, e.g., Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015). A future injury is sufficient to sustain standing only "if the threatened injury is certainly impending or there is a substantial risk that the harm will occur." Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 (2014).

On the other hand, the District's contention that the named plaintiffs cannot invoke federal-court jurisdiction because they are now receiving benefits is really about *mootness*. Just as Article III requires that plaintiffs have standing when they initiate a lawsuit, they must retain a justiciable controversy throughout the litigation. See, e.g., Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 669 (2016). If not, "the case must be dismissed as moot." McBride v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of U.S., 264 F.3d 52, 55 (D.C. Cir. 2001). But there are exceptions to this general rule: for instance, a case need not be dismissed when the case becomes moot due to the defendant's voluntary cessation of the challenged conduct. See, e.g., Nat'l Black Police Ass'n v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997).

For each claim, then, the Court will start with whether the plaintiffs had standing at the initiation of the suit and will then address, as necessary, whether their current receipt of SNAP benefits moots the case and requires dismissal. Because these issues arise on a motion to dismiss, the plaintiffs need only "state a plausible claim" that the requirements of standing are met. Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 913 (D.C. Cir. 2015) (citation omitted). In so determining, the Court "accept[s] the well-pleaded factual allegations" in the complaint "as true and draw[s] all reasonable inferences from those allegations in the plaintiff's favor." Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015). The Court does not, however, "assume the truth of legal conclusions" nor will it "accept inferences that are unsupported by the

facts set out in the complaint." Id. (citation omitted).  The Court can consider materials outside of the complaint, such as a plaintiff's sworn declaration.  Food & Water Watch, 808 F.3d at 913.

Class actions such as this present several wrinkles in the analysis of standing and mootness.  As to standing, individual named plaintiffs representing a class must have standing to pursue their own individual claims at the time the suit was filed.  See 1 Newberg on Class Actions § 2:3 (5th ed.).  The named plaintiffs cannot rely only upon the standing or injuries of other class members.  Id.  But, so long as the individual named plaintiffs have standing, the Court need not consider the standing of any absent class members.  See id.  Where there are multiple classes, as here, each class needs to have one representative with individual standing.  See id. § 2:5.  In addition, the relief that the individual named plaintiffs have standing to pursue must be consistent with the relief sought by the class.  See id. § 2:6.  As relevant here, this means that where a class seeks injunctive relief the named plaintiffs must have standing for the same sort of injunctive relief the class seeks.  See id. § 5:7.

Mootness doctrine also has some distinctions in the class action context.  First, the Supreme Court has recognized that if a named plaintiff's claims become moot *after* a class is certified, the Court retains jurisdiction over the case so long as other class members retain a live claim.  See, e.g., Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 74 (2013).  Second, there are unique exceptions to mootness in class action situations.  As relevant here, mooting of the named plaintiff's claims—even *before* class certification—will not require dismissal of the case if "the challenged conduct and the claims raised are 'so inherently transitory that the trial court will not even have enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'"  Id. at 76 (quoting County of Riverside v. McLaughlin, 500 U.S. 44, 52 (1991)).  This "inherently transitory" exception applies in

"circumstances in which the challenged conduct [is] effectively unreviewable, because no plaintiff possess[es] a personal stake in the suit long enough for litigation to run its course." Id.

Against that backdrop, the Court turns to the plaintiffs' standing to bring each of their three claims.

### 1. Claim 1

In their first claim, plaintiffs allege that the District is failing to process benefits for SNAP applications—both initial applications and recertification applications—within the timelines imposed by statute, see 7 U.S.C. § 2020(e)(3), (9). Am. Compl. ¶ 171. This claim corresponds to the first two classes that the Court certified: (1) District residents whose initial applications for SNAP benefits were not or will not be processed on time and (2) District residents whose recertification applications for SNAP benefits were not or will not be processed on time. See Garnett I, 301 F. Supp. 3d at 212. The Court will focus its standing inquiry on the named representatives of Class 1 and Class 2: Shonice G. Garnett, Richard Messick, Jr., Kathryn Harris, and Linda Murph.

