```
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2
      - - - - - - - - - - - - - - - x
 3    SHONICE G. GARNETT, et al.,
                                    CA No:  1:17-cv-01757-CRC
 4              Plaintiffs,
                                    Washington, D.C.
 5    vs.                           Thursday, January 3, 2019
                                    11:03 a.m.
 6
      LAURA ZEILINGER,
 7
                Defendant.
 8    - - - - - - - - - - - - - - - x
 9    _____

10                TRANSCRIPT OF TELEPHONE CONFERENCE
          HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
11                  UNITED STATES DISTRICT JUDGE
      _____
12    APPEARANCES:

13    For the Plaintiff:       JENNIFER F. MEZEY, ESQ.
                               LEGAL AID SOCIETY OF THE
14                             DISTRICT OF COLUMBIA
                               1331 H Street, NW, Suite 350
15                             Washington, DC 20005
                               (202) 628-1161
16                             jmezey@legalaiddc.org

17    For the Defendant:       CONRAD Z. RISHER, ESQ.
                               OFFICE OF ATTORNEY GENERAL/DC
18                             441 4th Street, NW
                               Suite 630 South
19                             Washington, DC 20001
                               (202) 442-5868
20                             conrad.risher@dc.gov

      Court Reporter:          Lisa A. Moreira, RDR, CRR
21                             Official Court Reporter
                               U.S. Courthouse, Room 6718
22                             333 Constitution Avenue, NW
                               Washington, DC  20001
23                             202-354-3187

24
      Proceedings recorded by mechanical stenography; transcript
25    produced by computer-aided transcription
```

1                           P R O C E E D I N G S

2              THE COURT:  All right.  Good morning, everyone.

3       Happy New Year.  I know we have a large cast on the phone.

4       This should not take very long.  Who will be speaking for

5       both sides?

6              MS. MEZEY:  Good morning, Your Honor; Jennifer

7       Mezey for the Legal Aid Society of D.C. will be speaking for

8       plaintiffs.

9              THE COURT:  Okay.

10             MR. RISHER:  Good morning, Your Honor.  This is

11      Conrad Risher on behalf of the District of Columbia, and I

12      will be speaking for the District.

13             THE COURT:  Okay.  Well, I read the joint

14      statement and figured it made sense to get on the phone to

15      discuss the two issues that appear to be in dispute.  Let me

16      see if I can frame the first issue in simple terms, maybe

17      oversimplified terms, and then just have you all respond.

18             You know, as I recall from the preliminary

19      injunction briefing, one of the explanations that the

20      District provided for the processing or the alleged

21      processing delays was the transition from the legacy

22      computer system to the DCAS system and the, you know,

23      certain bugs and workarounds that were required to deal with

24      the deficiencies in getting the new system up to speed, and

25      the representation was made that, you know, once those

1    issues had been sorted through, the processing rates should

2    increase, and that was one of the reasons offered for why

3    preliminary injunction should not issue.

4            And I guess the question I have -- and Mr. Risher,

5    you can take a first stab at it -- is, you know, if that

6    remains the explanation -- and, you know, I suspect that you

7    will say that the latest data that we've been seeing in the

8    status reports bear that explanation out, but be that as it

9    may, why shouldn't the plaintiffs have an opportunity to

10   test that explanation through discovery, specifically

11   30(b)(6) discovery with respect to how DCAS actually works?

12           MR. RISHER:  Thank you, Your Honor.

13           The District's position is not that any question

14   related to DCAS would be inappropriate.  The District's

15   position is that to the extent questions dealing with

16   timeliness lead into discussion of DCAS, that that would be

17   acceptable.  But the DCAS system is a massive information

18   technology infrastructure that deals with programs

19   throughout the District's government well beyond that, and

20   the various ways that it is built, the contracting and

21   development process, those are what are not relevant to this

22   action.  So to the extent that plaintiffs proposed topics or

23   questions about the workings of DCAS, that went beyond the

24   scope of this action.

25           THE COURT:  Okay.  Ms. Mezey, are you all

1    interested in the operation of DCAS beyond the way it is

2    used to process and report SNAP applications?  And if so,

3    why is that relevant?

4         MS. MEZEY:  We are -- I don't believe that we are

5    interested in anything more than how the DCAS system is used

6    to process initial applications and recertification

7    applications and the capacity of the DCAS system to generate

8    and report data.  And, furthermore, the DCAS system is also

9    integral to the production -- to the generation of notices,

10   and so we would need to understand how that process works in

11   DCAS in order to pursue our claim on the notices of

12   expiration.

