```
                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
     - - - - - - - - - - - - - - - x
     SHONICE G. GARNETT, et al.,
                                              CA No:  1:17-cv-01757-CRC
                 Plaintiffs,
                                              Washington, D.C.
                                              Monday, February 11, 2019
     vs.                                      10:07 a.m.

     LAURA ZEILINGER,

                 Defendant.
     - - - - - - - - - - - - - - - x
     _____

                    TRANSCRIPT OF TELEPHONE CONFERENCE
             HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
                        UNITED STATES DISTRICT JUDGE
     _____
     APPEARANCES:
     For the Plaintiffs:       **EMILY GOLDMAN, ESQ.**
                               **SUSAN MUSSER, ESQ.**
                               **LANCE MURASHIGE, ESQ.**
                               **KATHERINE DEABLER, ESQ.**
                               HOGAN LOVELLS US LLP
                               555 Thirteenth Street, NW
                               Washington, DC 20004
                               (202) 637-5457

                               **JENNIFER F. MEZEY, ESQ.**
                               LEGAL AID SOCIETY OF D.C.
                               1331 H Street, NW, Suite 350
                               Washington, DC 20005
                               (202) 661-5947
                               jmezey@legalaiddc.org

                               **TRAVIS ENGLAND, ESQ.**
                               NATIONAL CENTER FOR LAW AND
                               ECONOMIC JUSTICE
                               275 Seventh Avenue, Suite 1506
                               New York, NY 10001-6860
                               212-633-6967
                               england@nclej.org

     (CONTINUED ON NEXT PAGE)

     Proceedings recorded by mechanical stenography; transcript
     produced by computer-aided transcription
```

```
 1     APPEARANCES (CONTINUED):

 2     For the Defendant:      CONRAD Z. RISHER, ESQ.
                               GREGORY CUMMING, ESQ.
 3                             MATEYA KELLEY, ESQ.
                               OFFICE OF THE ATTORNEY GENERAL FOR
 4                             THE DISTRICT OF COLUMBIA
                               441 4th Street, NW, Suite 630 South
 5                             Washington, DC 20001
                               (202) 442-9887
 6                             conrad.risher@usdoj.gov

 7     Court Reporter:         Lisa A. Moreira, RDR, CRR
                               Official Court Reporter
 8                             U.S. Courthouse, Room 6718
                               333 Constitution Avenue, NW
 9                             Washington, DC  20001
                               202-354-3187
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    P R O C E E D I N G S
 2           THE COURT:  Good morning.  This is Judge Cooper.
 3           MR. RISHER:  Good morning, Your Honor.  This is
 4   Conrad Risher on behalf of the District, joined by my
 5   colleagues Greg Cumming and Mateya Kelley.
 6           MS. GOLDMAN:  Good morning, Your Honor.  This is
 7   Emily Goldman on behalf of plaintiffs joined by several of
 8   my colleagues in various offices:  Susan Musser, Lance
 9   Murashige, Travis England, Katie Deabler, and Jennifer
10   Mezey.
11           THE COURT:  All right.  Apologies for the delay.
12   The Court has opened two hours late this morning so I am
13   without a courtroom deputy, but we are ready to go.  The
14   court reporter is here.
15           I've read the joint proposed or the joint
16   statement of the dispute at issue.
17           Mr. Risher, why don't you start.  As I read it,
18   this is essentially a dispute about the timing of the
19   District's production.  The plaintiffs filed their first
20   request for production on November 15th.  There was a
21   production in response on February 1st, and you are
22   proposing that the remainder of the production come April
23   4th.
24           And I guess the first question is, why did it take
25   so long between the first request for production and the
```

1  February 1st production, and why do you need another two-
2  plus months to complete it?
3          MR. RISHER:  Certainly, Your Honor.  So the first
4  month after plaintiffs filed, the District's been going
5  through and completing its responses and objections.  There
6  was then time taken up meeting and conferring with
7  plaintiffs to address those objections and to determine how
8  production should be completed, and then the District made
9  its first production less than two weeks following the end
10 of the meeting and conferring.
11         And the District has not taken the position that
12 it need until April; merely that it will ensure that
13 substantial production is complete leaving plaintiffs with
14 sufficient time to schedule any depositions that they might
15 require within the discovery period set forth by the Court.
16         THE COURT:  And are you prepared to make interim
17 productions between now and the first week of April?
18         MR. RISHER:  Absolutely, Your Honor.  That is very
19 much the District's intention.
20         THE COURT:  All right.  Ms. Goldman, why isn't
21 that good enough, particularly if you can sit down with the
22 District and identify the documents that are of highest
23 priority and get those in the first interim productions?
24         MS. GOLDMAN:  Sure.  Thank you, Your Honor.
25         I think the issue with that is that we've already

