## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHONICE G. GARNETT, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>LAURA ZEILINGER,<br><br>      Defendant. | Civil Action No. 17–1757 (CRC) |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT

### INTRODUCTION

Plaintiffs' suit for alleged violations of the SNAP Act against the District of Columbia (the District)[1] lasted more than three years. During that time, plaintiffs engaged in extensive discovery, and the Parties filed more than 250 pages of summary judgment briefing on the facts and the law. The Court heard oral arguments on the cross-motions for summary judgment, after expressly advising the Parties to prepare responses to certain questions, including the applicability of *Monell* and its progeny to plaintiffs' claims. The Court issued final judgment for the District on September 9, 2020.

Plaintiffs now seek reconsideration of that judgment, largely on the basis of new arguments concerning *Monell* liability. They argue that the Court (1) should not

---

[1]      Defendant is Laura Zeilinger, sued in her official capacity as the Director of the District of Columbia Department of Human Services (DHS). Defendant is referred to throughout as "the District."

have considered certain post-filing evidence of compliance to decide liability; (2) should have drawn certain factual inferences in plaintiffs' favor; (3) should have considered a theory of municipal liability they never before raised; and (4) should now consider a novel interpretation of 42 U.S.C. § 1983 (Section 1983). Three of plaintiffs' four arguments are new arguments that plaintiffs could have raised before judgment, but did not—indeed, those arguments directly *contradict* the positions plaintiffs took before judgment. The remaining argument (number two above) is simply a disagreement with the Court's analysis. The Court should, therefore, reject plaintiffs' motion for failure to present adequate grounds to alter or amend a final judgment.

Even if the Court were to consider them, plaintiffs' arguments should also be rejected on the merits. The Court has not committed clear error. It properly considered the evidence proffered by plaintiffs. The Court also drew reasonable inferences in plaintiffs' favor and was not required to draw the inferences plaintiffs desire. Further, the Court did not "ignore" evidence of *Monell* liability based on the specific actions or inactions of a final policymaker (Director Zeilinger), because there is none. And the Court properly applied governing law under Section 1983. Plaintiffs' motion should be denied.

## BACKGROUND

The Court is familiar with plaintiffs' allegations and the course of this litigation; those allegations and the procedural history are also set forth in the Parties' cross-motions for summary judgment. *See*, *e.g.*, Mem. Supp. Def.'s Opp'n and Cross-Mot. (Def.'s Mem.), [138-2] at 2-11.

Importantly here, the Court heard oral argument on the Parties' cross-motions, after expressly advising that "the parties should be prepared to address" a series of questions, including "[w]hether Monell's 'policy or practice' standard applies to Plaintiffs' claims and, if so, how it impacts the level of noncompliance with the SNAP Act that is actionable under § 1983 … ." Minute Order of July 16, 2020 (citing *Salazar v. District of Columbia*, 954 F. Supp. 278, 324 (D.D.C. 1996)). At the hearing, plaintiffs agreed that "the *Monell* standard does apply in this case," for purposes of determining the District's liability under the SNAP Act. Mot. Hr'g Tr. (July 28, 2020), [153] at 7:3-12. The Court asked plaintiffs to explain their legal theory under Section 1983 and how plaintiffs had satisfied it. *Id.* at 7:15-17. Plaintiffs argued that "the defendant had a custom and practice of being deliberately indifferent to her agency's failure to timely process SNAP" applications. *Id.* at 7:21-24.

In support of this theory, plaintiffs repeatedly pointed to evidence concerning the District's compliance (or, in their view, non-compliance) after plaintiffs filed their Complaint. *E.g.*, *id.* at 7:15-8:15; *id.* at 20:8-15; *id.* at 32:5-12 ("MS. SHARON: … [T]his has been three years now that defendant has had the opportunity to improve with FNS oversight, and it simply has not – has not happened. THE COURT: … So your argument, then, is that the failure of the District to increase its timeliness on an apples-to-apples basis despite being under a CAP and escalating forms of oversight by FNS shows deliberate indifference … ."); *id.* at 73:6-9 ("MS. SHARON: … [W]e do think it's important for Your Honor to look at the protracted history of noncompliance

to see the failure to improve. We do think that persistence is evidence of deliberate indifference."); *id.* at 73:10-74:10.

