## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ――――――――――――――――――――― | ) | |
| SHONICE G. GARNETT, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | Civil Action No. 1:17-cv-1757 |
| v. | ) | |
| | ) | |
| LAURA ZEILINGER, | ) | |
| | ) | |
| *Defendant.* | ) | |
| ――――――――――――――――――――― | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; DIRECTING NOTICE OF SETTLEMENT TO CLASS; AND SCHEDULING FAIRNESS HEARING

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

THE PROPOSED SETTLEMENT.......................................................................................4

I.      Recitals (Ex. 1 § 2)....................................................................................................4

II.     Actions Already Undertaken by Defendant (Ex. 1 § 3)............................................5

III.    Defendant's Agreement to Share Covered Correspondence (Ex. 1 § 4) ..................6

IV.     Defendant's Agreement to Publish Form FNS-366B Reports (Ex. 1 § 5).................6

V.      Notice (Ex. 1 § 6)......................................................................................................6

VI.     Objection Procedures (Ex. 1 § 7)..............................................................................7

VII.    Release and Settlement of Claims (Ex. 1 § 8) ..........................................................7

        A.      Release (Ex. 1 § (8)(A))..................................................................................7

        B.      Dismissal (Ex. 1 § (8)(B))..............................................................................7

        C.      Attorneys' Fees, Costs, Disbursements and Expenses,
                and Damages (Ex. 1 § (8)(C))........................................................................7

        D.      Enforcement Provisions (Ex. 1 § (8)(D)).......................................................8

VIII.   Term of the Agreement (Ex. 1 § 9)...........................................................................8

ARGUMENT ........................................................................................................................8

I.      The Settlement Agreement is fair, reasonable, and adequate. ..................................9

        A.      The Settlement was the result of serious, informed, non-collusive
                negotiations. ...................................................................................................10

        B.      The Settlement is within the range of judicial approval considering
                its terms and the opinion of experienced counsel. ......................................11

        C.      The Settlement Agreement treats all Class Members fairly, without
                any obvious deficiencies. ...............................................................................13

II.     The Court Will Likely Be Able to Certify the Class for Purposes of
        Judgment on the Proposed Settlement. ...................................................................14

III.    The Proposed Notice of Class Action Settlement Will Provide Reasonable
        Notice to Absent Class Members...............................................................................15

CONCLUSION....................................................................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Autera v. Robinson*,
  419 F.2d 1197 (D.C. Cir. 1969) .......................................................................10

*Cohen v. Chilcott*,
  522 F.Supp.2d 105 (D.D.C. 2007) ...................................................................10

*In re Fannie Mae Sec., Derivative, & ERISA Litig.*,
  4 F.Supp.3d 94 (D.D.C. 2013) .........................................................................12

*Garnett v. Zeilinger*,
  No. 21-7068, Doc. 1914014 (D.C. Cir. Sep. 14, 2021) .................................4, 17

*Glover v. City of Laguna Beach*,
  2018 WL 6131601 (C.D. Cal. July 18, 2018) ..................................................16

*Greater Los Angeles Agency on Deafness, Inc. v. Krikorian Premiere Theaters, LLC*
  (C.D. Cal. Feb. 5, 2015) ...................................................................................16

*Hammon v. Barry*,
  752 F.Supp. 1087 (D.D.C. 1990) .....................................................................10

*Kaplan v. Chertoff*,
  2008 WL 200108 (E.D. Pa. Jan. 24, 2008) ......................................................16

*Richardson v. L'Oreal USA, Inc.*,
  951 F.Supp.2d 104 (D.D.C. 2013) ........................................................11, 12, 14

*Ross v. Lockheed Martin Corp.*,
  267 F.Supp.3d 174 (D.D.C. 2017) ..................................................................9, 10

*Stephens v. Farmers Restaurant Group*,
  329 F.R.D. 476 (D.D.C. 2019) .........................................................................10

*Trombley v. Nat'l City Bank*,
  759 F.Supp.2d 20 (D.D.C. 2011) .....................................................................11

*Vista Healthplan, Inc. v. Warner Holdings Co. III*,
  246 F.R.D. 349 (D.D.C. 2007) .........................................................................10

**Statutes**

42 U.S.C. § 1983 ...................................................................................................2

Food and Nutrition Act of 2008, Pub. L. No. 110-246, §§ 4001–02, 122 Stat. 1853
(2008).............................................................................................................................2, 6

