# EXHIBIT 1

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") governs the resolution of the case captioned *Garnett et al. v. Zeilinger*, No. 1:17-cv-01757-CRC, in the U.S. District Court for the District of Columbia ("Case"), and is entered into between plaintiffs ~~Shonice G. Garnett,~~ Kathryn Harris, Darroll Green, and James Stanley, individually and on behalf of all Class Members (as defined below), and Bread for the City (collectively, "Plaintiffs"), and defendant Laura Green Zeilinger, Director of the District of Columbia Department of Human Services, in her official capacity. The foregoing individuals and entities each are referenced herein as a "Party" and collectively are referenced as the "Parties." The Agreement is intended to fully, completely, and finally resolve the claims raised in this Case subject to the terms and conditions set forth below, and subject to final approval by the Court.

The Parties hereby stipulate and agree as follows:

1. **Definitions**

    A. "Appeal" means *Garnett et al. v. Zeilinger*, No. 21-7068, in the U.S. Court of Appeals for the District of Columbia Circuit.

    B. "APT" means application processing timeliness under SNAP—i.e., the processing of SNAP applications by the deadlines established by the SNAP Act, 7. U.S.C. § 2020 (e)(3), and its implementing regulations, 7 C.F.R. § 273.2(g).

    C. "Case" means *Garnett et al. v. Zeilinger*, No. 1:17-cv-01757-CRC, in the U.S. District Court for the District of Columbia.

    D. "Class" or "Class Members" means the set of persons who fit within any of the following three categories:

        a. All District of Columbia residents since June 1, 2016: (1) who have applied, are applying, or will apply for SNAP benefits, through an initial application; and (2) who have had or will have the processing of such application delayed beyond the timeframes mandated by law;

        b. All District of Columbia residents since June 1, 2016: (1) who have applied, are applying, or will apply for SNAP benefits, through a recertification application; and (2) who have had or will have the processing of such application delayed beyond the timeframes mandated by law;

        c. All District of Columbia SNAP recipients since June 1, 2016: (1) who have been or will be required to submit a recertification application to maintain SNAP benefits; (2) as to whom the Defendant has failed or will fail to issue notice of the need to recertify; and (3) who have been or will be terminated from participation in SNAP due to Defendant's failure to issue such notice;

    and who applied for SNAP benefits or were required to submit a recertification application to maintain SNAP benefits on or before the Preliminary Approval Date.

    E. "Covered Correspondence" means the correspondence between DHS and FNS identified in Section 4 of this Agreement.

    F. "Defendant" means Laura Green Zeilinger, the Director of the District of Columbia Department of Human Services, in her official capacity.

G. "DHS" means the District of Columbia Department of Human Services.

H. "Effective Date" means the first business day after all of the following conditions have occurred: (i) the Court has entered the Preliminary Approval Order; (ii) notice has been provided to the Class; (iii) the Court has entered the Final Approval Order, and (iv) such Final Approval Order has become final by the passage of time or the final resolution of any appeals of such order.

I. "ESA" means the Economic Security Administration, a subdivision of DHS that determines eligibility for various public benefits, including SNAP.

J. "Final Approval Order" means an order and judgment that the Court enters following the Fairness Hearing, which finally approves the Agreement and otherwise satisfies the settlement-related provisions of Federal Rule of Civil Procedure 23(e)(2).

K. "FNS" means the Food and Nutrition Service within the United States Department of Agriculture.

L. "Parties" means Plaintiffs and Defendant.

M. "Plaintiffs" means ~~Shonice G. Garnett,~~ Kathryn Harris, Darroll Green, James Stanley, individually and on behalf of all Class Members; and Bread for the City.

N. "Plaintiffs' Counsel" means the Legal Aid Society of the District of Columbia, National Center for Law and Economic Justice, and Hogan Lovells US LLP.

O. "Preliminary Approval Date" means the date that the Court issues the Preliminary Approval Order.

P. "Preliminary Approval Order" means an order determining that the Court will likely be able to approve the Agreement under Federal Rule of Civil Procedure 23(e)(2) that is materially the same as the Parties' agreed-upon proposed order attached hereto as Exhibit 1.

Q. "SNAP" means the Supplemental Nutrition Assistance Program.

R. "SNAP Act" means 7 U.S.C. §§ 2011–2036d.

S. "Term of the Agreement" means the period of three (3) calendar years following the Effective Date or September 1, 2023, whichever occurs later.

**2.    Recitals**

SNAP is a federally created and funded benefit program that is administered by States and the District of Columbia.  The agency that administers SNAP in the District is DHS.  Defendant is the Director of DHS, named in her official capacity.

Plaintiffs ~~Garnett,~~ Harris, Green, and Stanley are District residents who have sought and received SNAP benefits through DHS.  Plaintiff Bread for the City is a not-for-profit organization that provides safety-net support to the District's low-income community, many of whom are SNAP applicants or recipients.

The SNAP Act and implementing regulations establish deadlines by which state administering agencies (such as DHS) must begin providing SNAP benefits to eligible applicants. In general, state agencies must begin providing benefits to eligible households no later than 30 calendar days following the date the application was filed.  7 U.S.C. § 2020(e)(3); 7 C.F.R.

§ 273.2(g).   For certain households with very limited resources, state agencies must begin providing benefits no later than 7 days after the date the application was filed.   7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(i).

The SNAP Act and implementing regulations also establish deadlines related to SNAP's requirement that recipients periodically recertify their eligibility for continued benefits.   Except for households certified for one month or in the second month of a two-month certification period, before the start of the last month of a household's certification period, a state administering agency must provide the household with a Notice of Expiration that identifies the date the certification period expires and the date by which the household must submit a recertification application to receive uninterrupted SNAP benefits. 7 U.S.C. § 2020(e)(4); 7 C.F.R. § 273.14(b)(1).   If such a household submits its recertification application by the fifteenth day of the last month of the certification period, it has timely applied for recertification and, if it timely completes the rest of the recertification process and is determined eligible, is entitled to receive benefits by its normal benefit issuance date in the month after the end of its current certification period.   7 C.F.R. § 273.14(c)(2), (d).

Plaintiffs filed the Case against Defendant in August 2017, alleging that DHS was failing to comply with these deadlines and was therefore liable under 42 U.S.C. § 1983.   The District Court granted Plaintiffs' motion for class certification in March 2018 and granted in part their motion for a preliminary injunction in May 2018.   That preliminary injunction required DHS to submit to the District Court monthly reports about its performance in meeting SNAP deadlines. In September 2020, however, the District Court granted Defendant's motion for summary judgment, vacating its preliminary injunction and entering final judgment for Defendant.   The District Court later denied Plaintiffs' motion for reconsideration.   Plaintiffs timely filed the Appeal in June 2021.

The Parties now wish to settle the Case and the Appeal.   By agreeing to settle, Defendant does not admit to any liability for the claims raised in the Case.   Defendant acknowledges, however, and has never argued otherwise, that the federal SNAP deadlines discussed above are mandatory, and that the SNAP Act and its implementing regulations do not specify a permissible degree or extent of non-compliance with these deadlines.   Defendant's goal is, and always has been, for DHS to process all SNAP applications (initial and recertification) within the deadlines set by federal law.

## 3.      Actions Already Undertaken by Defendant

Since 2017, including before the start of this litigation, DHS has proactively undertaken various initiatives designed to help it achieve this goal and to improve the administration of SNAP benefits more generally.   These initiatives include (but are not limited to):

- Implementing a new "one-and-done" business process.   Under this process, when a SNAP customer interacts with a caseworker at a DHS Service Center, the caseworker will attempt, when possible without compromising accuracy, to complete the customer's request during a single, extended interaction, thereby reducing the need for customers to make multiple trips to a Service Center.   The new process also reduces the number of times a caseworker hands off incomplete cases to other caseworkers for completion, as such hand-offs can sometimes lead to errors and oversights.

- Conducting targeted training for DHS caseworkers on SNAP application timelines. This training has emphasized the APT standards and reviewed the policy requirements related to processing delays. The training also included a refresher on how to process applications in the system timely.

- Enhancing monitoring of pending applications. DHS has created software tools to filter and identify pending applications by the number of days they have been in pending status. DHS regularly runs queries to identify any overdue pending applications and notifies supervisors so that any outstanding issues (e.g., missing verifications) can be resolved as soon as possible.

- Clarifying that SNAP applications may be submitted by fax. In response to a request by Plaintiffs' Counsel, DHS has clarified that customers may, if necessary, submit SNAP applications and supporting materials by fax—though DHS encourages customers to submit applications online or through DHS's mobile application when possible to ensure best service.

- Increasing staff. DHS has recently sought and obtained approval to hire approximately 80 additional ESA staff. This major increase in staff will allow ESA to more effectively administer its various benefits programs, including SNAP.

Defendant is committed to continuing to improve the administration of SNAP benefits in the District and will consider in good faith any suggestions submitted by Plaintiffs, Plaintiffs' Counsel, or other interested individuals.

**4.      Defendant's Agreement To Share Covered Correspondence**

During the three-year Term of the Agreement, DHS agrees to provide Plaintiffs (through the Legal Aid Society of the District of Columbia) with copies of any formal, written, agency-to-agency correspondence between DHS and FNS that relates to SNAP APT rates ("Covered Correspondence").