### a. Whether plaintiffs had standing when the complaint was filed

As noted, to establish standing to seek injunctive relief, the named plaintiffs must demonstrate that at the time the complaint (or amended complaint) was filed they suffered (1) an actual injury that was ongoing (or a sufficiently definite threat of future injury), (2) that was traceable to the defendant's challenged conduct, and (3) that is redressable by an injunction from this Court.

First, all but one of the individual named plaintiffs pled an ongoing actual injury at the time of suit. According to their sworn affidavits, at the time the suit was filed the named plaintiffs were not receiving SNAP benefits they were entitled to under the law. See Decl. of

Shonice G. Garnett [ECF No. 2-16], ¶ 5; Decl. of Linda Murph [ECF No. 27-20], ¶ 6; Decl. of Kathryn Harris [ECF No. 27-6], ¶ 3.[2]  The lack of SNAP benefits is, as the Court discussed in its preliminary injunction opinion, clearly an actual injury.  See Garnett II, 2018 WL 2451226, at *6–7.  And since the plaintiffs were *at that moment* deprived of SNAP benefits, they suffered an ongoing injury as required for injunctive relief.[3]

Second, despite the District's arguments to the contrary, the named plaintiffs stated an injury that was traceable to the relevant challenged conduct.  As to Shonice Garnett, the remaining named plaintiff representing the class of individuals with delayed processing of initial applications, her declaration states that she filed an initial application on July 10, 2017.  Decl. of Shonice G. Garnett [ECF No. 2-16], ¶ 7; see also First Decl. of Laura Zeilinger [ECF No. 31-1], ¶ 157b.  Ms. Garnett further alleges that she was not receiving benefits associated with that application as of August 24, 2017, more than 30 days after her application was filed.  Decl. of Shonice G. Garnett [ECF No. 2-16], ¶ 11.  Director Zeilinger's declaration states that Ms. Garnett was provided benefits by August 31, 2017, seemingly confirming Ms. Garnett's account of events.  First Decl. of Laura Zeilinger [ECF No. 31-1], ¶ 157d.  Thus, Ms. Garnett has attested that she was not receiving SNAP benefits she was due under the law because the District had

---

[2] The one exception is Richard Messick, Jr., who admits in his affidavit that he was receiving SNAP benefits when the suit was filed.  Decl. of Richard Messick, Jr. [ECF No. 3-17], ¶ 13.  As a result, he did not state an *ongoing* injury as required for injunctive relief and may lack standing.  Any lack of standing is not fatal, however, since the other representative of his class (Shonice Garnett) does have standing, as the Court will explain.  Plaintiffs may substitute in a new alternative class representative with standing for Mr. Messick should they desire to do so.

[3] Because the named plaintiffs alleged an *ongoing* injury at the time suit was filed, the Court need not address the District's arguments regarding whether they have shown a sufficient risk of *future* harm to have standing for injunctive relief.

failed to process her application within 30 days.[4]  Her injury (lack of benefits) is thus traceable to the conduct she challenges (the failure to process initial applications within the mandated timelines).

The same goes for Linda Murph, one of the two named representatives for the class of individuals who experienced delayed processing of recertification applications.  According to Ms. Murph, she was due to recertify her eligibility in April 2017 and submitted an application then.  Decl. of Linda Murph [ECF No. 27-20], ¶ 5.  She attests that she received benefits in May but did not receive any after that.  Id. ¶ 6.[5]  The Zeilinger Declaration recounts multiple mishaps that apparently led to the termination of Ms. Murph's benefits, including inadvertently entering an incorrect recertification due date.  First Decl. of Laura Zeilinger [ECF No. 31-1], ¶ 159.  But the declaration does not refute that (1) Ms. Murph submitted a recertification application in April 2017 or (2) her application was untimely processed.  As such, given the standards to demonstrate standing on a motion to dismiss, the Court concludes that Ms. Murph has adequately alleged that she was not receiving SNAP benefits she was due because the District failed to process her April 2017 recertification application.

---

[4] Under the statute, an application is timely processed when the State completes the certification of the recipient's eligibility *and* provides benefits to the recipient.  See 7 U.S.C. § 2020(e)(3), (4), (9).  Thus, to be in compliance with the statutory text requires the *provision of benefits* within the relevant timeline, not simply the administrative processing of the application.