13        THE COURT:  Okay.  Well, Mr. Risher, it sounds as

14   if the parts of the system that do not relate to the SNAP

15   process generally are off the table.  Does that satisfy your

16   concern?

17        MR. RISHER:  That is partially satisfactory.  It

18   seems that plaintiffs are maintaining their third claim.  I

19   wasn't quite following the last thing that Ms. Mezey said,

20   but that it's a -- the broader concern is that how DCAS

21   generates reports and produces notices is not the issue

22   in this action.

23        The issue in this action is how the District --

24   whether the District is providing notices and processing

25   applications timely; and to the extent that the information

1    technology means that DCAS reports are not accurately

2    showing data, if that's the case, the District goes through

3    any data that is pulled from DCAS and makes sure that the

4    data that is actually presented, whether to FNS or to the

5    Court or to any other body, is accurate.

6         We had this discussion somewhat with plaintiffs

7    when drafting how the District would craft its responses to

8    the preliminary injunction order so --

9         THE COURT:  Well, I don't doubt that you all or I

10   don't doubt your representation that you double-check the

11   information that's being reported out of DCAS, but it seems

12   to me, just looking at the, you know, status reports that

13   you all have been providing the Court, the data source for

14   that information is DCAS application processing timeliness

15   reports, right?  And so the basis for reporting to the

16   Court, which we have obviously used to make determinations

17   as to whether you've complied or substantially complied with

18   the statute, is this database, and so it seems to me that

19   the plaintiffs are entitled to explore sort of the accuracy

20   of the numbers that are being reported out of the database

21   and, to the extent those numbers are not accurate, the steps

22   that the District takes to make sure that the reports are

23   accurate.  I don't see how that isn't a relevant subject of

24   discovery.

25        MR. RISHER:  Your Honor, the District actually

1    agrees entirely.

2              THE COURT:  Okay.

3              MR. RISHER:  Queries about the accuracy of the

4    numbers are wholly appropriate, and the District would have

5    no objection to those.

6              THE COURT:  Okay.  So try to define for me what

7    the objection -- I mean, I took that that's what Ms. Mezey

8    was -- that's the information that she's seeking.

9              MR. RISHER:  So I guess the concerns here are,

10   again, it sounds like plaintiffs are attempting to make

11   claims based on Claim 3, which the Court has dismissed.

12             THE COURT:  Okay.  I'm sorry, remind me what that

13   claim is.  It's the failure to send out notices.

14             MR. RISHER:  Yes, Your Honor.

15             THE COURT:  Notices that recertification is

16   required?

17             MS. MEZEY:  Your Honor, if I may, I think that

18   what counsel for the District is confusing here is the claim

19   that Your Honor dismissed was the claim about the failure to

20   send notices that applications were not being timely

21   processed.  The claim that still remains, which I believe is

22   now -- is Claim 2, is that the District failed to initiate

23   the recertification process by sending out notices of

24   expiration, or NOEs, which then led to individuals' benefits

25   being terminated improperly; and so that's the notice claim

1    that I was discussing in terms of its relevance to DCAS.

2            THE COURT:  Right.  And as I recall, there may

3    have been a vendor error in a certain period of time that

4    led to those notices not being sent out, and we dealt with

5    that, correct?

6            MS. MEZEY:  Well, there was a vendor error, but we

7    have reason to believe, from the materials that we've gotten

8    from FOIA and our clients' experience, that that was not --

9    that while the vendor printer error, that specific error,

10   may have been isolated, we have reason to believe that there

11   could be other systemic errors that have led to large

12   numbers of clients not receiving their notices of expiration

13   and having their benefits terminated.

14           And as Ms. Zeilinger discussed in her 30(b)(6)

15   deposition that we had initially, DCAS is responsible for

16   generating the information that gets sent to the vendor in

17   order to provide notices, and so we need to understand how

18   DCAS does that in order to -- and whether there have been

19   other system-wide errors in the provision of the NOEs in

20   order to pursue that claim.

21           THE COURT:  Okay.

22           Mr. Risher, that sounds relevant to me.  Why is

23   she not correct?

24           MR. RISHER:  So I guess --

25           THE COURT:  And let me say, I agree with you with

1    respect to any claim that has been dismissed, you know, the

2    claim about failure to notify of delays.