1   extended the discovery deadline, and we've before needed to
2   get the Court involved in order to get a date on the
3   calendar for the 30(b)(6). We've had meet-and-confers in
4   which we did nail down priorities; for instance, in the last
5   meet-and-confer I believe my colleague told the District
6   that they just wanted one example of every kind of report
7   that is produced about timeliness data.
8            So, I mean, we can -- I can list off priorities
9   now, and we do have them, but I think there's a concern that
10  the District will continue to delay with meet-and-confers
11  without a date certain by which things need to be produced.
12           THE COURT: Okay. Let's assume that the final
13  date certain ordered for production is April 4th with two
14  interim productions prior to that based on input from you
15  folks as to what you're most interested in. Does that give
16  you enough time to complete depositions by the May 4th
17  discovery cutoff?
18           How many depositions do you plan to take? Have
19  you already completed the 30(b)(6), and why wouldn't 30 days
20  be enough to fit in everything you need by the May 4th
21  cutoff?
22           MS. GOLDMAN: Sure.
23           MS. MUSSER: Your Honor, this is Susan Musser. I
24  think that what this would hinge on is when those interim
25  productions are. I think we haven't had an opportunity to

```
 1    schedule the 30(b)(6) in part because of the delay in
 2    production, nor have we had an opportunity to develop a set
 3    discovery plan because our understanding was in the
 4    production we don't know who to depose.  So it's a bit of a
 5    chicken-and-egg issue, which is why we felt the need to
 6    schedule -- to ask for Your Honor's assistance so that we
 7    could create some certainty which we can use to further
 8    develop our timeline.
 9              So I think that --
10              THE COURT:  Let me cut you off.  Did the District
11    identify employees with relevant information in their
12    initial disclosures?
13              MS. MUSSER:  No, Your Honor; and we did, in fact,
14    ask for custodians, and we've not received that information.
15    The first production came from their central repository, but
16    we don't know what custodians they're continuing to draw
17    from.
18              THE COURT:  Okay.  You know, one of the
19    difficulties for me here is I have no sense of the volume of
20    documents that are involved.  I see that there were 51
21    separate, you know, items or categories of documents being
22    requested, but I don't know the extent of, you know, where
23    those documents are located, how many custodians are
24    involved, and how long it takes the District to marshal an
25    effort to respond to that sort of request, so I'm kind of
```

1    shooting in the dark here.
2         MS. MUSSER:  And unfortunately so are we, Your
3    Honor.
4         THE COURT:  Mr. Risher, can you address that.
5    You've not raised any sort of burdensomeness objections or
6    relevance objections or technical issues.  Am I to assume
7    that all of these documents are within, you know, sort of
8    ready access?
9         How many are we dealing with, and what's the cause
10   of the delay?  Is it technical?  Is it resource?  Is it
11   failure to be able to negotiate a sufficient narrowing of
12   the issues?  What's taking so long?
13        MR. RISHER:  Your Honor, the District -- I'm
14   not certain that the District would agree that there has
15   been a delay.  To answer a few -- to answer the questions
16   you have asked, the parties agreed back in December to waive
17   initial disclosures, and that's why the District didn't
18   include any -- identify any people there.  Plaintiffs have
19   not served any interrogatories requesting the names of
20   individuals.
21        THE COURT:  Okay.
22        MR. RISHER:  The District's production has
23   involved a very extensive search.  A single individual from
24   the Department of Human Services represented to the District
25   just last week that she had looked through tens of thousands

1    of documents on her own to determine what might be
2    responsive and produced those to the District, and also the
3    Attorney General has, in its review, had to review and mark
4    as nonresponsive many documents that our clients have
5    provided to us.
6              As far as the total number of documents, I think
7    the last time I checked there were something like 14,000
8    that had been uploaded to our system that we have been
9    reviewing.  And, again, many of these proved to be
10   nonresponsive but were provided by our clients in an effort
11   to be as comprehensive as possible.
12             So the District's efforts have, in part, saved
13   plaintiffs the burden of having to look through extensive
14   documents that are not responsive, not relevant to this
15   action.  And I guess I should also note, counsel for the
16   plaintiff says that they have extended the discovery
17   deadline, and of course the actual discovery period has not
18   changed.
19             What's changed is that at their request the
20   District consented to providing plaintiffs the opportunity
21   to ask -- to serve additional discovery through March 4th,
22   which means that, according to the obligation the District
23   has placed on itself, it would have only a month to respond
24   to requests it has not even received at this time.
25             THE COURT:  Got it.  But the fact remains or at

1   least the plaintiffs have represented that there have only
2   been 700 or so documents actually produced thus far.  Is
3   that fair?
4            MS. MUSSER:  Your Honor, I think it was 176
5   documents.
6            THE COURT:  176 documents.
7            So your point, Mr. Risher, is that they're just in
8   the pipeline?
9            MR. RISHER:  That is correct, Your Honor.  There
10  are, as Your Honor had noted, a number of -- a large number
11  of requests, and it has been burdensome on the District to
12  search through all of the many documents that might be
13  responsive to any of these.
14           There obviously were some additional delays caused
15  by the federal shutdown, which had a direct impact on the
16  work of the Department of Human Services, including the
17  individuals who were working on reviewing documents.
18           So certainly there is some burden involved in the
19  nature of the request that plaintiffs have served, but the
20  District is working on those, has made a production, and
21  plans to continue to make rolling production to satisfy the
22  demands.
23           THE COURT: All right.  Well, frankly, I don't
24  have enough information to determine who's in the right and
25  who's in the wrong with respect to any delay that has taken