The Court granted summary judgment for the District on all claims, finding that plaintiffs had failed to establish municipal liability under Section 1983. Sept. 9, 2020 Order, [156] (denying plaintiffs' motion for summary judgment, granting defendant's cross-motion and vacating preliminary injunction); Mem. Op., [155].

## LEGAL STANDARD

A party may move to alter or amend a judgment under Rule 59(e) 28 days after the entry of judgment or a final order. Fed. R. Civ. P. 59(e). Rule 59 motions are "not a vehicle to present a new legal theory that was available prior to judgment." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (quoting *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012)). Motions under Rule 59 cannot be used "to relitigate old matters," *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008), or to present "mere disagreement" with final judgments, *e.g.*, *Habliston v. FINRA Dispute Resolution, Inc.*, 251 F. Supp. 3d 240, 246 (D.D.C. 2017); *United States v. Nelson*, 59 F. Supp. 3d 15, 20 (D.D.C. 2014).

Rule 59 motions may only be granted if there is an intervening change in law, new evidence becomes available, or to "correct a clear error or prevent manifest injustice." *Leidos*, 881 F.3d at 217 (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). "A final judgment must be dead wrong to constitute clear error." *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 78 (D.D.C. 2013)

(internal quotations and alterations omitted);[2] *accord*, *e.g.*, *NYC C.L.A.S.H., Inc. v. Carson*, Civil Action No. 18-1711, 2020 WL 4286824, at *1 (D.D.C. July 25, 2020).

Manifest injustice is also very difficult to show—a party must demonstrate "a clear and certain prejudice" that "is fundamentally unfair in light of governing law." *Leidos*, 881 F.3d at 217 (quotations omitted); *see also Ciralsky v. C.I.A.*, 355 F.3d 661, 673 (D.C. Cir. 2004) (affirming denial of Rule 59 motion, even though it meant movant's claims were time-barred, when movant "could have easily avoided the outcome" by raising the issue before judgment); *Kattan v. District of Columbia*, 995 F.2d 274, at 278 (D.C. Cir. 1993) (affirming denial of Rule 59 motion when, despite intervening Supreme Court decision in movant's favor, movant failed to present that new legal theory before judgment).

## ARGUMENT

## I.    <u>Plaintiffs' New Arguments Should Not Be Considered Post-Judgment.</u>

Three of plaintiffs' four arguments could have been but were never advanced before final judgment. For this reason alone, they should not be entertained post-judgment. *E.g.*, *Patton Boggs*, 683 F.3d at 403. Worse, in this case, plaintiffs' new arguments are contrary to the positions they took at oral argument, before judgment, in response to direct questions from the Court. Under similar circumstances, the D.C. Circuit *reversed* a grant of a Rule 59 motion because a "Rule 59(e) motion [is for]

---

[2]    *Mohammadi* continues, "[t]o be clearly erroneous, a decision must strike [a court] as more than just maybe or probably wrong; it must … strike [the court] as wrong with the force of a five-week old, unrefrigerated dead fish." 947 F. Supp. 2d at 78 (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

reconsideration, not initial consideration." *Leidos*, 881 F.3d at 220 (quotation omitted). Plaintiffs' new arguments should thus be rejected.

### A.   Plaintiffs Did Not Previously Argue Post-Filing Conduct Is Irrelevant to Liability—They Relied on It Themselves to Try To Show Liability.

Plaintiffs argue, first, that this Court "committed clear error in holding that defendant's post-filing remedial measures excuse her from liability." Mem. Supp. Pls.' Mot. to Alter or Amend the Judgment (Mot.), [157-1] at 5.[3] Plaintiffs now urge that the District's "post-filing conduct is relevant only to … relief, not to … liability." *Id.* at 10. This was an argument available to plaintiffs before final judgment. But it is not an argument they made. Plaintiffs never raised the issue in their briefing, and, at oral argument on the Parties' cross-motions for summary judgment, they primarily relied on the District's post-filing conduct to support their theory of deliberate indifference. *See* above at 3; *see also*, *e.g.*, Mot. Hr'g Tr. (July 28, 2020), at 7:15-8:15; 20:8-15; 25:9-15; 32:5-12; 73:6-74:10.[4]

---

[3]   Citations are to the ECF page numbers, not the native page numbers.