**Rules**

Fed. R. Civ. P. 23(c)(2)(A) ...........................................................................................16

Fed. R. Civ. Proc. 12(b) ................................................................................................11

Fed. R. Civ. Proc.23(b)(2) ................................................................................3, 13, 16

Fed. R. Civ. Proc. 23(e) .........................................................................................1, 9, 16

Fed. R. Civ. Proc. 23(e)(1).............................................................................................15

Fed. R. Civ. Proc. 23(e)(1)(B) .........................................................................................9

Fed. R. Civ. Proc. 23(e)(2)............................................................................9, 10, 15, 17

Rule 23(e)(1)(B)(i) .........................................................................................................16

Plaintiffs[1] Kathryn Harris, Darroll Green, and James Stanley, individually and on behalf of a class of additional unnamed plaintiffs similarly situated, and Plaintiff Bread for the City (collectively, "Plaintiffs"), submit this Memorandum in support of their Motion for Preliminary Approval of Class Action Settlement; Directing Notice of the Settlement to Class; and Scheduling Fairness Hearing.

## INTRODUCTION

Plaintiffs brought this litigation against Defendant Laura Green Zeilinger, Director of the District of Columbia Department of Human Services, in her official capacity ("Defendant"), to challenge the allegedly unlawful delays of the District of Columbia Department of Human Services ("DHS") in providing Supplemental Nutrition Assistance Program ("SNAP") benefits to SNAP applicants and recipients throughout the District of Columbia.  After nearly five years of extensive motion practice, discovery, a pending appeal to the D.C. Circuit, and intensive, arms-length negotiations, Plaintiffs and Defendant (collectively, the "Parties") have reached agreement on a settlement of this class action, which is reflected in the proposed Settlement Agreement ("Settlement Agreement," "Settlement," or "Agreement") attached as Exhibit 1.  Plaintiffs now move for preliminary approval of the Settlement.

As described in detail below, the Settlement Agreement and the course of the litigation leading to it comport with the standards for approval of a class action settlement articulated in Federal Rule of Civil Procedure 23(e).  Accordingly, the Parties respectfully request that the Court: (1) preliminarily approve the Settlement Agreement; (2) direct notice of the Settlement to the Class; and (3) schedule the final fairness hearing.

---

[1] Simultaneously with the filing of this motion, Plaintiff Shonice G. Garnett has moved to be dropped as a party to this matter and is therefore not a party to the related settlement agreement. The remaining Plaintiffs remain parties to the settlement agreement and serve as representatives of the three subclasses.

## BACKGROUND

Plaintiffs and absent members of three classes of District residents are individuals who allege that their initial or recertification applications for SNAP benefits, commonly referred to as "food stamps," were not processed on time, or who allege they failed to receive a timely recertification notice.  *See* Amend. Compl., ECF No. 26, ¶ 2 (hereinafter "Amend. Compl."). Organizational Plaintiff Bread for the City is a not-for-profit organization that provides necessary safety-net support to the District's low-income community, many of whom are SNAP applicants or recipients.  *Id.*  Defendant oversees DHS, which administers SNAP to low-income individuals and families residing in the District.  *Id.* ¶ 15.

On August 28, 2017, Plaintiffs filed this class action challenging Defendant's alleged failures to (1) timely process SNAP applications; (2) provide recipients required to recertify their SNAP eligibility a timely opportunity to do so; and (3) provide notice of such delayed processing and the right to seek an administrative hearing.  Complaint, ECF No. 1, ¶ 1; Amend. Compl. ¶ 1. Plaintiffs asserted claims under the Food and Nutrition Act of 2008 ("SNAP Act"), Pub. L. No. 110-246, §§ 4001–02, 122 Stat. 1853 (2008), and implementing regulations; as well as due process claims under 42 U.S.C. § 1983.  Amend. Compl. ¶¶ 171-173.  Plaintiffs simultaneously filed a Motion for Class Certification.  ECF No. 2.

Shortly thereafter, on September 15, 2017, Plaintiffs filed a motion for Preliminary Injunction, accompanied by nearly fifty exhibits, including thirteen declarations of impacted District residents and dozens of exhibits obtained by Plaintiffs' counsel through FOIA requests. ECF No. 24 – ECF No. 24-50.  The parties spent the next several months attempting to explore a potential negotiated resolution of their dispute.  *See* Status Report, ECF No. 37 at Ex. A ("Judge Cooper asked the parties to meet and confer so the parties could determine 'whether proceedings in the case should be stayed to allow for further discussions regarding settlement . . . .'").  When

those negotiations were unsuccessful, the parties conducted limited preliminary discovery, including a 30(b)(6) deposition of Defendant, and completed briefing the pending motions. *See, e.g.*, Plaintiffs' Reply to Defendant's Opposition to Motion for PI, Dkt. 45 – Dkt. 45-53 (attaching dozens of additional exhibits and declarations of impacted individuals).