**A.      Covered Correspondence**

Covered Correspondence shall include (but is not limited to):
- formal correspondence regarding any corrective action plan, if the correspondence discusses APT rates;
- formal correspondence regarding the FNS APT rate that FNS calculates using Quality Control sample data;
- any SNAP Monthly Reports (an example of which is attached to this Agreement as Exhibit 5) or similar reports related to APT rates that DHS sends to FNS.

Covered Correspondence shall not include:

- informal correspondence between individual employees (including managers) of DHS and FNS;
- text messages, SMS messages, instant messages, or other similar forms of electronic messaging;
- any materials produced by DHS's Office of Program, Review, Monitoring, and Investigation;

4

- any materials subject to attorney-client privilege, deliberative-process privilege, or any other litigation privilege.

### B.     Timeline For Producing Covered Correspondence

No later than the tenth day of each month, DHS shall provide the Legal Aid Society of the District of Columbia with copies of Covered Correspondence from the preceding month, if any.

### C.     No Obligation To Create Records

This Agreement does not require DHS to create any record, document, or correspondence that DHS would not otherwise create.

## 5.     Defendant's Agreement To Publish Form FNS-366B Reports

In addition to providing Plaintiffs with any Covered Correspondence as described in Section 4, DHS agrees to post publicly on its website future Form FNS-366B quarterly reports (an example of which is attached to this Agreement as Exhibit 6) that it submits to FNS once the Term of the Agreement begins.  DHS shall notify the Legal Aid Society of the District of Columbia of the URL or section of DHS's website where such reports will be posted.  DHS shall post such reports within twenty-one (21) calendar days of transmitting them to FNS.

## 6.     Notice

The Parties agree to provide notice as described in the Notice of Proposed Class Action Settlement ("Notice"), attached hereto as Exhibit 2.  Within fourteen (14) days after obtaining approval by the Court of this Notice, Defendant shall cause DHS to:

- Post the Notice in English, Spanish, and Amharic, for a period of forty-five (45) days, in the public client waiting areas at all open offices or service centers where applications or recertification applications for SNAP benefits are accepted, with the Notice posted in these locations being 8.5" x 11" or larger in size, using 18-point font;
- Publish the Notice on its web site, for a period of forty-five (45) days, at https://dhs.dc.gov, in English, Spanish, and Amharic in 18-point font; and
- Upon request, provide audio interpretation (in English, Spanish, or Amharic) for individuals who are unable to read the Notice.

Within fourteen (14) days following Court approval of this Notice, Defendant will provide Plaintiffs' counsel with a PDF of the Notice in English, Spanish, and Amharic in 18-point font, which Plaintiffs' counsel will make available to members of the Class upon request.

Within seven (7) days following receipt of the PDF and copies of the Notice referenced in the prior paragraph, the National Center for Law and Economic Justice and the Legal Aid Society of the District of Columbia will, for a period of forty-five (45) days:

- Publish the Notice on their respective web sites in English, Spanish, and Amharic at, respectively, http://nclej.org and https://www.legalaiddc.org; and
- Mail or e-mail the Notice to the disability rights and legal aid organizations identified in Exhibit 3, asking these entities to post the Notice, in English, Spanish, and Amharic on their websites; to distribute the Notice to their clients; and to notify their clients that DHS will provide audio interpretation of the Notice upon request.

### 7.    Objection Procedures

The Notice, attached hereto as Exhibit 2, provides that any Class Members who wish to object to the Settlement Agreement may appear at any hearing set by the Court to determine whether the proposed Settlement Agreement is fair, reasonable, and adequate, and should be approved by the Court (the "Fairness Hearing").  Any Class Member may appear at the Fairness Hearing in person or by counsel and object to the Settlement Agreement or give reasons why they believe that the proposed settlement should not be approved as fair, reasonable, and adequate.  Any Class Member may also object to the Settlement Agreement by filing an objection with the Court. If a Class Member is represented by outside counsel and such counsel intends to speak at the Fairness Hearing, that Class Member must submit a written objection.  All written objections must be filed with the Court no later than fourteen (14) days before the Fairness Hearing.  A written objection must state the basis for the objection, and whether the objection applies only to the objector, to a specific subset of the class, or to the entire class.  Such objection must contain the name, address, and telephone number of the Class Member making the objection, and be personally signed by the Class Member.  Class Members who fail to make objections in the manners specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

### 8.    Release And Settlement Of Claims

#### A.    Release

On the Effective Date, and in consideration of the representations, promises, and agreements set forth herein, the sufficiency of which is hereby acknowledged, the Plaintiffs and the Class Members, on their own behalf and on behalf of their representatives, assignees, heirs, executors, agents, family members, beneficiaries, administrators, successors, and anyone acting or claiming to act on their behalf, hereby release and forever discharge DHS, its successors and assigns, departments, divisions, units, officers, servants, employees, agents, officials, representative and independent contractors, including but not limited to Defendant, from any and all claims, demands, damages, actions, causes of action, obligations, debts of whatsoever kind or nature, known and unknown, asserted and unasserted, direct and indirect and of any kind, nature or description whatsoever, which arose on or before the Preliminary Approval Date, as a result of, or growing out of, any injuries or damages alleged to have been incurred as a result of any of the facts alleged in the complaints filed in the Case and the briefs filed in support of Plaintiffs' motions for class certification and a preliminary injunction, whether or not such injuries or damages are contemplated at the present time.

#### B.    Dismissal

Following the Effective Date of this Agreement, Plaintiffs shall, within ten (10) days, file in the Court of Appeals a joint motion to vacate the District Court decisions under review and to dismiss the appeal.  A copy of this joint motion is attached to this Agreement as Exhibit 4.  Nothing in this settlement will be contingent upon any court agreeing to vacate the District Court's decisions, and Plaintiffs agree to dismiss the Appeal whether or not the Court of Appeals grants the vacatur request.

#### C.    Attorneys' Fees, Costs, Disbursements and Expenses, and Damages

In settlement of all of Plaintiffs' claims related to Defendant's administration of SNAP benefits, up to and including the Effective Date, including any claims for attorneys' fees and costs,

any disbursements and expenses, and damages, Defendant shall cause to be paid to Plaintiffs' Counsel, for their attorneys' fees and costs, any amount that may be approved by the Court up to the sum of Five Hundred Thousand dollars ($500,000.00). Such payment shall be made by check made payable to the Legal Aid Society of the District of Columbia, and such check shall be delivered to the Legal Aid Society of the District of Columbia within sixty (60) days of the Effective Date.

Counsel who brings an enforcement action on behalf of Plaintiffs pursuant to Subsection D of this Section and who obtains a judgment against Defendant will be entitled to attorneys' fees starting from the date of the filing of the enforcement action.

### D.    Enforcement Provisions

During the Term of the Agreement and one hundred and twenty (120) days thereafter, and subject to the notification requirement set forth below, Plaintiffs may bring a lawsuit solely for a claim for material breach or specific performance of this Agreement. An action to enforce this Agreement does not include any action for damages. An action to enforce this Agreement must be filed in the Superior Court for the District of Columbia. Before Plaintiffs may file such an action, they must first notify DHS's General Counsel's Office and the Office of the Attorney General, in writing, of the nature of the alleged material non-compliance and give Defendant forty-five (45) days to cure the alleged breach. If the alleged breach is cured by Defendant within the forty-five-day period, Plaintiffs may not bring an action for material breach or specific performance.

## 9.    Term of the Agreement

This Agreement shall become final on the Effective Date. Once final, this Agreement shall remain in effect until the end of the Term of the Agreement. Any written notice of alleged material non-compliance, as described in Section 8.D above, must be submitted to DHS's General Counsel's Office and the Office of the Attorney General no later than the last day of the Term of the Agreement. In no event may a lawsuit to enforce this Agreement be filed later than one hundred and twenty (120) days after the Term of the Agreement ends. If the Agreement does not become final because the Effective Date does not occur, then this Agreement shall be void and have no effect.

## 10.    Miscellaneous Provisions

### A.    Non-Admission

It is understood and agreed that this Agreement is a compromise of disputed claims, facts, and allegations. Nothing in this Agreement constitutes an admission of any liability, wrongdoing, or violation of any law, or the admission of the validity of any defense.

### B.    Private Settlement Agreement

It is the intent of the Parties that this Agreement will not, under any circumstances, be considered a consent decree or its equivalent. Except as expressly provided herein, nothing in this Agreement gives rise to any right to recover attorneys' fees or costs of litigation.

### C.        Confidentiality

No part of this Agreement is or will be considered confidential by the Parties.  This Agreement will be made available under the terms of the District of Columbia Freedom of Information Act.

### D.        Entire Agreement

This Agreement constitutes the entire Agreement between the Parties.  There were no inducements or representations leading to the execution of this Agreement, except as stated within the Agreement itself.  The terms of this Agreement are contractual in nature.

### E.        Binding

Upon the Effective Date, this Agreement will be final and binding on the Parties, including all principals, agents, executors, administrators, representatives, successors in interest, beneficiaries, assigns, heirs, and legal representatives thereof.  Each Party has a duty to so inform any such successor in interest.

Those individuals executing this Agreement on behalf of the Parties expressly represent and agree that they have sought and obtained approval from each such Party to sign on such Party's behalf, and so to bind each represented Party.

### F.        Non-Waiver

Failure by Plaintiffs to seek enforcement of this Agreement pursuant to its terms with respect to any instance or provision will not be construed as a waiver to such enforcement with regard to other instances or provisions.