[5] To be precise, Ms. Murph states that she did not receive benefits in June or July in particular.  Decl. of Linda Murph [ECF No. 27-20], ¶ 6.  But the Zeilinger Declaration states that Ms. Murph received benefits by August 31, First Decl. of Laura Zeilinger [ECF No. 31-1], ¶ 159, and the amended complaint alleges that Ms. Murph did not receive benefits after May, Am. Compl. ¶ 117.  As such, the Court infers that Ms. Murph was not receiving benefits in August 2017 either.

So, too, for Kathryn Harris, the other named representative for the class of individuals with delayed processing of recertification applications. Ms. Harris states in her declaration that she was due for recertification and completed a recertification application on September 14, 2017. Decl. of Kathryn Harris [ECF No. 27-6], ¶ 5. However, her benefits were terminated at the start of October 2017. Id. ¶ 3. The Zeilinger Declaration confirms that Ms. Harris (1) submitted a recertification application (albeit via email rather than mail or in person) and (2) was not receiving SNAP benefits during the first part of October 2017. First Decl. of Laura Zeilinger [ECF No. 31-1], ¶ 163. Thus, Ms. Harris has adequately alleged at this juncture that she was not receiving benefits because the District failed to properly process her recertification application and, as with the other named representatives, asserted standing when she filed this suit for injunctive relief.

b. Whether plaintiffs' claims are now moot

That said, the three named plaintiffs discussed above are now all receiving the SNAP benefits to which they are entitled. Since the plaintiffs' injuries have been redressed, the Court confronts a question of mootness. At first blush, the answer to this question would appear to be that because the Court has certified classes already, the mooting of the named plaintiffs' claims does not moot the case. See, e.g., Genesis Healthcare, 569 U.S. at 74. But the record indicates that the named plaintiffs' claims became moot *before* the Court resolved class certification. As a consequence, any mootness problem pre-dates class certification and the Court may not be able to rely on the certified classes to sustain jurisdiction.

Instead, the Court will consider whether any exceptions to mootness apply. Plaintiffs point to two: voluntary cessation and the inherently transitory exception. Because the Court concludes that the latter applies, it need not address the former.[6]

The inherently-transitory exception applies when (1) "it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class," and (2) "there will be a constant class of persons suffering the deprivation complained of in the complaint." Olson v. Brown, 594 F.3d 577, 582 (7th Cir. 2010). Both of those conditions are met here.

With respect to the first, evidence in the record suggests that when individuals' applications are delayed, they are rarely delayed more than 60 days. See, e.g., Def.'s Surreply to Mot. Prelim. Inj. Ex. B [ECF No. 48-2] (FNS-366B report for first quarter 2018 showing that 4,234 total applications were approved 1-60 days late and only 90 were approved 61+ days late). Thus, most class members' claims would become moot in less than two months, hardly enough time to fully brief and address class certification let alone the merits of this complex case. In addition, since "it is impossible to predict" how long it will take for the District to process any one application, "there is no way for plaintiffs to ensure that the [n]amed [p]laintiffs" will be individuals whose "claims will not expire within the time it would take to litigate their claims." Thorpe v. District of Columbia, 916 F. Supp. 2d 65, 67 (D.D.C. 2013) (applying inherently transitory exception).

_____

[6] The mooting of named plaintiffs' claims sometimes raises a question as to the adequacy of their class representation. See Sonsa v. Iowa, 419 U.S. 393, 403 (1975). But the Court continues to hold, as it explained at class certification, that the named plaintiffs will be adequate representatives. See Garnett I, 301 F. Supp. 3d at 210–11. Moreover, their continued eligibility for SNAP benefits provides the named plaintiffs every incentive to ensure that the District will adhere to the proper timelines for the processing of applications going forward.

Turning to the second prong, as noted in the ruling on the motion for the preliminary injunction, the District has admitted that it is not processing all applications within the proper timelines. See Garnett II, 2018 WL 2451226, at *7. As such, at any given moment there are recipients who are not receiving SNAP benefits owed under the law because of a delay in processing their applications. See id. There is thus a constant class of individuals suffering the injury complained of (loss of SNAP benefits) because of the challenged conduct. Consequently, since both requirements are met, the inherently transitory exception applies here.