3              MR. RISHER:  Yes, Your Honor.

4              So there are, I guess, two issues there.  The

5    first is that the District does not believe that plaintiffs

6    are accurately describing the discussion that occurred in

7    the Zeilinger deposition, but more broadly, it may be that

8    there is not, in fact, as much divergence between the

9    parties as first appeared.

10             To the extent that plaintiffs have questions about

11   whether notices were sent out timely -- and the answer to

12   that may be that there was a printing error, as previously

13   discussed, or that there was a DCAS error, and so the

14   notices were sent out manually through a mail merge

15   process -- to that, the District would not object that the

16   question is not relevant.  But the focus there is on whether

17   the notice was sent out timely, not on whether it was DCAS

18   that generated the notice or something else.

19             So if plaintiffs only are trying to -- only wish

20   to discuss the timeliness of notices, incidental discussion

21   of DCAS does not render that topic objectionable; but as

22   discussion notes, what reports or notices DCAS is generating

23   versus reports that are generated from some other source,

24   that appears to go beyond the scope and the relevance issue.

25             THE COURT:  Ms. Mezey.

1          MS. MEZEY:  I must admit, Your Honor, that I'm

2     not -- I'm a little confused about the distinction that

3     the plaintiff [sic] is drawing.  There are technological

4     issues moving beyond the printer/vendor issue, and even for

5     that, in order to test whether that was an isolated

6     incident, we would presumably seek additional information

7     about DCAS.  But we know that there have been other

8     disruptions because they're referred to in the DHS documents

9     that we have seen to date, and there are references to

10    technical issues.  There are references to problems with

11    recertification batches as late as April 12, 2018, which I

12    believe is one of the documents that we submitted to you.

13         And so the plaintiff -- the defendants are

14    purporting to say that somehow sending out the notice in a

15    timely way has nothing to do with whether there was a

16    problem that led -- in the DCAS system that led to the

17    notices being sent out in an untimely way, and we believe

18    that we need to be able to test that proposition in order

19    to -- in order to determine what those -- what those

20    systemic issues were.

21         THE COURT:  Okay.  It seems to me that, you know,

22    sending out the notices of eligibility is one of the drivers

23    of the timely processing of recertification applications,

24    and so, you know, the plaintiffs seem to me to be entitled

25    to explore, A, whether there are problems with sending those

1    notices out on a timely basis and, if so, what the cause of

2    those problems are, be they printing errors or some

3    deficiencies in the database.  And so it strikes me that

4    that's one of the drivers of the ultimate question;

5    therefore, it is a relevant topic for discovery so you

6    should have your 30(b)(6) expert or designee be prepared to

7    testify on that general topic.

8         But I agree, to the extent that we're talking

9    about notification of delays in processing related to the

10   claim that was dismissed, that that is not a proper topic

11   for discovery.

12        MS. MEZEY:  We agree, Your Honor.

13        THE COURT:  Okay.  Does that take care of the

14   first topic?  And I suppose the second topic, which is the

15   beginning date, is somewhat related.  Are there any other

16   issues with respect to the scope of inquiry regarding DCAS?

17        MS. MEZEY:  I just want to clarify, Your Honor,

18   that the issues that we've raised with DCAS's ability to

19   generate data for the report for the Court and for FNS, that

20   that is also encompassed in what you're seeing as relevant

21   inquiry into DCAS.

22        THE COURT:  Well, I heard Mr. Risher not to object

23   to that, and, unless I hear otherwise, the Court will order

24   that the operation of DCAS, to the extent that it relates to

25   the processing of SNAP applications, you know, is relevant

1     to testing the defendant's representation that, you know,

2     the delays were the result of the transition and bugs

3     related to the transition as opposed to systemic issues.

4     That's relevant to that topic.

5          MS. MEZEY:  Well, if I may, Your Honor, I think

6     that's most of what we're saying, but we also believe that

7     independently we need to be able to determine what the

8     capacity of DCAS is to generate the data in the first place

9     so that -- for example, in the monthly compliance report the

10    District noted that as late as September 2018 there was no

11    data field that could capture the data recertification

12    applications so that therefore DCAS could not generate, for

13    lack of a better word, good data on timely processing of

14    recertification applications.  And so we believe that in

15    order to determine whether the timeliness data that's being

16    reported is, in fact -- is, in fact, accurate, we need to be

17    able to understand how DCAS generates data and how that data

18    is then used in reporting.

19          So I believe that it goes a little bit beyond just

20    what the data itself is showing.