1   place in discovery.  I take the District at its word that it
2   is, in good faith, responding to the requests.
3           I'll order two interim productions -- the first on
4   February 28th; the second one on March 15th -- and then a
5   final production on April 4th in response to any currently
6   outstanding requests for production.  And unless I get a
7   motion from the District on -- you know, for a protective
8   order, I will assume that those are all requests for
9   relevant documents.
10          And I would encourage the plaintiffs to identify
11  to the District the documents or categories of documents
12  that it is most interested in for prioritization.
13          I know that there's -- you know, there was, at the
14  preliminary injunction stage and will be in the merits
15  stage, a 30(b)(6) deposition.  You know, I'm sort of talking
16  off the top of my head, but, you know, if the underlying
17  issue is how the database is being used and operates to
18  report the timeliness data and the reasons for delays in
19  timely processing of applications, that strikes me as a --
20  topics that a 30(b)(6) would be able to testify to in a
21  deposition without having to reach too far down into the,
22  you know, bowels of the agency for clerks and database
23  administrators and people like that.
24          I could be wrong, but this strikes me as more of
25  a, you know, technical and fact-specific deposition inquiry

```
 1    as opposed to -- that a 30(b)(6) could get up to speed to
 2    testify to.
 3              Is that not the case, Ms. Goldman?
 4              MS. GOLDMAN:  Your Honor, we certainly want to
 5    begin with a 30(b)(6), and as I think I mentioned before,
 6    we've had to reschedule because we just -- without
 7    substantial documents, we are not --
 8              THE COURT:  Right.  Without --
 9              MS. GOLDMAN:  We need some more information before
10    doing it, but --
11              THE COURT:  Sure.  Sure.  But without knowing
12    individuals, what other category of agency employee would
13    you envision having to depose in addition to a 30(b)(6)
14    witness?
15              MS. GOLDMAN:  Your Honor, part of that depends on
16    the amount of information that the 30(b)(6) deponent has, so
17    we might need people with more technical knowledge about the
18    databases, people who worked the different pieces of the
19    pipeline that get an application to, you know -- from
20    submission to actually being reported out.
21              I think the District has represented that the
22    defendant, Ms. Zeilinger, will be their 30(b)(6) deponent,
23    and so it's a little difficult for us to say ahead of time
24    exactly how much of the specific information she will be
25    able to speak to.
```

1      THE COURT:  Okay.  Well, she will obviously be
2 under an obligation to be up to speed on the topics, the
3 reasonable topics that you designate, right?
4      MS. GOLDMAN:  Yes.
5      THE COURT:  Okay.
6      MS. GOLDMAN:  I think one of the issues is that
7 what gets input into the database and what kind of queries
8 are run to do the reports are very important to determining
9 the accuracy of the reports, and so that's why we might need
10 someone who has more technical expertise.  But, again, it's
11 a little bit difficult to say before the deposition happens.
12      THE COURT:  That's fair enough.  It just -- it
13 doesn't sound like ten people to me, right?  And if the
14 argument is we only have 30 days to conduct depositions
15 after the document production is complete, then if there are
16 only, you know, one, two, three, four depositions during
17 that period, that seems to me to be a fairly, you know,
18 reasonable amount of time to complete those.  All right?
19      MS. MUSSER:  All right, Your Honor.  This is Susan
20 Musser again.  You know, I think, as my colleague just said,
21 you know, we're anticipating a little bit higher and not
22 just necessarily one or two.  I think we're anticipating
23 closer to that ten number.
24      That being said, you know, I do think it's going
25 to be dependent on both the production as to who can speak

```
 1    to certain documents in the production that's going to weigh
 2    in as to who we have to depose as well as, as my colleague
 3    mentioned, what comes out of the 30(b)(6).
 4              THE COURT:  Okay.
 5              MS. MUSSER:  And also there are some additional
 6    issues as far as the notice and whatnot that we're going to
 7    need to talk about; as well there might be a need to talk to
 8    someone who actually has more boots on the ground --
 9              THE COURT:  Understood.  Understood.  And I'm not
10    prejudging the issue.  I'm just trying to get a feel of, you
11    know, what these depositions are going to look like.
12              MS. MUSSER:  Thank you, Your Honor.
13              THE COURT:  All right.  Anything else?
14              MS. GOLDMAN:  Thank you very much.
15              MS. MUSSER:  Thank you, Your Honor.
16              THE COURT:  Have a good day.
17              MR. RISHER:  Thank you, Your Honor.
18                   (Whereupon the hearing was
19                    concluded at 10:24 a.m.)
20
21
22
23
24
25
```

**CERTIFICATE OF OFFICIAL COURT REPORTER**

I, LISA A. MOREIRA, RDR, CRR, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 27th day of February, 2019.

/s/Lisa A. Moreira, RDR, CRR
Official Court Reporter
United States Courthouse
Room 6718
333 Constitution Avenue, NW
Washington, DC 20001