[4]   Even in their motion to alter or amend, plaintiffs continue to rely on post-filing evidence of the District's conduct to purportedly show liability. For example, plaintiffs argue "the fact that Defendant undertook remedial measures after this lawsuit was filed … actually *establishes* her liability … ." Mot. at 10 (emphasis in original). The Court *would* commit clear error, however, if it accepted plaintiffs' new argument for liability based on post-filing remedial measures, because Federal Rule of Evidence 407 expressly prohibits admission of remedial measures to show "culpable conduct." Fed. R. Evid. 407; *see also Cohen v. District of Columbia*, 744 F. Supp. 2d 236, 252 (D.D.C. 2011) (denying reconsideration of summary judgment when a "[p]laintiff improperly seeks to rely on a subsequent remedial measure to prove culpable conduct").

**B.**   **Plaintiffs Did Not Previously Argue the District Is Liable for Any Specific Actions by Defendant Zeilinger.**

Second, plaintiffs argue that the Court "committed clear error in misapplying *Monell* by ignoring evidence that defendant is a final decisionmaker who caused violations of an explicit statutory duty." Mot. at 17. Plaintiffs acknowledge that they previously argued that the District's "failure to address … systemic failures amounted to deliberate indifference"; they then argue, "[b]ut there is another pathway to liability," which "does not require a showing of deliberate indifference." *Id*. This is an admission that plaintiffs are now making an entirely new argument, which was not presented before judgment. And, again, it is contrary to plaintiffs' prior representation that they were relying exclusively on a theory of deliberate indifference. *See* Mot. Hr'g Tr. at 7:21-24.

**C.**   **Plaintiffs Previously Argued that *Monell* Applies to Their Claims.**

Plaintiffs also argue that the "Court's interpretation of *Monell* … contradicts Congressional intent and results in manifest injustice … ." Mot. at 21. Specifically, they argue that the *Monell* standard does not apply to violations of the SNAP Act. *Id.* at 21-25. This, too, is a new argument. And it directly contradicts prior representations to this Court. The Court asked plaintiffs if the *Monell* standard applies to plaintiffs' SNAP Act claims, and plaintiffs said "yes." Mot. Hr'g Tr. at 7:2-11.

**D.**   **Rule 59 Forbids Plaintiffs' New and Contradictory Arguments.**

Here, as in *Leidos*, plaintiffs' new and contradictory arguments should be rejected. 881 F.3d at 218-220 (reversing grant of Rule 59 motion when movant

expressly and repeatedly urged the opposite position before judgment, reasoning that movant "did not suffer any 'manifest injustice' in receiving the relief it had explicitly and consistently requested"); *see also*, *e.g.*, *Patton Boggs*, 683 F.3d at 403 (affirming denial of Rule 59 motion because "Rule 59(e) is not a vehicle to present a new legal theory that was available prior to judgment"); *Fox v. American Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (same, because argument movant advanced "was available to them earlier"); *Kattan*, 995 F.2d at 276 (same, despite an intervening but foreseeable change in the law, because "a losing party may not use a Rule 59 motion to raise new issues that could have been raised previously"); *Alec L. v. Perciasepe*, Civil Action No. 11-2235, 2013 WL 2248001, at \*4 (D.D.C. May 22, 2013) ("[T]o the extent that Plaintiffs now wish they had briefed these issues differently, … they cannot take refuge under Rule 59(e).").

## II.   <u>Disagreement with the Court's Analysis of Deliberate Indifference Is Not Grounds to Alter or Amend the Judgment.</u>

Plaintiffs also contend that this Court "committed clear error in drawing assumptions and inferences in defendant's favor in finding a lack of deliberate indifference on the part of defendant." Mot. at 11. They characterize this as a clear error of law, *id.*, but the Court indisputably applied the law correctly, *e.g.*, Mem. Op. at 39 (evaluating evidence "in the light most favorable to plaintiffs"). Plaintiffs simply disagree with the Court's application of law. *See* Mot. at 11 ("The Court's *misapplication* of [the summary judgment] standard here constitutes a clear error of law.") (emphasis added). But that is not a ground for reconsideration. *Habliston*, 251 F. Supp. 3d at 246 (denying Rule 59 motion when plaintiffs challenged court's

application of law, and "appear[ed] merely to disagree" with it, "which is insufficient to trigger reconsideration") (internal quotations omitted); *Nelson*, 59 F. Supp. 3d at 20 (same).