The parties presented oral argument on the Motions for Class Certification and Preliminary Injunction on March 19, 2018.  ECF No. 54.  The Court granted Plaintiffs' Motion for Class Certification on March 28, 2018, certifying three classes under Rule 23(b)(2):

> **Class 1:** All District of Columbia residents since June 1, 2016: (1) who have applied, are applying, or will apply for SNAP benefits, through an initial application; and (2) who have had or will have the processing of such application delayed beyond the timeframes mandated by law;
>
> **Class 2:** All District of Columbia residents since June 1, 2016: (1) who have applied, are applying, or will apply for SNAP benefits, through a recertification application; and (2) who have had or will have the processing of such application delayed beyond the timeframes mandated by law;
>
> **Class 3:** All District of Columbia SNAP recipients since June 1, 2016: (1) who have been or will be required to submit a recertification application to maintain SNAP benefits; (2) as to whom the Defendant has failed or will fail to issue notice of the need to recertify; and (3) who have been or will be terminated from participation in SNAP due to Defendant's failure to issue such notice.

Mem. Op. and Order Granting Plfs.' Mot. for Class Cert., ECF No. 56.

Following supplemental briefing by the parties, ECF No. 58, 59, the Court granted in part and denied in part Plaintiffs' Motion for Preliminary Injunction on May 31, 2018, ECF No. 60. Specifically, on August 23, 2018, the Court entered a Preliminary Injunction Order requiring Defendant to be in full compliance with all federal time requirements for processing SNAP recertification applications within 18 months as well as to file monthly reports detailing Defendant's processing of all applications. *See* Prelim. Inj. Order, ECF No. 74.  Defendant filed

a motion to dismiss Plaintiffs' complaint on July 17, 2018, ECF No. 71, which the Court granted in part and denied in part one month later.  ECF No. 75.

The parties then proceeded to conduct more than a year of extensive discovery, including ten depositions taken by Plaintiffs and five depositions taken by Defendant; production of approximately 80,000 pages of documents; and litigation of several discovery disputes, in addition to numerous FOIA requests.  The parties briefed cross motions for summary judgment, and presented oral argument on those motions on July 28, 2020.  ECF No. 153.  The Court entered summary judgment in favor of Defendant on September 9, 2020.  ECF No. 156.  Plaintiffs filed a Motion to Alter or Amend the Court's summary judgment decision, ECF No. 157, which the Court ultimately denied on June 11, 2021.  ECF No. 162.

On June 25, 2021, Plaintiffs appealed the Court's summary judgment decision and its denial of Plaintiffs' Motion to Alter or Amend that decision to the D.C. Circuit.  Not. of App. to D.C. Cir. Court, ECF No. 163.  On September 14, 2021, the D.C. Circuit granted the parties' joint motion to hold the appeal in abeyance while they pursued settlement discussions.  *See Garnett v. Zeilinger*, No. 21-7068, Doc. 1914014 (D.C. Cir. Sep. 14, 2021).  After months of negotiations, and almost five years after Plaintiffs filed their complaint, the Parties reached agreement on the terms of a settlement that would resolve this class action and executed a Settlement Agreement on March 21, 2023.  Ex. 1.

### THE PROPOSED SETTLEMENT

The Settlement Agreement is attached as Exhibit 1 and fully describes the relief to the Class.  The material terms are set forth below.  To the extent capitalized terms are not defined herein, they retain their definitions in the Settlement Agreement.

### I.       Recitals (Ex. 1 § 2)

The Settlement Agreement describes the history of the instant Case and Appeal.

4

## II.    Actions Already Undertaken by Defendant (Ex. 1 § 3)

The Settlement Agreement identifies various initiatives that DHS has undertaken since Plaintiffs filed their Complaint in 2017 that are designed to help it process all SNAP applications (initial and recertification) within the deadlines set by federal law as well as to improve the administration of SNAP benefits more generally.  These initiatives include:

- Implementing a new business process in which a caseworker at a DHS Service Center attempts, when possible without compromising accuracy, to complete a SNAP customer's request during a single, extended interaction.  This process reduces both the need for customers to make multiple trips to a Service Center and the number of times a caseworker hands off incomplete cases to other caseworkers for completion.