### G.        Severability

In the event that a court determines that any provision of this Agreement is unenforceable, such provision will be severed from this Agreement and all other provisions will remain valid and enforceable; provided, however, that if the severance of any such provision materially alters the rights or obligations of the Parties hereunder, the Parties will attempt, through reasonable, good faith negotiations, to agree upon such other amendments to this Agreement as may be necessary to restore the Parties as closely as possible to the relative rights and obligations initially intended by them hereunder.

### H.        No Third-Party Beneficiary Rights

No other person shall have any rights under this Agreement except the Parties to this Agreement.


[SIGNATURE PAGES TO FOLLOW]

EXECUTED:

Date: _____          _____

                                                       Shonice G. Garnett

Date: _____          _____

                                                       Kathryn Harris

Date: _____          _____

                                                       Darroll Green

Date: _____          _____

                                                       James Stanley

Date: _____          _____

                                                 _____ (name & title)

                                                       Bread for the City

[ADDITONAL SIGNATURE PAGE TO FOLLOW]

EXECUTED:

Date: _____

_____
Shonice G. Garnett

Date: _____

_____
Kathryn Harris

Date: _____

_____
Darroll Green

Date: _____

_____
James Stanley

Date: _____

_____
George A. Jones, Chief Executive Officer
Bread for the City

[ADDITIONAL SIGNATURE PAGE TO FOLLOW]

9

EXECUTED:

Date: _____

Date: 2/9/2023

Date: 2/22/2023

Date: 2/22/2023

Date: _____

Shonice G. Garnett

_____

Kathryn Harris

_____

Darroll Green

_____

James Stanley

_____

_____ (name & title)

Bread for the City

[ADDITONAL SIGNATURE PAGE TO FOLLOW]

9

EXECUTED:

Date: <u>March 20, 2023</u>

*Laura Green Zeilinger*
Laura Green Zeilinger
Director, District of Columbia Department
of Human Services

Date: <u>March 21, 2023</u>

Caroline S. Van Zile
Solicitor General
Office of the Attorney General for the
District of Columbia

[END OF THE AGREEMENT]

Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SHONICE G. GARNETT, *et al*., ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | Civil Action No. 1:17-cv-1757 |
| v. ) | |
| ) | |
| LAURA ZEILINGER, ) | |
| ) | |
| *Defendant*. ) | |

## ORDER

This matter came before the Court upon Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; Directing Notice of Settlement to Class; and Scheduling Fairness Hearing ("Motion"). Having considered the Motion, together with its exhibits, and based upon the relevant papers and all prior proceedings in this matter, the Court has determined the proposed Settlement[1] satisfies the criteria of Federal Rules of Procedures 23(e) such that the Court would likely be able to approve the proposed Settlement as fair, reasonable, and adequate, and that issuance of notice of the proposed Settlement in accordance with the proposed notice plan is appropriate. Accordingly, good cause appearing in the record, **IT IS HEREBY ORDERED THAT:**

### Preliminary Evaluation of the Proposed Settlement

1)      Upon preliminary review, the Court finds that the proposed Settlement provides a recovery for the Class that (a) is within the range of what could be approved as fair, reasonable, and adequate, taking into account all of the risks, expense, and delay of continued litigation;

---

[1] Capitalized terms have the meaning given to them in the Settlement Agreement and the Motion unless otherwise defined herein.

(b) is the result of good faith and arm's length negotiations; (c) is not otherwise deficient; and (d) otherwise meets the criteria for approval; and thus warrants issuance of notice to the Class.

2)     In making this determination, the Court has considered the substantial benefits to the Class; the specific risks faced by the Class in seeking to prevail on appeal and on its claims; the stage of the proceedings at which the Settlement was reached; and all of the other factors required under Rule 23.

## Approval Hearing

3)     An approval hearing shall take place before the Court on _____, 20__, at _____ a.m./p.m. in Courtroom ___, United States District Court for the District of Columbia, 333 Constitution Avenue, N.W., Washington DC 20001, to determine whether: (a) the proposed Settlement should be approved as fair, reasonable, and adequate and, in accordance with the Settlement's terms, this matter should be dismissed with prejudice; and (b) Class Counsel's application for attorneys' fees and expenses should be approved. Any other matters the Court deems necessary and appropriate will also be heard.

## Modification of Class Definition

4)     The Court previously certified a Class consisting of:

    a.    All District of Columbia residents since June 1, 2016: (1) who have applied, are applying, or will apply for SNAP benefits, through an initial application; and (2) who have had or will have the processing of such application delayed beyond the timeframes mandated by law;

    b.    All District of Columbia residents since June 1, 2016: (1) who have applied, are applying, or will apply for SNAP benefits, through a recertification application; and (2) who have had or will have the

processing of such application delayed beyond the timeframes mandated by law; and/or

 c. All District of Columbia SNAP recipients since June 1, 2016: (1) who have been or will be required to submit a recertification application to maintain SNAP benefits; (2) as to whom the Defendant has failed or will fail to issue notice of the need to recertify; and (3) who have been or will be terminated from participation in SNAP due to Defendant's failure to issue such notice;

5) The Court preliminarily finds that this Class continues to be appropriate but that the definition of the Class for purposes of the Settlement should be narrowed to include only those individuals who applied for SNAP benefits or were required to submit a recertification application to maintain SNAP benefits on or before the date of this Order, so that individuals who would only have become members of the Class after the date of this Order – and therefore likely would not be in a position to receive notice of the Settlement Agreement – are not members of the Class.

### Notice to the Class

6) The notice plan set forth in Section 6 of the Settlement Agreement and the forms of notice attached as exhibits to the Settlement Agreement satisfy the requirements of Federal Rule of Civil Procedure 23 and thus are approved.  Non-material modifications to the exhibits may be made without further notice of the Court.

7) The Court finds that the form, content, and method of giving notice to the Class Members as described in the Settlement Agreement and exhibits: (a) constitute the best practicable notice to the Class; (b) are reasonably calculated, under the circumstances, to apprise

Class Members of the pendency of the action, the terms of the proposed settlement, and their rights under the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements.  The Court further finds that the notices are written in plain language, use simple terminology, and are designed to be readily understandable by Class Members.

### Objections to the Settlement

8)      The objection procedures set forth in Section 7 of the Settlement Agreement satisfy the requirements of Federal Rule of Civil Procedure 23 and thus are approved.

9)      Any class member who fails to comply with the objection procedures set forth in Section 7 of the Settlement Agreement will waive and forfeit any and all rights they may have to object, may have their objection stricken from the record, and may lose their rights to appeal from approval of the Settlement. Any such Class Member also shall be bound by all the terms of the Settlement Agreement, this Order, and by all proceedings, orders, and judgments, including, but not limited to, the release in the Settlement Agreement if final judgment is entered.

### Termination of the Settlement and Use of this Order

10)      This Order shall become null and void and shall be without prejudice to the rights of the parties, all of which shall be restored to their respective positions existing immediately before this Court entered this Order, if the settlement is not approved by the Court or if the Effective Date does not occur.  In such event, the Settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders relating to the Settlement, including this Order, shall be used or referred to for any purpose whatsoever.

11)     This Order shall not be construed or used as an admission, concession, or declaration by or against any Class Representative or any other Class Member that the Class's claims lack merit or that the relief requested is inappropriate, improper, or unavailable; and shall not constitute a waiver by any party of any defense or claims it may have in this litigation or in any lawsuit.

## Continuance of Final Approval Hearing

12)     The Court reserves the right to adjourn or continue the approval hearing and related deadlines without further written notice to the class.

## Summary of Deadlines

13)     The Settlement Agreement shall be administered according to its terms pending the Approval Hearing. Deadlines arising under the Settlement Agreement and this Order include but are not limited to the following:

| EVENT | TIMING |
|---|---|
| Deadline for beginning Notice process | [14 days after date of this order] |
| Deadline for Plaintiffs to file motion for final approval of settlement | [28 days prior to final approval hearing] |
| Deadline for Plaintiffs to file motion for attorneys' fees, costs, and expenses[2] | [28 days prior to final approval hearing] |
| Objection deadline | [14 days prior to final approval hearing] |
| Deadline for Plaintiffs to file response to any objections and reply in support of motion for final approval of settlement | [7 days prior to final approval hearing] |
| Final approval hearing | [At least 120 days after date of this order] |

---

[2] Plaintiffs may, if they choose, file a combined motion for final approval of settlement and attorneys' fees, costs, and expenses.

IT IS SO ORDERED this ___day of_____, 20___.

_____
THE HONORABLE CHRISTOPHER R. COOPER
Judge, United States District Court for the
District of Columbia

Exhibit 2

## NOTICE REGARDING PROPOSED CLASS ACTION SETTLEMENT
## <u>GARNETT V. ZEILINGER</u>

**You should read this notice if you:**

- **Submitted an application or recertification application for SNAP benefits to the DC Department of Human Services (DHS) between June 1, 2016 and [date of order granting preliminary approval] and did not receive a decision within 30 days, or**

- **Were due to recertify for SNAP benefits with DHS between June 1, 2016 and [date of order granting preliminary approval], did not receive the proper notice from DHS to do so, and had your benefits terminated.**

A settlement in a federal court lawsuit, *Garnett v. Zeilinger*, may affect your legal rights. The plaintiffs in *Garnett* claimed that the DC Department of Human Services (DHS) failed to process Supplemental Nutrition Assistance Program (SNAP) applications on time, and that DHS failed to provide legally required notices to SNAP recipients who needed to recertify their benefits.  The parties have agreed to a settlement in the case, which must be approved by the Court.