* * *

In sum, the named plaintiffs had standing at the time the complaint (or amended complaint) was filed. And since the inherently-transitory exception to mootness applies, the Court will deny the District's motion to dismiss Claim 1.[7]

### 2. Claim 2

In their second claim, the plaintiffs allege that the District is failing to send out recertification notices as required by the statute, see 7 U.S.C. § 2020(e)(4). Am. Compl. ¶ 172. This claim corresponds to the third class the Court certified: District residents who fail to receive a timely recertification notice. See Garnett I, 301 F. Supp. 3d at 213. The Court will therefore focus its analysis on the named representatives of Class 3: James Stanley and Roderick Gaines.

As with the named plaintiffs for the classes corresponding to Claim 1, Mr. Stanley and Mr. Gaines alleged that at the time they brought suit, they were not receiving SNAP benefits.

---

[7] Because the Court has concluded the named plaintiffs have standing as to Claim 1, it need not address the arguments that plaintiff Bread for the City lacks standing. See, e.g., Ark Initiative v. Tidwell, 64 F. Supp. 3d 81, 92 (D.D.C. 2014) ("Since the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement, the Court need 'not determine whether the other plaintiffs have standing.'" (internal quotation omitted)).

Decl. of Roderick Gaines [ECF No. 27-4], ¶ 3; Decl. of James Stanley [ECF No. 27-2], ¶ 3. They also tie this loss of benefits to the failure to receive a recertification notice. Decl. of Roderick Gaines [ECF No. 27-4], ¶ 3; Decl. of James Stanley [ECF No. 27-2], ¶ 5. Director Zeilinger's declaration confirms that Mr. Stanley and Mr. Gaines had their benefits terminated because they did not submit a recertification application and suggests the failure to do so was tied to a failure to receive a recertification notice. First Decl. of Laura Zeilinger [ECF No. 31-1], ¶¶ 161a, 162a. Accordingly, both stated an ongoing injury (loss of benefits) that is traceable to the challenged conduct (failure to receive a recertification notice).

But unlike for the named representatives for Claim 1, the actual injury that Mr. Stanley and Mr. Gaines suffered is not redressable by the specific injunctive relief sought by the class they represent. The class seeks injunctive relief remedying the failure to provide notices. But ordering the District to ensure that Mr. Stanley and Mr. Gaines receive *future* notices they are due would not solve the *ongoing* injury they experienced when suit was brought; receiving the next recertification notice does nothing to resolve the currently-lost benefits. As such, with respect to the ongoing injury the named plaintiffs alleged there is a disconnect between the individual relief they would be entitled to and the class relief they seek.

This problem is not fatal, however, because the Court concludes that Mr. Stanley and Mr. Gaines also sufficiently allege a risk of future injury at this juncture—namely that they will not receive future recertification notices and therefore lose benefits once more. A plaintiff may also establish standing to seek injunctive relief based on a possible future injury, so long as she demonstrates a "substantial risk" that the injury will occur or that the injury is "certainly impending." Susan B. Anthony List, 134 S. Ct. at 2341 (internal quotation omitted).

In light of the present record before the Court, plaintiffs have adequately demonstrated that they face a sufficient risk of future injury. For one, households that receive SNAP benefits are only certified for a limited period of time, typically lasting 6-12 months. See 7 C.F.R. §273.10(f) ("The certification period cannot exceed 12 months except to accommodate a household's transitional benefit period and as specified in paragraphs (f)(1) and (f)(2)."); id. § 273.10(f)(3)(i) ("Households should be assigned certification periods of at least 6 months, unless the household's circumstances are unstable or the household contains an [able-bodied adult without dependants]."). Benefit recipients like Mr. Stanley and Mr. Gaines are thus required to recertify eligibility at least every 6-12 months, meaning they can regularly anticipate receiving a recertification notice. It is therefore nearly certain that Mr. Stanley and Mr. Gaines, within a year, will face the possibility of not receiving a recertification notice and losing benefits.