21          THE COURT:  I thought that we just dealt with that

22    issue and that you would be entitled to test the reporting

23    figures that are being reflected in the reports that are

24    being submitted to the Court to assess the accuracy and the

25    sources and the process for calculating the figures that the

1    Court is relying on to determine whether the statutes are

2    being complied with.

3              MS. MEZEY:  Okay.

4              THE COURT:  Okay.

5              MS. MEZEY:  Thank you.  That's a helpful

6    clarification.

7              THE COURT:  Now, the time period.  I guess my

8    question is when did DCAS sort of fully come online?  My

9    intuition is that inquiry into the prior system is beyond

10   the scope at this point since it is the DCAS system that's

11   being used to make the calculations and report to the Court.

12   How does the January 1, 2016, date relate to when DCAS sort

13   of came on board and was fully being used by the District to

14   calculate timeliness?

15             MS. MEZEY:  Well, Your Honor, we -- the -- I'm

16   sorry, did you want to hear from the District first?

17             THE COURT:  Mr. Risher?  And why -- I mean,

18   generally why the objection to January 1, 2016?

19             MR. RISHER:  The objection, Your Honor, is simply

20   that that period through the end of September is all the use

21   of the old system, the AC system; that as far as SNAP

22   benefits, DCAS went into effect October 1st of 2016 --

23             THE COURT:  Okay.

24             MR. RISHER:  -- and pulling data --

25             THE COURT:  So no objection to starting the clock

1    October 1, 2016?

2              MR. RISHER:  That is correct, Your Honor.  The

3    District has no objection to that.

4              THE COURT:  Okay.  Ms. Mezey, why do you need the

5    first nine months of '16?

6              MS. MEZEY:  Well, Your Honor, we're not actually

7    looking for evidence about the old AC legacy system.  What

8    we are interested in is that -- as we all know, this DCAS

9    system didn't sort of bring forth fully formed, and so what

10   we are interested in is what was happening in the

11   discussions around DCAS and the planning for DCAS and the

12   communications with FNS during that time period that could

13   lead -- that could shed additional light on what's been

14   happening since the implementation of DCAS on October 1,

15   2016.

16             THE COURT:  What specifically do you think that

17   discovery would reveal?

18             MS. MEZEY:  Well, we believe that it could -- it

19   could reveal that there were -- that there were defects that

20   the District -- that the District might have been aware of

21   and in which they came up with -- they came up with

22   workarounds that may not -- that may not be working.  We

23   could learn, for example, as we learned with the letter from

24   FNS that we put into evidence, that FNS had expressed

25   concerns about the DCAS system.

1          You know, again, we don't believe that the

2    District would need to prepare its witness to testify about

3    the intricacies of the AC system.  We would just -- but we

4    do believe that it would be important to have someone who is

5    familiar with what was happening in the planning and lead-up

6    to the October 1, 2016, launch.

7          THE COURT:  Mr. Risher?

8          MR. RISHER:  Yes, Your Honor.  So the fact that

9    the District and FNS have been -- have concerns about the

10   DCAS system into which each had plowed millions of dollars

11   in investments is not relevant to the question of whether

12   the District was processing applications timely in the same

13   way that whether DCAS has a certain data field or its FNS --

14   pardon me, or DHS is recording that information somewhere

15   else.  That's no more relevant than if printers are found --

16   and that's the technical issue -- and so the District goes

17   to a private company to print out the notices that it's

18   mailing.

19          What Your Honor has pointed out is that the DCAS

20   system is the system that was in effect for the entire sort

21   of time that these issues are occurring -- and plaintiffs

22   seem to be agreeing with that -- and it is the system that

23   will be used going forward.  AC is retired, and the District

24   is not going back to it so discussions about the development

25   of database software are not themselves relevant.

1          If the plaintiffs have a question about when a

2     notice was created, and part of the answer is the notice was

3     created manually because DCAS was not able to produce it,

4     the District would not object to that.  But, again, the

5     focus is on whether the notice was produced timely, whether

6     the notice was timely sent, and DCAS, even with the small

7     SNAP portion of that, is ancillary as opposed to a fishing

8     expedition into the development and the District's and FNS's

9     dealings with the contractors who wrote this software.

10          THE COURT:  Okay.

11          MS. MEZEY:  Your Honor, I'm sorry, can I say just

12    for one moment, I also think it's important to point out

13    that the DCAS system was actually in use in the District

14    since January 1, 2014, because that was the system that had

15    been brought in to replace AC's for the Medicaid program.