Although plaintiffs do not include any discussion of the Rule 59 standard in their argument, the introduction to plaintiffs' brief cites one case that appears relevant: *Flynn v. Dick Corp.*, 565 F. Supp. 2d 141, 146-47 (D.D.C. 2008). Mot. at 6. But the *Flynn* Court was not, as plaintiffs contend, "granting [a] Rule 59(e) motion where [the] court 'was incorrect' in previously holding that [a] Rule 59(e) movant had failed to raise a genuine dispute sufficient to survive summary judgment." *Id*. The *Flynn* Court granted the motion because it found it had applied the wrong legal standard. 565 F. Supp. 2d at 146-47 ("The Court now recognizes, however, that the evidentiary burden … place[d] on employers arises only when there is a deficiency in payroll or other [circumstances] … . Therefore the Court was incorrect in applying this precedent … ."). Here, however, there is no dispute about the proper legal standard. As stated above, plaintiffs agree that the Court used the correct summary judgment standard—they argue only that the Court "misapplied" it. *See* Mot. at 11; *see also* Section III(B) (discussing Court's inferences in plaintiffs' favor). *Flynn* therefore does not support plaintiffs' position.

III.   **The Motion Fails on the Merits Because the Court Did Not Commit Clear Error.**

    A.   **The Court Properly Considered Evidence Proffered by Plaintiffs.**

As discussed above, although plaintiffs relied upon post-filing evidence of the District's performance to support their claims, they now assert it was clear error for

the Court to "rel[y] exclusively" on that evidence "in adjudicating … liability under the SNAP Act." *See* Section I.A above; *cf.* Mot. at 10. This is wrong for three reasons.

First, the Memorandum Opinion expressly and repeatedly states that the Court relied on evidence of the District's "performance from June 2016 through present," Mem. Op. at 21, starting more than a year before plaintiffs filed the Complaint in August 2017. *See also* Mem. Op. at 7 (discussing 2016 rollout of DCAS); at 13 (discussing evidence of increase in SNAP-related client concerns at Bread for the City in 2016); *id.* at 28 (discussing performance rates in 2016 and 2017). Thus, plaintiffs are incorrect that the Court's judgment was based "exclusively" on post-filing evidence.

Second, none of plaintiffs' cited cases support the idea that post-filing conduct is irrelevant to a liability determination. Eight of the nine cases plaintiffs cite present considerations of the mootness doctrine, not liability. *See* Mot. at 11-16. All of those cases are irrelevant, because the mootness doctrine assumes some unlawful conduct, then asks whether the unlawful conduct is sufficiently likely to recur. *E.g.*, *United States v. W.T. Grant*, 345 U.S. 629, 632-33 (1953) (discussing mootness doctrine). Here, in contrast—as plaintiffs concede—the District "did not move to dismiss on mootness grounds … ." Mot. at 10. The District disputes the allegations of wrongdoing in the first place. Because the District has never been deliberately indifferent to the alleged SNAP Act violations, there has never been illegal conduct to moot. Cases discussing what evidence should or should not be considered in response to a mootness claim are thus inapplicable.

The one case plaintiffs cite that is not about mootness is no more helpful. In *Zamora v. N. Salem Central School District*, the Court reasoned that an "apparently efficient response" to an alleged harm "does not necessarily exclude a finding of prior deliberate indifference." Mot. at 9 (quoting 414 F. Supp. 2d 418, 425 (S.D.N.Y. 2006)) (adjudicating deliberate indifference under Title IX). But that does not mean the "efficient response" is irrelevant—it only means that, under all of the circumstances in *Zamora*, it was not dispositive. The *Zamora* Court expressly found that jurors *should* consider "all known circumstances," including that "efficient response," to determine whether the defendant had been deliberately indifferent. *Id.* at 425-26 (stating a jury should "consider the range of all known circumstances, from the [School] District's apparently efficient response on February 26, 2004, to its earlier decision not to remove Gordon from the classroom … ."). Thus, the one case plaintiffs cite that is not about mootness in fact contradicts their point.