- Conducting targeted training for DHS caseworkers on SNAP application timelines, emphasizing the APT standards and reviewing policy requirements related to processing delays.

- Enhancing monitoring of pending applications using software tools DHS created to filter and identify pending applications by the number of days that they have been in pending status.  DHS regularly runs queries to identify any overdue pending applications.

- Clarifying that SNAP applications may be submitted by fax (in response to a request by Plaintiffs' Counsel).

- Increasing staff.  DHS has recently sought and obtained approval to hire approximately 80 additional ESA staff.

Defendant also commits to consider in good faith any suggestions submitted by Plaintiffs, Plaintiffs' Counsel, or other interested individuals to improve the administration of SNAP benefits in the District.

### III.     Defendant's Agreement to Share Covered Correspondence (Ex. 1 § 4)

The Settlement Agreement obligates DHS, during the three-year Term of the Agreement, to provide Plaintiffs (through the Legal Aid Society of the District of Columbia) with copies of any formal, written, agency-to-agency correspondence between DHS and the federal Food and Nutrition Service ("FNS") that relates to SNAP APT rates (a data metric used by the FNS to assess compliance with the SNAP Act).  *See* Ex. 1 § (4)(A).  This correspondence includes, but is not limited to, formal correspondence regarding any corrective action plan, if the correspondence discusses APT rates; formal correspondence regarding the FNS APT rate that FNS calculates using Quality Control sample data; and any SNAP Monthly Reports or similar reports related to APT rates that DHS sends to FNS.  *Id*.  DHS will provide copies of this correspondence on a monthly basis.  Ex. 1 § (4)(B).

### IV.     Defendant's Agreement to Publish Form FNS-366B Reports (Ex. 1 § 5)

The Settlement Agreement obligates DHS to post publicly on its website future Form FNS-366B quarterly reports that it submits to FNS.  DHS will notify Plaintiff's Counsel of the URL or section of DHS's website where such reports will be posted.

### V.     Notice (Ex. 1 § 6)

The Settlement Agreement describes the Notice procedure agreed to by the parties.  Within fourteen days after Court approval of Notice, Defendant shall cause DHS to post the notice in English and Spanish, for forty-five days, in public client waiting areas of all open offices or service centers where applications or recertification applications for SNAP benefits are accepted.  DHS shall also publish the Notice on its website for forty-five days.  The Legal Aid Society of the District of Columbia also will publish the Notice on its website and mail or e-mail the Notice to identified disability rights and legal aid organizations, asking these entities to post the Notice on their websites and distribute it to their clients.

## VI.    Objection Procedures (Ex. 1 § 7)

The Settlement Agreement defines the process by which Class Members who wish to object to the Settlement may do so.

## VII.    Release and Settlement of Claims (Ex. 1 § 8)

### A.    Release (Ex. 1 § (8)(A))

The Settlement Agreement contains a release of claims.   In consideration of the representations, promises, and agreements set forth in the Settlement Agreement, the Plaintiffs and Class Members will release all claims against Defendant "which arose on or before the Preliminary Approval Date, as a result of, or growing out of, any injuries or damages alleged to have been incurred as a result of any of the facts alleged in the complaints filed in the Case and the briefs filed in support of Plaintiffs' motions for class certification and a preliminary injunction, whether or not such injuries or damages are contemplated at the present time."

### B.    Dismissal (Ex. 1 § (8)(B))

Following the Effective Date of the Settlement, defined as the date on which the Court's order finally approving this Agreement becomes final by the passage of time or the final resolution of any appeals of such order, Plaintiffs will, within ten days, file in the Court of Appeals a joint motion to vacate the District Court decisions under review and to dismiss the Appeal.  Nothing in the Settlement Agreement is contingent upon any court agreeing to vacate the District Court's decisions, and Plaintiffs agree to dismiss the Appeal whether or not the Court of Appeals grants the vacatur request.

### C.    Attorneys' Fees, Costs, Disbursements and Expenses, and Damages (Ex. 1 § (8)(C))

In settlement of all of Plaintiffs' claims related to Defendant's administration of SNAP benefits, up to and including the Agreement's Effective Date, including any claims for attorneys'

fees and costs, any disbursements and expenses, and damages, Defendant shall cause to be paid to Plaintiffs' Counsel an amount approved by the Court up to $500,000.00. Defendant agrees to pay any such award by check made payable to the Legal Aid Society of the District of Columbia within sixty days of the Effective Date.