## PROPOSED SETTLEMENT

A copy of the proposed settlement is available at [website(s)].  If you have questions about the proposed settlement, you can contact Legal Aid at [contact number] or send an email to [email address].

**Who does the settlement apply to?**  The court certified three different classes.  The settlement applies to everyone in one of the classes.  You are a class member if you fit within any of the following three categories:

a. All District of Columbia residents since June 1, 2016: (1) who have applied, are applying, or will apply for SNAP benefits, through an initial application; and (2) who have had or will have the processing of such application delayed beyond the timeframes mandated by law;

b. All District of Columbia residents since June 1, 2016: (1) who have applied, are applying, or will apply for SNAP benefits, through a recertification application; and (2) who have had or will have the processing of such application delayed beyond the timeframes mandated by law;

c. All District of Columbia SNAP recipients since June 1, 2016: (1) who have been or will be required to submit a recertification application to maintain SNAP benefits; (2) as to whom the Defendant has failed or will fail to issue notice of the need to recertify; and (3) who have been or will be terminated from participation in SNAP due to Defendant's failure to issue such notice;

AND

You applied for SNAP benefits or were required to submit a recertification application to maintain SNAP benefits on or before [date of order granting preliminary approval].

**What does the proposed settlement do?** The parties agree that over the past five years during which time this case has been litigated, DHS has taken a number of steps to improve its SNAP program.  Many more people's SNAP applications are processed on time, and many more people receive legally required notices regarding their SNAP recertifications.  In the settlement, DHS agrees to several additional measures, including:

- DHS agrees to publish data about its compliance with federal SNAP timely processing requirements on its website.
- For a period of three years, DHS agrees to share certain documents related to its SNAP application and recertification processing, including correspondence with the federal agency that monitors the administration of SNAP benefits, with the Legal Aid Society of the District of Columbia (Legal Aid), one of the plaintiffs' law firms.
- DHS agrees not to oppose Plaintiffs' application for court approval for certain costs and reasonable attorneys' fees incurred in representing the class.

**RIGHT TO OBJECT**

Any class member has the right to object to the proposed settlement as not fair, reasonable and adequate.  The Court has set a hearing to consider class member objections on [hearing date] at [time] at the following address:

**U.S District Court for the District of Columbia, Courtroom X**
**333 Constitution Avenue, N.W.**
**Washington, D.C. 20001**

Class members may object to the settlement either by appearing at the hearing, or by filing a written objection with the Court by [14 days prior to the hearing date].  If you intend to have an attorney represent you at the hearing, you must file a written objection.

Exhibit 3

**Exhibit 3:**
**Organizations and Listservs to be Provided a Copy of Notice Pursuant to Agreement**
**Section 6**

1. **Bread for the City.**  Bread for the City is an organizational plaintiff in the case. It helps Washington, DC residents living with low income to develop their power to determine the future of their own communities by providing food, clothing, medical care, and legal and social services to reduce the burden of poverty.

2. **The DC Consortium of Legal Services Providers Listserv.**  The DC Consortium is a coalition of approximately 30 member organizations, the vast majority of which provide direct legal services to low-income District of Columbia residents).  Members include:

   - Advocates for Justice and Education
   - The Amara Legal Center
   - The American Civil Liberties Union of the National Capital Area (ACLU-NCA)
   - The Asian Pacific American Legal Resource Center
   - Ayuda, Inc.
   - Bread for the City
   - Catholic Charities Legal Network of the Archdiocese of Washington
   - Central American Resource Center (CARECEN)
   - Catholic University Columbus Community Legal Services
   - Children's Law Center
   - Christian Legal Aid of DC
   - The DC Affordable Law Firm
   - DC Bar Pro Bono Center
   - DC Kincare Alliance
   - DC Volunteer Lawyers' Project
   - Domestic Violence Legal Empowerment and Appeals Project (DV LEAP)
   - First Shift Justice Project
   - George Washington Jacob Burns Community Legal Clinics
   - Legal Counsel for the Elderly
   - Mil Mujeres
   - Neighborhood Legal Services Program
   - Network for Victim Recovery – DC
   - The Public Defender Service of DC
   - The Quality Trust for Individuals with Disabilities
   - Rising for Justice
   - School Justice Project
   - Tzedek DC
   - University of the District of Columbia David A. Clarke School of Law
   - University Legal Services
   - Washington Area Lawyers for the Arts
   - The Washington Lawyers' Committee for Civil Rights
   - The Washington Legal Clinic for the Homeless
   - Whitman-Walker Health Legal Services Program

3. **The Fair Budget Coalition Listserv.**  The Fair Budget Coalition includes various human services and legal services providers, community members directly impacted by poverty, advocates, faith organizations and concerned District residents who support and advocate for a District budget and public policies that address human needs.  Members (as of 2020-2021) include:

- o   Amara Legal Center
- o   Bread for the City
- o   Children's Law Center
- o   DC for Democracy
- o   Capital Area Food Bank
- o   Coalition for Smarter Growth
- o   DC Green State
- o   DC Behavioral Health Association
- o   DC Fiscal Policy Institute
- o   DC Alliance Of Youth Advocates
- o   DC Greens
- o   DC Coalition Against Domestic Violence
- o   DC Central Kitchen
- o   DC Hunger Solutions
- o   Jews United for Justice
- o   Everyone Home DC
- o   DC Jobs with Justice
- o   Local Initiatives Support Corporation
- o   ACLU DC
- o   Empower DC
- o   Miriam's Kitchen
- o   La Clinica del Pueblo
- o   Ward 3 Democrats
- o   Spaces in Action
- o   Unit Health Care
- o   We are Family
- o   DC Statehood Green Party
- o   Working Families Parties
- o   Washington Area Bicyclist Association
- o   Washington Legal Clinic for the Homeless
- o   DC Senior Advisory Coalition
- o   Restaurant Opportunities Centers United

Exhibit 4

[NOT YET SCHEDULED FOR ORAL ARGUMENT]

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

| | | |
|---|---|---|
| | ) | |
| SHONICE G. GARNETT, et al., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | No. 21-7068 |
| | ) | |
| LAURA ZEILINGER, | ) | |
| | ) | |
| Appellee. | ) | |

_____)

**JOINT MOTION TO VACATE THE DISTRICT COURT
DECISIONS UNDER REVIEW AND TO DISMISS THE APPEAL**

The parties to this matter have settled their dispute. In accordance with their settlement

agreement, they hereby move this Court to:

1. Vacate the two District Court decisions subject to this appeal, namely (a) the

   memorandum opinion and order dated September 9, 2020, *Garnett v. Zeilinger*

   ("Garnett IV"), 485 F. Supp. 3d 206 (D.D.C. 2020) (ECF Nos. 155 & 156), and (b)

   the subsequent (unpublished) opinion and order denying reconsideration dated June

   11, 2021 (ECF No. 162); and

2. Dismiss this appeal in any event.

In the proceedings below, the trial court certified a class of plaintiffs, *see Garnett v.*

*Zeilinger* ("Garnett I"), 301 F. Supp. 3d 199, 203–04 (D.D.C. 2018), issued a preliminary

injunction, *see Garnett v. Zeilinger* ("Garnett II"), 313 F. Supp. 3d 147, 150–54 (D.D.C. 2018),

and denied Appellee's motion to dismiss, *see Garnett v. Zeilinger* ("Garnett III"), 323 F. Supp.

3d 58, 62–63 (D.D.C. 2018), before issuing the decisions subject to this appeal. Although this

Court does not automatically grant parties' motions to vacate based solely on settlement, the circumstances here are unusual and warrant granting the instant motion.

As a part of the settlement agreement, the parties agreed to jointly seek vacatur of decisions that were based primarily on an issue raised by the trial court, namely, whether the decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978) applies to the District of Columbia, and if so, whether *Monell* shields the District from liability under the facts of this case. After the parties each carefully assessed the risks of further pursuing an appeal and discussed at length how the circumstances of the COVID-19 pandemic and the actions that the District has taken since this lawsuit was initiated seven years ago affect the claims and relief sought, along with the advantages to the class members and District of Columbia taxpayers of settlement, the parties have agreed to resolve the entire matter to their mutual satisfaction.

Accordingly, the parties jointly ask this Court to vacate the memorandum opinion and order issued by the District Court on September 9, 2020 as well as the June 11, 2021 opinion and order denying reconsideration, and, in any event, to dismiss the instant appeal.  Each party will bear its own fees, expenses, and costs in connection with this matter.