In addition, the record indicates that Mr. Stanley and Mr. Gaines face a sufficiently high risk of experiencing that injury and losing their benefits as a consequence. For instance, other named plaintiffs also attested to a failure to receive a recertification notice. See Decl. of Linda Murph [ECF No. 27-20], ¶ 3 (failure to receive recertification notice in April 2017); Decl. of Kathryn Harris [ECF No. 27-6], ¶ 4 (failure to receive recertification notice in September 2017). Similarly, other affidavits from class members submitted in support of the motion for a preliminary injunction attest to continuing failures to receive recertification notices leading to the termination of benefits. See, e.g., Decl. of Yesica Guevara [ECF No. 24-45], ¶ 11 (failure to receive recertification notice in April 2017 led to termination of benefits); Decl. of Bruce J. Meraviglia [ECF No. 45-43], ¶ 4 (failure to receive recertification notice in September 2017 led to termination of benefits).

The Court is not relying on other class members' failure to receive notices and their resulting injury to establish plaintiffs' standing. However, the fact that the District has repeatedly failed to send notices sheds light on whether it is likely that Mr. Stanley and Mr. Gaines will again suffer a loss of SNAP benefits because of a failure to receive a notice. Though this evidence may have been insufficient to establish a systemic failure to send recertification notices as required for a preliminary injunction, see Garnett II, 2018 WL 2451226, at *12, it does suffice to show that Mr. Stanley and Mr. Gaines face "a realistic danger of sustaining a direct injury" as required for standing, Arpaio v. Obama, 797 F.3d 11, 21 (D.C. Cir. 2015) (internal quotation omitted).[8]

This direct injury (the risk of losing SNAP benefits) is traceable to the challenged conduct (failure to provide recertification notices) and redressable by an injunction akin to that the class seeks (one directing the District to send the notices due under law). As such, Mr. Stanley and Mr. Gaines have established standing at this juncture as to Claim 2.[9]

    3.  *Claim 3*

In their third claim, the plaintiffs allege that the District is failing to provide written notice of processing delays and of the right to a hearing, in violation of the Due Process Clause of the Fourteenth and Fifth Amendments and the relevant statute. Am. Compl. ¶ 173. Since this

---

[8] Because Mr. Stanley and Mr. Gaines show a future injury sufficient for standing, the fact that they are now receiving the SNAP benefits owed them does not raise a mootness concern, in contrast to the named representatives for Claim 1.

[9] As with Claim 1, since the Court has concluded the named plaintiffs have standing as to Claim 2 it need not address whether plaintiff Bread for the City also has standing. See, e.g., Ark Initiative, 64 F. Supp. 3d at 92.

claim does not correspond to any of the classes the Court certified, it will focus on the individual standing of all the named plaintiffs.

As to Claim 3, the Court agrees with the District that the individual plaintiffs (and Bread for the City) have not adequately alleged standing because they fail to identify an actual injury traceable to the relevant challenged conduct or redressable by the desired relief. The named plaintiffs cannot rely on a statutory violation alone to provide injury, but rather must point to a "concrete" harm flowing from the statutory violation. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1550 (2016). While the loss of benefits (or, for Bread for the City, economic resources) is such a concrete harm, that harm is not traceable to the conduct challenged in Claim 3. The plaintiffs' failure to receive benefits (and Bread for the City's need to expend resources) stems from the District's failure to *process applications* or to *issue recertification notices*, not from any failure to provide a notice of delayed processing or of the right to a hearing. Put another way, even if the District had provided notice of any delay in processing and of the right to seek a due process hearing, that would not have altered the fact that the plaintiffs were not receiving the SNAP benefits they were due under the law and thus would not have alleviated the injury that the plaintiffs identify. Accordingly, the plaintiffs have not identified an actual injury that is traceable to the challenged conduct or redressable by the desired relief and lack standing to pursue Claim 3.

B.  Whether plaintiffs have a cause of action

The District further argues that even if plaintiffs have standing, they lack a valid cause of action. The plaintiffs have brought suit under 42 U.S.C. § 1983. See Am. Compl. ¶ 6. That statute provides a cause of action against District officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

The District argues that the statutory provisions at issue here do not create "rights" enforceable under section 1983. It also contends that even if the statutory provisions create a "right," section 1983 still does not provide a remedy because the administrative scheme created under the SNAP Act demonstrates that Congress did not intend those rights be enforceable through section 1983.