16          THE COURT:  But we're not talking about Medicaid

17    though, right?

18          MS. MEZEY:  No, no, I -- of course.  I understand

19    that, Your Honor.  But due to the experience with

20    implementing the DCAS system for Medicaid, there were

21    presumably conversations that -- internal conversations

22    within DHS or with the DCAS vendor or whoever about problems

23    that had been in the -- that they have seen with the

24    Medicaid rollout that then would be relevant for the -- for

25    when the system was rolled out for SNAP.  There may be

1    different modules within DCAS that are dealing with Medicaid

2    and dealing with the SNAP program, but they're all under the

3    same umbrella of the DCAS system.

4            THE COURT:  But Ms. Mezey, your claim is not that

5    the District violated SNAP by adopting the DCAS system or

6    that it was somehow negligent in switching over.  The claim,

7    as I read it, is that the timeliness rates did not comply

8    with the statute, and that that was a result of many things,

9    including, perhaps, deficiencies in this new system, right?

10   And so now we've had over two years of experience with the

11   new system -- obviously there are always problems and bugs

12   and transition issues -- and the question is, since the new

13   system has come on board, you know, do those explain the

14   deficiencies, or are there some more, you know, permanent

15   or, you know, pervasive issues?

16           How is going back to January 1, 2016, going to get

17   at that?

18           MS. MEZEY:  Well, again, we don't -- we -- what we

19   would be looking for, Your Honor, is whether there were

20   concerns raised about the operation of DCAS, for example, in

21   the area of notice generation, let's say, for Medicaid

22   beneficiaries that then was -- that then fed into

23   discussions about the SNAP program and then how the District

24   dealt with that, if they dealt with that.  They may have

25   come up with -- they may have either not addressed the

1    problem at all, and we're still seeing the results of that

2    initial defect, or they may have come up with one of the

3    many manual workarounds that have been put in place, and it

4    may be that those manual workarounds are causing additional

5    problems.  And so we believe that there could be -- that

6    there could be information from those discussions that would

7    inform our view of what's happening now post October 2016.

8            I guess I'd also point out that in the District --

9    as your question alluded to, we're not only talking about

10   problems with DCAS.  You know, as the District itself

11   stated, there was the implementation of DCAS.  There was the

12   implementation of this business process reengineering.

13           So there was a lot of change that was unveiled in

14   this October 1, 2016, both in the processing that was

15   occurring at the service centers and with the DCAS system,

16   and we think that starting October 1, 2016, it cuts off an

17   area of inquiry that would lead us to better understand how

18   we arrive at the place that we were on October 1, 2016, both

19   in terms of the way that the service centers were running

20   and the DCAS system was operating.

21           THE COURT:  Okay.  I appreciate both sides'

22   arguments.  We will cut the date off at October 1, 2016.

23           It seems to me that the ultimate issue here is

24   whether the District is timely processing applications now.

25   Two years of history with DCAS is I think sufficient enough

1    of an inquiry to be able to test and validate the numbers

2    being reported and the actions that the District is taking

3    to validate and augment those reports, to the extent

4    necessary, and to ferret out whatever other problems there

5    may be with respect to the District's present reporting

6    apart from DCAS without having to go back three years now.

7    So let's cut it off at October 1, 2016.  All right?

8              Anything else?

9              MR. RISHER:  Nothing for the District, Your Honor.

10             THE COURT:  Ms. Mezey?

11             MS. MEZEY:  Nothing from the plaintiffs.  Thank

12   you, Your Honor.

13             THE COURT:  Okay.  Good luck, and Happy New Year.

14             MR. RISHER:  Thank you.

15             MS. MEZEY:  Thank you.  You, too.

16                  (Whereupon the hearing was

17                   concluded at 11:35 a.m.)

18

19

20

21

22

23

24

25

1

<u>**CERTIFICATE OF OFFICIAL COURT REPORTER**</u>

2

3              I, LISA A. MOREIRA, RDR, CRR, do hereby

4     certify that the above and foregoing constitutes a true and

5     accurate transcript of my stenographic notes and is a full,

6     true and complete transcript of the proceedings to the best

7     of my ability.

8         Dated this 10th day of January, 2019.

9

10                                  <u>/s/Lisa A. Moreira, RDR, CRR</u>
                                     Official Court Reporter
11                                   United States Courthouse
                                     Room 6718
12                                   333 Constitution Avenue, NW
13                                   Washington, DC 20001

14

15

16

17

18

19

20

21

22

23

24

25