Finally, it belies common sense to believe the Court was "dead wrong," *Mohammadi*, 947 F. Supp. 2d at 78, to consider the very evidence that plaintiffs asked the Court to consider. *See* Mot. Hr'g Tr. (July 28, 2020), at 7:15-8:15; 20:8-15; 25:9-15; 32:5-12; 73:6-74:10. Indeed, even if it were true that the Court's reliance on that evidence was erroneous, the error would be harmless, and the District would still be entitled to judgment, because plaintiffs did not point the Court to any *other* evidence of deliberate indifference. *Id.*

B.   <u>The Court Drew Reasonable Inferences in Plaintiffs' Favor.</u>

Plaintiffs additionally argue that the Court failed to draw inferences in their favor, as required at summary judgment. Mot. at 11-17. Plaintiffs are incorrect. The specific inference about which plaintiffs complain was actually in plaintiffs' favor.

In its Memorandum Opinion, the Court stated it could "roughly estimate" a percentage of overdue applications that were attributable to client-caused delay, to reach a "ballpark" compliance rate. Mem. Op. at 27, 29. Plaintiffs contend that these estimations "required the Court to make assumptions contrary to the interests of Plaintiffs." Mot. at 13; *see also id.* at 13, 14 (quoting "roughly estimate"). But the opposite is true: The Court's "rough estimate" brought *down* the District's compliance rate from the numbers shown in the QC APT Rate and the Adjusted State APT Rate. Mem. Op. at 27-29. That is not an improper inference in the District's favor—it is an inference in plaintiffs' favor. The Court could have adopted the QC APT Rate or the Adjusted State APT Rate, which FNS and the District propose, respectively, as the best means of estimating the District's overall timeliness. *See* Def.'s Mem. at 4-6, Def.'s Reply [150] at 2-3. Instead, although rejecting plaintiffs' criticisms of those rates after weighing the data in the record, Mem. Op. at 21-26, 29-30 n.15, the Court elected to make its rough estimate, apparently to infer some credence to plaintiffs' contentions about the accuracy of the District's records.

And it was a "rough estimate" both because precision is impractical, Def.'s Statement of Facts [138-1] ¶¶ 46, Mem. Op. 23-24, 28, and because plaintiffs failed to provide any other reasoned basis. At oral argument, the Court asked plaintiffs to

estimate a number or percentage of overdue applications that should *not* be attributed to client-caused delay; plaintiffs could not provide an estimate. Mot. Hr'g Tr. at 42:1-44:6. Plaintiffs could not point to even *one* application for which the District erroneously attributed delay to client fault. Mem. Op. at 26. Nonetheless, in plaintiffs' favor, the Court assumed that the District erroneously attributed some number of overdue applications to client-caused delay. *Id.* at 27-29.

Plaintiffs urge that a reasonable juror could have looked at two different metrics—the State APT Rate and the FNS-366B—to conclude that the District's performance rate did not improve at all over time. Mot. at 13-14. But, as the Court explained, plaintiffs' preferred performance measures "include all overdue applications, even where the reason for untimely processing is client delay." Mem. Op. at 21, 29. And processing delays that are based on client-caused delay are not violations of the SNAP Act. *Id.* at 27. The Court, therefore, considered and rejected plaintiffs' preferred performance measures, finding them "less likely … to reflect the District's true application processing timeliness." Mem. Op. at 29-30 n.15.[5] It would therefore not be reasonable to infer liability by looking only at these measures.