### D.      Enforcement Provisions (Ex. 1 § (8)(D))

During the three-year Term of the Agreement and for 120 days thereafter, Plaintiffs may bring a lawsuit in the Superior Court for the District of Columbia alleging a claim for material breach or specific performance of the Agreement. An action to enforce the Agreement may not include any action for damages. Before filing such an action, Plaintiffs must first notify DHS's General Counsel's Office and the Office of the Attorney General, in writing, of the nature of the alleged material non-compliance. Defendants shall have forty-five days to cure the alleged breach. If the alleged breach is cured by Defendant within the forty-five-day period, Plaintiffs may not bring an action for material breach or specific performance.

## VIII.  Term of the Agreement (Ex. 1 § 9)

The Agreement shall become final on the Effective Date, then remain in effect for three years.

**ARGUMENT**

Approving class action settlements involves three steps. First, the parties present a settlement agreement to the court and request that the court direct appropriate notice to the class regarding the settlement, commonly referred to as "preliminary approval." Fed. R. Civ. Proc. 23(e)(1)(B); *Ross v. Lockheed Martin Corp.*, 267 F.Supp.3d 174, 190 (D.D.C. 2017) (quoting 4 William B. Rubenstein, *Newberg on Class Actions* ¶ 13:10 (5th ed. 2014)). Second, notice is provided to the class that "describ[es] the terms of the proposed settlement and explain[s] class members' options with respect to the settlement agreement, including the right to object to the

proposed settlement." *Id.* (quoting 4 *Newberg on Class Actions* ¶ 13:10 (emphasis omitted)). Third, the court holds a fairness hearing and decides whether to issue "final approval" of the settlement. *Id.*

This case is at the first step in the process. Under Rule 23(e), the Court should direct notice to the class following a "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. Proc. 23(e)(1)(B). Plaintiffs request that the Court preliminarily approve the Settlement Agreement because the Settlement Agreement meets these requirements, as discussed below. Plaintiffs further request that the Court approve the form of the Class Notice and Class Notice Procedure, direct notice to the Class, and schedule the final fairness hearing to take place no earlier than 120 days after the Court grants this Motion.

## I.      The Settlement Agreement is fair, reasonable, and adequate.

Rule 23(e)(2) requires the terms of a proposed settlement to be fair, reasonable, and adequate. At the preliminary approval stage, the Court "make[s] a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms" based on a consideration of three factors: "(1) whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, (2) whether it falls within the range of possible judicial approval, and (3) whether it has any obvious deficiencies, such as granting unduly preferential treatment." *Ross*, 267 F.Supp.3d at 194 (quoting *Richardson*, 951 F.Supp.2d at 106–07; *Stephens v. Farmers Restaurant Group*, 329 F.R.D. 476, 486 (D.D.C. 2019). The Settlement Agreement satisfies all three factors.

The decision whether to preliminarily approve a class-action settlement "lies within the sound discretion of the court." *Ross*, 267 F.Supp.3d at 194 (quoting *Richardson v. L'Oreal USA, Inc.*, 951 F.Supp.2d 104, 106 (D.D.C. 2013)) (internal quotation marks omitted). This discretion,

however, "is constrained by the principle of preference favoring and encouraging settlement[.]"
*Vista Healthplan, Inc. v. Warner Holdings Co. III*, 246 F.R.D. 349, 357 (D.D.C. 2007) (quoting
*Vitamins Antitrust Litig.*, 305 F.Supp.2d 100, 103 (D.D.C. 2004)) (internal quotation marks
omitted).  In this Circuit, there is a strong judicial policy favoring settlement of civil cases.  *See,*
*e.g.*, *Autera v. Robinson*, 419 F.2d 1197, 1199 (D.C. Cir. 1969) ("Voluntary settlement of civil
controversies is in high judicial favor.").  This is especially true in the class action context.  *See*
*Cohen v. Chilcott*, 522 F.Supp.2d 105, 114 (D.D.C. 2007) ("[T]here is a long-standing judicial
attitude favoring class action settlements[.]" (quoting *Vitamins Antitrust Litig.*, 305 F.Supp.2d at
103)); *Hammon v. Barry*, 752 F.Supp. 1087, 1100 (D.D.C. 1990) ("It is well established that,
'particularly in class action suits, there is an overriding public interest in favor of settlement.'")
(citation omitted)).