Respectfully submitted,

CHINH Q. LE [1007037]
JONATHAN H. LEVY [449274]
Legal Aid Society of the
District of Columbia
1331 H Street NW, Suite 350
Washington, D.C. 20005
Tel: (202) 628-1161
Fax: (202) 727-2132
cle@legalaiddc.org

/s/ Briana L. Black
BRIANA L. BLACK [989775]
LANCE Y. MURASHIGE [1021562]
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004-1109
Tel: (202) 637-5600
Fax: (202) 637-5910
briana.black@hoganlovells.com

KATHARINE DEABLER-MEADOWS
(admitted *pro hac vice*)
National Center for Law
and Economic Justice
50 Broadway, Suite 1500
New York, NY 10004-3821
212-633-6967 (Phone)
212-633-6371 (Fax)
deabler@nclej.org


*Counsel for Appellants*

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

/s/ Matthew R. Blecher
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity
Section

/s/ Mateya B. Kelley
MATEYA B. KELLEY [888219451]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 724-5874
Email: mateya.kelley@dc.gov

*Counsel for Appellee*

Exhibit 5

FNS Monthly Report from DC for January 2020 - Monthly Measures

**DC Department of Human Services (DHS)**

# SNAP Monthly Report (Caseload, Timeliness, Notice, Payment, Customer Service, and Work Queue)

| No | Measure | Unit | Jan-19 | Feb-19 | Mar-19 | Apr-19 | May-19 | Jun-19 | Jul-19 | Aug-19 | Sep-19 | Oct-19 | Nov-19 | Dec-19 | Jan-20 | Trend | Goal | Monthly Average | Note | Data Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **I. Caseload, Entries, Exits & Certification Activities** | | | | | | | | | | | | | | | | | | | | |
| 1 | Total number of cases with SNAP benefit issued (Caseload) | # | 65,473 | 64,773 | 64,487 | 64,035 | 64,060 | 64,202 | 64,691 | 65,330 | 65,410 | 65,717 | 65,263 | 64,949 | 64,609 | | N/A | 65,002 | Number of households paid for the respective month. The current and the previous month data are estimates. | DCAS [Caseload Report] + FNS-388 |
| 2 | Total SNAP benefit issuance | $ | $14,256K | $14,194K | $14,101K | $13,775K | $13,891K | $13,921K | $13,933K | $14,108K | $14,241K | $14,284K | $14,278K | $14,234K | $13,893K | | N/A | $14,153K | Total monthly benefit amount paid. The current and previous month data are estimates (same as FNS-388 data). | Same as above |
| | *Caseload/payment (1/2) data updated on* | | *3/11/2019* | *4/11/2019* | *5/16/2019* | *6/11/2019* | *7/10/2019* | *8/11/2019* | *9/11/2019* | *10/15/2019* | *11/15/2019* | *12/11/2019* | *1/13/2020* | *2/14/2020* | *2/14/2020* | | | | | |
| 3 | **Initial applications received (Total)** | # | 3,645 | 2,552 | 3,137 | 2,960 | 3,321 | 3,113 | 3,135 | 3,525 | 3,061 | 3,521 | 2,867 | 2,648 | 3,189 | | N/A | 3,125 | All applications compiled based on [application filing date/month] when the customer submitted the original application. This is NOT static information but point-in-time status as of the report run date and data in certain category may change. As of March 2019, the withdrawn category includes applications withdrawn by customers and withdrawn due to active duplicate application processed. Previously, we reported all withdrawn applications in one row. | DCAS Report [Newly Filed Applications] |
| a | *Approved* | # | 2,963 | 2,110 | 2,741 | 2,585 | 2,813 | 2,582 | 2,742 | 2,912 | 2,432 | 2,791 | 2,259 | 2,151 | 2,626 | | N/A | 2,599 | | |
| b | *Denied* | # | 245 | 217 | 233 | 183 | 265 | 263 | 233 | 328 | 304 | 433 | 336 | 290 | 320 | | N/A | 276 | | |
| c | *Remaining in Pending Status* | # | 220 | 86 | 33 | 65 | 90 | 133 | 28 | 124 | 162 | 116 | 109 | 79 | 93 | | N/A | 100 | | |
| d | *Withdrawn by Customers* | # | 217 | 139 | 89 | 106 | 123 | 114 | 91 | 125 | 115 | 146 | 120 | 101 | 128 | | N/A | 124 | | |
| e | *Withdrawn due to duplication* | # | | | 41 | 21 | 30 | 21 | 41 | 36 | 48 | 35 | 43 | 27 | 22 | | N/A | 33 | | |
| 4 | **Initial applications approved** | # | 2,861 | 2,139 | 2,532 | 2,524 | 2,745 | 2,570 | 3,041 | 2,938 | 2,022 | 2,775 | 2,264 | 2,254 | 2,488 | | N/A | 2,557 | This is NOT a subset of #3 (initial applications filed) but is defined based on [application **approval/certification** date]. | DCAS Report [Approved and Denied Applications] |
| a | *Approved for e-SNAP* | # | 2,102 | 1,529 | 1,823 | 1,813 | 1,965 | 1,800 | 2,055 | 2,074 | 1,657 | 1,951 | 1,605 | 1,539 | 1,777 | | N/A | 1,826 | | |
| b | *Approved for regular SNAP* | # | 759 | 610 | 709 | 711 | 780 | 770 | 986 | 864 | 365 | 824 | 659 | 715 | 711 | | N/A | 731 | | |
| 5 | **Initial applications denied** | # | 385 | 349 | 381 | 239 | 304 | 433 | 315 | 531 | 365 | 509 | 492 | 411 | 367 | | N/A | 390 | Based on [application **denial** date] | Same as above |
| | *Application (3-5) data updated on* | | *2/7/2019* | *3/11/2019* | *4/9/2019* | *5/16/2019* | *6/17/2019* | *7/10/2019* | *8/12/2019* | *9/9/2019* | *10/9/2019* | *11/15/2019* | *12/12/2019* | *1/13/2020* | *2/14/2020* | | | | | |
| 6 a | Recertification approved | # | 3,642 | 2,666 | 2,919 | 2,635 | 2,625 | 2,843 | 3,484 | 3,066 | 2,604 | 3,638 | 2,380 | 2,887 | 3,156 | | N/A | 2,940 | Data provided previously was compiled based on the date of receipt of recert/mid-cert forms. As of May 2019, this data has been updated to compile the number based on the date of approval. | Recertification Information for all ESA Programs |
| b | Mid-certification form approved | # | 3,150 | 2,186 | 2,403 | 2,358 | 2,610 | 2,114 | 2,624 | 2,496 | 1,919 | 2,544 | 1,906 | 2,261 | 2,665 | | N/A | 2,371 | | |
| c | Interim contact form approved | # | 684 | 620 | 780 | 715 | 723 | 748 | 860 | 862 | 795 | 1,030 | 733 | 875 | 924 | | N/A | 776 | | |
| 7 | **Households due to recertify (Total)** | # | 4,364 | 4,659 | 4,344 | 4,357 | 3,875 | 4,354 | 4,362 | 3,790 | 4,193 | 4,681 | 3,477 | 4,392 | 3,802 | | N/A | 4,236 | Total number of SNAP households whose certification periods are scheduled to expire during month. | |
| a | *Approved before cert ended* | # | 2,367 | 2,086 | 1,919 | 1,983 | 1,874 | 1,975 | 2,225 | 1,897 | 1,938 | 2,388 | 1,390 | 1,860 | 1,650 | | N/A | 1,951 | Those who recertified before the existing certification period ended. | |
| b | *Approved during grace period* | # | 715 | 1,169 | 1,191 | 1,236 | 958 | 1,243 | 1,143 | 938 | 1,199 | 1,159 | 1,044 | 1,336 | 814 | | N/A | 1,120 | Those approved for recertification after the existing certification period ended (the grace period). Data in this category may increase. | Same as above |
| c | *Denied due to ineligibility* | # | 12 | 12 | 5 | 3 | 1 | 1 | 3 | 4 | 5 | 0 | 2 | 4 | 3 | | N/A | 5 | Those who submitted a recertification form but were denied due to ineligibility. | |
| d | *In process / pending* | # | 4 | 41 | 28 | 13 | 46 | 47 | 49 | 65 | 76 | 78 | 72 | 50 | 114 | | N/A | 49 | Those who submitted recert form but recertification is still in process or pending due to incomplete interviews or outstanding verification items. | |
| e | *Customers failed to recertify* | # | 1,266 | 1,351 | 1,201 | 1,122 | 996 | 1,088 | 942 | 886 | 975 | 1,056 | 969 | 1,142 | 1,221 | | N/A | 1,109 | Those who did not recertify (yet if the grace period is still applicable). | |
| f | *Recertification Rate* | | 71% | 70% | 72% | 74% | 73% | 74% | 77% | 75% | 75% | 76% | 70% | 73% | | | N/A | 73% | Portion of households approved (a+b) out of all due (total) | |
| 8 | **Households due to submit mid-certification form (Total)** | # | 3,741 | 3,100 | 3,282 | 3,681 | 2,843 | 3,325 | 2,769 | 3,207 | 3,085 | 3,308 | 3,070 | 3,544 | 3,535 | | N/A | 3,282 | Total number of SNAP households who are due to submit mid-certification forms in the month. | |
| a | *Approved before mid-cert due* | # | 2,126 | 1,495 | 1,534 | 1,788 | 1,370 | 1,595 | 1,453 | 1,649 | 1,527 | 1,630 | 1,418 | 1,476 | 1,628 | | N/A | 1,597 | | |
| b | *Approved during grace period* | # | 560 | 796 | 874 | 1,061 | 690 | 909 | 618 | 716 | 776 | 785 | 723 | 942 | 645 | | N/A | 784 | | |
| c | *Denied due to ineligibility* | # | 9 | 4 | 0 | 2 | 0 | 0 | 0 | 1 | 2 | 1 | 2 | 0 | 1 | | N/A | 3 | Same as for recertification | Same as above |
| d | *In process / pending* | # | 14 | 24 | 15 | 39 | 66 | 47 | 93 | 89 | 83 | 88 | 101 | 105 | 99 | | N/A | 62 | | |
| e | *Customers failed to submit mid-cert* | # | 1,032 | 781 | 859 | 791 | 717 | 774 | 605 | 752 | 697 | 804 | 826 | 1,021 | 1,162 | | N/A | 836 | | |
| f | *Mid-certification Rate* | | 72% | 74% | 73% | 77% | 72% | 75% | 75% | 74% | 75% | 73% | 70% | 68% | | | N/A | 73% | | |