   1.   *Whether the SNAP Act creates a "right" enforceable under section 1983*

The Court will begin with whether the relevant statutory text here creates a "right" enforceable under section 1983.[10] The Supreme Court has laid out a three-part test to determine whether a federal statute provides a "right" enforceable through section 1983: (1) "Congress must have intended that the provision in question benefit the plaintiff"; (2) "the plaintiff must demonstrate that the right assuredly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and (3) "the statute must unambiguously impose a binding obligation on the States." Blessing v. Freestone, 520 U.S. 329, 340–41 (1997).

Plaintiffs point to four statutory provisions that they argue create such rights:

- *7 U.S.C. § 2014(a)*: "Assistance under this program shall be furnished to all eligible households who make application for such participation."

- *7 U.S.C. § 2020(e)(3)*: "The State plan of operation required . . . shall provide . . . that the State agency shall thereafter promptly determine the eligibility of each applicant household . . . so as to complete certification of and provide an allotment retroactive to the period of application to any eligible household not later than thirty days following the filing of an application . . . "

- *7 U.S.C. § 2020(e)(4)*: "The State plan of operation required . . . shall provide . . . that the State agency shall insure that each participating household receive a notice of expiration of its certification prior to the state of the last month of its certification period . . . and, further, that each such household which seeks to be certified another time or more times thereafter by filing an application for such

---

[10] Because the Court has concluded that the plaintiffs lack standing as to Claim 3, it will focus its analysis on the statutory provisions relevant to Claims 1 and 2.

17

recertification no later than fifteen days prior to the day upon which its existing certification period expires shall . . . receive its allotment no later than one month after the receipt of the last allotment . . . "

- *7 U.S.C. § 2020(e)(9)*: "The State plan of operation required . . . shall provide . . . that the State agency shall provide benefits no later than 7 days after the date of application to any household which" meets certain low income requirements

The District does not strongly contest that these statutory provisions meet the latter two requirements of the <u>Blessing</u> test. The statute imposes an obligation on the States: the statutory text uses the mandatory "shall" and the statutory scheme is clear that if States wish to receive money they *must* follow these requirements. Nor are any of these provisions too vague or precatory to allow for judicial enforcement. The first provision—section 2014(a)—mandates that eligible households receive benefits, an analysis that only requires the Court to determine whether a household is eligible. Subsections 2020(e)(3), (e)(4), and (e)(9) all involve specific timelines for when States must take certain actions, which courts are clearly capable of enforcing.

Rather, the hardest prong of the <u>Blessing</u> test here is the first: whether the statutory text creates rights that are intended to benefit *individuals*. Indeed, the District primarily argues that the plaintiffs lack a cause of action under section 1983 because the statutory text here "imposes conditions upon the states receiving federal funds for SNAP, not rights for beneficiaries." Def.'s MTD at 18. In support of its argument, it notes that the relevant statutory language focuses on the State plan of operation, not on the individual beneficiaries of SNAP. <u>Id.</u> But under the Supreme Court's decision in <u>Wilder v. Virginia Hospital Association</u>, 496 U.S. 498 (1990), this statutory text is sufficient to create a right intended to benefit an individual.

In <u>Wilder</u>, the Supreme Court analyzed a provision of the Medicaid statutes (known as the "Boren Amendment") that read:

> a State plan for medical assistance must . . . provide . . . for payment . . . of the
> hospital services, nursing facility services, and services in an intermediate care
> facility for the mentally retarded provided under the plan through the use of rates
> . . . which the State finds, and makes assurances satisfactory to the Secretary, are
> reasonable and adequate to meet the costs which must be incurred by efficiently
> and economically operated facilities in order to provide care and services . . .