Finally, plaintiffs also fault the Court for discounting their interpretation of certain correspondence between the District and FNS. Mot. at 15-17. Plaintiffs

---

[5]     Plaintiffs concede that FNS uses the "State APT Rate and FNS-366B rate as *tools* to evaluate local agencies' compliance with the SNAP Act" rather than as dispositive metrics. Mot. at 12 (emphasis added). As the Court recognized, FNS looks to the QC APT Rate to formally determine timeliness. Mem. Op. at 27 ("Following FNS's lead, … the Court will focus on the QC APT rate to measure the District's timeliness in processing initial SNAP applications.") (citations omitted).

believe the Court in part "based its finding of the lack of deliberate indifference on FNS's alleged approval of Defendant's remedial efforts." Mot. at 15. Plaintiffs appear to have misread the Opinion. The Court does discuss correspondence with FNS concerning the District's Corrective Action Plan, but nothing indicates that its decision hinged on a conclusion regarding FNS's opinion, one way or the other. Mem. Op. at 35-36. To the contrary, the Court discussed this correspondence because it was the only evidence plaintiffs presented "to rebut the District's extensive testimonial and documentary evidence of its efforts to improve timeliness, which is entitled to a presumption of good faith." *Id.* at 34; *id.* at 35. It was not enough—particularly because, as the Court quoted, FNS's most recent communication noted that the District's "timeliness rate has improved and is stable" and "encourage[d] the District to balance the focus on timeliness" with other priorities. Mem. Op. at 35.

### C.   The Court Did Not "Ignore" Evidence of Final-Policymaker Liability.

Plaintiffs also fault the Court for "ignoring evidence" that Director Zeilinger is a final policymaker, and that her "actions and inactions" were the moving force behind the plaintiffs' alleged SNAP Act violations. Mot. at 17-20. A specific act by a final policymaker can result in liability under Section 1983. *Blue v. District of Columbia*, 811 F.3d 14, 19 (D.C. Cir. 2015) ("[U]nder certain circumstances, a single decision by a municipal official with policymaking authority can constitute a municipal policy."). But, even assuming plaintiffs are correct that Director Zeilinger is a final policymaker under *Monell*, plaintiffs' argument fails because there is no evidence that any specific action by Director Zeilinger caused the alleged SNAP Act violations. Plaintiffs offered none before judgment, and they cite none in their motion.

14

*See* Mot. at 19 (stating "[h]ere, Plaintiffs put forward evidence showing that the collective actions taken by the District government at Defendant Zeilinger's direction … resulted in a failure to timely process" applications, without citation to any evidence or filing). Even if plaintiffs had cited to record evidence in their motion, "collective actions taken by the District government" are by very definition *not* actions of Director Zeilinger, and they do not support a final-policymaker theory of liability. *Cf. Blue*, 811 F.3d at 19; *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997) ("The only acts that count … are ones by a person or persons who have 'final policymaking authority [under] state law.'"). The Court did not err by ignoring non-existent evidence.

### D.   The District Is a Municipality Under Section 1983.

Finally, plaintiffs newly argue that the Court's application of *Monell* and its progeny to plaintiffs' claims is "inconsistent with the text and purpose of the SNAP Act and of the amendment to § 1983 enacted in 1979 … ." Mot. at 21. Instead, plaintiffs argue the Court should have crafted a new Section 1983 jurisprudence, in which the District is sometimes treated as a State and sometimes treated as a municipality. *Id.* at 23. Plaintiffs' sometimes-this, sometimes-that suggestion is inconsistent with their own interpretation of Section 1983. *See* Mot. at 22-23 (arguing that intent of the 1979 amendment was to equate the District with States under Section 1983). And, in any event, it is contrary to binding precedent, cited by the Court, which holds that to succeed on a claim against the District under Section 1983, plaintiffs must show that a District policy or custom caused the alleged violation. Mem. Op. at 18 (citing *Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y*

*Freedom Found v. District of Columbia*, 846 F.3d 391, 413 (D.C. Cir. 2017)). Plaintiffs unambiguously acknowledged this during the hearing on the Parties' cross-motions for summary judgment. Mot. Hr'g Tr. at 7:2-11. The Court should reject plaintiffs' post-judgment attempt to change the law.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Alter or Amend the Judgment should be denied.

Dated:  November 19, 2020.          Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Chief, Equity Section

*/s/ Mateya B. Kelley*
CONRAD Z. RISHER [1044678]
MATEYA B. KELLEY [888219451]
PAMELA A. DISNEY [1601225]
Assistant Attorneys General
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
(202) 724-7854
mateya.kelley@dc.gov

*Counsel for Defendant*