### A.     The Settlement was the result of serious, informed, non-collusive negotiations.

Courts first consider "the process that resulted in the proposed agreement" and whether
that process "allowed time for meaningful arm's-length negotiations." *Richardson*, 951 F.Supp.2d
at 107.  Courts look to whether there is anything "in the course of the negotiations or the face of
the Settlement that 'disclose[s] grounds to doubt its fairness.'"  *Vitamins Antitrust Litig.*, 305
F.Supp.2d at 104 (citing *Manual for Complex Litig.*, § 30.41).

The Settlement Agreement is the product of serious, arms-length negotiation between the
Parties, who each had the benefit of insight from discovery, class certification, preliminary
injunction, and summary judgment phases of litigation.  Though courts find settlements to be the
product of arms-length negotiations even where only informal discovery has occurred, *see*
*Trombley v. Nat'l City Bank*, 759 F.Supp.2d 20, 26 (D.D.C. 2011), the Parties here engaged in
extensive formal discovery that included at least fifteen depositions and the production of

10

approximately 80,000 pages of documents.  The Parties also fully briefed and the Court has ruled on motions for preliminary injunction, class certification, dismissal under Rule 12(b), and summary judgment.  The Parties thus have had significant opportunity to assess the strengths and weakness of the claims and defenses raised by the pending appeal.

Plaintiffs appealed this Court's Summary Judgment Order to the D.C. Circuit on June 25, 2021.  Since that time, the Parties have been engaged in continuous, substantive, arms-length settlement negotiations, including numerous telephone conferences, virtual meetings, and exchanges of draft proposals.  The Parties have been represented in those Settlement Negotiations by the same firms and Office of the Attorney General that zealously represented their interests during the course of nearly five years of litigation.  The resulting Settlement Agreement is the result of those intensive, arms-length discussions.

> **B.      The Settlement is within the range of judicial approval considering its terms and the opinion of experienced counsel.**

Courts next consider whether the substance of the agreement falls within the range of possible approval, considering the risks and costs of proceeding with the litigation as well as the relief offered to the class.  *See Richardson*, 951 F.Supp.2d at 107 (finding proposed settlement offering solely equitable relief falls within range of judicial approval).  When considering this factor, the opinion of experienced and informed counsel "'should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement.'"  *In re Fannie Mae Sec., Derivative, & ERISA Litig.*, 4 F.Supp.3d 94, 107 (D.D.C. 2013) (citation omitted).

This case is currently on appeal before the D.C. Circuit, after this Court granted Defendant's Motion for Summary Judgment.  Although Plaintiffs' counsel firmly believes in the merits of Plaintiffs' appeal, Plaintiffs' counsel also recognizes the benefit of resolving claims by settlement because the outcome of the appeal is not certain.  This case presents complex federal

claims regarding the application of federal SNAP rules and whether the District of Columbia should be treated as a state under relevant laws, which has already and will continue to lead to protracted litigation.  Though Plaintiffs secured significant victories throughout this litigation—including a preliminary injunction related to SNAP recertification applications as well as class certification—Plaintiffs have no guarantee of success on appeal.  And if Plaintiffs do succeed on appeal, the likely outcome would be a remand to this Court for further proceedings, including potentially a trial.  Thus, a victory on appeal would not guarantee an ultimate victory in this case. Accordingly, if the Court does not approve the Settlement, pursuing and defending against the appeal will require a substantial investment of time and resources from both Parties with an uncertain outcome.

Especially in light of this posture, the terms of the Settlement Agreement are favorable to Plaintiffs and justify settlement.  The Settlement provides both immediate and future relief for all Class Members, thereby eliminating both the need to wait until the end of the appeal process to receive relief and the risk of receiving no relief.  Specifically, the relief encompasses a significant increase in the transparency of Defendant's policies, procedures, and practices relating to SNAP APT rates.  DHS will provide Plaintiffs' Counsel with any correspondence between DHS and FNS relating to SNAP APT rates, and will also post publicly its Form FNS-366B quarterly reports. These practices will benefit Class Members by enabling ongoing scrutiny of Defendant's SNAP certification and recertification practices, to help ensure that Class Members receive benefits in a timely fashion.