Exhibit U

| No | Measure | Unit | Jan-19 | Feb-19 | Mar-19 | Apr-19 | May-19 | Jun-19 | Jul-19 | Aug-19 | Sep-19 | Oct-19 | Nov-19 | Dec-19 | Jan-20 | Trend | Goal | Monthly Average | Note | Data Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9 | Households due to submit interim contact form (Total) | # | 910 | 1,009 | 1,009 | 974 | 1,131 | 1,028 | 1,225 | 1,206 | 1,434 | 1,529 | 1,134 | 1,275 | 1,181 | | N/A | 1,140 | Total number of SNAP households who are due to submit interim contact forms in the month. | |
| a | Approved before contact due | # | 456 | 483 | 465 | 471 | 543 | 509 | 590 | 581 | 638 | 733 | 472 | 560 | 533 | | N/A | 534 | | |
| b | Approved during grace period | # | 146 | 228 | 210 | 190 | 235 | 220 | 230 | 227 | 324 | 310 | 287 | 299 | 202 | | N/A | 236 | | Same as above |
| c | Denied due to ineligibility | # | 2 | 1 | 2 | 1 | 1 | 0 | 0 | 2 | 1 | 0 | 2 | 1 | 0 | | N/A | 1 | | |
| d | In process / pending | # | 1 | 7 | 3 | 22 | 33 | 14 | 54 | 53 | 68 | 80 | 54 | 53 | 53 | | N/A | 35 | *Same as for recertification* | |
| e | Customers failed to submit forms | # | 305 | 290 | 329 | 290 | 319 | 285 | 351 | 343 | 403 | 406 | 319 | 362 | 393 | | N/A | 333 | | |
| f | Interim Contact Certification Rate | % | 66% | 70% | 67% | 68% | 69% | 71% | 67% | 67% | 67% | 68% | 67% | 67% | | | | 68% | | |
| | *Data for 6-9 updated on* | | 3/18/2019 | 4/10/2019 | 5/16/2019 | 6/17/2019 | 7/10/2019 | 8/12/2019 | 9/9/2019 | 9/9/2019 | 10/10/2019 | 12/12/2019 | 12/12/2019 | 2/14/2020 | 2/14/2020 | | | | | |
| 10 | Cases closed/terminated (Total) | # | 4,493 | 4,294 | 4,332 | 3,725 | 4,140 | 5,032 | 3,686 | 3,661 | 4,149 | 4,291 | 4,408 | 5,088 | 4,612 | | N/A | 4,375 | | |
| a | Recert - No response | # | 1,613 | 2,139 | 2,173 | 2,110 | 1,773 | 2,143 | 1,874 | 1,561 | 1,907 | 1,932 | 1,874 | 2,247 | 1,834 | | N/A | 1,987 | | |
| b | Recert - Eligibility rules | # | 34 | 26 | 33 | 15 | 31 | 30 | 21 | 39 | 31 | 26 | 26 | 50 | 39 | | N/A | 32 | | |
| c | Recert - Outstanding verification | # | 96 | 121 | 105 | 65 | 87 | 133 | 87 | 101 | 152 | 137 | 120 | 93 | 142 | | N/A | 111 | | |
| d | Recert - Other | # | 32 | 32 | 26 | 7 | 34 | 34 | 27 | 26 | 29 | 38 | 24 | 30 | 3 | | N/A | 27 | | DCAS Report [Closed Cases] |
| e | Mid-cert - No Response | # | 1,829 | 1,355 | 1,132 | 1,179 | 1,368 | 1,665 | 1,002 | 1,402 | 1,465 | 1,525 | 1,557 | 1,963 | 1,826 | | N/A | 1,490 | | |
| f | Mid-cert - Eligibility rules | # | 26 | 12 | 15 | 5 | 24 | 27 | 24 | 20 | 22 | 15 | 20 | 22 | 21 | | N/A | 19 | | |
| g | Mid-cert - Outstanding verification | # | 33 | 34 | 19 | 15 | 31 | 52 | 24 | 20 | 21 | 30 | 28 | 22 | 27 | | N/A | 28 | | |
| h | Mid-cert - Other | # | 11 | 13 | 7 | 5 | 17 | 23 | 10 | 19 | 19 | 16 | 15 | 12 | 25 | | N/A | 15 | | |
| i | Closed following evidence change | # | 819 | 562 | 822 | 324 | 775 | 925 | 617 | 473 | 503 | 572 | 744 | 649 | 695 | | N/A | 668 | | |
| | *Closed Case data (10) updated on* | | 2/7/2019 | 3/15/2019 | 4/17/2019 | 5/28/2019 | 6/17/2019 | 7/11/2019 | 8/12/2019 | 9/9/2019 | 10/10/2019 | 11/15/2019 | 12/12/2019 | 1/15/2020 | 2/14/2020 | | | | | |

**II. Timely Processing of Application**

| No | Measure | Unit | Jan-19 | Feb-19 | Mar-19 | Apr-19 | May-19 | Jun-19 | Jul-19 | Aug-19 | Sep-19 | Oct-19 | Nov-19 | Dec-19 | Jan-20 | Trend | Goal | Monthly Average | Note | Data Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | QC APT Rate | % | 95.83% | | 95.83% | 97.50% | 100.00% | 95.83% | 86.67% | 100.00% | 90.32% | | | | | | ↑ | 93.81% | QC sample review result, which is the basis for FNS APT rate. | FNS State QC System |
| 12 | State APT Rate | % | 87.77% | 87.94% | 88.94% | 84.80% | 88.72% | 88.49% | 88.75% | 88.76% | 85.42% | 87.09% | 84.51% | 84.54% | 86.83% | | ↑ | 87.26% | Measured following the FNS protocol for the universe applications. Should be noted that this measure includes only initial applications as the District treats recertification cases differently from initial applications. | DCAS Report [SNAP APT Rate] |
| a | *e-SNAP* | % | 85.95% | 85.67% | 87.17% | 83.20% | 86.88% | 86.17% | 86.32% | 86.66% | 81.81% | 83.53% | 81.34% | 80.47% | 83.76% | | ↑ | 84.71% | | |
| b | *Regular SNAP* | % | 92.83% | 93.64% | 93.53% | 88.68% | 93.39% | 93.90% | 93.81% | 93.79% | 93.94% | 95.51% | 92.27% | 93.29% | 94.51% | | ↑ | 93.35% | | |
| 13 | Adjusted State APT Rate | % | 95.73% | 95.85% | 96.22% | 93.10% | 95.54% | 96.32% | 96.74% | 96.03% | 93.30% | 94.67% | 93.52% | 94.54% | 95.29% | | ↑ | 95.28% | Exclude applications where the number of days from the application filing date to the latest verification clearance date exceeds the required timeframe - consider them delayed due to customer's delayed submission of documentation. | Analysis of [SNAP APT Rate] data conducted by ESA Data Division |
| a | *e-SNAP* | % | 94.75% | 94.97% | 95.13% | 93.22% | 94.61% | 95.63% | 95.89% | 95.24% | 91.50% | 92.98% | 91.81% | 93.14% | 94.13% | | ↑ | 94.24% | | |
| b | *Regular SNAP* | % | 98.34% | 97.95% | 98.96% | 92.84% | 97.83% | 97.83% | 98.40% | 97.84% | 97.23% | 98.38% | 97.44% | 97.23% | 97.96% | | ↑ | 97.64% | | |
| 14 | Recertification Timeliness Rate | % | 97.89% | 96.77% | 96.33% | 97.57% | 96.50% | 98.41% | 97.21% | 96.93% | 96.91% | 95.05% | 94.11% | 95.95% | 95.60% | | ↑ | 96.58% | Timeliness of recertification has been defined based on the statutory requirements on timely submission and processing of recertification. | DCAS Report [Recertification Timeliness] |
| | *APT Rate (11-14) data updated on* | | 2/13/2019 | 3/11/2019 | 4/10/2019 | 5/13/2019 | 6/10/2019 | 7/10/2019 | 8/12/2019 | 9/9/2019 | 10/15/2019 | 11/15/2019 | 12/12/2019 | 1/9/2020 | 2/10/2020 | | | | | |