496 U.S. at 503 (quoting 42 U.S.C. § 1396a(a)(13)(A) (1982)).  The Court held that this

provision created a "substantive right to reasonable and adequate rates" for medical providers

that was enforceable under section 1983.  Id. at 512.  It found "little doubt that health care

providers are the intended beneficiaries" of the statutory provision, id. at 510, notwithstanding

that the statutory language addressed state plans rather than individuals.  In reaching its holding,

the Court drew on its prior decision in Wright v. City of Roanoke Redevelopment & Housing

Authority, 479 U.S. 418 (1987), which held that a provision that set limitations on the rent

chargeable to public housing tenants created a right enforceable under section 1983 because it

created "mandatory limitation[s] focusing on the individual family and its income."  Id. at 511

(quoting Wright, 479 U.S. at 420) (alteration in original).

The statutory text at issue here strongly resembles those at issue in Wilder and Wright.

As in Wright, the provision focuses on the individual needs of benefit recipients.  It directs, for

instance, that different classes of recipients be treated differently based on their respective needs;

lower-income households are to receive benefits more rapidly than households with higher

incomes.  And as in Wilder, the provisions at issue are clearly intended to benefit the recipients

as individuals.  Finally, Wilder indicates that statutory references to "state plans" do not preclude

the conclusion that the relevant provisions create enforceable rights.  So, like the statutes in

Wright and Wilder, the relevant provisions in the SNAP Act create rights enforceable under

section 1983.  See Briggs, 792 F.3d at 244 (reaching the same conclusion).

The Supreme Court's ruling in <u>Gonzaga University v. Doe</u>, 536 U.S.273 (2002), does not require a contrary result. That decision held that a provision of Family Educational Rights and Privacy Act ("FERPA") did not create an enforceable right for purposes of section 1983. In so holding, the Court explained that the relevant statutory text "speak[s] only to the Secretary of Education" and is thus "two steps removed from the interests of individual students and parents." <u>Gonzaga</u>, 536 U.S. at 287. In addition, the statutory text "further speak[s] only in terms of institutional policy and practices, not individual instances of disclosure" and thus was "not concerned with 'whether the needs of any particular person have been satisfied.'" <u>Id.</u> at 288 (citation omitted). Overall, the Supreme Court held, the relevant statutory text in FERPA was more about the expenditure of federal dollars than individual rights.

The concerns animating the decision in <u>Gonzaga</u> are absent here. This statutory text is directed at the States, not at the Secretary of Health and Human Services, and is therefore not "two steps removed" from benefits recipients, <u>id.</u> at 287. Moreover, the statutory text here focuses on "whether the needs of any particular person have been satisfied," <u>id.</u> at 288, as illustrated, for instance, by its differential treatment of households based on their income levels. See <u>Briggs</u>, 792 F.3d at 244. Overall, the statutory text at issue here is more akin to that in <u>Wilder</u> and <u>Wright</u> than in <u>Gonzaga</u>. As in those cases, then, the statute creates a right enforceable under section 1983.

2. *Whether the administrative scheme impliedly forecloses a remedy under section 1983*

The District argues that even if the statutory text creates *rights* under section 1983, that does not necessarily mean that section 1983 provides a *remedy*. Under Supreme Court precedent, once a plaintiff has demonstrated that a statute creates a right, there is a presumption that right is enforceable through section 1983. <u>Blessing</u>, 520 U.S. at 330. This presumption can

be rebutted if the defendant demonstrates that Congress did not intend for section 1983 to be used to enforce that right "either explicitly, by foreclosing recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive scheme that is incompatible with individual § 1983 enforcement." Id. Pointing to the administrative scheme that Congress created to govern SNAP benefits, the District argues that Congress did not intend for section 1983 to be used to enforce any rights here. Def.'s MTD at 20. The Court disagrees, again based on Wright and Wilder.

In Wright, the Supreme Court rejected the argument that the role the Department of Housing and Urban Affairs ("HUD") played in enforcing public housing laws precluded section 1983 suits. 479 U.S. at 424. While HUD had "authority to enforce the annual contributions contracts . . ., to conduct audits and to cut off funds," the Court held that the statutory scheme was not "sufficiently comprehensive and effective to raise a clear inference that Congress intended to foreclose a § 1983 cause of action for the enforcement of tenants' rights secured by federal law." Id. at 424–25. Nor did the statute provide the sort of private judicial remedies that the Court had previously held foreclosed section 1983 liability. Id. at 427.