Indeed, since litigation began, Class Members have already benefitted from changes DHS has made to improve its administration of SNAP benefits (such as streamlined business processes, enhanced training and monitoring, and expanded staff)—changes that Plaintiffs' Counsel believe would not have been made, or would not have been made as quickly, absent this lawsuit.

Defendant now agrees, too, to consider in good faith suggestions to improve the administration of SNAP benefits by Plaintiffs and Plaintiffs' Counsel, which benefits Class Members by ensuring continued dialogue about best practices even after Settlement approval.  Given that Plaintiffs pursued this action seeking injunctive relief for process improvements under Rule 23(b)(2), and given the risk that Class Members may receive no additional relief if the pending appeal is ultimately unsuccessful, the relief contained in the Settlement Agreement favors approval.

Moreover, Plaintiffs' counsel endorses the terms of the Settlement Agreement as fair, reasonable, and adequate.  Plaintiffs' counsel is experienced in litigation regarding SNAP and public benefits eligibility standards, including recertification procedures.  Their familiarity with the details of this matter, along with the relevant public benefits operational issues and program intricacies, in addition to the relevant statutes, regulations, and case law, informed the terms of the Settlement.

In short, the Settlement provides both immediate and future relief for Class Members, thereby eliminating the risk of receiving no relief.  Plaintiffs' counsel considers the Settlement Agreement to be well within the range of possible judicial approval.  The Court should concur.

### C.    The Settlement Agreement treats all Class Members fairly, without any obvious deficiencies.

Finally, courts consider whether a proposed settlement has any obvious deficiencies.  When examining this factor, courts consider whether any class members receive preferential treatment under the settlement and whether the attorneys' fees are reasonable.  *Richardson*, 951 F.Supp.2d at 107-108.  Here, no Class Member receives preferential treatment: the terms of the Settlement are injunctive in nature and apply class-wide, benefitting all class members by improving the transparency of Defendant's practices.  Such transparency will benefit not only current absent members of the class, but also all future applicants for and recipients of SNAP benefits.

In addition, the Settlement's term outlining fees for Plaintiffs' counsel is reasonable, particularly given the nearly five years of litigation in this matter, and their representation of the class, which included class certification and the entry of a Preliminary Injunction that was in place for years.  Here, Plaintiffs' counsel will seek court approval of an award of attorneys' fees and costs of up to $500,000, which is a fraction of the fees and costs incurred through just the Preliminary Injunction phase of this matter.  Defendant has agreed in the Settlement not to oppose a request for fees and costs up to that amount.  Thus, the Settlement Agreement contains no obvious deficiencies.

* * *

Rather than risk uncertainty and delay, and having already undertaken extensive litigation efforts, the Parties have agreed to appropriate Settlement terms. This Settlement resulted from serious, informed, non-collusive, arms-length negotiations; falls within the range of judicial approval (as indicated by experienced counsel); and contains terms that benefit all Class Members with no obvious deficiencies. Accordingly, the Settlement is fair, reasonable, and adequate, and is therefore likely to be approved under Rule 23(e)(2).

## II.    The Court Will Likely Be Able to Certify the Class for Purposes of Judgment on the Proposed Settlement.

The Court has already certified three classes, and the proposed Settlement Agreement requires improvements in agency transparency that benefit all class members.  Thus, the only issue the Court needs to consider regarding class certification "is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted."  Committee Notes on Rules, 2018 Amendment to Fed. R. Civ. Proc. 23(e)(1).  Here, the proposed Settlement Agreement does not call for any changes in the classes certified, or of the claims, defenses, or issues in the matter, other than to specify that the classes are limited to individuals who applied for SNAP benefits or were required to submit a

recertification application to maintain SNAP benefits on or before the Court's preliminary approval of the Settlement Agreement.  As certified by the Court in 2018, the classes begin in 2016 but do not have an end-date.  The Parties have proposed that the Court modify the class definition to add an end-date based on the preliminary approval of the Settlement Agreement so that everyone in the class will have the opportunity to receive notice of the Settlement.  Other than adding this end-date, the Court will not need to make any changes to its Order granting class certification in order to finally approve the Settlement Agreement and issue final Judgment.