FNS Monthly Report from DC for January 2020 - Monthly Measures

Exhibit U

| No | | Measure | Unit | Jan-19 | Feb-19 | Mar-19 | Apr-19 | May-19 | Jun-19 | Jul-19 | Aug-19 | Sep-19 | Oct-19 | Nov-19 | Dec-19 | Jan-20 | Trend | Goal | Monthly Average | Note | Data Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **III. Notice** | | | | | | | | | | | | | | | | | | | | |
| 15 | a | Households due to recertify | # | 4,364 | 4,659 | 4,344 | 4,357 | 3,875 | 4,354 | 4,362 | 3,790 | 4,193 | 4,681 | 3,477 | 4,392 | 3,802 | | | 4,236 | It should be noted that the District mails notices for recertification and periodic reports to all customers (100%) due between 45-60 days prior to the due date. However, some cases may have their recert/mid-cert due dates added manually after the notices have been sent out when there is any unusual event triggering a change of the respective certification periods. They will be treated as those with no notices mailed in this measure. | Recertification Information for all ESA Programs |
| | b | Notice of expiration mailed | # | 4,337 | 4,625 | 4,295 | 4,322 | 3,814 | 4,317 | 4,344 | 3,757 | 4,158 | 4,652 | 3,453 | 4,350 | 3,785 | | | 4,200 | | |
| | c | % with notice mailed | % | 99.4% | 99.3% | 98.9% | 99.2% | 98.4% | 99.2% | 99.6% | 99.1% | 99.2% | 99.4% | 99.3% | 99.0% | 99.6% | | ↑ | 99.2% | | |
| 16 | a | Households due to submit mid-cert | # | 3,741 | 3,100 | 3,282 | 3,681 | 2,843 | 3,325 | 2,769 | 3,207 | 3,085 | 3,308 | 3,070 | 3,544 | 3,535 | | | 3,282 | | |
| | b | Mid-certification forms mailed | # | 3,739 | 3,098 | 3,277 | 3,678 | 2,826 | 3,316 | 2,768 | 3,206 | 3,084 | 3,306 | 3,068 | 3,532 | 3,530 | | | 3,255 | | |
| | c | % with mid-cert forms mailed | % | 99.9% | 99.9% | 99.8% | 99.9% | 99.4% | 99.7% | 100.0% | 100.0% | 100.0% | 99.9% | 99.9% | 99.7% | 99.9% | | ↑ | 99.2% | | |
| 17 | a | Households due for interim contact | # | 910 | 1,009 | 1,009 | 974 | 1,131 | 1,028 | 1,225 | 1,206 | 1,434 | 1,529 | 1,134 | 1,275 | 1,181 | | | 1,140 | | |
| | b | Interim contact forms mailed | # | 907 | 1,007 | 1,008 | 973 | 1,113 | 1,028 | 1,225 | 1,203 | 1,434 | 1,529 | 1,134 | 1,274 | 1,180 | | | 1,130 | | |
| | c | % with notice mailed | % | 99.7% | 99.8% | 99.9% | 99.9% | 98.4% | 100.0% | 100.0% | 99.8% | 100.0% | 100.0% | 100.0% | 99.9% | 99.9% | | ↑ | 98.9% | | |
| 18 | a | SNAP notices issued (passed) | # | 39,852 | 41,331 | 35,905 | 36,848 | 37,369 | 34,745 | 38,668 | 98,906 | 30,975 | 41,098 | 31,372 | 47,480 | 34,314 | | | 43,094 | | DCAS Report [Notice Dashboard] |
| | b | SNAP notices failed | # | 406 | 327 | 359 | 347 | 488 | 336 | 389 | 269 | 429 | 535 | 96 | 131 | 85 | | | 319 | | |
| | c | Notice pass rate | % | 99.0% | 99.2% | 99.0% | 99.1% | 98.7% | 99.0% | 99.0% | 99.7% | 98.6% | 98.7% | 99.7% | 99.7% | 99.8% | | ↑ | 99.2% | | |
| 19 | a | SNAP IPV notice issued (passed) | # | | | | | | | | | | | | | | | | 3 | | DCAS Report [Notice Dashboard] |
| | b | SNAP IPV notice failed | # | | | | | | | | | | | | | | | | 1 | | |
| | c | SNAP IPV notice pass rate | % | | | | | | | | | | | | | | | ↑ | 75.0% | | |
| 20 | a | SNAP Interview Appointment notice issued (passed) | # | | | | | | | | | | | | | | | | 8 | | DCAS Report [Notice Dashboard] |
| | b | SNAP Interview Appointment notice failed | # | | | | | | | | | | | | | | | | 1 | | |
| | c | SNAP Interview Appointment notice pass rate | % | | | | | | | | | | | | | | | ↑ | 88.9% | | |
| | | *Notice (15-20) data updated on* | | 3/18/2019 | 3/18/2019 | 4/17/2019 | 5/18/2019 | 6/17/2019 | 7/12/2019 | 8/12/2019 | 9/9/2019 | 10/10/2019 | 11/15/2019 | 12/12/2019 | 1/15/2020 | 2/14/2020 | | | | | |
| **IV. Payment Issues** | | | | | | | | | | | | | | | | | | | | |
| 21 | | Duplicate payments during month | | 5 | 7 | 3 | 4 | 4 | 6 | 5 | 6 | 7 | 10 | 11 | 9 | 3 | | ↓ | 6 | Households with duplicate payments during the month | DCAS [Duplicate Payment] |
| 22-24 | | Overpayment and IPV metrics | | | | | | | | | | | | | | | | | | Working with OPRMI to start reporting data with the same logic used in the 366-B report. | OPRMI Fraud Division |
| **V. Customer Services** | | | | | | | | | | | | | | | | | | | | |
| 25 | | Customer visits per day | # | 746 | 748 | 817 | 812 | 853 | 879 | 928 | 979 | 982 | 971 | 949 | 889 | 968 | | ↓ | 871 | | |
| 26 | | Average wait time in lobby | h:m | 2:06 | 1:36 | 1:54 | 1:56 | 2:09 | 2:20 | 2:27 | 2:12 | 2:19 | 1:49 | 2:00 | 2:07 | 2:36 | | ↓ | 2:05 | In May 2019, DHS implemented a pre-triage navigator process, which resulted in a noticeable increase in the measurable wait time by adding pre-triage wait time that had not been captured previously. | PathOS |
| 27 | | Lobby completion rate | % | 85% | 85% | 86% | 84% | 84% | 85% | 85% | 85% | 83% | 84% | 85% | 87% | 85% | | → | 85% | Completed (one-and-done) on the same day | |

**FNS Monthly Report from DC for January 2020**
**DC Department of Human Services (DHS)**
## SNAP Backlog (Pending Applications and Recertifications)

| No | Measure | 07/15/19 | 07/24/19 | 08/15/19 | 08/30/19 | 09/13/19 | 09/30/19 | 10/15/19 | 10/30/19 | 11/15/19 | 12/02/19 | 12/16/19 | 12/30/19 | 01/15/20 | 01/30/20 | Trend | Note | Data Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Application Backlog (Overdue Pending Applications _without_ Outstanding Verification Items Waiting for Action)** |||||||||||||||||||
| 1 | Overdue pending app - Total | 12 | 11 | 15 | 26 | 27 | 28 | 18 | 17 | 39 | 24 | 28 | 31 | 28 | 29 | | Overdue: pending for >7 days for e-SNAP, for >30 days for regular SNAP applications with **no outstanding verification** as of report run date. The breakdown shows the number of pending overdue applications by length overdue: # of days beyond the required timeframe. | |
| a | Overdue by 1-30 days | 4 | 6 | 4 | 4 | 17 | 15 | 11 | 4 | 18 | 13 | 9 | 9 | 16 | 17 | | | |
| b | Overdue by 31-60 days | 7 | 4 | 9 | 12 | 7 | 10 | 5 | 9 | 16 | 10 | 15 | 18 | 9 | 8 | | | |
| c | Overdue by >60 Days | 1 | 1 | 2 | 10 | 3 | 3 | 2 | 4 | 5 | 1 | 4 | 4 | 3 | 4 | | | |
| 2 | Overdue pending - eSNAP Only | 4 | 7 | 7 | 10 | 18 | 20 | 14 | 8 | 20 | 14 | 12 | 14 | 18 | 20 | | This is e-SNAP applications only and a sub-group of measure 1 above. | DCAS Report [Pending Applications] |
| a | Overdue by 1-30 days | 4 | 6 | 4 | 4 | 17 | 15 | 11 | 4 | 18 | 13 | 9 | 9 | 16 | 17 | | | |
| b | Overdue by 31-60 days | 0 | 1 | 3 | 3 | 1 | 5 | 2 | 3 | 2 | 1 | 1 | 4 | 2 | 1 | | | |
| c | Overdue by >60 Days | 0 | 0 | 0 | 3 | 0 | 0 | 1 | 1 | 0 | 0 | 2 | 1 | 0 | 2 | | | |
| 3 | Overdue pending -Regular Only | 8 | 4 | 8 | 16 | 9 | 8 | 4 | 9 | 19 | 10 | 16 | 17 | 10 | 9 | | This is regular SNAP applications only and a sub-group of measure 1 above. | |
| a | Overdue by 1-30 days | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| b | Overdue by 31-60 days | 7 | 3 | 6 | 9 | 6 | 5 | 3 | 6 | 14 | 9 | 14 | 14 | 7 | 7 | | | |
| c | Overdue by > 60 Days | 1 | 1 | 2 | 7 | 3 | 3 | 1 | 3 | 5 | 1 | 2 | 3 | 3 | 2 | | | |
| **Overdue Pending Applications _with_ Outstanding Verification Items (to be Submitted by Customers)** |||||||||||||||||||
| 4 | Overdue w/ outstanding verification | 165 | 182 | 153 | 114 | 85 | 102 | 75 | 97 | 85 | 51 | 72 | 90 | 85 | 92 | | Overdue: pending for >7 days for e-SNAP, for >30 days for regular SNAP applications with **>=1 outstanding verification** as of report run date. | |
| a | Overdue by 1-30 days | 29 | 32 | 25 | 19 | 19 | 18 | 19 | 23 | 23 | 17 | 22 | 21 | 18 | 23 | | | |
| b | Overdue by 31-60 days | 65 | 57 | 63 | 48 | 42 | 47 | 35 | 40 | 45 | 15 | 32 | 40 | 46 | 34 | | | |
| c | Overdue by > 60 Days | 71 | 93 | 65 | 47 | 24 | 37 | 21 | 34 | 17 | 19 | 18 | 29 | 21 | 35 | | | |
| **Recert/Mid-cert Backlog (Overdue Pending Recertifications and Periodic Reports Waiting for Agency's Action)** |||||||||||||||||||
| 5 | Overdue pending -Recertification | | 28 | 39 | 41 | 48 | 10 | 19 | 22 | 46 | 41 | 31 | 37 | 55 | 54 | | | |
| a | Overdue by 1-30 days | | 16 | 19 | 15 | 13 | 5 | 17 | 18 | 29 | 25 | 18 | 18 | 27 | 18 | | | |
| b | Overdue by 31-60 days | | 5 | 8 | 9 | 16 | 3 | 1 | 3 | 14 | 14 | 8 | 11 | 15 | 13 | | | |
| c | Overdue by > 60 Days | | 7 | 12 | 17 | 19 | 2 | 1 | 1 | 3 | 2 | 5 | 8 | 13 | 23 | | Overdue: if 1) a customer did not receive benefits for the cert period without a break when the customer submitted recert form <=15th of the recert (or periodic report) due month; or 2) if a customer did not receive benefits within 30 days from the recert submission date when the customer submitted the form after the 15th of the month or during the grace period as of report run date. | Recertification Information for all ESA Programs |
| 6 | Overdue pending - Mid-cert | | 19 | 28 | 29 | 28 | 4 | 4 | 3 | 16 | 22 | 13 | 13 | 30 | 33 | | | |
| a | Overdue by 1-30 days | | 12 | 14 | 9 | 3 | 4 | 4 | 3 | 10 | 10 | 5 | 4 | 13 | 17 | | | |
| b | Overdue by 31-60 days | | 6 | 10 | 9 | 14 | 0 | 0 | 0 | 1 | 4 | 4 | 2 | 1 | 2 | | | |
| c | Overdue by > 60 Days | | 1 | 4 | 11 | 11 | 0 | 0 | 0 | 5 | 8 | 4 | 7 | 16 | 14 | | | |
| 7 | Overdue pending - Interim Contact | | 4 | 4 | 5 | 5 | 0 | 4 | 5 | 8 | 14 | 6 | 8 | 12 | 13 | | | |
| a | Overdue by 1-30 days | | 3 | 2 | 1 | 2 | 0 | 4 | 4 | 5 | 10 | 3 | 3 | 5 | 5 | | | |
| b | Overdue by 31-60 days | | 1 | 2 | 3 | 1 | 0 | 0 | 1 | 3 | 4 | 1 | 3 | 2 | 2 | | | |
| c | Overdue by > 60 Days | | 0 | 0 | 1 | 2 | 0 | 0 | 0 | 0 | 0 | 2 | 2 | 5 | 6 | | | |