Similarly, in Wilder the Supreme Court held the existence of an administrative oversight regime did not preclude section 1983 suits. 496 U.S. at 523. The relevant department was "authoriz[ed] . . . to withhold approval of [State] plans" and "to curtail federal funds to States whose plans are not in compliance with the Act." Id. at 521–22. States were also required to provide an appeals procedure for providers. Id. at 522. Nonetheless, the Court stated that "[t]his administrative scheme cannot be considered sufficiently comprehensive to demonstrate a congressional intent to withdraw the private remedy of § 1983." Id.

The regulatory scheme here is akin to that in Wilder. As there, the Food and Nutrition Service here oversees State compliance with the statutory requirements and has authority to

revoke federal funds and impose other sanctions for States that fail to substantially comply with requirements. See Garnett II, 2018 WL 2451226, at *2–3 (discussing the Service's oversight role). And as in Wilder and Wright, the SNAP Act does not contain its own judicial remedies. Thus, the more limited—and differently-focused—oversight role of the Service is not sufficiently comprehensive to displace section 1983. See Briggs, 792 F.3d at 245 (reaching the same conclusion).[11]

C. Whether plaintiffs state a claim

Finally, the District appears to argue that even if the plaintiffs have standing and a cause of action, they still fail to state a claim upon which relief can be granted. The District argues that the plaintiffs based their claims on stale data and that more recent information shows there are no systemic failures, and thus that the plaintiffs have not stated a claim for relief. Def.'s MTD at 20–23, Def.'s Reply at 13–15.

In order to state a valid claim, plaintiffs must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To do so, their complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plaintiff have met this standard as to Claims 1 and 2.

_____

[11] Finally, the District suggests that plaintiffs must exhaust administrative remedies prior to bringing suit. Def.'s MTD at 19. The Supreme Court has held that plaintiffs ordinarily need not exhaust administrative rights prior to bringing suit under section 1983 for violations of a statutory right. See, e.g., Patsy v. Board of Regents of State of Fla., 457 U.S. 496, 516 (1982). The District does not point to any basis sufficient to displace that general principle here.

Starting with Claim 1, the plaintiffs have adequately alleged that the District is not processing applications in accordance with the statutory timelines. Am. Compl. ¶¶ 74, 81–82, 84–88. Indeed, the District conceded in the hearing on the class certification and preliminary injunction motions that it is failing to do so. See Garnett II, 2018 WL 2451226, at *5. Particularly in light of the Court's ruling that plaintiffs have demonstrated a likelihood of succeeding on Claim 1, see id. at *5–6, Claim 1 states a claim upon which relief can be granted.

So, too, with Claim 2. Again, the complaint contains sufficient factual allegations to allege a systemic failure to issue recertification notices. Am. Compl. ¶¶ 74, 87, 89–95. And while the Court did not find plaintiffs have established a likelihood of succeeding on this claim in ruling on the preliminary injunction motion, it certainly did not foreclose the possibility that they would be able to prevail after further discovery. See Garnett II, 2018 WL 2451226, at *13. They have therefore adequately alleged a claim upon which relief can be granted as to Claim 2.[12]

### D. Whether to substitute the District as a defendant

Finally, the District argues that if the case is not dismissed, the District of Columbia should be substituted as a defendant for Laura Zeilinger. Def.'s MTD at 28–29. Plaintiffs disagree, contending that since they seek injunctive relief, Director Zeilinger is the proper defendant. Pls.' Opp'n at 31–32.

The Court will reserve judgment on these arguments. It is unclear at this juncture whether substitution of the District will materially alter the standard plaintiffs must meet to prove their case: namely, whether the "policy or practice" standard for municipal liability applies to a suit against a municipal officer in her official capacity alone. The Court will wait to resolve this

---

[12] The Court will not address whether plaintiffs state a valid claim as to Claim 3, since it has concluded they lack standing to raise this claim.

issue until the proper standard that applies in this case has been clarified, and invites the parties to address this issue in more detail in any future briefing.

**IV.    Conclusion**

For the foregoing reasons, the Court will grant in part and deny in part Defendant's Motion to Dismiss.  A separate Order shall accompany this Memorandum Opinion.


 

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>August 23, 2018</u>