### III.     The Proposed Notice of Class Action Settlement Will Provide Reasonable Notice to Absent Class Members.

Under Rule 23(e)(1)(B)(i), the Court must direct notice "in a reasonable manner" to all class members who would be bound by the proposed settlement, if "giving notice is justified by the parties' showing that the court will likely be able to" approve the Settlement Agreement.  Fed. R. Civ. P. 23(e)(1)(B)(i); *see also* Fed. R. Civ. P. 23(c)(2)(A) ("court may direct appropriate notice" to a class certified under Rule 23(b)(2)).  Courts have found the notice as contemplated by the Settlement Agreement to be sufficient to constitute notice in a reasonable manner.  *See, e.g.*, *Greater Los Angeles Agency on Deafness, Inc. v. Krikorian Premiere Theaters, LLC* at *5 (C.D. Cal. Feb. 5, 2015) (finding posting notice on public and non-profit websites, including parties' websites, to be appropriate notice for a 23(b)(2) settlement); *Glover v. City of Laguna Beach*, 2018 WL 6131601 at *5 (C.D. Cal. July 18, 2018) (finding posting copies of notice in English and Spanish in public spaces and on parties' websites to be meaningful notice for a 23(b)(2) settlement); *Kaplan v. Chertoff*, 2008 WL 200108 at *13 (E.D. Pa. Jan. 24, 2008) (concluding that "individual notice is not required" for a 23(b)(2) settlement and finding that posting notice on public websites and distributing to community-based and non-profit organizations is appropriate).

Accompanying this motion, appended as Exhibit 2, is a proposed Notice of Proposed Class Action Settlement ("Notice") prepared by the Parties for purpose of providing notice of the proposed Settlement Agreement and accompanying Rule 23(e) class hearing procedures to absent members of the Plaintiff class.  Upon the Court's approval of the Notice and scheduling of a fairness hearing, the Parties propose to accomplish distribution of the Notice through several methods.  Within fourteen days after Court approval of Notice, Defendant shall cause DHS to post the notice in English and Spanish, for forty-five days, in public client waiting areas of all open offices or service centers where applications or recertification applications for SNAP benefits are accepted.  DHS shall also publish the Notice on its website for forty-five days.  The Legal Aid Society of the District of Columbia also will publish Notice on its website and mail or e-mail the notice to identified disability rights and legal aid organizations, asking these entities to post the Notice on their websites and distribute it to their clients.  The content of the proposed Notice describes the *Garnett* action, a bulleted description of the class, the basic terms of the proposed settlement, contact information for class counsel, instructions for class members to exercise their right to object to or comment on the settlement, directions for obtaining a complete copy of the settlement, availability of the Notice in non-English languages and alternate formats, and an announcement of the fairness hearing.

The proposed Notice's clear, straightforward content and its planned distribution to absent members of the Plaintiff Classes constitute notice in a "reasonable manner" to absent Class Members.  Such notice will provide adequate opportunities for absent Class Members to learn about the settlement and offer objections or make comments about it.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion and enter a Preliminary Approval Order in the form attached (1) finding that the Court will likely

be able to approve the Settlement Agreement under Rule 23(e)(2) and certify the class for

purposes of judgment on the proposed Settlement Agreement; (2) approving the form of the

Notice and the Notice Procedure and directing notice to the class; and (3) scheduling the final

fairness hearing on the proposed Settlement Agreement to take place no earlier than 120 days

after the Court grants Plaintiffs' Motion.  Prior to the final fairness hearing, Plaintiffs will submit

a motion requesting that the Court issue final approval of the Settlement.

Dated: August 17, 2023                  Respectfully Submitted,

                                        /s/ Chinh Q. Le
                                        CHINH Q. LE [1007037]
                                        JONATHAN H. LEVY [449274]
                                        Legal Aid Society of the
                                        District of Columbia
                                        1331 H Street NW, Suite 350
                                        Washington, D.C. 20005
                                        Tel: (202) 628-1161
                                        Fax: (202) 727-2132
                                        cle@legalaiddc.org

                                        BRIANA L. BLACK [989775]
                                        LANCE Y. MURASHIGE [1021562]
                                        Hogan Lovells US LLP
                                        555 Thirteenth Street, NW
                                        Washington, D.C. 20004-1109
                                        Tel: (202) 637-5600
                                        Fax: (202) 637-5910
                                        briana.black@hoganlovells.com

                                        KATHARINE DEABLER-MEADOWS
                                        (admitted *pro hac vice*)
                                        National Center for Law
                                        and Economic Justice
                                        50 Broadway, Suite 1500
                                        New York, NY 10004
                                        212-633-6967 (Phone)
                                        212-633-6371 (Fax)
                                        deabler@nclej.org

                                        *Attorneys for Plaintiffs*

17