Exhibit 6

GARNETT-0041508

| U.S. DEPARTMENT OF AGRICULTURE - FOOD AND NUTRITION SERVICE | A. STATE: 1192901  DC DEPARTMENT OF HUMAN SERVICES, SNAP-OP | | | | |
|---|---|---|---|---|---|
| **PROGRAM AND BUDGET SUMMARY STATEMENT**<br>**PART B - PROGRAM ACTIVITY STATEMENT** | B. REPORT PERIOD | | | | |
| | FY 2020, Quarter 1, Revision 0 | | | | |
| | 10 | 2019 | TO | 12 | 2019 |
| | Month | Year | | Month | Year |

| CERTIFICATIONS | (A) APPROVALS | (B) DENIALS | (C) TOTAL APPROVED AND DENIED | APPROVED OVERDUE APPLICATIONS, (D) 1-30 DAYS | APPROVED OVERDUE APPLICATIONS, (E) 31-60 DAYS | APPROVED OVERDUE APPLICATIONS, (F) 61-90 DAYS | APPROVED OVERDUE APPLICATIONS, (G) 91+ DAYS |
|---|---|---|---|---|---|---|---|
| 3. INITIAL APPLICATIONS | 7,327 | 1,263 | 8,590 | 812 | 81 | 23 | 23 |
| 4. RECERTIFICATIONS | 8,690 | 4,486 | 13,176 | 2,101 | 0 | 0 | 1 |
| 5. TOTAL | 16,017 | 5,749 | 21,766 | 2,913 | 81 | 23 | 24 |
| 6. EXPEDITED SERVICE | 5,121 | | | 715 | 68 | 14 | 12 |

| FAIR HEARINGS | (A) HEARINGS REQUESTED | (B) HEARINGS HELD | (C) DECISIONS UPHELD | (D) DECISIONS REVERSED | (E) DECISIONS OVERDUE | (F) WITHDRAWN REQUESTS |
|---|---|---|---|---|---|---|
| 7. ACTIVITY | 63 | 75 | 1 | 1 | 50 | 18 |

| FRAUD INVESTIGATIONS | ELIGIBILITY FRAUD, (A) EVIDENCE FOUND TO REDUCE OR DENY BENEFITS | ELIGIBILITY FRAUD, (B) NO EVIDENCE FOUND TO REDUCE OR DENY BENEFITS | ELIGIBILITY FRAUD, (C) RESULTED IN REFERRAL FOR ADH OR PROSECUTION | ELIGIBILITY FRAUD, (D) AVERAGE # OF DAYS PER CONCLUDED INVESTIGATION | ELIGIBILITY FRAUD, (E) OPEN INVESTIGATIONS | TRAFFICKING, (F) RESULTED IN REFERRAL FOR ADH OR PROSECUTION | TRAFFICKING, (G) RESULTED IN NO REFERRAL FOR ADH OR PROSECUTION | TRAFFICKING, (H) AVERAGE # OF DAYS PER CONCLUDED INVESTIGATION | TRAFFICKING, (I) OPEN INVESTIGATIONS | COMBINED, (J) INVESTIGATOR HOURS |
|---|---|---|---|---|---|---|---|---|---|---|
| 8. CASES/DAYS/HOURS | 218 | 275 | 3 | 388 | 10,270 | 0 | 314 | 598 | 2,392 | 13,641 |

| ADMINISTRATIVE DISQUALIFICATION HEARINGS | ELIGIBILITY FRAUD, (A) ADH CONCLUDED, INDIVIDUAL DISQUALIFIED | ELIGIBILITY FRAUD, (B) WAIVER SIGNED, INDIVIDUAL DISQUALIFIED | ELIGIBILITY FRAUD, (C) ADH CONCLUDED, INDIVIDUAL NOT DISQUALIFIED | ELIGIBILITY FRAUD, (D) AMOUNT SUBJECT TO CLAIM | TRAFFICKING, (E) ADH CONCLUDED, INDIVIDUAL DISQUALIFIED | TRAFFICKING, (F) WAIVER SIGNED, INDIVIDUAL DISQUALIFIED | TRAFFICKING, (G) ADH CONCLUDED, INDIVIDUAL NOT DISQUALIFIED | TRAFFICKING, (H) AMOUNT SUBJECT TO CLAIM | COMBINED, REFERRED INDIVIDUALS AWAITING SCHEDULING, (I) 91-180 DAYS | COMBINED, REFERRED INDIVIDUALS AWAITING SCHEDULING, (J) 181+ DAYS | COMBINED, (K) DECISION NOTICES OVERDUE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 9. INDIVIDUALS/$/NOTICES | 0 | 4 | 0 | 8,764 | 0 | 5 | 0 | 4,227 | 0 | 0 | 0 |

| PROSECUTIONS | ELIGIBILITY FRAUD, (A) PROSECUTION CONCLUDED, INDIVIDUAL DISQUALIFIED | ELIGIBILITY FRAUD, (B) DCA SIGNED, INDIVIDUAL DISQUALIFIED | ELIGIBILITY FRAUD, (C) PROSECUTION CONCLUDED, INDIVIDUAL NOT DISQUALIFIED | ELIGIBILITY FRAUD, (D) AMOUNT SUBJECT TO CLAIM | TRAFFICKING, (E) PROSECUTION CONCLUDED, INDIVIDUAL DISQUALIFIED | TRAFFICKING, (F) DCA SIGNED, INDIVIDUAL DISQUALIFIED | TRAFFICKING, (G) PROSECUTION CONCLUDED, INDIVIDUAL NOT DISQUALIFIED | TRAFFICKING, (H) AMOUNT SUBJECT TO CLAIM | COMBINED, (I) AVERAGE # OF DAYS PER CONCLUDED PROSECUTION |
|---|---|---|---|---|---|---|---|---|---|
| 10. INDIVIDUALS/$/DAYS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| DATE  1 / 28 / 2020 | SIGNATURE  _Pamela_ | TITLE  _Acting Officer_ |
|---|---|---|
| STAMP/CERTIFY DATE 1/28/2020 | LAST UPDATED BY Barbara Thomas-Roberson | LAST UPDATED ON 1/28/2020 |

Form FNS-366B (Quarterly) (11-15) Previous Editions Obsolete

FPRS Electronic Version

Printed on 01/28/2020 11:55:58 AM

Page 1 of 1